Rachel Steinback, SBN 310700
LAW OFFICE OF RACHEL STEINBACK
P.O. Box 291253
Los Angeles, CA 90029
(t) 213-537-5370
(f) 213-232-4003
(e) steinbacklaw@gmail.com

Carol A. Sobel, SBN 84483
Monique A. Alarcon, SBN 311650
Avneet S. Chattha, SBN 316545
LAW OFFICE OF CAROL SOBEL
725 Arizona Avenue, Suite 300
Santa Monica, CA 90401
(t) 310-393-3055
(e) carolsobel@aol.com
(e) monique.alarcon8@gmail.com
(e) avneet.chattha7@gmail.com

Attorneys for Plaintiffs
Additional Counsel on Following Page

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR ARNOLDO RIVERA MARTINEZ; ISAAC ANTONIO LOPEZ CASTILLO; JOSUE VLADIMIR CORTEZ DIAZ; JOSUE MATEO LEMUS CAMPOS; MARVIN JOSUE GRANDE RODRIGUEZ; ALEXANDER ANTONIO BURGOS MEJIA; LUIS PEÑA GARCIA; JULIO CESAR BARAHONA CORNEJO, as individuals, <br><br> PLAINTIFFS, <br><br> v. <br><br> THE GEO GROUP, Inc., a Florida corporation; the CITY OF ADELANTO, a municipal entity; GEO LIEUTENANT DURAN, sued in her individual capacity; GEO LIEUTENANT DIAZ, sued in her individual capacity; GEO SERGEANT CAMPOS, sued in his individual capacity; SARAH JONES, sued in her individual | Case No.:   5:18-cv-01125-R-GJS <br><br> **First Amended Complaint** <br><br> 42 U.S.C. § 1983: First, Fourth, Fifth, & Fourteenth Amendments; 42 U.S.C. §1985; Cal. Const., Article 1, §§ 2, 7; Cal. Civil Code §§ 52.1; Common Law Tort Claims. <br><br> Demand for Jury Trial. |

capacity; THE UNITED STATES OF
AMERICA; and DOES 1-10, individuals;

DEFENDANTS.

Catherine Sweetser, SBN 271142
SCHONBRUN, SEPLOW, HARRIS & HOFFMAN LLP
11543 W. Olympic Boulevard
Los Angeles, CA 90064
(t) 310-396-0731
(f) 310-399-7040
(e) csweetser@sshhlaw.com

Cynthia Anderson-Barker, SBN 175764
LAW OFFICE OF CYNTHIA ANDERSON-BARKER
3435 Wilshire Boulevard, Suite 2910
Los Angeles, CA 90010
(t) 213-381-3246
(f) 213-252-0091
(e) cflynn@yahoo.com

Colleen Flynn, SBN 2324281
LAW OFFICE OF COLLEEN FLYNN
3435 Wilshire Boulevard, Suite 2910
Los Angeles, CA 90010
(t) 213-252-9444
(f) 213-252-0091
(e) cflynn@yahoo.com

Matthew Strugar, SBN 232951
LAW OFFICE OF MATTHEW STRUGAR
3435 Wilshire Boulevard, Suite 2910
Los Angeles, CA 90010
(t) 323-696-2299
(e) matthew@matthewstrugar.com

2

## JURISDICTION AND VENUE

1.      This is an action for damages and declaratory relief pursuant to 42 U.S.C. § 1983 and based upon the violations of Plaintiffs' rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and California law.  Jurisdiction exists pursuant to 28 U.S.C. § 1331, 1343, and 1346, based on 42 U.S.C. §1983 and questions of federal constitutional law.  Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as they arise from the same case or controversy as Plaintiffs' federal claims.

2.      Venue is proper in the Central District of California in that the events and conduct complained of herein all occurred in the Central District.

## PRELIMINARY STATEMENT

3.      In May 2017, after long and harrowing journeys through Central America, Plaintiffs arrived at the southern border of the United States seeking political asylum.

4.      Plaintiffs, eight refugees from El Salvador and Honduras, were forced to flee their home countries after becoming the targets of violent criminal organizations – the same violent criminal organizations the United States has recently condemned and denounced.  By way of example:

    a. Plaintiff Isaac Antonio Lopez Castillo was an investigative journalist in El Salvador who exposed the connections between his local government, the police, and the violent MS-13 gang.  As a result of his work, he immediately received death threats and was forced to flee El Salvador. Mr. Lopez Castillo came to the United States, a vocal ally in the effort to expose the crimes of MS-13, seeking safety and political asylum.

    b. Plaintiff Omar Arnoldo Rivera Martinez fled El Salvador after gang members attacked his teenage daughter and, while he and his family were

forced to watch, killed his brother. Mr. Rivera Martinez and his family came to the United States, a vocal ally in the fight against the gangs that had overrun their hometown, seeking safety and political asylum.

c. Plaintiff Josue Vladimir Cortez Diaz, a young gay man, fled El Salvador after being subjected to horrific abuse, including death threats, on account of his homosexuality. Mr. Cortez Diaz came to the United States, which by law protects individuals of all sexual orientations from persecution, seeking safety and political asylum.

d. Plaintiff Luis Ernesto Peña Garcia fled El Salvador after gangs kidnapped and killed his brother and two cousins and threatened to do the same to him. Mr. Peña Garcia came to the United States, a vocal ally in the fight against the gangs that murdered his family members, seeking safety and political asylum.

e. The remaining Plaintiffs' stories echo those of their brethren. Loved ones were kidnapped and murdered in their home countries, and they arrived at the U.S.-Mexico border having survived violence and threats on their lives, seeking safety and political asylum.

5. Upon their admission to the United States, Plaintiffs were taken into custody and transported to Adelanto ICE Processing Center ("Adelanto").

