Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
Carmen M. Aguado (SBN 291941)
E-mail: caguado@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600    Fax: 213.236.2700

Attorneys for Defendants
THE GEO GROUP, INC., DIAZ, CAMPOS and
CITY OF ADELANTO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR ARNOLDO RIVERA MARTINEZ; ISAAC ANTONIO LOPEZ CASTILLO; JOSUE VLADIMIR CORTEZ DIAZ; JOSUE MATEO LEMUS CAMPOS; MARVIN JOSUE GRANDE RODRIGUEZ; ALEXANDER ANTONIO BURGOS MEJIA; LUIS PEÑA GARCIA; JULIO CESAR BARAHONA CORNEJO, as individuals, <br><br> Plaintiffs, <br><br> v. <br><br> THE GEO GROUP, Inc., a Florida corporation; the CITY OF ADELANTO, a municipal entity; GEO LIEUTENANT DURAN, sued in her individual capacity; GEO LIEUTENANT DIAZ, sued in her individual capacity;  GEO SERGEANT CAMPOS, sued in his individual capacity; SARAH JONES, sued in her individual capacity; THE UNITED STATES OF AMERICA; and DOES 1-10, individuals, <br><br> Defendants. | Case No. 5:18-cv-01125-SP <br><br> **DEFENDANTS DIAZ AND CAMPOS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> *[Statement of Uncontroverted Material Facts; Appendix of Exhibits; and [Proposed] Order Filed Concurrently]* <br><br> Hearing Date: December 17, 2019 <br> Time: 10:00 a.m. <br> Courtroom: 3 <br><br> Magistrate Judge: Honorable Sheri Pym |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 1 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1    TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR

2    ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE that on December 17, 2019, at 10:00 a.m. in

4    Courtroom 3 of the above-entitled Court, located at George E. Brown, Jr. Federal

5    Building and United States Courthouse, 3470 Twelfth Street in Riverside,

6    California, Defendants Campos and Diaz (collectively, "Defendants")[1] will and

7    hereby do move this Court, in accordance with Federal Rules of  Civil Procedure,

8    Rule 56, for an order granting summary judgment, or in the alternative, summary

9    adjudication, in their favor and against Plaintiffs Omar Arnoldo Rivera Martinez,

10   Isaac Antonio Lopez Castillo, Josue Vladimir Cortez Diaz, Josue Mateo Lemus

11   Campos, Marvin Josue Grande Rodriguez, Alexander Antonio Burgos Mejia, Luis

12   Peña Garcia, and Julio Cesar Barahona Cornejo (collectively, "Plaintiffs") for the

13   following reasons:

14        1.      Plaintiffs cannot bring Section 1983 claims against Defendants

15   Campos and Diaz and their only remedies against Defendants Campos and Diaz are

16   state law claims. *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1019 (9th Cir.

17   1999); *Minneci v. Pollard*, 565 U.S. 118, 131 (2012).

18        2.      The undisputed evidence shows Defendants Campos and Diaz did not

19   violate Plaintiffs' constitutional rights (claims five, six, and seven).

20        3.      The undisputed evidence shows Defendants Campos and Diaz are not

21   liable for the alleged constitutional violations of their subordinates because they did

22   not direct the alleged violations, or know of the alleged violations and fail to act to

23   prevent them (claims five, six, and seven).

24        4.      The undisputed evidence shows Defendants Campos and Diaz did not

25   violate Plaintiffs' rights under state law (claims one, two, four, eight and ten).

26   ///

27

28

---

[1] Co-defendants The Geo Group, Inc. and City of Adelanto are concurrently filing a separate Motion for Summary Judgment.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 2 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

5.      The undisputed evidence shows Defendants Campos and Diaz are not liable for the conduct of their subordinates because they did not provide substantial assistance or encouragement to their subordinates to engage in actions that would violate Plaintiffs' rights under state law (claims one, two, four, eight and ten).

This Motion will be based upon this Notice, the attached Memorandum of Points and Authorities, the Separate Statement of Uncontroverted Facts, the Request for Judicial Notice, Appendix of Evidence with Declarations and the Exhibits thereto, the papers and pleadings on file in this matter, and on such further oral or written argument as the Court may consider at or prior to the hearing on this matter.

This Motion is made after the Parties attempted to informally resolve the issues presented herein, in compliance with Local Rule 7-3. After meeting and conferring regarding the substance of this Motion, the Parties were unable to reach an agreement as to all of the claims against Defendants prior to filing the instant motion. (Decl. of Carmen M. Aguado ("Aguado Decl.") ¶ 3.)

Dated:  November 12, 2019          BURKE, WILLIAMS & SORENSEN, LLP


By: /s/ Carmen M. Aguado
        Susan E. Coleman
        Carmen M. Aguado

Attorneys for Defendants
THE GEO GROUP, INC., DIAZ,
CAMPOS, and CITY OF ADELANTO

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4852-9661-7364 v4
05788-0035

- 3 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................... 1

II. STATEMENT OF FACTS ............................................................ 2

    A.  Adelanto Detention Facility ................................................ 2

    B.  Plaintiffs Knew They Were Required To Follow The Rules .............. 2

    C.  Plaintiffs Decided to Engage In A Group Demonstration ................... 2

    D.  Plaintiffs Martinez And Rodriguez Were Escorted Out. ...................... 3

    E.  Diaz Deployed OC Spray ..................................................... 5

    F.  Sgt. Campos Arrived To Assist .............................................. 5

    G.  Sgt. Campos Deployed Two Short Bursts Of OC Spray ...................... 6

    H.  Plaintiffs Were Decontaminated And Provided Medical Care ............ 8

    I.  Plaintiffs Were Placed In Segregation For Rule Violation .................. 8

    J.  The Evidence Demonstrates That Plaintiffs Did Not Have Their Calls Restricted For Filing A Grievance ................................ 8

    K.  The After Incident Review Confirmed That The Force Was Reasonable ............................................................... 9

III. STANDARD FOR SUMMARY JUDGMENT ........................................... 9

IV. PLAINTIFFS CANNOT BRING SECTION 1983 CLAIMS AGAINST DEFENDANTS ........................................................... 9

V.  IF PLAINTIFFS CAN BRING SECTION 1983 CLAIMS, THEIR SECTION 1983 CLAIMS WILL NEVERTHELESS FAIL. .................... 10

    A.  Plaintiffs' First Amendment Claim For Retaliation Under Section 1983 Fails Against Defendants Campos and Diaz [Fifth Claim] ........................................................... 11

    B.  Plaintiffs' Sixth Claim For Excessive Force Fails ....................... 13

        1.  The Fourteenth Amendment governs Plaintiffs' claim ........... 13

        2.  The use of OC spray was objectively reasonable. .................... 14

        3.  Defendant Diaz's (1) use and (2) the amount of OC spray that she deployed were objectively reasonable. .................... 15

        4.  Defendant Campos' (1) use and (2) the amount of OC spray that he deployed were objectively reasonable. .............. 16

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4852-9661-7364 v4
05788-0035

- i -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

**TABLE OF CONTENTS**
**(continued)**

Page

5.  Defendants Diaz and Campos did not direct the use of force and thus are not liable in their supervisory roles............17

C.  Plaintiffs' Due Process Claim Fails [Seventh Claim]........................17

VI.  PLAINTIFFS' STATE LAW TORT CLAIMS ............................................20

A.  Plaintiffs' Claims For Battery And Assault Fail [Claims One And Two] ..........................................................................................21

B.  Plaintiffs Cannot Establish Their Claim For IIED [Fourth Claim]...............................................................................................21

C.  Plaintiffs Cannot Demonstrate Defendants Violated Their Rights Under Civil Code § 52.1 ("Section 52.1") [Eighth Claim]................23

D.  The Undisputed Evidence Demonstrates Defendants Were Not Negligent [Tenth Claim] ........................................................................24

E.  Defendants Are Not Liable As Supervisors......................................25

VII.  CONCLUSION ........................................................................................25

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- ii -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................ 19

*Banks v. McDonald*,
   81 Fed.Appx. 227 (9th Cir. 2003) ................................................... 14

*Barren v. Harrington*
   152 F.3d 1193 (9th Cir. 1998) ......................................................... 12

*Bell v. Wolfish*,
   441 U.S. 520 (1979) ........................................................... 14, 19, 20