6. Although Adelanto is a government facility for political asylum seekers and other immigrant detainees, and its inhabitants are overwhelmingly law-abiding foreign nationals seeking safety and refuge, its conditions mirror those of this country's most abusive prisons. It has gained notoriety as the "deadliest immigration detention center in the country" and it has been the subject of Congressional, State and Federal inquiries. Human Rights Watch has documented all manner of abuses there. In the first months of 2017 alone, several foreign nationals detained at Adelanto died as a result of the deplorable conditions they were subjected to at the facility.

7.      Upon their arrival at Adelanto, Plaintiffs were forced to endure those inhumane conditions.  The underwear they were provided was dirty and unwashed, having previously been worn by other detainees.  They were given only foul, nearly-inedible meals, and they did not have reliable access to clean, safe drinking water.  Their belongings were regularly thrown away.  They were mistreated, degraded, and humiliated by the staff.  Their communications with their families and their attorneys and advocates were severely limited.  And they were given impossibly high bond amounts – well beyond their meagre means.

8.      In an attempt to remedy these inhumane and unlawful conditions at Adelanto, Plaintiffs decided to undertake a peaceful hunger strike where they would present a handwritten list of their concerns to ICE officials.

9.      As detailed below, in response to this peaceful attempt to call attention to the facility's depraved and unlawful conditions, Defendants violently attacked, pepper sprayed, and beat Plaintiffs.  Defendants then placed Plaintiffs in segregation for ten days – completely isolated from the outside world – as punishment.

10.      Plaintiffs suffered, and continue to suffer, considerable damages as a result of Defendants' misconduct.  Plaintiffs bring this lawsuit to get justice for what happened to them, to expose the depraved conditions at Adelanto, and to hopefully prevent any other detainee at Adelanto from being subjected to the brutality they experienced.

FIRST AMENDED COMPLAINT

# PARTIES

**PLAINTIFFS:**

**Omar Arnoldo Rivera Martinez**

11.     Plaintiff OMAR ARNOLDO RIVERA MARTINEZ is a Salvadoran asylum seeker.  At all times relevant to this complaint, Mr. Rivera Martinez was detained at Adelanto.

12.     On June 12, 2017, Defendants brutally attacked Mr. Rivera Martinez and violated his rights under state and federal law.  GEO guards slammed Mr. Rivera Martinez's face against a wall and knocked out his dental crown and tooth, as well as a 14-tooth gold mouthpiece that lined his bottom row of teeth.  The guards also broke Mr. Rivera Martinez's nose.  After the attack he was left with a missing tooth, 30 separate scratches on his body, ranging in length from one to several inches, severe bruises, and a visibly fractured nose.  Five months after the attack, a doctor finally evaluated Mr. Rivera Martinez and concluded that he must undergo surgery for his severely fractured nose.  As of the filing of this complaint, Mr. Rivera Martinez has not been provided this necessary surgery.

13.     Defendants subjected Mr. Rivera Martinez to additional, unlawful punishment: after spending ten days in segregation alongside the other Plaintiffs, Defendants falsely labeled Mr. Rivera Martinez a leader that "incited a group protest."  They placed him in a red, high-custody uniform and sent him to a high-security ward that houses members of the very gangs that murdered his family members and caused him to flee his home country.  Mr. Rivera Martinez, fearing for his safety, immediately began begging to be transferred out of the ward, explaining that Defendants were placing him in physical danger.  Defendants ignored his pleas and left him there for one month before finally transferring him into protective custody.

FIRST AMENDED COMPLAINT

**Isaac Antonio Lopez Castillo**

14.     Plaintiff ISAAC ANTONIO LOPEZ CASTILLO is a Salvadoran asylum seeker.  At all times relevant to this complaint, Mr. Lopez Castillo was detained at Adelanto.  He is presently released on bond.

15.     On June 12, 2017, Defendants brutally attacked Mr. Lopez Castillo and violated his rights under state and federal law.  After he was pepper sprayed in the face, scalp, and groin at close range, Defendants slammed him against a wall, injured his face, and caused his lip to bleed.  Later, while still wearing pepper spray-drenched clothing, Defendants forced Mr. Lopez Castillo to stand in a scalding hot shower.  He sustained burns from the pepper spray and scalding hot water, as well as severe bruising around his body.  He suffered severe pain in his ribs and despite his requests, he never received medical attention, including x-rays.

**Josue Vladimir Cortez Diaz**

16.     Plaintiff JOSUE VLADIMIR CORTEZ DIAZ is a Salvadoran asylee. At all times relevant to this complaint, Mr. Cortez Diaz was detained at Adelanto. Mr. Cortez Diaz was granted asylum and is currently residing in Fillmore, California, where he works at a restaurant.

17.     On June 12, 2017, Defendants brutally attacked Mr. Cortez Diaz and violated his rights under state and federal law.  After he was pepper sprayed in the face, scalp, and groin at close range, Defendants threw Mr. Cortez Diaz on the ground while handcuffed, injuring his right hip.  Later, while still wearing pepper spray-drenched clothing, Defendants forced Mr. Cortez Diaz to stand in a scalding hot shower.  Mr. Cortez Diaz sustained burns from the pepper spray and scalding hot water, as well as severe bruising around his body.  Despite his numerous requests, Defendants never provided Mr. Cortez Diaz any medical attention.

FIRST AMENDED COMPLAINT

**Josue Mateo Lemus Campos**

18.     Plaintiff JOSUE MATEO LEMUS CAMPOS is a Salvadoran asylum seeker.  At all times relevant to this complaint, Mr. Lemus Campos was detained at Adelanto.  He is presently released on bond.

19.     On June 12, 2017, Defendants brutally attacked Mr. Lemus Campos and violated his rights under state and federal law.  After he was pepper sprayed in the face, scalp, and groin at close range, Defendants handcuffed him and continued to beat him about his body.  Later, while still wearing pepper spray-drenched clothing, Defendants forced Mr. Lemus Campos to stand in a scalding hot shower.  He sustained burns from the pepper spray and scalding hot water, as well as severe bruising around his body.  He also suffered severe shoulder pain.  Despite his numerous requests, Mr. Lemus Campos never received adequate medical attention for his pain and injuries.