*Bloomgarden v. Cty. of Los Angeles*,
   No. CV 11-9449 DDP (MRW), 2016 WL 11502799 (C.D. Cal.
   Nov. 10, 2016) ................................................................................. 13

*Corr. Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001) .......................................................................... 10

*Demery v. Arpaio*,
   378 F.3d 1020 (9th Cir. 2004) ......................................................... 19

*Graham v. Connor*,
   490 U.S. 386 (1989) .................................................................. 13, 17

*Green v. Baca*,
   306 F. Supp. 2d 903 (C.D. Cal. 2004)............................................. 13

*Harveston v. Cunningham*,
   216 Fed. Appx. 682 (9th Cir. 2007) ................................................ 15

*Jacoby v. Mack*,
   755 F. App'x 888 (11th Cir. 2018)................................................... 15

*Jama v. U.S.I.N.S.*,
   343 F. Supp. 2d 338 (D.N.J. 2004)................................................... 9

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- iii -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

*Jones v. Williams,*
   791 F.3d 1023 (9th Cir. 2015) ................................................................. 11

*Keates v. Koile,*
   883 F.3d 1228 (9th Cir. 2018) ................................................................. 10

*Kingsley v. Hendrickson,*
   135 S. Ct. 2466 (2015) ........................................................................... 13

*Lyall v. City of Los Angeles,*
   807 F.3d 1178 (9th Cir. 2015) ................................................................. 23

*Meachum v. Fano,*
   427 U.S. 215 (1976) ............................................................................... 18

*Minneci v. Pollard,*
   565 U.S. 118 (2012) ........................................................................... 9, 10

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
   429 U.S. 274 (1977) ......................................................................... 11, 12

*Planned Parenthood of Southeastern Pennsylvania v. Casey,*
   505 U.S. 833 (1992) ............................................................................... 18

*Randle v. Miranda,*
   315 Fed.Appx. 645 (9th Cir. 2009) ......................................................... 14

*Rhodes v. Robinson,*
   408 F.3d 559 (9th Cir. 2005) ................................................................... 11

*Rickleffs v. Senior Deputy Ward,*
   2015 WL 5609995 (N.D. Cal. Sept. 21, 2015) ........................................ 20

*Robles v. Prince George's Cty., Md.,*
   302 F.3d 262 (4th Cir. 2002) ................................................................... 20

*Rochin v. Cal.,*
   342 U.S. 165 (1952) ............................................................................... 18

*Russell v. U.S. Dep't of the Army,*
   191 F.3d 1016 (9th Cir. 1999) ............................................................. 9, 10

*Schroeder v. McDonald,*
   55 F.3d 454 (9th Cir. 1995) ..................................................................... 12

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4852-9661-7364 v4
05788-0035

- iv -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

*Schwarm v. Craighead*
    552 F.Supp.2d 1056 (E.D. Cal. 2008) ........................................................ 10, 12

*Scott v. Harris*,
    550 U.S. 372 (2007) ..................................................................................... 15

*Spain v. Procunier*,
    600 F.2d 189 (9th Cir.1979) ............................................................. 14, 16, 17

*Stewart v. Stewart*,
    60 Fed.Appx. 20 (9th Cir. 2003) ....................................................... 14, 16, 17

*Kentucky Dept. Of Corrections v. Thompson*,
    490 U.S. 454 (1990) ..................................................................................... 18

*Wood v. City of Garden Grove*,
    395 F. App'x 467 (9th Cir. 2010) ................................................................ 14

**State Cases**

*Ashcraft v. King*,
    228 Cal. App. 3d 604 (Ct. App. 1991) ........................................................ 21

*Austin B. v. Escondido Union Sch. Dist.*,
    149 Cal. App. 4th 860 (2007) ..................................................................... 25

*Bender v. Cnty. of Los Angeles*,
    217 Cal.App.4th 968 (2013) ........................................................................ 23

*Hughes v. Pair*,
    46 Cal. 4th 1035 (2009) .............................................................................. 22

*Kiseskey v. Carpenters' Tr. for So. Cal.*,
    144 Cal. App. 3d 222 (Ct. App. 1983) ................................................... 22, 23

*Ladd v. Cnty. of San Mateo*,
    12 Cal.4th 913 (1996) ................................................................................. 24

*Lujano v. Cty. of Santa Barbara*,
    190 Cal. App. 4th 801 (2010), (Dec. 30, 2010) ......................................... 10

*Mitchell v. Gonzales*,
    54 Cal. 3d 1041 (1991) ............................................................................... 24

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4852-9661-7364 v4
05788-0035

- v -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

*Shoyoye v. Cnty. of Los Angeles*,
    203 Cal.App.4th 947 (2012) ................................................................ 23

*So v. Shin*,
    212 Cal. App. 4th 652 (2013), (Jan. 28, 2013) .................................... 21

*Venegas v. Cnty. of Los Angeles*,
    153 Cal.App.4th 1230 (2007) ............................................................. 23

**Federal Statutes**

42 U.S.C. § 1983 ...................................................................................... *passim*

42 U.S.C. § 1985 ............................................................................................. 1

**State Statutes**

Bane Act ....................................................................................................... 23

Civ. Code § 52.1 ............................................................................... 1, 23, 25

**Other Authorities**

Fed.R.Civ.P. 56 .............................................................................................. 9

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- vi -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION.

3       Plaintiffs are eight (8) civil detainees that were detained at the Adelanto ICE

4   Processing Detention Facility ("Facility") in June 2017. On June 12, 2017,

5   Plaintiffs engaged in what they believe was the start of a hunger strike (however, it

6   is unclear whether any GEO personnel understood their intent) in the dayroom of

7   their dorm. Plaintiffs chose to participate in the strike during a critical period of

8   time at the Facility that required all detainees to be at their bunks (count). If count is

9   not completed within a specified time period, the entire Facility is placed in an

10   emergency state. Despite numerous commands to return to their bunks, and

11   warnings that OC spray may be used to compel their compliance, Plaintiffs refused

12   to listen and instead remained in the dayroom to bring attention to their gripes.

13   Their noncompliance not only caused a major disruption in the dorm, but it

14   threatened to disrupt the entire Facility as they were delaying count. As a result of

15   their noncompliance and the major disturbance that resulted from their conduct,

16   Defendants Lt. Diaz and Sgt. Campos ("Defendants") deployed short bursts of OC

17   spray (3 in total).

18       Plaintiffs allege the following eight claims against Defendants: (1) battery

19   (first claim); (2) assault (second claim); (3) IIED (fourth claim); (4) First

20   Amendment retaliation under Section 1983 (fifth claim); (5) excessive force under

21   Section 1983 (sixth claim); (6) violation of due process rights under Section 1983

22   (seventh claim); (7) violation of Civil Code section 52.1 (eighth claim); and (8)

23   negligence (tenth claim).[2] However, as demonstrated below, their claims are

24   without merit.

25   ///

26

27   _____

[2] Through the meet and confer process, Plaintiffs voluntarily agreed to dismiss their

28   ninth claim for conspiracy under U.S. C. Section 1985 against Defendants Campos
and Diaz. (Aguado Decl. ¶ 3.)

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 1 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1  **II.    STATEMENT OF FACTS.**

2      **A.    Adelanto Detention Facility.**

3        In May 2011, GEO entered into contract with U.S. Immigration & Customs

4  Enforcement (ICE) for the detention and care of immigrant detainees at the

5  Adelanto Detention Facility ("Facility"), which houses immigrant detainees,

6  through an intergovernmental service agreement with the City. (Separate Statement

7  of Undisputed Fact ("SUF") #1). Thereafter, in June 2019, GEO directly contracted

8  with ICE to manage and operate the Facility. (SUF #2.) Irrespective of the change

9  of parties to the contract, GEO has been solely responsible for the management and

10  operations of the Facility since May 2011. (SUF # 3.)

11      **B.    Plaintiffs Knew They Were Required To Follow The Rules.**

12        In June 2017, Plaintiffs were housed at the Facility. (Doc. # 95 at 4:18-19).

13  While at the Facility, Plaintiffs became aware that there were multiple times

14  throughout the day when they *had* to return to their bunks to be counted by GEO

15  staff, and that it was a direct order to return to their bunks for count. (SUF # 4-5.)

16  This procedure is referred to as "count" and it is a critical time period at the Facility

17  because it is the mechanism by which the Facility is able to determine whether a

18  detainee has escaped from the Facility. (SUF # 6-7.) Plaintiffs also understood that

19  failing to comply with orders would result in consequences. (SUF # 8.)