**Marvin Josue Grande Rodriguez**

20.     Plaintiff MARVIN JOSUE GRANDE RODRIGUEZ is a Salvadoran asylum seeker.  At all times relevant to this complaint, Mr. Grande Rodriguez was detained at Adelanto.  He is presently released on bond.

21.     On June 12, 2017, Defendants brutally attacked Mr. Grande Rodriguez and violated his rights under state and federal law.  After dousing him in pepper spray, Defendants slammed him against a wall and injured his head.  When Defendants forced him to shower in scalding hot water while handcuffed and in pepper spray drenched clothing, he fainted in the shower and injured his head.  He sustained burns from the pepper spray and scalding hot water, as well as severe bruising around his body.

**Alexander Antonio Burgos Mejia**

22.     Plaintiff ALEXANDER ANTONIO BURGOS MEJIA is a Honduran asylum seeker.  At all times relevant to this complaint, Mr. Burgos Mejia was detained at Adelanto.  He is presently released on bond.

23.     On June 12, 2017, Defendants brutally attacked Mr. Burgos and violated his rights under state and federal law.  After dousing him in pepper spray, Defendants slammed him against a wall and injured his head.  He sustained burns from the pepper spray, as well as severe bruising around his body.

**Luis Peña Garcia**

24.     Plaintiff LUIS PEÑA GARCIA is a Salvadoran asylum seeker.  At all times relevant to this complaint, Mr. Peña Garcia was detained at Adelanto.  He is presently released on bond.

25.     On June 12, 2017, Defendants brutally attacked Mr. Peña Garcia and violated his rights under state and federal law.  After dousing him in pepper spray, Defendants slammed him against a wall and injured his head.  He sustained burns from the pepper spray, as well as severe bruising around his body.

**Julio Cesar Barahona Cornejo**

26.     Plaintiff JULIO CESAR BARAHONA CORNEJO is a Salvadoran asylum seeker.  At all times relevant to this complaint, Mr. Barahona Cornejo was detained at Adelanto.  He is presently released on bond.

27.     On June 12, 2017, Defendants brutally attacked Mr. Barahona Cornejo and violated his rights under state and federal law.  After dousing him in pepper spray, Defendants handcuffed and threw him on the ground, injuring his abdomen and knee on a nearby table.  Later, while still wearing pepper spray-drenched clothing, Defendants forced Mr. Barahona Cornejo to stand in a scalding hot shower.  He sustained burns from the pepper spray and scalding hot water, as well as severe bruising around his body.

**DEFENDANTS:**

28.     Defendant GEO Group, Inc. ("GEO") is a private company headquartered in Boca Raton, Florida which contracts with government entities to provide corrections officers and other detention-related services.  GEO contracted with the City of Adelanto to provide guards and security personnel at Adelanto

detention center.  The GEO Group and its officers and/or employees were acting at all times relevant to this complaint under color of state law as an agent of the City of Adelanto.  The contract with the City of Adelanto explicitly acknowledged the right of the City to inspect and monitor the work of the GEO Group and that the detainees would have all rights created by the United States and California Constitutions and under state law.

29.     At all times relevant to this complaint, Defendant City of Adelanto ("Adelanto") was a municipality duly organized under the laws of the State of California.  Liability under California law for Defendant Adelanto is based in whole or in part upon California Government Code §§ 815.2, 815.4 and 920; Penal Code §§ 149, 240, and/or 242; and/or Civil Code §§ 43, 51, 51.7, and/or 52.1.  Liability under federal law for all government-entity employees is based upon 42 U.S.C. § 1983.

30.     At all relevant times, employees of the GEO Group, Inc. ("GEO") were subcontractors with the City of Adelanto to provide security at Adelanto detention center.  The City of Adelanto was the "service provider" of detention services for the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE") and was paid with federal funds to provide security and other services at the detention center.  The City of Adelanto contracted with GEO Group, Inc. to be its agent at Adelanto detention center, while retaining the right of inspection and control at the facility under its contract with GEO.

31.     Defendant Duran was at all times relevant to this complaint an employee and agent of the GEO Group and is responsible for the acts and omissions complained of herein.  Defendant Duran, a Lieutenant who held a supervisory role at Adelanto detention center, is sued in her individual and supervisory capacities.

32.     Defendant Diaz was at all times relevant to this complaint an employee and agent of the GEO Group and is responsible for the acts and

omissions complained of herein.  Defendant Diaz, a Lieutenant who held a supervisory role at Adelanto detention center, is sued in her individual and supervisory capacities.

33.   Defendant Campos was at all times relevant to this complaint an employee and agent of the GEO Group and is responsible for the acts and omissions complained of herein.  Defendant Campos, a Sergeant who held a supervisory role at Adelanto detention center, is sued in his individual and supervisory capacities.

34.   Defendant Jones was at all times relevant to this complaint an employee and agent of the GEO Group and is responsible for the acts and omissions complained of herein.  Defendant Jones, a Licensed Vocational Nurse at Adelanto detention center, is sued in her individual and supervisory capacities.

35.   Defendant United States of America is sued under 28 U.S.C. § 2674 for the tortious acts of its agents acting under color of law and authority as officers with the U.S. Department of Homeland Security, Immigration and Customs Enforcement. Immigration and Customs Enforcement officers are employees of the United States within the meaning of 28 U.S.C. § 2674.

36.   Defendant United States of America has waived sovereign immunity as to all claims brought pursuant to the Federal Tort Claims Act.  Defendant United States of America is subject to answer for wrongs committed in this judicial district.