20      **C.    Plaintiffs Decided to Engage In A Group Demonstration.**

21        Plaintiffs allege that they engaged in a "peaceful hunger strike" in their dorm

22  (hereinafter referred to as the "incident"). (Doc. # 95 at 12:10-11). On or around

23  June 11, 2017, Plaintiffs met and prepared a list of demands/grievances to present

24  to GEO staff. (SUF # 9.) Thereafter, on June 12, 2017, at around 6:22 a.m., Plaintiff

25  Castillo gave the list of demands that was (1) written in Spanish and (2) did <u>not</u>

26  mention that Plaintiffs were engaging in a "hunger strike" to the dorm officer,

27  Officer Gillon, who Plaintiffs knew only spoke English and was unable to read the

28  letter. (*Id.*) The list of demands was presented after breakfast (the first meal that

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4852-9661-7364 v4
05788-0035

- 2 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

Plaintiffs missed, though they did not inform anyone that they intentionally skipped) and immediately before count, which Plaintiffs knew took place after breakfast. (SUF # 10.) Since Officer Gillon does not speak Spanish, another detainee was asked to translate the list of demands to Officer Gillon. (*Id*.)

At 6:23 a.m., Plaintiff Castillo handed Officer Gillon a second piece of paper that listed Plaintiffs' names. (SUF # 11.) Meanwhile, the other plaintiffs sat at two separate tables in the dayroom of the dorm to gain attention. (*Id*.) At around 6:29 a.m., Officer Jindi arrived to the dorm to relieve Officer Gillon. (SUF # 12.) Officer Gillon explained to Officer Jindi that he received papers and that "something" was going on. (*Id*.) Officer Jindi instructed him to give the papers to Lt. Diaz. (*Id*.) Thereafter, Officer Jindi announced that it was time for count and Plaintiffs chose to ignore the order. (*Id*.)

Officer Jindi had no information that there was an alleged hunger strike. (SUF # 13.) Indeed, Plaintiffs admitted they are speculating that Officer Gillon was informed and knew they were on a hunger strike. (SUF # 13, 20.) Officer Jindi used her radio and requested assistance because Plaintiffs were not returning to their bunks for count per her order. (SUF # 14.) In response to Officer Jindi's request, at around 6:32 a.m., Lt. Diaz arrived to the dorm with GEO officers, including Officer Gillon, Officer Martinez, and Officer Reyes, and LVN Jones. (*Id*.) Before entering the dorm, in addition to the information that Lt. Diaz learned from Officer Jindi[3] over the radio, she had the list of Plaintiffs' names that were written on the second piece of paper and was informed that Plaintiffs were *threatening* to start a hunger strike if their demands were not met. (SUF # 15.)

**D.    Plaintiffs Martinez And Rodriguez Were Escorted Out.[4]**

When Lt. Diaz, the GEO officers, and LVN Jones arrived to the dorm,

---

[3] Officer Jindi was present during the incident; however. she was not involved in any use of force. (SUF # 73.)
[4] Importantly, the entire use of force incident is captured on video which is filed as Exhibit "F."

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 3 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

Plaintiffs were seated at tables[5] in the dayroom and refused to go to their bunks for count despite Lt. Diaz, Officer Reyes, and Officer Martinez's efforts to negotiate and reason with them. (SUF # 16-17.) Plaintiffs understood that there would be consequences, including the use of OC spray, for their decision to ignore the commands; however, **they admitted that they no intention of complying with the commands unless force was used as this would help them garner more attention for their strike.** (SUF # 18-19.)

After giving numerous commands, four officers (including Officers Gillon, Reyes, and Martinez) removed Plaintiffs Martinez and Rodriguez from Table A by pulling them by their arms. (SUF # 21-28.) No force (*e.g.*, strikes, kicks, punches, etc.) was used to remove Plaintiffs Martinez and Rodriguez from the dorm despite their active resistance; instead, the officers physically pulled them away from the table and then apart after they clung to each other, as demonstrated by the video recording. (SUF # 21-28.)

While Plaintiff Martinez alleges he was sprayed while outside the dorm by a blonde woman and two other unknown GEO supervisors, the video demonstrates Lt. Diaz did not leave the dorm after Plaintiff Martinez was escorted out. (SUF # 27.) Additionally, there was no OC spray deployed outside of the dorm, or while any plaintiff was restrained by an officer. (SUF # 28.) Lt. Diaz did not physically

---

[5] Plaintiffs identified themselves on the video recordings during their depositions. *See e.g.*, Ex. "N" [Cornejo Depo.] at 50:8-13 [identified Castillo], 55:2-7 [identified Rodriguez (also referred to as "Grande")], 55:21-56:11 [identified Plaintiff Martinez], 59:15-61:11 [identified himself]; Ex. "O" [Campos Depo.] at 71:9-10 [identified himself], 74:1-9 [identified Plaintiff Diaz], 73:14-25 [identified Garcia]; Ex. "Q" [Mejia Depo.] at 15:14-16:16 [identified himself]. Accordingly, based on Plaintiffs' deposition testimony and the video recording of the incident, it appears Plaintiffs Rodriguez, Martinez, and Garcia were seated at one table (hereinafter referred to as "Table A") and Plaintiffs Cornejo, Castillo, Diaz, and Campos were seated at a second table (hereinafter referred to as "Table B"). (Ex. "F" [Video recording]; Diaz Decl. ¶ 13.) Additionally, Officer Reyes, Officer Martinez, Officer Gillon, Lt. Diaz, and Sgt. Campos were identified during the depositions taken in this matter. *See e.g.*, Ex. "V" [Gillon Depo] at 163:21-25 [identified Lt. Diaz], 164:1-4 [identified Officer Reyes as male with light blue short sleeved shirt], 164:22-25 [identified himself]; Ex. "Y" [GEO Martinez Depo.] at 52:6-24 [identified himself as officer with hat].

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 4 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1  make contact with either Plaintiffs Rodriguez or Martinez. (SUF # 21-28.)

2      **E.**   **Diaz Deployed OC Spray.**

3       While the officers were escorting out Plaintiffs Martinez and Rodriguez,

4  Plaintiffs Cornejo, Castillo, Mejia, Diaz, and Campos (seated at Table B)

5  interlocked their arms and tethered their feet around the legs of Table B to make it

6  more difficult for the officers to remove them from the table – *i.e.* Plaintiffs were

7  actively resisting – and Plaintiff Garcia moved from Table A to Table B and sat

8  next to Plaintiff Campos. (SUF # 29.) The dorm, during a period that is supposed to

9  be very quiet, was in an uproar and completely out of control. (SUF # 30.)

10       After evaluating the situation, and in reliance on her training and experience,

11  Lt. Diaz determined it was appropriate to deploy OC spray. (SUF # 31-32.) Thus,

12  after trying to de-escalate the situation for more than 9 minutes, giving several

13  warning that she planned to use OC spray, which Plaintiffs understood, and GEO

14  officers unsuccessfully trying to pull plaintiffs away from the tables, Lt. Diaz

15  deployed an extremely short burst of OC spray down the middle of Table B. (SUF #

16  33-34.) This was the only use of force by Lt. Diaz. (SUF # 35.) Not only were

17  Plaintiffs Diaz, Campos, Garcia, Cornejo, Castillo, and Mejia unfazed by Lt. Diaz's

18  warnings, but they were similarly unfazed by the short burst of spray as they

19  continued to remain seated at Table B with their arms interlocked and their heads

20  down on the table. (SUF # 36.)

21      **F.**   **Sgt. Campos Arrived To Assist.**

22       At 6:43:47, after trying to convince the remaining plaintiffs to comply,

23  Officers Reyes and Martinez removed Plaintiff Garcia from the table without using

24  any force; they merely pulled Plaintiff Garcia by his arms from the table, despite his

25  active resistance, and untangled his arms from the plaintiffs that he had interlocked

26  his arms with. (SUF # 37-41.) Meanwhile, Lt. Diaz realized the situation was

27  completely out of control (Plaintiffs were interlocking arms and refusing to comply,

28  and the other detainees were yelling and acting in a rowdy manner), so she called

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 5 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1    for additional assistance. (SUF # 42.)

2          Next, at 6:45:58, officers attempted to pull Plaintiff Mejia from the table by

3    unlinking his arms from Plaintiff Castillo. (SUF # 43.) Despite Plaintiff Mejia

4    resisting, the officers were able to remove Plaintiff Mejia from the table at 6:46:18

5    without using any force. (SUF # 44-45.)