37.   The identities and capacities of Defendants DOE 1 through 6 are presently unknown to plaintiffs, and on this basis, Plaintiffs sue these Defendants by fictitious names.  Plaintiffs will amend the Complaint to substitute the true names and capacities of the DOE Defendants when ascertained. Plaintiffs are informed, believe, and thereon allege that DOE 1 through 6 are, and were at all times relevant herein, employees of the GEO Group, and are responsible for the acts and omissions complained of herein. These employees were staffing the

Adelanto Detention Center pursuant to the contract between Defendant City of Adelanto and GEO Group and were agents of Defendant City of Adelanto. The City of Adelanto is vicariously liable for their actions under California Government Code §§ 815.2 and 815.4.

38.   Plaintiffs are informed, believe, and thereon allege that DOES 7 through 10 are, and were at all times relevant herein, employees and/or agents of the federal government, specifically of the U.S. Department of Homeland Security, Immigration and Customs Enforcement, and are responsible for the acts and omissions complained of herein. Defendants DOES 7 through 10 are sued in their individual capacities.

## FACTUAL ALLEGATIONS

39.   On Monday, June 12, 2017, Plaintiffs began a peaceful hunger strike to call attention to the conditions of confinement at Adelanto.

40.   At breakfast that morning, the eight men sat at two tables in the "East Alpha" facility and presented a four-page, handwritten letter that detailed their concerns regarding the treatment of detainees at Adelanto.

41.   Their letter explained that the hunger strike would remain peaceful, and it asked ICE to remedy several of the inhumane conditions they were being subjected to.

42.   As Plaintiffs are monolingual Spanish speakers, another detainee translated for Plaintiffs and informed the GEO guards present that Plaintiffs wanted to speak with an ICE agent who spoke Spanish.

43.   GEO guards did not inform ICE of the announced hunger strike. Instead, GEO guards ordered all detainees back to their beds for morning count.

44.   Plaintiffs remained seated, calmly linked arms, and respectfully reiterated their request to speak with ICE officials.

45.   GEO guards became increasingly upset and called for backup. Approximately ten additional GEO guards arrived.

46.     Shortly thereafter, Defendant Diaz arrived wearing a white-shirt uniform, indicating that she was a supervisor.  She began yelling at the detainees in English and displayed a large canister of pepper spray, slamming it on the table repeatedly and continuing to yell incomprehensibly at Plaintiffs in English. Defendant Diaz then emptied the entire canister of pepper spray on Plaintiffs, spraying them at close range and directly in their faces, mouths, scalps, and groins.

47.     While Plaintiffs screamed from the pain, the GEO supervisor sprayed pepper spray directly into their noses, mouths, and eyes at close range.  When Plaintiffs lowered their heads onto the table, trying to shield their faces, she sprayed their scalps.

48.     After Plaintiffs were drenched in pepper spray, other GEO guards (Does 1 through 5) began pulling Plaintiffs up from the tables.  They hit Plaintiffs in their rib cages, dug their nails behind Plaintiffs' ears and down Plaintiffs' arms, shoved their knuckles into Plaintiffs' necks and backs, and twisted Plaintiffs' arms.

49.     Soon after a second supervisor, Defendant Campos, arrived wearing a white-shirt uniform, indicating that he was a supervisor.  Similar to Defendant Diaz, Defendant Campos began yelling in English while displaying a large canister of pepper spray.  Defendant Campos then emptied the entire canister of pepper spray on the Plaintiffs, spraying them at close range and directly in their faces, mouths, and scalps.

50.     In total, Defendants Diaz and Campos, GEO supervisors, emptied two cannisters of pepper spray on Plaintiffs.

51.     The guards then handcuffed Plaintiffs and continued to brutally assault them, even though Plaintiffs were not in any way resisting.  GEO guards slammed Plaintiffs against concrete walls and onto the floors, ultimately dragging them out of the East Alpha facility in handcuffs.

52.     GEO guards slammed one Plaintiff's face against a concrete wall and knocked out his dental crown and tooth, as well as a 14-tooth gold mouthpiece that lined his bottom row of teeth.  In doing so, the guards also broke Plaintiff's nose.

53.     Plaintiffs, drenched in pepper spray and shackled, were taken out to the yard, some carried by hands and feet, and thrown on the ground.  So much pepper spray was used that the fumes overwhelmed the building, requiring the evacuation of the entire East Alpha unit.

54.     Plaintiffs were left out in the yard for approximately 20-30 minutes while drenched in pepper spray.  They were then taken to a small holding cell in the "West" building where the men were isolated for approximately one hour.  The pepper spray fumes emanated from their clothes and bodies and overwhelmed the small space in which they were confined, suffocating Plaintiffs.  Plaintiffs cried out in pain but were met only with laughter by the GEO guards.

55.     While in this holding cell, nurses, Defendant Sarah Jones and Doe 6, arrived.  The pepper spray fumes were so intolerable that Defendant Jones demanded that the room be ventilated before she approached Plaintiffs.  Despite Plaintiffs' pleas for medical treatment and attention, the nurse only checked their vitals before leaving the cell.

56.     At the same time, an ICE agent (Doe 7) arrived and asked each person how they were injured and what had occurred.  The ICE agent saw that the handcuffs on Plaintiffs were extremely tight and causing their wrists to swell.  He ordered that GEO guards loosen the handcuffs and left the room.

57.     After approximately one and one-half hours passed, five Plaintiffs were forced to shower in scalding hot water while still handcuffed and fully clothed in their pepper-spray drenched clothing.  The hot water exacerbated the pepper spray burns and increased the fumes.  Plaintiffs were screaming out and twisting in pain, hands still cuffed behind their back.  The three other Plaintiffs

14

FIRST AMENDED COMPLAINT

heard their friends screaming in pain and refused to go into the shower.  At least one Plaintiff fainted in the shower as a result of the excruciating pain.

58.     Plaintiffs were then taken back to the holding cell where they were not permitted to remove their pepper-sprayed clothing.  The pain was so unbearable that Plaintiffs rolled on the ground to mitigate the burning sensation and begged for something to soothe the pain.  Neither GEO nor ICE provided medical attention.