6          As the officers were trying to walk Plaintiff Mejia out of the dorm, Sgt.

7    Campos responded to Lt. Diaz's call and entered the dorm. (SUF # 46.) Sgt.

8    Campos immediately assisted two officers, including Officer Martinez, that were

9    struggling to remove Plaintiff Mejia, who was being combative. (SUF # 47.) Sgt.

10   Campos guided the group to the wall so the officers could secure Plaintiff Mejia's

11   arms and escort Plaintiff Mejia out without injury. (SUF # 48-49.)

12         While Sgt. Campos assisted the officers with Plaintiff Mejia, three officers

13   were able to pull Castillo away from the table without using any force. (SUF # 50-

14   52.) Sgt. Campos then walked toward Table B, where officers were struggling to

15   grab Plaintiffs Diaz, Campos, and Cornejo's arms to separate them (the remaining

16   plaintiffs still had their arms interlocked). (SUF # 53.) Plaintiffs Diaz, Campos, and

17   Cornejo grabbed on to each other to prevent the officers from gaining their

18   compliance. In turn, the officers struggled to separate them. (SUF # 54-55.)

19         Sgt. Campos determined that any further delay in bringing this situation

20   under control would result in a major disturbance and further serious disorder

21   within the dorm; thus, it was reasonable under the circumstances to deploy OC

22   spray. (SUF # 56-57.) He instructed the officers to move away from the table,

23   yelled, "OC spray warning," and commanded the plaintiffs at the table to stop

24   resisting. (SUF # 58.)

25   **G.    Sgt. Campos Deployed Two Short Bursts Of OC Spray.**

26         Sgt. Campos deployed a one second burst of OC spray in the direction of

27   Plaintiffs Diaz, Campos, and Cornejo, who had their arms interlocked and were

28   huddled together across the table. (SUF # 59.) Then he moved to the opposite end

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 6 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

of the table and deployed a second extremely short burst of OC spray towards Plaintiffs Diaz and Campos. (SUF # 60.)

Afterwards, an officer grabbed Plaintiff Campos from the table, but Plaintiff Campos fell to the ground. (SUF # 61.) The same officer then picked up Plaintiff Campos and quickly placed him against a wall to gain control of Plaintiff Campos. (SUF # 62.) Plaintiff Campos then returned to the table at 6:47:27. Immediately thereafter, a different officer tried to pull Plaintiff Campos from the table, but Plaintiff Campos continued to refuse to stand up (despite having just demonstrated he could walk). Two officers lifted Plaintiff Campos to take him out and, eventually, Plaintiff Campos stood up on his own to exit the dorm. (SUF # 62.) Plaintiff Campos admits that he was never struck, kicked, or punched during the entire incident, and he admits that he was never "brutally beaten" as alleged in his operative complaint. (SUF # 63.) Meanwhile, at 6:47:01, Plaintiff Diaz was escorted out of the dorm by an officer without any use of force. (SUF # 64-65.)

Plaintiff Cornejo was still actively resisting the officers, including Officer Martinez. (SUF # 66.) Because he wrapped his legs around the leg of the table, three officers were required to remove him from the table. (SUF # 67.) His refusal to stand up, thereafter, forced the officers to carry him out of the dorm. (SUF # 68.) While Plaintiff Cornejo alleges that the officers hit him on the edge of the table, the video demonstrates that, instead, beginning at 6:47:09, Cornejo grabbed the table to prevent the officers from removing him. (SUF # 69.)

By 6:48:19, Plaintiffs had been taken out of the dorm – *i.e.* 16 minutes after Officer Diaz had initially entered in an effort to quell the disturbance caused by Plaintiffs. (SUF # 70.)

Importantly, medical staff was present throughout the entire incident in the dorm and confirmed that the GEO officers did not strike Plaintiffs. (SUF # 71.) Also, throughout the entire incident, Plaintiffs' failure to comply with commands prompted the other detainees in the dorm to become disruptive and ignore the

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 7 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1   commands to return to their bunks, which Plaintiffs acknowledged was a direct

2   result of their conduct. (SUF # 72.)

3   **H.   Plaintiffs Were Decontaminated And Provided Medical Care.**

4   After each plaintiff was removed from the dorm, they were taken to the

5   recreation yard where they were handcuffed (if they had not already been

6   handcuffed inside the dorm) and Officer Gillon, Officer Martinez, Officer Reyes,

7   Sgt. Campos, and Lt. Diaz had no further contact with them. (SUF # 74.)

8   Thereafter, they were transported from the recreation yard to another room, where

9   Plaintiffs admitted that they were seen by medical staff. (SUF # 75.) Additionally,

10   all Plaintiffs were decontaminated (placed in showers to rinse off the OC spray with

11   water) and provided new uniforms. (SUF # 76.) While Plaintiffs claim the

12   decontamination process was intended to further their injuries, it was not. Water,

13   which is the method used at the Facility for decontamination purposes, does

14   reactivate the tingling sensation caused by the OC spray; however, it is necessary to

15   remove the spray. (SUF # 77.)

16   **I.   Plaintiffs Were Placed In Segregation For Rule Violation.**

17   After Plaintiffs were decontaminated and seen by medical staff, they were

18   taken to administrative segregation. (SUF # 78.) They were all informed that there

19   would be an investigation as a result of their conduct and potential discipline. (SUF

20   # 79-80.) Later, they were informed that the outcome of the investigation related to

21   their failure to follow commands and engage in a group demonstration mandated

22   they would be disciplined. (SUF # 81-83.)

23   **J.   The Evidence Demonstrates That Plaintiffs Did Not Have Their**

24   **Calls Restricted For Filing A Grievance.**

25   Plaintiffs allege that after the incident a grievance was filed on their behalf

26   that was directed to the DHS's Office for Civil Rights and Civil Liberties. (SAC ¶

27   67.) Plaintiffs allege that in response to the grievance, their ability to contact their

28   attorneys was restricted. (SAC ¶ 68.) While select plaintiffs stated in their

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 8 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1  depositions that their phone calls to their attorneys were restricted for a very limited

2  amount of time after a grievance was filed related to the incident, the evidence

3  demonstrates GEO personnel can only *recommend* to ICE that a detainee have his

4  access to the phones restricted and ICE has to make the final decision. (SUF # 84-

5  93.) Moreover, GEO officers do *not* have access to detainee complaints/grievance

6  and, thus, have no means of determining which detainees have filed

7  complaints/grievances. (SUF # 92.)

8         **K.**    **The After Incident Review Confirmed That The Force Was**

9               **Reasonable.**

10        Upon review of the incident, it was determined that the use of force (three

11  bursts of OC spray) was reasonable and appropriate. (SUF # 94.)

12  **III.**    **STANDARD FOR SUMMARY JUDGMENT.**

13        Rule 56 of the Federal Rules of Civil Procedure states that summary

14  judgment shall be granted when there is no genuine issue as to any material fact and

15  the moving party is entitled to judgment as a matter of law.

16  **IV.**    **PLAINTIFFS CANNOT BRING SECTION 1983 CLAIMS AGAINST**

17         **DEFENDANTS.**

18        "Section 1983, however, provides no right of action against federal (rather

19  than state) officials." *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1019 (9th

20  Cir. 1999); *Jama v. U.S.I.N.S.*, 343 F. Supp. 2d 338, 362 (D.N.J. 2004) (holding

21  that officers employed by private company although they were not federal

22  employees, they were federal actors because they were employees of a corporation

23  performing governmental functions pursuant to a contract with the INS under which

24  the INS monitored the performance of the corporation and its employees.)

25        Moreover, the Supreme Court held in *Minneci v. Pollard*, 565 U.S. 118, 131

26  (2012) that a prisoner at a federal facility operated by a private company could not

27  assert a *Bivens* claim for damages against employees of the private facility and,

28  instead, the prisoner's *only* remedy against the private corporation's employees was

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4852-9661-7364 v4
05788-0035

- 9 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

state tort law claims. *See also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (holding there is no implied private right of action, pursuant to *Bivens*, for damages against private entities that engage in alleged constitutional deprivations while acting under color of federal law).