59.     After nearly one hour, Plaintiffs were finally given dry uniforms. Although Plaintiffs were originally in blue (low custody) uniforms, Plaintiffs were required to wear orange (medium custody) uniforms, elevating them to a higher security level as punishment for participating in the hunger strike.  They were immediately placed in segregation and separated into pairs.

60.     Plaintiffs were told they would remain in segregation for 10 days as punishment for their participation in a hunger strike.  The segregations were approved by Defendant Duran.

61.     While in segregation, Plaintiffs were forced to spend 23 hours per day in their cells.  Their showers were limited, their phone calls were restricted, and they were denied access to the law library or commissary.

62.     Plaintiffs made numerous requests for medical care to treat their injuries.  For the entirety of their time in segregation, they repeatedly asked for burn cream, to have their scratches and wounds cleaned, and for x-rays of their more severe injuries.  All of their requests were ignored.

63.     While in segregation, Plaintiffs continued their peaceful hunger strike and maintained that they would not eat until they spoke with ICE officials.

64.     On the second day of the hunger strike, GEO supervisor Lieutenant Duran went to Plaintiffs' segregation cells to interview them about what had taken place.  Defendant Duran told Plaintiffs that the GEO guards did not respond to the announced hunger strike appropriately, but that Plaintiffs would nevertheless remain holed up in segregation for their decision to wage a hunger strike.

65.     Before Plaintiffs' hunger strike reached the 72-hour mark, Plaintiffs were placed in a room where they met with approximately five ICE agents (Does 8-10), some of whom spoke Spanish.  These agents threatened Plaintiffs with continued isolation in segregation and summary deportation if Plaintiffs did not end their hunger strike.  ICE agents also threatened to inform Plaintiffs' immigration judges of the hunger strike, with the intent to adversely affect their immigration cases.

66.     Plaintiffs agreed to end the hunger strike.  The punishment, however, did not end.  Defendants continued to unlawfully hold them in segregation.

67.     On June 22, 2017, an immigration lawyer representing two of the Plaintiffs lodged a complaint against GEO and ICE with the U.S. Department of Homeland Security's Office for Civil Rights and Civil Liberties compliance branch.  The lawyer recounted the incident of violence against the hunger strikers and demanded that the matter be investigated and immediate action be taken to protect her clients and the rest of the hunger strikers.  The complaint was filed on behalf of all of the hunger strikers.

68.     On or about June 30, 2017, following the civil rights complaint, officials from the Adelanto facility placed a block on telephone numbers that Plaintiffs regularly contacted.  This restricted Plaintiffs from communicating with their immigration attorneys, as well as various other advocacy groups that were helping raise bond money and gathering documentation to support Plaintiffs' asylum claims.  On information and belief, approximately 20 different phone numbers associated with Plaintiffs were blocked.

## ADMINISTRATIVE CLAIM UNDER FEDERAL TORT CLAIM ACT

69.     On January 10, 2018, Plaintiffs presented an administrative claim for money damages to the United States Department of Homeland Security ("DHS") concerning the incident that is the basis of this complaint.  Six months have lapsed and Plaintiffs have not received a denial of their administrative claim.  Thus, by

operation of law, the claim is now deemed to have been denied.  Having exhausted all administrative remedies, Plaintiffs commence the instant action.

## EXHAUSTION OF ADMINSTRATIVE REMEDIES

70.    On November 16, 2017, Plaintiffs timely filed state tort claims with the Defendant City of Adelanto pursuant to Cal. Gov't Code § 910 *et seq*. On November 29, 2017, Defendant City of Adelanto denied these claims.

## *MONELL* ALLEGATIONS

71.    Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), Defendant City of Adelanto is liable for all injuries sustained by Plaintiffs as set forth herein. Adelanto bears liability because its policies, practices and/or customs were a cause of Plaintiffs' injuries. Adelanto and its officials maintained or permitted one or more of the following policies, customs or practices:

a. Failure to provide adequate training and supervision to guards and security personnel with respect to constitutional limits on the use of excessive and deadly force;

b. Failure to provide adequate training and supervision to guards and security personnel with respect to constitutional limits on use of force, search, and detention; particularly, but not exclusively when interacting with individuals exercising their First Amendment rights;

c. Failure to adequately discipline or retrain officers involved in misconduct;

d. Selection, retention, and assignation of officers with demonstrable propensities for excessive force, violence, dishonesty, and other misconduct;

e. Condonation and encouragement of officers in the belief that they can violate the rights of persons, such as Plaintiffs, with impunity, and that such conduct will not adversely affect their opportunities for promotion

FIRST AMENDED COMPLAINT

and other employment benefits.

72.     The City of Adelanto was obligated under an Intergovernmental Services Agreement with ICE to ensure that security posts and positions were staffed with "qualified personnel" and to ensure that it was respecting the constitutional rights of the detainees.

73.     The City of Adelanto at the highest policy levels chose to subcontract its activities to GEO Group and entered into a contract requiring GEO to abide by the Intergovernmental Services Agreement. The contract itself was signed by the City Manager/Executive Director.

74.     The City of Adelanto maintained a right of inspection under the GEO contract such that City inspectors could enter the facility to correct any deficiencies.

## FIRST CAUSE OF ACTION

### Battery

### (Against All Defendants Except Defendants Duran and Jones)

75.     Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

76.     Without consent or legal privilege, GEO Group employees intentionally assaulted and physically battered Plaintiffs with the intent to harm Plaintiffs. Such conduct was extreme and outrageous and would be deemed highly offensive to a reasonable person.

77.     As a result of the aforementioned conduct, Plaintiffs were physically and psychologically damaged.

78.     Defendant GEO Group's guards were at all times acting as employees of GEO Group and within the scope of their employment when they harmed Plaintiffs. Defendant GEO Group is responsible for the wrongful conduct of its employees under the law of vicarious liability, including the doctrine of respondeat superior.