The evidence demonstrates that Defendants were employed by a private company (GEO) and, while not federal employees, they were employees of a corporation performing governmental functions pursuant to a contract with a federal agency, ICE, under which ICE monitored their activities. (SUF # 1-3.) Thus, **Plaintiffs cannot bring Section 1983 claims against Defendants** and their only remedies against Defendants are state law claims. *Russell*, 191 F.3d at 1019; *Minneci*, 565 U.S. at 131.

## V.   IF PLAINTIFFS CAN BRING SECTION 1983 CLAIMS, THEIR SECTION 1983 CLAIMS WILL NEVERTHELESS FAIL. [6]

In Section 1983 cases, "'a plaintiff must [allege facts] that each Government-official defendant, **through the official's own individual actions**, has violated the Constitution.'" *Keates v. Koile*, 883 F.3d 1228, 1242 (9th Cir. 2018) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)) (emphasis added); *Lujano v. Cty. of Santa Barbara*, 190 Cal. App. 4th 801, 810 (2010), *as modified on denial of reh'g* (Dec. 30, 2010). Additionally, Section 1983 does not impose vicarious or *respondeat superior* liability; thus, a supervisor can only be "liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Schwarm v. Craighead* 552 F.Supp.2d 1056, 1082 (E.D. Cal. 2008). Here,

---

[6] As preliminary matter, Plaintiffs state their claims are brought under *Bivens*, however, this standard is improper in this matter. In *Minneci v. Pollard*, 565 U.S. 118 (2012) the court held that a prisoner at federal facility operated by a private company could not assert an Eighth Amendment *Bivens* claim for damages against private prison employees. Given that there are no allegations that Defendants were federal actors, the following claims are analyzed under Section 1983 and the applicable state law standards.

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4852-9661-7364 v4
05788-0035

- 10 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1   Plaintiffs' Section 1983 claims against Defendants, which were brought against

2   them in their individual capacities and as supervisors, are unsupported by the

3   evidence as demonstrated in detail below. (SAC ¶¶ 31-32.)

4       **A.**    **Plaintiffs' First Amendment Claim For Retaliation Under Section**

5       **1983 Fails Against Defendants Campos and Diaz [Fifth Claim].**

6          Plaintiffs allege that in response to Plaintiffs' filing grievances related to the

7   "GEO guard's assault,"[7] Defendants Diaz and Campos "retaliated" against

8   Plaintiffs by "blocking or otherwise restricting Plaintiffs from communicating with

9   their immigration attorneys," advocacy groups, and/or numbers that they regularly

10  called. (SAC ¶ 108.) Furthermore, Defendants Diaz and Campos knew or should

11  have known that retaliating against Plaintiffs for filing grievances was a clearly

12  established violation of the First Amendment. (SAC ¶ 112.)

13         In the detention context, "a viable claim of First Amendment retaliation

14  entails five basic elements: (1) An assertion that a state actor took some adverse

15  action against an inmate; (2) because of; (3) that inmate's protected conduct, and

16  that such action; (4) chilled the inmate's exercise of his First Amendment rights;

17  and; (5) the action did not reasonably advance a legitimate correctional goal."

18  *Rhodes v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005) (*citing Resnick v.*

19  *Hayes*, 213 F.3d 443, 449 (9th Cir. 2000)). To satisfy the causation element, the

20  inmate must show that his constitutionally protected conduct was a substantial or

21  motivating factor of the alleged retaliatory action. *Mt. Healthy City Sch. Dist. Bd. of*

22  *Educ. v. Doyle*, 429 U.S. 274, 285 (1977); *see also Jones v. Williams*, 791 F.3d

23  1023, 1036 (9th Cir. 2015) (describing the detainee's burden of proof). With respect

24  to retaliation claims brought by detainees, courts should "afford appropriate

25  _____

26  [7] Plaintiffs allege that on June 22, 2017, an immigration lawyer representing two of the Plaintiffs lodged a complaint against GEO and ICE with the U.S. Department of

27  Homeland Security's (DHS) Office for Civil Rights and Civil Liberties compliance branch recounting "the incident of violence against the hunger strikers." (SAC ¶

28  67.) Presumably, this is the grievance that Plaintiffs are referencing under their fifth claim.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 11 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *See Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th Cir. 1995).

Plaintiffs' claim against Defendants fails for a number of reasons. First, Plaintiffs cannot maintain their Section 1983 first amendment retaliation claim against Defendants because there is no evidence that either Campos or Diaz were personally involved in their violation of rights (*i.e.* restricting Plaintiffs' access to the phones and/or calls or order that Plaintiffs be placed in segregation). *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Likewise, there is no evidence that Defendants "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Schwarm*, 552 F.Supp.2d at 1082. To the contrary, the evidence demonstrates that Defendants did not have the ability to block or restrict Plaintiffs' calls, nor did they have the ability to direct GEO personnel to block or restrict Plaintiffs' calls. (SUF # 93.) The evidence also demonstrates that Defendants did not make the final determination to place Plaintiffs in segregation. (SUF # 82.) Thus, Plaintiffs cannot establish the foundational element of their Section 1983 claim against Defendants: personal involvement or actions taken at their specific direction.

Second, the evidence demonstrates that Defendants do *not* have access to grievances filed by detainees and, thus, to the extent that Plaintiffs filed grievances related to the alleged assault, Defendants would not have been privy to that information. (SUF # 92.) Moreover, Plaintiffs' counsel acknowledges that the grievance filed on behalf of Plaintiffs was directed to the DHS's Office for Civil Rights and Civil Liberties. (SAC ¶ 67.) There is no evidence that Defendants -- or *anyone at GEO* -- were even aware of the grievance. In other words, Plaintiffs cannot establish a causal relationship between the alleged protected activity and alleged retaliatory conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ*, 429 U.S. at 285.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 12 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

Third, the evidence demonstrates that GEO personnel can only *recommend* to ICE that a restriction be placed on a detainee's ability to access the phones/calls. (SUF # 93.) Thus, even if Plaintiffs could establish someone at GEO somehow knew of their grievance, the casual chain is broken because ICE is the entity that ultimately restricts access to the phones/calls.

Fourth, while Plaintiffs Campos, Garcia, Diaz, and Martinez allege they were temporarily unable to contact their immigration attorneys, in each case the alleged problem was resolved quickly. (SUF # 84-89.)

Consequently, Plaintiffs fifth claim against Defendants brought against them in their individual capacities and as supervisors should be summarily denied.

**B.   Plaintiffs' Sixth Claim For Excessive Force Fails.**

Plaintiffs allege that they were "brutally attacked" and pepper sprayed in the "face, scalp, and groin" to such a degree that they were "drenched" in spray. (SAC ¶¶ 12, 15, 17, 19, 21, 23, 25, 27.) Plaintiffs allege that Defendants Diaz and Campos each "emptied [an] entire canister of pepper spray on Plaintiffs" and sprayed them at "close range" in their faces, mouths, scalps, and groins." (SAC ¶¶ 46, 49.) Despite Plaintiffs' allegations, the only force that Defendants participated in and directed towards Plaintiffs is captured on video, which demonstrates that their conduct was objectively reasonable.

**1.   The Fourteenth Amendment governs Plaintiffs' claim.**

The Fourteenth Amendment is the applicable standard for Plaintiffs' excessive force claim. *See Green v. Baca*, 306 F. Supp. 2d 903, 909 (C.D. Cal. 2004); *Bloomgarden v. Cty. of Los Angeles*, No. CV 11-9449 DDP (MRW), 2016 WL 11502799, at *2 (C.D. Cal. Nov. 10, 2016) (holding claims brought by pretrial and civil detainees are properly analyzed under the Fourteenth). The Supreme Court has held, "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989). More recently, in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472

(2015), the Supreme Court held that to prove an excessive force claim under the Fourteenth Amendment, a pretrial detainee must show that the officers' use of force was objectively unreasonable. This determination must be made from the perspective of a reasonable officer, including what the officer knew at the time and must account for the "legitimate interests [stemming from the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security," *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979). Further, where the force used is *de minimis* and necessary, a plaintiff's excessive force claim is properly dismissed. *Wood v. City of Garden Grove*, 395 F. App'x 467, 469 (9th Cir. 2010).