79.     The GEO Group and its officers and/or employees were acting at all relevant times under color of state law as an agent of the City of Adelanto. Defendant Adelanto is responsible for the wrongful conduct of its subcontractor GEO Group's employees under the law of vicarious liability, including the doctrine of respondeat superior.

80.     Defendant GEO Group's guards acted with malice and oppression and with a conscious disregard of Plaintiffs' rights, making Defendant GEO, Defendants Diaz and Campos, and Defendants DOE 1-6 liable for punitive damages under California Civil Code § 3294.

## SECOND CAUSE OF ACTION
### Assault
### (Against All Defendants Except the United States and Defendants Duran and Jones)

81.      Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

82.     Without consent or legal privilege, GEO group employees created a reasonable apprehension in Plaintiffs of immediate harmful or offensive contact.

83.     As a result of the aforementioned conduct, Plaintiffs were physically and psychologically damaged.

84.     Defendant GEO Group's guards were at all times acting as employees of GEO Group and within the scope of their employment when they harmed Plaintiffs. Defendant GEO Group is responsible for the wrongful conduct of its employees under the law of vicarious liability, including the doctrine of respondeat superior.

85.     The GEO Group and its officers and/or employees were acting at all relevant times under color of state law as an agent of the City of Adelanto. Defendant Adelanto is responsible for the wrongful conduct of its subcontractor

FIRST AMENDED COMPLAINT

GEO Group's employees under the law of vicarious liability, including the doctrine of respondeat superior.

86.    Defendant GEO Group's guards acted with malice and oppression and with a conscious disregard of Plaintiffs' rights, making Defendant GEO, Defendants Diaz and Campos, and Defendants DOE 1-6 liable for punitive damages under California Civil Code § 3294.

### THIRD CAUSE OF ACTION
**Negligent Hiring, Training, and Supervision**
**(Against Defendants GEO, Adelanto, & United States)**

87.    Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

88.    Defendants GEO Group and United States negligently hired, retained, or supervised their guards and ICE officers at the Adelanto facility.

89.    Defendants GEO Group's guards and DOES 7-10 intended to cause, and did cause, Plaintiffs to experience severe physical injury and emotional distress and they each acted with reckless disregard of the probability that Plaintiffs would suffer such injuries.

90.    The conduct of Defendants GEO Group's guards and DOES 7-10 was a substantial factor in causing Plaintiff's severe distress.

91.    Defendant GEO Group's guards were at all times acting as employees of GEO Group and within the scope of their employment when they harmed Plaintiffs. Defendant GEO Group is responsible for the wrongful conduct of its employees under the law of vicarious liability, including the doctrine of respondeat superior.

92.    Defendant DOES 7-10 were at all times acting as employees of the United States Department of Homeland Security, Immigration and Customs Enforcement and within the scope of their employment when they harmed Plaintiffs.  Defendant United States is responsible for the wrongful conduct of its

employees under the Federal Torts Claim Act.  Under the Federal Torts Claim Act, the property party to be named an action is the United States as suits against federal agencies (i.e. DHS and ICE) are barred.

93.    The GEO Group and its officers and/or employees were acting at all relevant times under color of state law as an agent of the City of Adelanto. Defendant Adelanto is responsible for the wrongful conduct of its subcontractor GEO Group's employees under the law of vicarious liability, including the doctrine of respondeat superior.

94.    Defendant GEO Group's guards acted with malice and oppression and with a conscious disregard of Plaintiffs' rights, making Defendant GEO liable for punitive damages under California Civil Code § 3294.

## FOURTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (Against All Defendants)

95.    Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

96.    Defendant GEO Group's guards and DOES 7-10 engaged in extreme and outrageous conduct that transcended the bounds of human decency.

97.    Defendants GEO Group's guards and DOES 7-10 intended to cause, and did cause, Plaintiffs to experience severe physical injury and emotional distress and they each acted with reckless disregard of the probability that Plaintiffs would suffer such injuries.

98.    Defendants GEO Group's guards' and DOES 7-10 conduct was a substantial factor in causing Plaintiffs' severe distress.

99.    Defendant GEO Group's guards were at all times acting as employees of GEO Group and within the scope of their employment when they harmed Plaintiffs. Defendant GEO Group is responsible for the wrongful conduct of its

FIRST AMENDED COMPLAINT

1 | employees under the law of vicarious liability, including the doctrine of respondeat
2 | superior.

3 |    100.   Defendant DOES 7-10 were at all times acting as employees of the
4 | United States Department of Homeland Security, Immigration and Customs
5 | Enforcement and within the scope of their employment when they harmed
6 | Plaintiffs.  Defendant United States is responsible for the wrongful conduct of its
7 | employees under the Federal Torts Claim Act.

8 |    101.   Plaintiffs reallege and incorporate the allegations set forth in the
9 | preceding paragraphs as though fully set forth herein.

10 |    102.   The GEO Group and its officers and/or employees were acting at all
11 | relevant times under color of state law as an agent of the City of Adelanto.
12 | Defendant Adelanto is responsible for the wrongful conduct of its subcontractor
13 | GEO Group's employees under the law of vicarious liability, including the
14 | doctrine of respondeat superior.

15 |    103.   Defendant GEO Group's guards acted with malice and oppression and
16 | with a conscious disregard of Plaintiffs' rights, making Defendant GEO,
17 | Defendants Duran, Diaz, Campos, and Jones, and Defendants DOES 1-6 liable for
18 | punitive damages under California Civil Code § 3294.

**FIFTH CAUSE OF ACTION**
**First Amendment (42 U.S.C. §1983; *Bivens* Claim)**
**Retaliation Against Protected Conduct; Ca. Const. Art. I § 2**
**(Against All Defendants Except the United States)**

   104.   Plaintiffs reallege and incorporate the allegations set forth in the
preceding paragraphs as though fully set forth herein.