## 2.   The use of OC spray was objectively reasonable.[8]

It is well established that the administration of pepper spray to induce a recalcitrant prisoner to follow directions falls within the wide-ranging zone of deference accorded to prison officials in shaping "prophylactic or preventive measures intended to reduce the incidence ... of breaches of prison discipline."[9] *Stewart v. Stewart*, 60 Fed.Appx. 20, 22 (9th Cir. 2003) (*quoting Whitley v. Albers,* 475 U.S. 312, 322 (1986); *see also Randle v. Miranda*, 315 Fed.Appx. 645, 645

---

[8] Plaintiffs are civil detainees; however, the cases cited herein regarding force (pepper spray) used against prisoners/inmates/arrestees are nevertheless instructive.
[9] While the use of pepper spray has been determined to be objectively reasonable to induce recalcitrant prisoners to follow directions, the law is unclear regarding the parameters (*i.e.* the amount) of the permissible use of pepper spray to address inmates who disobey orders or interfere with officers in the performance of their duties. *See Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir.1979) (finding that use of small amounts of tear gas may be a necessary if a prisoner refuses to comply with a lawful order and after adequate warning to the prisoner). Nevertheless, the Ninth Circuit's unpublished cases tend to support the lawfulness of using chemical agents to gain compliance with a lawful order once a prisoner has been forewarned that chemical agents will be used if a prisoner continues to disobey the order. *See Banks v. McDonald*, 81 Fed.Appx. 227 (9th Cir. 2003) (summary judgment on prisoner's excessive force claim was proper where prisoner was warned that refusing lawful orders to cuff up would result in being sprayed, prisoner was sprayed six or seven times and the correctional officer stopped spraying once the prisoner complied).

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 14 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1   (9th Cir. 2009) (affirming the district court's grant of summary judgment to the

2   defendant correctional officers when the undisputed facts showed that the

3   defendants used pepper spray in a good faith effort to restore discipline and order);

4   *Harveston v. Cunningham,* 216 Fed. Appx. 682 (9th Cir. 2007) (holding the use of

5   force was objectively reasonable where the arrestee continued to resist officers until

6   pepper spray was used, and the officer guided the arrestee's head into the vehicle

7   rather than intentionally bumping it); *but see Jacoby v. Mack*, 755 F. App'x 888

8   (11th Cir. 2018) (holding the use of pepper spray was objectively unreasonable

9   where detainee was pepper sprayed on the head and back while shirtless after

10  failing to comply with an order, detainee's back was not decontaminated, despite his

11  multiple requests for further decontamination and clean clothes).

12          **3.    Defendant Diaz's (1) use and (2) the amount of OC spray**

13          **that she deployed were objectively reasonable.[10]**

14          Here, the uncontroverted video evidence[11] demonstrates that the only force

15  that Defendant Diaz used was a short burst of OC spray that was deployed *after*

16  Plaintiffs (1) failed to comply with verbal orders and commands for nearly 10

17  minutes, she warned them of her intent to use OC spray if they did not comply with

18  commands; (2) actively and physically resisted the GEO officers' efforts to remove

19  them from the dorm to terminate the disturbance; (3) caused the entire dorm to

20  become riled up and disorderly – which they admit; (4) demonstrated they were

21  unwilling to negotiate; and (5) threatened to cause a major disturbance throughout

22  the Facility by delaying count. (SUF # 16-33.) The uncontroverted video evidence

23  

24  [10] The uncontroverted video evidence demonstrates that Defendant Diaz did not
25  personally use any force against Plaintiffs Martinez and Rodriguez and, as such, they
    cannot maintain an excessive force claim under Section 1983 against
    Defendant Diaz. (SUF # 21-29.)
26  [11] Plaintiffs' allegations regarding the force used should be disregarded to the extent
    they contradict the video recording of the incident. *See Scott v. Harris*, 550 U.S.
27  372, 378–80 (2007) ("Respondent's version of events is so utterly discredited by
    the record that no reasonable jury could have believed him. The Court of Appeals
28  should not have relied on such visible fiction; it should have viewed the facts in the
    light depicted by the videotape.")

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 15 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1   also demonstrates that Defendant Diaz deployed a short burst of spray down the

2   middle of the table to prompt Plaintiffs Diaz, Campos, Garcia, Cornejo, Castillo,

3   and Mejia to comply with her commands – to no avail. (SUF # 33-36.) Finally, the

4   uncontroverted video evidence demonstrates that the force used by Defendant Diaz

5   was *de minimis* and caused no injury given that the involved plaintiffs did not even

6   react to her use of spray. (SUF # 33-36.)

7        Accordingly, Defendant Diaz' decision to use OC spray to induce Plaintiffs,

8   who were recalcitrant, threatened the order of the Facility, and were warned of her

9   intent to use the spray, to induce them to follow directions was objectively

10   reasonable. *Stewart*, 60 Fed.Appx. at 22. Moreover, the amount of OC spray that

11   she deployed was objectively reasonable given Plaintiffs' continued failure to

12   comply with commands that caused a major disturbance. *Spain*, 600 F.2d at 195.

13        **4.**    **<u>Defendant Campos' (1) use and (2) the amount of OC spray</u>**

14                **<u>that he deployed were objectively reasonable.</u>**[12]

15        The uncontroverted video evidence demonstrates that the only force that

16   Defendant Campos used was two short bursts of OC spray in the direction of

17   Plaintiffs Diaz, Campos, and Cornejo. (SUF # 59-60.) Similar to Defendant Diaz,

18   Defendant Campos used OC spray only after warning Plaintiffs of his intent to

19   deploy OC spray, he was aware that the disturbance had been ongoing for nearly 10

20   minutes, he witnessed Plaintiffs failing to comply with verbal commands, and he

21   observed the entire dorm in an uproar during count, which is a critical time period

22   at the Facility that requires all detainees to be silent and at their bunks. (SUF # 46-

23   60.) Significantly, even after Defendant Campos deployed OC spray, Plaintiff

24   Cornejo was *still* actively resisting the officers. (SUF # 66-69.) Accordingly,

---

25

26   [12] The uncontroverted evidence demonstrates that Defendant Campos did not use any force against Plaintiffs Martinez, Rodriguez, Garcia, Castillo, and Mejia and, as such, they cannot maintain an excessive force claim under Section 1983 against

27   Defendant Campos. (SUF # 16-45 (demonstrating Plaintiffs Martinez, Rodriguez, Garcia, Castillo, and Mejia were escorted out of the dorm before or right when Sgt.

28   Campos entered the dorm.)

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 16 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1   Defendant Campos' decision to use two bursts of OC spray to induce Plaintiffs,

2   who were recalcitrant, threatened the order of the Facility, and were warned of his

3   intent to use the spray, to follow directions was objectively reasonable. *Stewart*, 60

4   Fed.Appx. at 22. Moreover, the amount of OC spray that he deployed was

5   objectively reasonable given Plaintiffs Diaz, Campos, and Cornejo's continued

6   failure to comply with commands that resulted in complete disorder of the dorm.

7   *Spain*, 600 F.2d at 195.

8          **5.      Defendants Diaz and Campos did not direct the use of force**

9                **and thus are not liable in their supervisory roles.**

10      All of the conduct that Defendants "directed" is on captured on camera. *See*

11   Ex. "F" [Video Recording]. Based on the video recording of the incident,

12   Defendants did not direct any of the involved GEO officers to use force (*e.g.* punch,

13   strike, or kick) as the video demonstrates the only persons to use force were

14   Defendants Diaz and Campos. *See* Ex. "F" [Video Recording]; *Graham v. Connor*,

15   490 U.S. 386, 396 (1989) ("With respect to a claim of excessive force, the same

16   standard of reasonableness at the moment applies: 'Not every push or shove, even if

17   it may later seem unnecessary in the peace of a judge's chambers…'.") To the

18   extent separating Plaintiffs by pulling on their arms and/or escorting them out by

19   carrying them is deemed "force", this force was objectively reasonable given

20   Plaintiffs' conduct. (SUF # 16-72.) Again, Plaintiffs Campos and Diaz admitted

21   they had no intent to comply with orders unless force was used. (SUF # 19.)

22      **C.     Plaintiffs' Due Process Claim Fails [Seventh Claim].**

23      Plaintiffs allege that Defendant Diaz and Campos deprived Plaintiffs of

24   liberty without due process under the Fifth and Fourteenth Amendments because,

25   based on Plaintiffs' grievances related to the conditions of confinement at the

26   Facility, Defendants Diaz and Campos allegedly assaulted Plaintiffs, placed them in

27   segregation, blocked or restricted their access to telephones, and failed to provide

28   adequate medical care. (SAC ¶ 124.)