   105.   This cause of action is brought under the authority of *Bivens v. Six
Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971),
and upon the First Amendment to the United States Constitution and the California
Constitution against Defendant DOES 7-10, in their individual capacities.

106.   Defendants' actions violated Plaintiffs' clearly established rights to freedom of expression under the First Amendment to the United State Constitution by retaliating against them for exercising their constitutional right to petition for redress of grievances.

107.   In response to Plaintiffs filing grievances related to GEO guards' assault, Defendants retaliated against Plaintiffs by blocking or otherwise restricting telephone numbers that Plaintiffs regularly contacted, restricting Plaintiffs from communicating with their immigration attorneys, as well as various other advocacy groups that help raise bond money and gather documentation to support Plaintiffs' asylum claims.

108.   As a result of Defendants' unlawful conduct, Plaintiffs suffered severe emotional distress.

109.   The GEO Group and its officers and/or employees were acting at all relevant times under color of state law as an agent of the City of Adelanto.  As set forth above in paragraph 71, the Geo Group's policies, customs and practices, including its failure to discipline or retrain officers and in particular its failure to train officers regarding detainees' First Amendment rights, led to the constitutional violations at issue. Moreover, the City of Adelanto's policymakers chose to subcontract the detention facility to GEO Group and failed to inspect the facility or monitor the amount of training given to the GEO Group's guards.

110.   Defendant DOES 7-10 are employees and/or agents of the federal government, specifically of the U.S. Department of Homeland Security, Immigration and Customs Enforcement, and were acting at all relevant times under color of federal law as an agent of the federal government.

111.   Defendants knew or should have known that retaliating against Plaintiffs for filing grievances was a clearly established violation of the First Amendment at the time of the retaliation.

112.    Defendant GEO Group's guards acted with malice and oppression and with a conscious disregard of Plaintiffs' rights, making Defendant GEO, Defendants Duran, Diaz, Campos, Jones, and Defendants DOE 1-6 liable for punitive damages under California Civil Code § 3294.

## SIXTH CAUSE OF ACTION

**Fourth and Fourteenth Amendments (42 U.S.C. § 1983; *Bivens* Claims)**

**Excessive Force**

**(Against All Defendants Except the United States and Defendant Duran)**

113.    Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

114.    This cause of action is brought under the authority of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and upon the Fourth Amendment to the United States Constitution against Defendant DOE 7-10, in their individual capacities.

115.    Defendants violated Plaintiffs' rights to be free from excessive or arbitrary force, and segregated detention without reasonable or probable cause under the Fourth Amendment to the United States Constitution. Defendants assaulted Plaintiffs and placed them in segregation without legal authority.

116.    As a result of Defendants' unlawful conduct, Plaintiffs suffered severe physical and emotional distress.

117.    The GEO Group and its officers and/or employees were acting at all relevant times under color of state law as an agent of the City of Adelanto.  As set forth above in paragraph 71, the Geo Group's policies, customs and practices, including its failure to discipline or retrain officers led to the constitutional violations at issue. Moreover, the City of Adelanto's policymakers chose to subcontract the detention facility to GEO Group and failed to inspect the facility or monitor the amount of training given to the GEO Group's guards.

118.   DOES 7-10 are employees and/or agents of the federal government, specifically of the U.S. Department of Homeland Security, Immigration and Customs Enforcement, and were acting at all relevant times under color of federal law as an agent of the federal government.

119.   Defendants knew or should have known that using excessive force against Plaintiffs and unlawfully placing them in segregation for filing grievances was a clearly established violation of the Fourth Amendment at the time of the incident.

120.   Defendant GEO Group's guards acted with malice and oppression and with a conscious disregard of Plaintiffs' rights, making Defendant GEO, Defendants Diaz, Campos, and Jones, and Defendants DOE 1-6 liable for punitive damages under California Civil Code § 3294.

## SEVENTH CAUSE OF ACTION
### Fifth and Fourteenth Amendments (42 U.S.C. § 1983; *Bivens* Claims)
### Right to Due Process of Law; Ca. Const. Art. I § 7
### (Against All Defendants Except the United States)

121.   Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

122.   This cause of action is brought under the authority of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and upon the Fifth Amendment to the United States Constitution and the California Constitution against Defendant DOES 7-10, in their individual capacities.

123.   Defendants' conduct deprived Plaintiffs of liberty without due process of law under the Fifth and Fourteenth Amendments to the United States Constitution. Based on Plaintiffs' grievances related to the conditions at the Adelanto facility, Defendants assaulted Plaintiffs, placed them in segregation, blocked or restricted their access to telephones, and failed to provide adequate medical care all without legal authority.

124.   As a result of Defendants' unlawful conduct, Plaintiffs suffered severe physical injury and emotional distress.

125.   The GEO Group and its officers and/or employees were acting at all relevant times under color of state law as an agent of the City of Adelanto.  As set forth above in paragraph 71, the Geo Group's policies, customs and practices, including its failure to discipline or retrain officers led to the constitutional violations at issue. Moreover, the City of Adelanto's policymakers chose to subcontract the detention facility to GEO Group and failed to inspect the facility or monitor the amount of training given to the GEO Group's guards.

126.   DOES 7-10 are employees and/or agents of the federal government, specifically of the U.S. Department of Homeland Security, Immigration and Customs Enforcement, and were acting at all relevant times under color of federal law as an agent of the federal government.

127.   Defendants knew or should have known that assaulting plaintiffs, placing them in segregation, and blocking or restricting their access to telephones in response to Plaintiffs' grievances was a clearly established violation of the Fourth Amendment at the time of the incident.

128.   Defendant GEO Group's guards and employees acted with malice and oppression and with a conscious disregard of Plaintiffs' rights, making Defendant GEO, Defendants Duran, Defendants Diaz, Campos, and Jones, and Defendants DOE 1-6 liable for punitive damages under California Civil Code § 3294.