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 17 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1        To prove a violation of procedural due process under the Fourteenth

2  Amendment, a plaintiff must show: (1) a life, liberty, or property interest exists and

3  has been interfered with by the state; <u>and</u> (2) the procedures attendant upon the

4  deprivation of an existing interest were constitutionally insufficient. *Kentucky Dept.*

5  *Of Corrections v. Thompson,* 490 U.S. 454, 460 (1990). Court have rejected the

6  notion "that any change in the conditions of confinement having a substantial

7  adverse impact on the prisoner involved is sufficient to invoke the protections of the

8  Due Process Clause." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

9        Alternatively, to prove a violation of substantive due process, a plaintiff must

10  allege governmental action which deprives the plaintiff of life, liberty, or property

11  interest, which may not be deprived regardless of the procedures employed.

12  *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 846-

13  850 (1992). State action that does more than "offend some fastidious

14  squeamishness, or private sentimentalism", but rather, "shocks the conscience" to

15  the point that it "is bound to offend even hardened sensibilities" can be said to

16  violate due process. *Rochin v. Cal.,* 342 U.S. 165, 172 (1952). For the most part, the

17  protections of substantive due process have been limited to matters relating to

18  marriage, family, procreation, and bodily integrity. *Planned Parenthood of*

19  *Southern Pa.*, 505 U.S. at 846-850 (1992).

20        Here, the uncontroverted evidence demonstrates that Defendants did not

21  personally violate or direct the violation of Plaintiffs' procedural or substantive due

22  process rights. As a preliminary matter, several of Plaintiffs' allegations are

23  baseless. For example, as demonstrated above, the evidence demonstrates that

24  Defendants do not have access to grievances filed by Plaintiffs, and there is no

25  evidence that either Campos or Diaz was aware that any plaintiff filed a

26  grievance.[13] (SUF # 92.) Additionally, Plaintiffs Cornejo, Campos, Castillo, and

27

28

---

[13] Even if Defendants had knowledge of Plaintiffs' alleged grievances, the
undisputed evidence demonstrates the use of force incident was a result of

Rodriguez admitted that they never filed a grievance, and Plaintiff Mejia stated he filed a grievance but does not know what it concerned. (SUF # 90-91.) Defendants also do not have the ability to restrict access to telephones, and there is no evidence to demonstrate that they had any involvement in the alleged decision to restrict Plaintiffs' calls.[14] (SUF # 92-93.) Also, Defendants do not provide medical care to detainees – medical care is provided by a third party contractor, Corrective Care Solutions (CCS). (SAC ¶ 33.) Moreover, Plaintiffs admitted that they received medical care following the use of force incident. (SUF # 75.)

With respect to Plaintiffs challenging their placement in segregation, the evidence demonstrates that Defendant Campos had no involvement in nor did he direct Plaintiffs' placement in segregation. (SUF # 82.) While Defendant Diaz completed the order to admit Plaintiffs to administrative segregation pending the investigation of their rule violation (engaging in or inciting a group demonstration), and drafted the notice of the charges to advise Plaintiffs of the pending charges, the decision to place Plaintiffs in segregation was reviewed by a panel that Defendant Diaz is not part of. (SUF # 82.) Thus, even assuming Defendant Diaz was aware of grievances filed by Plaintiffs, she could not have placed them in segregation given she did not have the authority to make this decision.[15]

---

Plaintiffs' failure to comply with commands and causing a major disturbance. (SUF # 16-70.)

[14] As mentioned above, even if Defendants had the ability to *recommend* that a restriction be placed on Plaintiffs' ability to contact select numbers, which they do not, the restriction would have had to have been approved by ICE. (SUF # 93.) Thus, Plaintiffs cannot establish Defendants or any GEO personnel were personally involved in the alleged deprivation of rights. *See e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

[15] Even if Defendants were involved in the decision to place Plaintiffs in segregation, Plaintiffs' due process claim would nevertheless fail. The Supreme Court has held that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or "disability," and (2) the purpose of the governmental action must be to punish the detainee. *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004) (*citing Bell*, 441 U.S. at 538 ("A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 19 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1    Finally, even if Defendants Campos and Diaz had decided to place Plaintiffs

2    in administrative segregation/segregation, which they did not, they would have had

3    a legitimate basis for the placement in restrictive housing. Namely, it is consistent

4    GEO policy and procedure to place detainees in administrative segregation during a

5    pending investigation and, thereafter, segregation if guilt is established – which is

6    the case here. (SUF # 82.) Based on the foregoing, Plaintiffs' seventh claim against

7    Defendants should be summarily adjudicated.

8    ## VI.   PLAINTIFFS' STATE LAW TORT CLAIMS.

9    Plaintiffs allege Defendants battered (first claim) and assaulted (second

10   claim) them, engaged in conduct that amounted to the intentional infliction of

11   emotional distress (IIED) (fourth claim), and acted negligently (tenth claim)

12   towards them. (SAC ¶¶ 76, 82, 96, 142.) Plaintiffs' operative complaint does not

13   specify the conduct that Defendant Campos and Diaz engaged in that forms the

14   basis of these claims; however, as mentioned above, the totality of Defendant

15   Campos and Diaz's interactions with Plaintiffs are captured on video. *See* Ex. "F"

16   [Video Recording]. Thus, the only conduct that could conceivably give rise to these

17   claims is Defendants' use of OC pepper spray.

18

19   governmental purpose.")); *see Rickleffs v. Senior Deputy Ward*, 2015 WL 5609995,
     at *1 (N.D. Cal. Sept. 21, 2015) ("When a pretrial detainee challenges conditions of

20   his confinement, the proper inquiry is whether the conditions amount to punishment
     in violation of the Due Process Clause of the Fourteenth Amendment."). Where a

21   party is subjected only to a short-term temporary loss of limited privileges, these
     types have been deemed so "de minimis" that they do not amount to punishment.

22   *See Bell*, 441 U.S. at 539 n. 21 (defining "punishment" in terms of intent but noting
     that there is "a de minimis level of imposition with which the Constitution is not

23   concerned") (*quoting Ingraham v. Wright*, 430 U.S. 651, 674 (1977)); *Robles v.
     Prince George's Cty., Md.*, 302 F.3d 262, 269 (4th Cir. 2002) (stating that a pretrial

24   detainee must show that official action was not "*de minimis*" to invoke due process
     protections). Here, Plaintiffs admitted that while in segregation for 10 days they

25   Plaintiffs were provided medical care, checked on by GEO staff, and given access
     to showers and phones. (SUF # 83.) Even assuming Plaintiffs could establish that

26   the short-term, temporary restrictions of privileges amounted to "punishment"
     implicating the due process clause, it is clear Plaintiffs received all the process that

27   the Constitution requires – *i.e.* there was an adjudication of guilt (violation of rule
     213 for inciting and/or engaging in a group demonstration) before discipline was

28   imposed. (SUF # 78-82.)

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 20 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1

2

**A.**   **Plaintiffs' Claims For Battery And Assault Fail [Claims One And Two].**

3    Plaintiffs first and second claims are for battery and assault. "The essential

4    elements of a cause of action for assault are: (1) defendant acted with intent to

5    cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or

6    offensive manner; (2) plaintiff reasonably believed she was about to be touched in a

7    harmful or offensive manner or it reasonably appeared to plaintiff that defendant

8    was about to carry out the threat; (3) plaintiff did not consent to defendant's

9    conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial

10   factor in causing plaintiff's harm." *So v. Shin*, 212 Cal. App. 4th 652, 668–69

11   (2013), *as modified on denial of reh'g* (Jan. 28, 2013). "A battery is any intentional,

12   unlawful and harmful contact by one person with the person of another." *Ashcraft v.*

13   *King*, 228 Cal. App. 3d 604, 611 (Ct. App. 1991) "In an action for civil battery the

14   element of intent is satisfied if the evidence shows defendant acted with a 'willful

15   disregard' of the plaintiff's rights…" or the intent to harm or offend plaintiff.

16   *Ashcraft*, 228 Cal. App. 3d at 611; *So*, 212 Cal. App. 4th at 669.

17   Here, as demonstrated in detail above, the only force used by Defendants was

18   intended to quell a major disturbance within the Facility. (SUF # 16-70.) There is

19   simply no evidence that demonstrates Defendants acted with intent to harm or

20   disregard Plaintiffs' rights. Moreover, Plaintiffs admitted that they understood OC

21   spray would be deployed and they chose to continue to ignore commands. (SUF #

22   18, 33.) Plaintiffs also admitted that they had no intention to comply with orders

23   unless force was used. (SUF # 19.) Plaintiffs, in short, admitted that the consented

24   to Defendants' conduct as they willingly chose to continue to ignore commands.