## EIGHTH CAUSE OF ACTION
### Bane Act
### Cal. Civ. Code § 52.1
### (Against All Defendants)

129.   Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

130.   Defendants, by their conduct, interfered by threats, intimidation, or coercion, or attempted to interfere by threats, intimidation, or coercion, with the exercise or enjoyment of Plaintiffs' rights as secured by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution or laws of the United States.

131.   There was no lawful justification for Defendants to threaten, intimidate, or coerce the Plaintiffs, or to attempt to use threats, intimidation, or coercion to interfere with Plaintiffs' rights.

132.   In particular, Defendant GEO Group's guards reacted with violence and force and threatened additional punishment through segregation and isolation, and failed to provide medical treatment, in order to coerce Plaintiffs to stop their protected First Amendment activity.

133.   Similarly, Doe Defendants from ICE instructed GEO Group guards to hold Plaintiffs in segregation in order to coerce Plaintiffs to stop their protected First Amendment activity. Doe Defendants also threatened Plaintiffs with increased punishment, including deportation.

134.   As a result of Defendants' unlawful conduct, Plaintiffs suffered severe physical injury and emotional distress.

135.   Defendant GEO Group's guards and employees acted with malice and oppression and with a conscious disregard of Plaintiffs' rights, making Defendant GEO, Defendants Duran, Diaz, Campos, and Jones and Defendants DOE 1-6 liable for punitive damages under California Civil Code § 3294.

### NINTH CAUSE OF ACTION
### Conspiracy to Interfere with Civil Rights
### 42 U.S.C. § 1985(3)
### (Against All Defendants Except the United States)

136.   Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

137.   Defendants conspired and agreed to deprive Plaintiffs of the equal protection of the laws and of equal privileges and immunities of the laws of the United States because of Plaintiffs' exercise of their Constitutional rights.

138.   As a result of Defendants' unlawful conduct, Plaintiffs suffered severe damages, including physical injury and emotional distress.

139.   Defendant GEO Group's guards and employees acted with malice and oppression and with a conscious disregard of Plaintiffs' rights, making Defendant GEO, Defendants Duran, Diaz, Campos, and Jones, and Defendants DOEs 1-6 liable for punitive damages under California Civil Code § 3294.

140.   The GEO Group and its officers and/or employees were acting at all relevant times under color of state law as an agent of the City of Adelanto.  As set forth above in paragraph 71, the Geo Group's policies, customs and practices, including its failure to discipline or retrain officers led to the incident at issue. Moreover, the City of Adelanto's policymakers chose to subcontract the detention facility to GEO Group and failed to inspect the facility or monitor the amount of training given to the GEO Group's guards.

### TENTH CAUSE OF ACTION
### Negligence and Failure to Provide Medical Care
### (Against All Defendants)

141.   Defendants owed a duty of care toward Plaintiffs and were required to use reasonable diligence to ensure Plaintiffs' safety while in their custody and control.  Defendants' actions and omissions were negligent and reckless, including but not limited to:

a.  The failure to properly assess the need to use force against Plaintiffs; and

b.  The failure to provide timely medical assistance to Plaintiffs, despite the Defendants' knowledge that Plaintiffs needed immediate medical care, as specified in Government Code § 845.6 and the 2011 ICE Operations Manual; as there is a

special relationship between Defendants GEO Group, City of Adelanto, and the United States and the inmates within their custody and control.

142.   As a result of Defendants' unlawful conduct, Plaintiffs suffered severe damages, including physical injury and emotional distress.

143.   Defendant DOES 7-10 were at all times acting as employees of the United States Department of Homeland Security, Immigration and Customs Enforcement and within the scope of their employment when they harmed Plaintiffs.  Defendant United States is responsible for the wrongful conduct of its employees under the Federal Torts Claim Act.  Under the Federal Torts Claim Act, the property party to be named an action is the United States as suits against federal agencies (i.e. DHS and ICE) are barred.

144.   Defendant GEO Group's guards acted with malice and oppression and with a conscious disregard of Plaintiffs' rights, making Defendant GEO, Defendants Duran, Diaz, Campos, and Jones, and Defendants DOE 1-6 liable for punitive damages under California Civil Code § 3294.

## PRAYER FOR RELIEF

Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

**WHEREFORE**, Plaintiffs pray as follows:

1.   For a declaratory judgment that Defendants' policies, practices and conduct as alleged herein violate Plaintiffs' rights under the United States Constitution, the California Constitution, and the laws of California;

2.   For general and compensatory damages to Plaintiffs in an amount to be determined according to proof;

FIRST AMENDED COMPLAINT

3.      For an award of punitive and exemplary damages against Defendant GEO Group, Defendants Duran, Diaz, Campos, and Jones, and Defendants DOE 1-6 according to proof;

4.      For an award of statutory damages and penalties pursuant to California Civil Code section 52.1(h) and California Code of Civil Procedure section 1021.5;

5.      For costs of suit and attorney fees as provided by law;

6.      For such other relief as the Court deems just and proper.


Respectfully submitted,

LAW OFFICE OF RACHEL STEINBACK
LAW OFFICE OF CAROL A. SOBEL
SCHONBRUN, SEPLOW, HARRIS & HOFFMAN LLP
LAW OFFICE OF MATTHEW STRUGAR
LAW OFFICE OF COLLEEN FLYNN

By:  /s/ Rachel Steinback
*Attorneys for Plaintiffs*

FIRST AMENDED COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby respectfully demand that a trial by jury be conducted with respect to all issues and claims triable by a jury.

Dated: August 31, 2018

LAW OFFICE OF RACHEL STEINBACK
LAW OFFICE OF CAROL A. SOBEL
SCHONBRUN, SEPLOW, HARRIS & HOFFMAN LLP
LAW OFFICE OF MATTHEW STRUGAR
LAW OFFICE OF COLLEEN FLYNN

By: /s/ Rachel Steinback
*Attorneys for Plaintiffs*

FIRST AMENDED COMPLAINT