25   Consequently, Plaintiffs' claims for assault and battery should be summarily

26   adjudicated.

27   **B.**   **Plaintiffs Cannot Establish Their Claim For IIED [Fourth Claim].**

28   Plaintiffs' fourth claim for IIED is based on conclusory allegations that

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 21 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

merely restate the elements of a claim for IIED. (SAC ¶¶ 95-104.) There is no indication which conduct was allegedly "extreme and outrageous." Nevertheless, the elements for a claim of IIED are (1) extreme and outrageous conduct by the defendant with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffering severe emotional distress; and (3) actual and proximate causation. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). "Both the intensity and duration of the emotional distress suffered must be considered in determining its severity." *Kiseskey v. Carpenters' Tr. for So. Cal.*, 144 Cal. App. 3d 222, 231 (Ct. App. 1983). "Severe emotional distress means 'emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it. [citation omitted.]'" *Id.* (*citing Murphy v. Allstate Ins. Co., supra,* 83 Cal.App.3d 38, 51 (Ct. App. 1978).)

Here, the evidence simply does not support an IIED claim. First, Defendants reasonably believed that force was necessary to prevent a large-scale disturbance and to resolve Plaintiffs' failure to comply with orders. (SUF # 16-70.) In other words, their intent in deploying OC spray was to quell a major disturbance, and there is no evidence that either acted with the "intent of causing, or reckless disregard of the probability of causing, emotional distress." *Hughes*, 46 Cal. 4th at 1050. Second, Plaintiffs admitted that they were aware there would be consequences for their refusal to comply with orders and chose to nevertheless ignore commands, which further negates the first element of their claim. (SUF # 8, 18, 19, 33.) Third, the use of OC spray after it is determined that a delay in bringing the situation involving a detainee under control (here, the Plaintiffs' group demonstration that caused the entire dorm to be disruptive) would constitute a serious hazard to the detainee or others, or would result in a major disturbance (here, the conduct caused the dorm to be in chaos and count to be delayed) is appropriate under GEO's policies and procedures, which demonstrates that the

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 22 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1    conduct is not "extreme and outrageous." (SUF # 31-32, 56-7.) To the contrary, it is

2    an approved method of force given Plaintiffs' failure to comply with commands for

3    over 9 minutes and conduct that amounted to a major disturbance during a critical

4    time period at the Facility. (SUF # 31-32, 56-7.) Finally, Plaintiffs acknowledged

5    that if they complied with commands, they would not have been sprayed. Thus, in

6    effect, Plaintiffs were the direct cause of the "intensity and duration" of the conduct

7    which they now seek to hold Defendants liable. *Kiseskey*, 144 Cal. App. 3d at 231.

8          **C.**   **Plaintiffs Cannot Demonstrate Defendants Violated Their Rights**

9                 **Under Civil Code § 52.1 ("Section 52.1") [Eighth Claim]**

10        Plaintiffs allege Defendants "reacted with violence and force and threatened

11   additional punishment through segregation and isolation, in order to coerce

12   Plaintiffs to stop their protected … activity." (SAC ¶ 133.) Alternately stated,

13   Plaintiffs' eighth claim is derived from their excessive force claim.

14        Section 52.1 was "intended to address only egregious interferences with

15   constitutional rights, not just any tort. The act of interference with a constitutional

16   right must itself be deliberate or spiteful." *Shoyoye v. Cnty. of Los Angeles*, 203

17   Cal.App.4th 947, 959 (2012). To prevail on a Section 52.1 claim, a plaintiff must

18   therefore prove (1) a violation of a constitutional or statutory right (2) by

19   intimidation, threats or coercion. *Venegas v. Cnty. of Los Angeles*, 153 Cal.App.4th

20   1230, 1242 (2007). A consensus has formed in the California Courts of Appeal that

21   Bane Act liability requires a threatening, intimidating, or coercive act **separate and**

22   **distinct from the act that deprived the plaintiff of his or her federal or state**

23   **rights**. *See Bender v. Cnty. of Los Angeles*, 217 Cal.App.4th 968, 979 (2013) ("The

24   statute requires a showing of coercion independent from the coercion inherent in

25   the wrongful detention itself."); *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196

26   (9th Cir. 2015) ("Numerous California decisions make clear that a plaintiff in a

27   search-and-seizure case must allege threats or coercion beyond the coercion

28   inherent in a detention or search in order to recover under the Bane Act."); *Shoyoye*,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 23 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

203 Cal.App.4th at 959 ("[W]here coercion is inherent in the constitutional violation alleged ... [T]he statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself.").

Here, as demonstrated above, there is no evidence that Defendants acted with the specific intent to injure or cause any harm to Plaintiffs through the use of excessive force. (SUF # 16-70.) Similarly, there is no evidence – nor do Plaintiffs even allege – of Defendants threatening, intimidating, or engaging in coercive acts distinct from the acts that allegedly deprived Plaintiffs of their rights (*i.e.*, the alleged force incidents). To the contrary, the evidence demonstrates Defendants repeatedly took steps to gain Plaintiffs' compliance before deploying OC spray and Plaintiffs' chose to ignore their commands to gain attention for their protest. (SUF # 16-70.) Finally, failing to comply with count procedures and causing a major disruption is *not* a protected activity.

## D.   The Undisputed Evidence Demonstrates Defendants Were Not Negligent [Tenth Claim]

Plaintiffs allege that Diaz and Campos were negligent in assessing the need to use force against Plaintiffs and providing timely medical assistance to Plaintiffs. (SAC ¶ 142.) "The elements of a cause of action for negligence … are (a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. Cnty. of San Mateo*, 12 Cal.4th 913, 917 (1996). In evaluating whether the legal cause of an injury, courts will evaluate if the conduct that is claimed to have caused the injury was the "substantial factor" in the production of the injuries. *Mitchell v. Gonzales*, 54 Cal. 3d 1041, 1052 (1991). "[T]he 'substantial factor' test subsumes the 'but for' test." *Id.* Here, as articulated above, any force allegedly used by Defendants against Plaintiffs was reasonable in light of Plaintiffs continued refusal to comply with commands and conduct that resulted in a major disturbance. (SUF # 16-70.) Additionally, Defendants do not have a duty to provide medical care to Plaintiffs as

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4852-9661-7364 v4
05788-0035

- 24 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT

1 this duty is delegated to medical staff that is employed by CCS. *See* Decl.

2 McCusker ¶ 9. Nevertheless, the evidence demonstrates Plaintiffs *did* receive

3 medical care after the incident. (SUF # 75.)

**E.    Defendants Are Not Liable As Supervisors.**

5 In *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 879

6 (2007), the court held as follows:

> "'As a general rule, one owes no duty to control the conduct of another....' [Citations.] More specifically, a supervisor is not liable to third parties for the acts of his or her subordinates.' (Fiol v. Doellstedt (1996) 50 Cal.App.4th 1318, 1326, 58 Cal.Rptr.2d 308.)."

A party can only be liable for aiding and abetting an intentional tort if the party is aware that the other's conduct constitutes a breach of duty *and* provides substantial assistance or encouragement to the other to so act. *Id.* Here, it is not clear which conduct Plaintiffs allege Defendants supervised. (S*ee e.g.*, SAC). However, based on the video evidence, Defendants did not assist or encourage any of their subordinates to batter/assault Plaintiffs or engage in conduct that amounts to IIED or a violation of Section 52.1. (SUF # 16-70.) Thus, there should be no independent liability for Defendants as supervisors.

**VII.   CONCLUSION.**

For the above stated reasons, Defendants Campos and Diaz respectfully request this Court grant their Motion for Summary Judgment in its entirety, or in the alternative, to grant their Motion for Partial Summary Judgment in part as appropriate.

Dated:  November 12, 2019          BURKE, WILLIAMS & SORENSEN, LLP

By:  */s/ Carmen M. Aguado*
         Susan E. Coleman
         Carmen M. Aguado

Attorneys for Defendants
THE GEO GROUP, INC., DIAZ,
CAMPOS and CITY OF ADELANTO

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4852-9661-7364 v4
05788-0035

- 25 -

5:18-CV-01125-SP
CAMPOS AND DIAZ'S MOTION FOR
SUMMARY JUDGMENT