Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
Carmen M. Aguado (SBN 291941)
E-mail: caguado@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600    Fax: 213.236.2700

Attorneys for Defendants
THE GEO GROUP, INC., DIAZ, CAMPOS and
CITY OF ADELANTO

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR ARNOLDO RIVERA MARTINEZ; ISAAC ANTONIO LOPEZ CASTILLO; JOSUE VLADIMIR CORTEZ DIAZ; JOSUE MATEO LEMUS CAMPOS; MARVIN JOSUE GRANDE RODRIGUEZ; ALEXANDER ANTONIO BURGOS MEJIA; LUIS PEÑA GARCIA; JULIO CESAR BARAHONA CORNEJO, as individuals, <br><br> Plaintiffs, <br><br> v. <br><br> THE GEO GROUP, Inc., a Florida corporation; the CITY OF ADELANTO, a municipal entity; GEO LIEUTENANT DURAN, sued in her individual capacity; GEO LIEUTENANT DIAZ, sued in her individual capacity; GEO SERGEANT CAMPOS, sued in his | Case No. 5:18-cv-01125-SP <br><br> **DEFENDANTS DIAZ AND CAMPOS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** <br><br> *[Notice of Motion and Motion for Summary Judgment; Memorandum of Points & Authorities; Declaration of Carmen M. Aguado; and [Proposed] Order Filed Concurrently]* <br><br> Hearing Date:    December 17, 2019 <br> Time:              10:00 a.m. <br> Courtroom :      3 <br><br> Mag. Judge: Honorable Sheri Pym |

1  individual capacity; SARAH JONES,
2  sued in her individual capacity; THE
   UNITED STATES OF AMERICA;
3  and DOES 1-10, individuals,

4              Defendants.

5

6

7          Defendants Diaz and Campos hereby submit this Separate Statement of

8  Uncontroverted Facts and Conclusions of Law together with references to evidence

9  in support of their Motion for Summary Judgment:

10              **UNCONTROVERTED FACTS & SUPPORTING EVIDENCE**

11

| Defs' SUF No. | UNCONTROVERTED MATERIAL FACTS | EVIDENTIARY SUPPORT |
|---|---|---|
| 1. | In May 2011, GEO entered into contract with U.S. Immigration & Customs Enforcement (ICE) for the detention and care of immigrant detainees at the Adelanto Detention Facility ("Facility"), which houses immigrant detainees, through an intergovernmental service agreement with the City. | Janecka Decl. ¶¶ 3, 5; Hart Decl. ¶¶ 3-6, 12; Ex. "L" [Agenda Report dated May 17, 2011]; Ex. "M" [2011 Service Agreement]. |
| 2. | Thereafter, in June 2019, GEO directly contracted with ICE to manage and operate the Facility. | Janecka Decl. ¶ 3. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 2 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| 3. | Irrespective of the change of parties to the contract, GEO has been solely responsible for the management and operations of the Facility since May 2011. | Janecka Decl. ¶ 3; Hart Decl. ¶¶ 3-6, 12. |
|---|---|---|
| 4. | In June 2017, Plaintiffs were housed at the Adelanto Detention Facility ("Facility") that is operated and managed by The GEO Group, Inc. within a dorm. Upon being admitted, Plaintiffs were provided a detainee handbook that established the rules at the Facility, including the rules pertaining to the "count" procedures. | Diaz Decl. 12, Ex. "A" [Detainee Handbook]; Ex. "N" [Cornejo Depo.] at 22:18-23:1; Ex. "O" [Campos Depo.] at 38:18-41:19; Ex. "U" [Martinez Depo.] at 34:9-25. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 3 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 5. | Irrespective of whether the Plaintiffs read the handbook, they all knew that there were multiple times throughout the day when they had to return to their bunks to be counted by GEO staff and that it was a direct order to return to their bunks. | Ex. "N" [Cornejo Depo.] at 22:18-23:1, 24:15-25:14; Ex. "O" [Campos Depo.] at 38:18-41:19, 42:8-21, 43:4-8, 44:8-45:17, 84:11-25, 104:8-18; Ex. "P" [Castillo Depo.] at 31:19-34:6, 67:9-68:9, 71:21-72:1; Ex. "Q" [Mejia Depo.] at 27:18-23, 29:21-30:8, 64:10- 66:10, 68:10-16; Ex. "R" [Rodriguez Depo.] at 38:20-:39:11, 48:7-14, 51:22-25, 92:2-14; Ex. "S" [Garcia Depo.] at 22:1-13, 38:11-14, 60:6-21; Ex. "T" [Diaz Depo] at 18:9-21, 46:5-20; Ex. "U" [Martinez Depo.] at 34:9-25, 37:7-22, 37:21-28:2. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4829-0455-8228 v1
05788-0035

- 4 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 6. | This procedure was/is referred to as "count" and it is a critical time period at the Facility. In short, the officer assigned to the dorm will announce that it is time for count by using words to the effect of "get back to your bunks," "count time," or "rack up" approximately ten (10) minutes before the count to allow detainees time to prepare for count (e.g. use the restroom). When the detainee returns to his/her bunk for count, this is commonly referred to as "racking up for count." The entire count process takes approximately 30 to 45 minutes. If count is not completed within an hour, the Facility enters an "emergency count" and ICE then becomes involved. | Diaz Decl. ¶¶ 10-13, Ex. "A" [Detainee Handbook - OFFICIAL COUNTS]; Ex. "N" [Cornejo Depo.] at 22:18-23:1, 24:15-25:14; Ex. "Y" [GEO Martinez Depo.] at 63:20-64:19; Ex. "Z" [Reyes Depo.] at 164:10-24. |
| 7. | The count procedure is important because it is the mechanism by which the Facility is able to determine whether a detainee has escaped from the Facility. | Diaz Decl. ¶¶ 10-13, Ex. "N" [Cornejo Depo.] at 22:18-23:1, 24:15-25:14; Ex. "Y" [GEO Martinez Depo.] at 63:20-64:19; Ex. "Z" [Reyes Depo.] at 164:10-24. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4829-0455-8228 v1
05788-0035

- 5 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 8. | Plaintiffs also understood that failing to comply with orders would result in consequences. | Ex. "N" [Cornejo Depo.] at 22:18-23:1, 24:15-25:14; Ex. "O" [Campos Depo.] at 38:18-41:19, 42:8-21, 43:4-8, 44:8-45:17, 104:8-18; Ex. "P" [Castillo Depo.] at 31:19-34:6, 71:21-72:1; Ex. "Q" [Mejia Depo.] at 27:18-23, 29:21-30:8, 64:10- 66:10, 68:10-16; Ex. "R" [Rodriguez Depo.] at 38:20-:39:11, 48:7-14, 51:22-25, 92:2-14; Ex. "T" [Diaz Depo] at 18:9-21; Ex. "U" [Martinez Depo.] at 34:9-25, 37:7-22, 37:21-28:2. |

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4829-0455-8228 v1
05788-0035

- 6 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | |
|---|---|
| 9. On or around June 11, 2017, Plaintiffs met and prepared a list of demands/grievances to present to GEO staff. Thereafter, on June 12, 2017, at around 6:22:24 a.m., Plaintiff Castillo gave the list of demands that was (1) written in Spanish and (2) did <u>not</u> mention that Plaintiffs were engaging in a "hunger strike" to the dorm officer, Officer Gillon, who Plaintiffs knew only spoke English and was unable to read the letter. | Ex. "F" [Video recording] at 6:22:24 a.m.; Ex. "N" [Cornejo Depo.] at 36:23-37:20, 42:3-16, 42:25-43:8, 50:8-13; Ex. "O" [Campos Depo.] 78:11-24, 80:9-20, 82:2-24, 84:11-25, 85:7-23; Ex. "P" [Castillo Depo.] at 72:2-10, 74:21-75:19, 73:7-19, 77:5-15 (acknowledging Officer Gillon was unable to read or understand the list of demands), 74:21-75:19; Ex. "Q" [Mejia Depo.] at 56:2-57:6, 61:7-62:25; Ex. "R" [Rodriguez Depo.] at 79:16-80:14, Ex. 1 [Copy of list of demands], 81:4-82:25 (translating the list of demands); Ex. "S" [Garcia Depo.] at 34:16-36:5; Ex. "T" [Diaz Depo] at 42:16-43:12, 50:19-51:25, 62:19-63:3; Ex. "V" [Gillon Depo] at 14:1-4, 86:11-20, 142:6-21. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4829-0455-8228 v1
05788-0035

- 7 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 10. | The list of demands was presented of Officer Gillon after breakfast (the first meal that Plaintiffs missed, but did not inform anyone that they intentionally skipped) and immediately before count, which Plaintiffs knew routinely took place after breakfast. Since Officer Gillon does not speak Spanish, another detainee was asked to translate the list of demands (that did not mention a "hunger strike") to Officer Gillon. | Ex. "F" [Video recording] at 6:24 a.m.; Ex. "N" [Cornejo Depo.] at 42:3-16, 42:25-43:8; Ex. "O" [Campos Depo.] at 78:5-10, 84:11-25; Ex. "P" [Castillo Depo.] at 65:20-24, 67:9-68:9; Ex. "Q" [Mejia Depo.] at 55:19-20; Ex. "R" [Rodriguez Depo.] at 85:12-86:21, 95:9-7; Ex. "S" [Garcia Depo.] at 32:12-18; Ex. "T" [Diaz Depo] at 41:21-42:3, 42:16-43:12, 46:5-20, 52:21-53:10, 63:21-64:21; Ex. "U" [Martinez Depo.] at 72:17-73:8, 78:24-80:2. |
| 11. | At around 6:23 a.m., Plaintiff Castillo handed Officer Gillon a second piece of paper that listed Plaintiffs' names. Meanwhile, the other plaintiffs sat at two separate tables in the dayroom of the dorm to gain attention. | Ex. "F" [Video recording] at 6:23 a.m.; Ex. "N" [Cornejo Depo.] at 45:15-18, 55:2-7; Ex. "P" [Castillo Depo.] at 70:25-71:15; Ex. "R" [Rodriguez Depo.] at 148:20-24; Ex. "T" [Diaz Depo] at 63:4-16, 78:2-79:13 (stating second piece of paper was a list of names) |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 8 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| 12. | At around 6:29:59 a.m., Officer Jindi arrived to the dorm to relieve Officer Gillon. Officer Gillon explained to Officer Jindi that he received papers and that "something" was going on. Officer Jindi instructed him to give the papers to Lt. Diaz. Thereafter, Officer Jindi announced that it was time for count and Plaintiffs chose to ignore the order. | Ex. "F" [Video recording] at 6:29:59 a.m.; Ex. "O" [Campos Depo.] at 175:6-20 ("I know that I wasn't complying with the rules."); Ex. "P" [Castillo Depo.] at 67:9-68:9, 78:7-79:4; Ex. "Q" [Mejia Depo.] at 67:22-68:1, 70:1-9; Ex. "R" [Rodriguez Depo.] at 92:2-14, 96:8-19; Ex. "S" [Garcia Depo.] at 38:11-14; Ex. "T" [Diaz Depo] at 46:5-20; Ex. "U" [Martinez Depo.] at 87:1-89:3; Ex. "V" [Gillon Depo] at 90:19-21, 157:8-11, 158:17-20; Ex. "X" [Jindi Depo.] at 35:9-14, 36:8-37:5, 37:8-19, 40:15-20, 58:23-25, 63:8-14. |

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 9 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| 13. | Officer Jindi had no information that there was an alleged hunger strike. Indeed, Plaintiffs admitted that they are guessing that Officer Gillon was informed and knew they were on a hunger strike. | Ex. "O" [Campos Depo.] at 85:7-23, 94:22-95:15; Ex. "Q" [Mejia Depo.] at 58:15-59:14, 60:11-14, 63:23-25, 67:8-11, 159:7-24 (admitting that the papers that were given to Officer Gillon did not mention the hunger strike, but he assumes that someone verbally told Officer Gillon); Ex. "R" [Rodriguez Depo.] at 95:9-7; Ex. "S" [Garcia Depo.] at 38:20-24; Ex. "T" [Diaz Depo] at 50:4-10, 73:7-14, 77:23-78:3; Ex. "U" [Martinez Depo.] at 78:24-80:2; Ex. "V" [Gillon Depo] at 92:25-93:3 (demonstrating that he was never told verbally of the hunger strike); Ex. "X" [Jindi Depo.] at 35:9-14, 36:8-37:5; Ex. "Y" [GEO Martinez Depo.] at 141:4-18. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4829-0455-8228 v1
05788-0035

- 10 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 14. | Officer Jindi used her radio and requested assistance because Plaintiffs were not returning to their bunks for count per her order – she did not communicate any additional information. In response to Officer Jindi's request, at around 6:32:51 a.m., Lt. Diaz arrived to the dorm with GEO officers, including Officer Gillon, Officer Martinez, and Officer Reyes, and LVN Jones. | Diaz Decl. ¶¶ 9, 14; Campos Decl. ¶ 4; Ex. "F" [Video recording] at 6:30:37 to 6:32:51 a.m.; Ex. "R" [Rodriguez Depo.] at 96:8-19; Ex. "S" [Garcia Depo.] at  38:15-19; Ex. "T" [Diaz Depo] at 53:8-24; Ex. "V" [Gillon Depo] at 97:15-24, 98:10-14; Ex. "W" [Jones Depo.] at 79:1-25, 80:25-81:5; Ex. "X" [Jindi Depo.] at 37:8-19, 40:15-20, 41:12-17, 41:22-42:9; Ex. "Y" [GEO Martinez Depo.] at 44:4-12; Ex. "Z" [Reyes Depo.] at 76:12-77:5, 77:6-14. |
| 15. | Before entering the dorm, in addition to the information that Lt. Diaz learned from Officer Jindi over the radio, she had the list of Plaintiffs' names that were written on the second piece of paper and was informed that Plaintiffs were *threatening* to start a hunger strike if their demands were not met. | Diaz Decl. ¶ 9; Ex. "V" [Gillon Depo] at 90:19-21, 157:8-11. |

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 11 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| 16. | When Lt. Diaz, the GEO officers, and LVN Jones arrived to the dorm at around 6:32 a.m., Plaintiffs were seated at two tables in the dayroom of the dorm and refused to go to their bunks for count. Then, Lt. Diaz asked Plaintiffs to go to their bunks for count in a stern tone. In response, Plaintiffs stated that they wanted to speak to ICE. Because Plaintiffs were not responding to Lt. Diaz commands (and in some cases, not even paying attention to her), she asked GEO officers to translate, which they did. | Ex. "F" [Video recording] at 6:32 to 6:33:09; Diaz Decl. ¶¶ 14-17; Ex. "N" [Cornejo Depo.] at 73:13-16; Ex. "O" [Campos Depo.] at 93:4-21; Ex. "P" [Castillo Depo.] at 78:7-79:4; Ex. "Q" [Mejia Depo.] at 67:22-68:1, 68:10-16, 70:1-9; Ex. "V" [Gillon Depo] at 98:24-99:2, 160:15-161:3; Ex. "W" [Jones Depo.] at 88:21-89:12, 93:11-22; Ex. "Y" [GEO Martinez Depo.] at 54:10-17; Ex. "Z" [Reyes Depo.] at 79:12-80:5, 86:9-20, 94:1-22. |
| --- | --- | --- |
| 17. | Throughout the incident, GEO Officers Martinez, who speaks Spanish fluently, and Reyes unsuccessfully tried to negotiate and reason with Plaintiffs. They explained that ICE was not present at the Facility; thus, Plaintiffs should return to their bunks for count and revisit their strike/protest after count, when ICE was present. But, Plaintiffs refused and repeated they wanted to see ICE. | Ex. "F" [Video recording] at 6:37:06 to 6:37:49, 6:43:17; Ex. "V" [Gillon Depo] at 163:21-25, 164:1-4; Ex. "Y" [GEO Martinez Depo.] at 13:6-12, 45:12-25, 46:21-47:4, 47:5-9, 60:7-61:13, 61:21-63:19, 65:4-18, 72:6-73:8, 94:23-95:8, 99:17-100:18; Ex. "Z" [Reyes Depo.] at 92:10-24, 147:13-18; 149:2-150:25, 164:7-25; 183:19-24. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 12 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| 18. | Plaintiffs admitted that they knew Lt. Diaz and the responding GEO officers ordered them in English and Spanish to return to their bunks and/or leave the tables. They also understood that there would be consequences, including the use of OC spray, for their decision to ignore the commands | Ex. "N" [Cornejo Depo.] at 73:13-16; Ex. "P" [Castillo Depo.] at 78:7-79:4, 80:1-81:3, 82:17-83:20, 84:7-14, 84:18-25; Ex. "Q" [Mejia Depo.] at 70:1-71:25, 73:16-18; Ex. "R" [Rodriguez Depo.] at 97:2-16; Ex. "U" [Martinez Depo.] at 87:1-89:3. |
| --- | --- | --- |
| 19. | Significantly, Plaintiffs also admitted they had no intention of complying with the commands unless force was used as this would help them garner more attention for their strike. | Ex. "O" [Campos Depo.] at 97:5-12, 103:11-104:6; Ex. "T" [Diaz Depo] at 83:2-3 ("Because we were already there. We needed to fight for it, to struggle, to be heard.") |
| 20. | Importantly, during the entire time that Plaintiffs ignored the commands from Lt. Diaz and GEO officers, at least one plaintiff admitted that they did not tell Lt. Diaz they were on a hunger strike. | Ex. "O" [Campos Depo.] at 94:22-95:15. |
| 21. | After giving numerous commands, at around 6:38:01, four officers (including Officers Gillon, Reyes and Martinez) removed Plaintiffs Martinez and Rodriguez from Table A by pulling Plaintiffs Martinez and Rodriguez by their arms. | Diaz Decl. ¶ 18; Ex. "F" [Video recording] at 6:38:00 to 6:38:52; Ex. "V" [Gillon Depo] at 105:21-106:23, 110:1-6, 112:3-15, 113:2-5, 164:22-25, 166:6-24. |

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 13 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 22. | Instead of complying, Plaintiffs Martinez and Rodriguez grabbed on to each other, which forced the officers to physically separate them. The officers separated the two plaintiffs at around 6:38:50 without striking, punching, or kicking them; the officers simply pulled them apart. | Diaz Decl. ¶¶ 18, 47; Ex. "F" [Video recording] at 6:38:01 to 6:38:52; Ex. "R" [Rodriguez Depo.] at 101:7-23, 102:4-19; Ex. "V" [Gillon Depo] at 167:6-16; Ex. "W" [Jones Depo.] at 110:11-21; Ex. "Y" [GEO Martinez Depo.] at 88:25-89:2. |
| 23. | Plaintiff Rodriguez was escorted out of the dorm by two officers without issue at around 6:39 a.m. While Plaintiff Rodriguez claims he was struck and sprayed with OC numerous times while in the dorm room, the uncontroverted video evidence and his alleged injuries demonstrates otherwise. | Diaz Decl. ¶¶ 18, 26, 47; Ex. "F" [Video recording] at 6:38:54 to 6:39; Ex. "R" [Rodriguez Depo.] at 98:11-21, 99:7-9, 101:7-23, 103:3-6, 105:2-11, 114:3-10, 152:12-24, 153:7-10; Ex. "W" [Jones Depo.] at 110:11-21. |
| 24. | Additionally, Plaintiff Rodriguez claims that once he was outside the dorm room, unknown GEO personnel pushed him into a wall. Again, his injuries demonstrate otherwise. | Ex. "R" [Rodriguez Depo.] at 107:5-108:23, 114:3-10; Ex. "W" [Jones Depo.] at 163:20-24; SAC ¶ 11-12 (demonstrating Plaintiff Martinez allegedly lost his tooth). |

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 14 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| 25. | Plaintiff Martinez, however, continued to actively resist after being separated from Plaintiff Rodriguez by digging his heels into the ground. As Officers Martinez and Gillon tried to escort him out past Table B, he grabbed on to Plaintiff Diaz, who was seated at Table B. The officers separated the two men by pulling Plaintiff Martinez off of Plaintiff Diaz. | Diaz Decl. ¶ 18; Ex. "F" [Video recording] at 6:38:55 to 6:39:07; Ex. "T" [Diaz Depo] at 83:17-23; Ex. "V" [Gillon Depo] at 168:15-19; Ex. "U" [Martinez Depo.] at 89:10-91:19, 93:4-94:6, 94:11-95:5; Ex. "Y" [GEO Martinez Depo.] at 74:7-75:14, 75:22-76:1, 79:22-80:2, 80:6-21, 80:22-81:24, 84:2-85:16, 87:20-88:24, 88:25-89:2, 89:3-4; Ex. "W" [Jones Depo.] at 110:11-21. |
| --- | --- | --- |
| 26. | Plaintiff Martinez continued to resist and struggle the entire time the officers were trying to escort him out of the dorm, which is depicted on the video recording from 6:39:05-6:39:23 a.m. | Ex. "F" [Video recording] at 6:39:05 to 6:39:23. |
| 27. | While Plaintiff Martinez alleges he was sprayed while outside the dorm by a blonde woman and two other unknown GEO supervisors, the video demonstrates Lt. Diaz did not leave the dorm after Plaintiff Martinez was escorted out. | Diaz Decl. ¶¶ 20, 26; Ex. "F" [Video recording]; Ex. "U" [Martinez Depo.] at 105:9-107:24. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 15 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| 28. | Additionally, there was no OC spray deployed outside of the dorm or while any plaintiff was restrained by an officer. | Ex. "U" [Martinez Depo.] at 105:9-107:24; Ex. "Y" [GEO Martinez Depo.] at 84:20-85:7; Ex. "Z" [Reyes Depo.] at 117:11-18. |
| --- | --- | --- |
| 29. | While the officers were escorting Plaintiffs Martinez and Rodriguez out of the dorm, Plaintiffs Cornejo, Castillo, Mejia, Diaz, and Campos (seated at Table B) interlocked their arms and tethered their feet around the legs of Table B to make it more difficult for the officers to remove them from the table – i.e. Plaintiffs were actively resisting – and Plaintiff Garcia moved from Table A to Table B and sat next to Plaintiff Campos. | Diaz Decl. ¶¶ 19- 20, 22; Ex. "F" [Video recording] at 6:39:32; Ex. "T" [Diaz Depo] at 81:20-25; Ex. "P" [Castillo Depo.] at 86:6-87:24; Ex. "V" [Gillon Depo] at 104:24-105:5. |
| 30. | The dorm, during a period that is supposed to be very quiet, was in an uproar and completely out of control. | Diaz Decl. ¶ 21; Campos Decl. ¶ 6; Ex. "O" [Campos Depo.] at 90:11-91:22; Ex. "W" [Jones Depo.] at 103:20-104:10; Ex. "Y" [GEO Martinez Depo.] at 131:24-132:12, 133:1-18, 134:7-11. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4829-0455-8228 v1
05788-0035

- 16 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 31. | Lt. Diaz determined that Plaintiffs Diaz, Campos, Cornejo, Castillo, Garcia and Mejia were not going to comply with the verbal commands, they were actively resisting (interlocking arms), and they were causing the other detainees to become, likewise, out of control. | Diaz Decl. ¶ 23; McCusker Decl. ¶¶ 7-8; Ex. "H" [GEO's Use of Force policy]; Ex. "O" [Campos Depo.] at 103:11-104:6, 105:9-16. |
| 32. | She recognized that she needed to immediately regain control because the continued delay in resolving the confrontation was causing a major disturbance within the dorm and entire Facility. | Diaz Decl. ¶¶ 23-24; McCusker Decl. ¶¶ 7-8; Ex. "H" [GEO's Use of Force policy]; Ex. "Y" [GEO Martinez Depo.] at 68:20-69:4. |

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 17 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 33. | Thus, after trying to de-escalate the situation for more than 9 minutes, giving several warning that she planned to use OC spray, which Plaintiffs understood, and GEO officers unsuccessfully trying to pull plaintiffs away from the tables, Lt. Diaz deployed an extremely short burst of OC spray down the middle of Table B. | Diaz Decl. ¶¶ 23-25; Ex. "F" [Video recording] at 6:42:12; Ex. "Y" [GEO Martinez Depo.] at 95:17-25, 95:25-96:6, 97:9-11, 98:8-17, 98:18-21; Ex. "Z" [Reyes Depo.] at 91:6-10, 95:9-96:8, 98:2-23; Ex. "O" [Campos Depo.] at 97:25-98:18, 99:16-23,100:4-11; Ex. "Q" [Mejia Depo.] at 73:16-18, 76:7-15; Ex. "P" [Castillo Depo.] at 80:1-81:3, 84:7-14, 88:9-24, 94:21-95:1; Ex. "R" [Rodriguez Depo.] at 97:2-16; Ex. "V" [Gillon Depo] at 104:24-105:5. |
| 34. | Lt. Diaz intentionally did not directly spray Plaintiffs Diaz, Campos, Cornejo, Castillo, Garcia and Mejia despite their contentions otherwise. | Diaz Decl. ¶¶ 23-25; Ex. "F" [Video recording] at 6:42:21; Ex. "N" [Cornejo Depo.] at 71:10-12; Ex. "O" [Campos Depo.] at 97:25-98:18, 99:16-23,100:4-11; Ex. "P" [Castillo Depo.] at 89:25-90:18, 93:5-10; Ex. "Q" [Mejia Depo.] at 74:18-75:5, 76:7-15; Ex. "Y" [GEO Martinez Depo.] at 95:17-25, 95:25-96:6, 97:9-11 |

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 18 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| 35. | This was the only use of force that Lt. Diaz directly used. | Diaz Decl. ¶¶ 25-27; Ex. "X" [Jindi Depo.] at 49:24-50:23; Ex. "Y" [GEO Martinez Depo.] at 84:20-85:7, 98:3-5. |
|---|---|---|
| 36. | Not only were Plaintiffs Diaz, Campos, Garcia, Cornejo, Castillo, and Mejia unfazed by Lt. Diaz's warnings, but they were similarly unfazed by the short burst of spray as they continued to remain seated at Table B with their arms interlocked and heads down on the table. | Diaz Decl. ¶ 27; Ex. "F" [Video recording] at 6:42:21 a.m. |
| 37. | At 6:43:47, after trying to convince the remaining plaintiffs to comply, Officers Reyes and Martinez attempted to remove Plaintiff Garcia from the table by pulling on his arms. | Diaz Decl. ¶ 28; Ex. "F" [Video recording] at 6:43:47 – 6:44:09 a.m.; Ex. "S" [Garcia Depo.] at 45:3-14; Ex. "Y" [GEO Martinez Depo.] at 99:17-100:18, 101:6-102:22, 103:9-19; Ex. "Z" [Reyes Depo.] at 186:15-25. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 19 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 38. | As depicted in the video, Plaintiff Garcia lunged away from the Officers Reyes and Martinez towards the table, which prompted a third officer to assist. | Diaz Decl. ¶ 28; Ex. "F" [Video recording] at 6:43:47 – 6:44:09 a.m.; Ex. "S" [Garcia Depo.] at 45:3-14; Ex. "Y" [GEO Martinez Depo.] at 99:17-100:18, 101:6-102:22, 103:9-19; Ex. "Z" [Reyes Depo.] at 186:15-25. |
| 39. | While the three officers (including Officers Reyes and Martinez) struggled to remove Plaintiff Garcia, Plaintiff Campos grabbed on to Plaintiff Garcia and pushed the officers away from Garcia with his left hand/arm (at around 6:43:54). | Diaz Decl. ¶ 28; Ex. "F" [Video recording] at 6:43:47 – 6:44:09 a.m.; Ex. "S" [Garcia Depo.] at 45:3-14; Ex. "Y" [GEO Martinez Depo.] at 99:17-100:18, 101:6-102:22, 103:9-19; Ex. "Z" [Reyes Depo.] at 186:15-25. |
| 40. | As a result, the officers had to separate Plaintiffs Garcia and Campos by pulling them apart. | Diaz Decl. ¶ 28; Ex. "F" [Video recording] at 6:43:47 – 6:44:09 a.m.; Ex. "S" [Garcia Depo.] at 45:3-14; Ex. "Y" [GEO Martinez Depo.] at 99:17-100:18, 101:6-102:22, 103:9-19; Ex. "Z" [Reyes Depo.] at 186:15-25. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4829-0455-8228 v1
05788-0035

- 20 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 41. | Eventually, Officers Reyes and Martinez were able to gain control of Plaintiff Garcia and escort him out of the dorm. | Diaz Decl. ¶ 28; Ex. "F" [Video recording] at 6:43:47 – 6:44:09 a.m.; Ex. "S" [Garcia Depo.] at 45:3-14; Ex. "Y" [GEO Martinez Depo.] at 99:17-100:18, 101:6-102:22, 103:9-19; Ex. "Z" [Reyes Depo.] at 186:15-25. |
| 42. | Meanwhile, Lt. Diaz realized the situation was completely out of control (Plaintiffs were interlocking arms and refusing to comply, and the other detainees were also yelling and acting in a rowdy manner), so she called for additional assistance. | Diaz Decl. ¶ 27; Campos Decl. ¶¶ 4-5; Ex. "R" [Rodriguez Depo.] at 100:22-24 [acknowledged other detainees in dorm were yelling]; Ex. "W" [Jones Depo.] at 103:20-104:10; Ex. "X" [Jindi Depo.] at 46:8-47:2; Ex. "Y" [GEO Martinez Depo.] at 131:24-132:12, 133:1-18. |
| 43. | Next, at around 6:45:58, officers attempted to pull Plaintiff Mejia from the table. To do so, the officers tried to unlink Plaintiffs Mejia's arms from Plaintiff Castillo. | Diaz Decl. ¶ 29; Ex. "F" [Video recording] at 6:45:58-6:46:18; Ex. "Q" [Mejia Depo.] at 76:20-77:4, 77:23-78:5; Ex. "V" [Gillon Depo] at 170:14-16, 170:23-117:3. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4829-0455-8228 v1
05788-0035

- 21 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 44. | Despite Plaintiff Mejia resisting (which he denies) the officers are able to remove Plaintiffs Mejia from the table at around 6:46:18 without using any force. | Diaz Decl. ¶¶ 29, 47; Ex. "F" [Video recording] at 6:45:58-6:46:18; Ex. "Q" [Mejia Depo.] at 82:10-20; Ex. "V" [Gillon Depo] at 170:14-16, 170:23-117:3. |
| 45. | Additionally, while Plaintiff Mejia stated he was hit an unknown amount of times by unknown officers and thrown against a wall, the video evidence demonstrates that he was *not*. The officers only pulled him from the table and, thereafter, struggled to gain control of him while he was resisting the entire time. | Diaz Decl. ¶ 47; Ex. "F" [Video recording] at 6:45:58-6:46:18; Ex. "Q" [Mejia Depo.] at 35:24-37:13, 76:20-77:4, 77:14-22, 77:23-78:5, 78:6-79:3, 79:11-18, 80:9-19; 82:10-20, 109:22-110:15, 110:16-20. |
| 46. | As the officers were trying to walk Plaintiff Mejia out of the dorm, at around 6:46:18, Sgt. Campos responded to Lt. Diaz's call and entered the dorm. | Diaz Decl. ¶ 30; Campos Decl. ¶¶ 4-6; Ex. "F" [Video recording] at 6:46:18; Ex. "X" [Jindi Depo.] at 47:6-11. |
| 47. | Sgt. Campos immediately assisted the two officers, including Officer Martinez, that were struggling to remove Plaintiff Mejia, who was being combative. | Diaz Decl. ¶ 31; Campos Decl. ¶ 7; Ex. "F" [Video recording] at 6:46:18-6:46:24; Ex. "Y" [GEO Martinez Depo.] at 107:19-109:16; Ex. "Z" [Reyes Depo.] at 110:3-111:4. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 22 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| 48. | Namely, even though Plaintiff Mejia had his arms behind his back and there was an officer on each of his arms, he, nevertheless, resisted and tried to run from the officers. The two officers had not gained his compliance despite their efforts. | Campos Decl. ¶ 7; Ex. "Y" [GEO Martinez Depo.] at 107:19-109:16, 110:3-9; Ex. "F" [Video recording] at 6:46:18-6:46:24. |
| 49. | Thus, Sgt. Campos guided the group to the wall because this would allow the officers to secure Plaintiff Mejia's arms so he could be escorted out without injury. | Campos Decl. ¶¶ 7-8; Ex. "Y" [GEO Martinez Depo.] at 107:19-109:16, 110:3-9; Ex. "F" [Video recording] at 6:46:18-6:46:24. |
| 50. | While Sgt. Campos assisted the officers with Plaintiff Mejia, others officers continued to try to break up Plaintiffs Diaz, Campos, Cornejo, and Castillo by untangling their arms, but the plaintiffs resisted and refused to be removed from Table B. | Diaz Decl. ¶ 31; Campos Decl. ¶ 9; Ex. "F" [Video recording] at 6:46:24. |
| 51. | Eventually, the three officers were able to pull Castillo away from the table without using any force. | Diaz Decl. ¶¶ 31, 47; Campos Decl. ¶ 17; Ex. "V" [Gillon Depo] at 171:4-20; Ex. "F" [Video recording] at 6:46:24-6:46:33. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4829-0455-8228 v1
05788-0035

- 23 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 52. | While Plaintiff Castillo makes various allegations about being punched and states that he was slammed against glass, the video evidence demonstrates otherwise. | Diaz Decl. ¶¶ 31, 47; Campos Decl. ¶ 17; Ex. "F" [Video recording] at 6:46:24-6:46:33; Ex. "P" [Castillo Depo.] at 89:3-8, 89:15-24, 94:7-9; Ex. "V" [Gillon Depo] at 171:4-20. |
| 53. | Sgt. Campos then walked toward Table B where officers were trying to grab Plaintiffs Diaz, Campos, and Cornejo's arms to separate them (the remaining plaintiffs still had their arms interlocked.) | Diaz Decl. ¶ 32; Campos Decl. ¶ 9; Ex. "F" [Video recording] at 6:46:33-6:46:44. |
| 54. | Plaintiffs Diaz, Campos, and Cornejo grabbed on to each other to prevent the officers from gaining their compliance. In turn, the officers struggled to separate them. | Campos Decl. ¶ 9; Diaz Decl. ¶ 31; Ex. "F" [Video recording] at 6:46:18-6:46:44. |
| 55. | Plaintiff Cornejo admitted that the officers were trying to separate them "from the hands" and Plaintiff Campos acknowledged the officers tried to separate them one by one. | Ex. "N" [Cornejo Depo.] at 68:21-22; Ex. "O" [Campos Depo.] at 107:12-15. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 24 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 56. | Sgt. Campos determined that any further delay in bringing this situation under control would result in a major disturbance and further serious disorder within the dorm. | Campos Decl. ¶ 10; McCusker Decl. ¶¶ 7-8; Ex. "H" [GEO's Use of Force policy]. |
| 57. | As such, he determined that it was reasonable under the circumstances to deploy OC spray | Campos Decl. ¶ 10; McCusker Decl. ¶¶ 7-8; Ex. "H" [GEO's Use of Force policy]. |
| 58. | He instructed the officers to move away from the table, yelled, "OC spray warning," and commanded the plaintiffs at the table to stop resisting. | Campos Decl. ¶ 10. |
| 59. | Based on the video recording, at around 6:46:46 a.m. to 6:46:47 a.m., Sgt. Campos deployed OC spray in the direction of Plaintiffs Diaz, Campos, and Cornejo, who had their arms interlocked and were huddled together across the table. | Campos Decl. ¶ 11; Diaz Decl. ¶ 32. Campos Decl. ¶ 11; Ex. "F" [Video recording] at 6:46:46-6:46:47; Ex. "T" [Diaz Depo] at 83:17-23. |
| 60. | Then, he moved to the opposite end of the table and deployed a second extremely short burst of OC spray towards Plaintiffs Diaz and Campos. | Campos Decl. ¶ 11; Diaz Decl. ¶ 32; Ex. "F" [Video recording] at 6:46:47-6:46:52. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4829-0455-8228 v1
05788-0035

- 25 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 61. | At 6:46:56, one officer grabbed Plaintiff Campos and Plaintiff Campos fell to the ground. The same officer then picked up Plaintiff Campos and quickly placed him against a wall to gain control of Plaintiff Campos. | Ex. "F" [Video recording] at 6:46:56-6:47:27; Ex. "O" [Campos Depo.] at 108:3-13,112:13-113:6, 113:20-23, 202:20-24, 205:25-206:3. |
| 62. | Plaintiff Campos then returned to the table. Immediately thereafter, a different officer tried to pull Plaintiff Campos from the table, but Plaintiff Campos continued to refuse to stand up (despite having just demonstrated he could walk). Two officers lifted Plaintiff Campos to take him out and, eventually, Plaintiff Campos stood up on his own to exit the dorm. | Ex. "F" [Video recording] at 6:47:27-6:47:57. |
| 63. | Plaintiff Campos admitted that he was never struck, kicked, or punched during the entire incident, and he admits that he was never "brutally beaten" as alleged in his operative complaint. | Ex. "O" [Campos Depo.] at 111:5-113:6, 113:8-18, 113:24-114:7, 114:24-115:20, 205:13-18. |
| 64. | At 6:47:01, Plaintiff Diaz was escorted out of the dorm by an officer without issue. | Ex. "F" [Video recording] at 6:47:01-6:47:24; Ex. "T" [Diaz Depo] at 59:4-11. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 26 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| 65. | At most, Plaintiff Diaz alleges that the officers "pinched" him, pulled on his arms in an effort to separate him from the other plaintiffs, and applied pressure behind his ears; but admitted that no one ever punched him. | Ex. "T" [Diaz Depo] at 56:7-25, 57:6-58:3, 83:21-23; Ex. "Y" [GEO Martinez Depo.] at 77:14-78:1 (explaining that after presence and verbal commands fail to gain the detainee's compliance, pressure points can be utilized and that there is a pressure point behind the ear). |
|---|---|---|
| 66. | Sgt. Campos returned to the table and despite having deployed OC spray, Plaintiff Cornejo was still actively resisting the officers, including Officer Martinez. | Campos Decl. ¶¶ 13-14; Ex. "F" [Video recording] at 6:47:09-6:47:54; Ex. "Y" [GEO Martinez Depo.] at 113:7-114:12, 115:11-117:19 |
| 67. | Plaintiff Cornejo wrapped his legs to the table, which required three officers to try to remove him. | Campos Decl. ¶ 14; Ex. "F" [Video recording] at 6:47:09-6:47:54; Ex. "Y" [GEO Martinez Depo.] at 113:7-114:12, 115:11-117:19. |
| 68. | His refusal to stand up forced the officers to carry him out of the dorm. | Campos Decl. ¶ 14, Ex. "F" [Video recording] at 6:47:09-6:47:54; Ex. "Y" [GEO Martinez Depo.] at 113:7-114:12, 115:11-117:19. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 27 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| 69. | While Plaintiff Cornejo alleges that the officers hit him on the edge of the table, the video demonstrates that, instead, beginning at around 6:47:09, Cornejo grabbed the table to prevent the officers from removing him. | Ex. "F" [Video recording] at 6:47:09-6:47:54; Ex. "N" [Cornejo Depo.] at 73:19-74:14 |
|---|---|---|
| 70. | By 6:48:19, Plaintiffs had been taken out of the dorm – i.e. 16 minutes after Diaz had initially entered in an effort to quell the disturbance caused by Plaintiffs. | Diaz Decl. ¶ 31. |
| 71. | Medical staff was present throughout the entire incident in the dorm and confirmed that the GEO officers did not strike Plaintiffs. | Ex. "V" [Gillon Depo] at 165:4-9; Ex. "W" [Jones Depo.] at 101:23-25, 110:11-21, 114:4-10, 117:8-13, 120:25-121:8, 124:14-25. |
| 72. | Additionally, throughout the entire incident, Plaintiffs' failure to comply with commands prompted the other detainees in the dorm to become disruptive and ignore the commands to return to their bunks, which Plaintiffs acknowledged was a direct result of their conduct. | *See* Ex. "O" [Campos Depo.] at 90:11-91:22; Ex. "W" [Jones Depo.] at 103:20-104:10; Ex. "Y" [GEO Martinez Depo.] at 131:24-132:12, 133:1-18, 134:7-11. |

| 73. | Also, while Officer Jindi was present during the incident, she was not involved in any use of force. | Ex. "X" [Jindi Depo.] at 50:24-51:4, 51:10-16, 52:3-5, 69:1-4. |
|---|---|---|
| 74. | After each plaintiff was removed from the dorm, they were taken to the recreation yard where they were handcuffed (if they had not already been handcuffed inside the dorm) and Officer Gillon, Officer Martinez, Officer Reyes, Sgt. Campos, and Lt. Diaz had no further contact with them. | Ex. "N" [Cornejo Depo.] at 76:9-78:6; Ex. "O" [Campos Depo.] 116:2-6; Ex. "P" [Castillo Depo.] at 95:8-21, 96:5-11; Ex. "Q" [Mejia Depo.] at 81:19-25, 83:2-11; Ex. "R" [Rodriguez Depo.] at 108:15-23; Ex. "T" [Diaz Depo] at 84:8-23; Ex. "U" [Martinez Depo.] at 100:14-24; Ex. "V" [Gillon Depo] at 118:22-119:5, 113:23-25, 114:7-10; Ex. "Y" [GEO Martinez Depo.] at 84:17-19, 85:21-23, 87:1-9, 93:11-17, 110:10-19; 117:24-118:3, 118:18-119:1; Ex. "Z" [Reyes Depo.] at 117:19-118:13, 119:1-20; Campos Decl. ¶ 14; Diaz Decl. ¶ 31. |

Burke, Williams &
Sorensen, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 29 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| 75. | Thereafter, they were transported from the recreation yard to another room where Plaintiffs admitted they were seen by medical staff. | Ex. "N" [Cornejo Depo.] at 78:25-79:2; Ex. "O" [Campos Depo.] at 119:6-19, 129:16-23; Ex. "P" [Castillo Depo.] at 101:13-103:6, 103:22-3; Ex. "Q" [Mejia Depo.] at 39:4-10, 84:3-24; Ex. "R" [Rodriguez Depo.] at 111:6-112:7, 113:18-114:2; Ex. "S" [Garcia Depo.] at 47:25-48:13; Ex. "T" [Diaz Depo] at 89:8-13; Ex. "U" [Martinez Depo.] at 60:18-19, 126:4-19; Ex. "W" [Jones Depo.] at 143:14-144:25, 149:2-21 [after a use of force incident, medical is required to take the detainee's vitals and review a questionnaire], 153:8-154:24 [responded to intake to evaluate Plaintiffs after they were cleared to see medical], 155:23-156:12, 163:20-24 [recalled that only one plaintiff had a specific complaint], 174:15-175:5. |

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4829-0455-8228 v1
05788-0035

- 30 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | |
|---|---|
| 76. | Additionally, all Plaintiffs were decontaminated (placed in showers to rinse off the OC spray with water) and provided new uniforms. | Diaz Decl. ¶¶ 34-35; McCusker Decl. ¶ 9; Ex. "H" [GEO's Use of Force policy]; Ex. "N" [Cornejo Depo.] at 76:9-78:6, 78:25-79:2, 82:14-17; Ex. "O" [Campos Depo.] at 119:6-19, 129:16-23, 130:13-17; Ex. "P" [Castillo Depo.] at 104:18-105:9; Ex. "Q" [Mejia Depo.] at 86:18-22, 87:22-88:19, 90:2-8, 91:16-92:4, 96:24-97:14; Ex. "R" [Rodriguez Depo.] at 163:9-164:8 [estimated that a half an hour after the incident he was decontaminated and in a new uniform]; Ex. "S" [Garcia Depo.] at 48:15-25; Ex. "T" [Diaz Depo] at 86:12-22; Ex. "U" [Martinez Depo.] at 55:6-11; 58:2-5, 58:14-19, 104:6-18, 108:11-25 |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4829-0455-8228 v1
05788-0035

- 31 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 77. | While Plaintiffs claim the decontamination process was intended to further their injuries, it was not. Water, which is the method used at the Facility for decontamination purposes, does reactivate the tingling sensation caused by the OC spray; however, it is necessary to remove the spray. | McCusker Decl. ¶ 9; Diaz Decl. ¶ 8; Ex. "H" [GEO's Use of Force policy]. |
| 78. | After Plaintiffs were decontaminated and seen by medical staff, they were taken to administrative segregation. | McCusker Decl. ¶¶ 9, 12; Ex. "H" [GEO's Use of Force policy]; Ex. "A" [Detainee Handbook –"Disciplinary Segregation"]; Ex. "I" [GEO's Restrictive Housing Units policy]; Ex. "O" [Campos Depo.] at 133:1-134:7; Ex. "Q" [Mejia Depo.] at 97:21-98:4; Ex. "R" [Rodriguez Depo.] at 113:6-14; Ex. "S" [Garcia Depo.] at 50:11-15, 55:21-56:8 |

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 32 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| 79. | Plaintiffs were informed that there was an investigation as a result of their conduct and a potential for discipline. | McCusker Decl. ¶ 13; Diaz Decl. ¶¶ 38-40; Ex. "A" [Detainee Handbook – "Disciplinary Segregation"]; Ex. "C" [Administrative Segregation Orders related to Plaintiffs]; Ex. "D" [Incident of Prohibited Acts and Notice of Charges related to Plaintiffs]; Ex. "I" [GEO's Restrictive Housing Units policy]; Ex. "N" [Cornejo Depo.] at 87:7-19; Ex. "O" [Campos Depo.] at 133:1-134:7; Ex. "P" [Castillo Depo.] at 111:6-24; Ex. "Q" [Mejia Depo.] at 98:9-99:13, 156:10-21; Ex. "R" [Rodriguez Depo.] at 153:13-154:19; Ex. "S" [Garcia Depo.] at 50:11-15, 55:21-56:8; Ex. "U" [Martinez Depo.] at 70:17-20. |
| --- | --- | --- |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4829-0455-8228 v1
05788-0035

- 33 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| 80. | Plaintiff Mejia admitted that he was given the opportunity to express that he did not feel he had done anything wrong (however, at his deposition he acknowledged that his actions were wrong). | Ex. "Q" [Mejia Depo.] at 99:23-100:6, 101:14-102:5, 162:6-163:5. |
|---|---|---|
| 81. | Later, they were informed that the outcome of the investigation related to their failure to follow commands and engage in a group demonstration mandated they would be disciplined. | McCusker Decl. ¶ 13; Diaz Decl. ¶¶ 37-40; Ex. "A" [Detainee Handbook – "Disciplinary Segregation"]; Ex. "C" [Administrative Segregation Orders related to Plaintiffs]; Ex. "D" [Incident of Prohibited Acts and Notice of Charges related to Plaintiffs]; Ex. "I" [GEO's Restrictive Housing Units policy]; Ex. "N" [Cornejo Depo.] at 88:7-89-20, 91:8-92:6; Ex. "O" [Campos Depo.] at 177:11-16; Ex. "S" [Garcia Depo.] at 50:11-15, 55:21-56:8; Ex. "T" [Diaz Depo] at 136:6-11. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 34 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 82. | Pursuant to GEO policy and procedure, it is appropriate to place detainees in administrative segregation during a pending investigation and, thereafter, segregation if guilt is established – which is the case here (Plaintiffs were found in violation of Rule 213, which prohibits inciting or engaging in group demonstrations). A detainee can only be placed in disciplinary segregation after a finding by the Institution Disciplinary Panel or equivalent that the detainee is guilty of a rule violation. | McCusker Decl. ¶ 12; Diaz Decl. ¶¶ 37-40; Ex. "A" [Detainee Handbook – "Disciplinary Segregation"]; Ex. "C" [Administrative Segregation Orders related to Plaintiffs]; Ex. "D" [Incident of Prohibited Acts and Notice of Charges related to Plaintiffs]; Ex. "I" [GEO's Restrictive Housing Units policy]. |
| 83. | While in segregation, Plaintiffs were provided medical care, checked on by GEO staff, and given access to showers and phones. | Ex. "P" [Castillo Depo.] at 108:6-13; Ex. "Q" [Mejia Depo.] at 103:1-22; Ex. "S" [Garcia Depo.] at 67:8-11; Ex. "U" [Martinez Depo.] at 151:6-10; 151:21-152:2 |
| 84. | Plaintiff Campos admitted that he had no issues contacting his attorney while in segregation, and stated that he only had an issue reaching his attorney for *one* day; yet, he never informed GEO of the alleged issue. | Ex. "O" [Campos Depo.] 141:9-12, 142:15-18, 145:9-24, 146:13-17, 202:21-203:12, 204:1-11. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4829-0455-8228 v1
05788-0035

- 35 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 85. | Plaintiff Garcia claimed that he was not permitted to contact his attorney after the incident; yet, he was permitted to visit with his attorney. | Ex. "S" [Garcia Depo.] at 58:6-59:23, 64:6-65:4. |
| 86. | After the visit, Plaintiff Garcia's attorney gave him a new number to call and he was able to contact his attorney. | Ex. "S" [Garcia Depo.] at 58:6-59:23, 64:6-65:4. |
| 87. | Plaintiff Diaz stated that he had an issue contact his attorney; however, once his attorney spoke to GEO staff about the issue (since Diaz never raised the issue with GEO), the issue was resolved. | Ex. "T" [Diaz Depo] at 94:19-21, 99:19-22, 100:1-3. |
| 88. | Plaintiff Martinez claimed that GEO staff restricted his ability to contact his attorney and as soon as he raised the issue to GEO staff, the issue was resolved. | Ex. "U" [Martinez Depo.] at 156:16-158:7, 158:14-159:3 |
| 89. | Plaintiffs Cornejo and Castillo admitted that they did not have issues contacting their attorneys. | Ex. "N" [Cornejo Depo.] at 94:4-95:11, 97:2-17 (stating he only had issues contacting his friend after the incident), 98:2-6, 100:1-4, 100:11-21; Ex. "P" [Castillo Depo.] 22:1-8 [permitted to make calls while in segregation to persons on his "approved call list"], 112:15-113:5. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 36 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| | | |
|---|---|---|
| 90. | Plaintiffs Cornejo, Campos, Castillo, and Rodriguez admitted that they never filed grievances or complaints to GEO about mistreatment or the use of force incident. | Ex. "N" [Cornejo Depo.] at 35:20-22; Ex. "O" [Campos Depo.] at 18:23-19:19, 66:5-20, 138:5-12; Ex. "P" [Castillo Depo.] at 61:11-62:6 [complained to ICE about mistreatment by GEO guards but never filed complaint or grievance to GEO], 110:25-111:2; Ex. "R" [Rodriguez Depo.] at 66:11-12, 127:18-21. |
| 91. | Plaintiff Mejia claims that he filed a complaint/grievance; yet, he has no recollection as to what the subject matter of the complaint/grievance. | Ex. "Q" [Mejia Depo.] at 48:1-25, 50:11-16 |
| 92. | GEO officers do *not* have access to detainee complaints/grievance and, thus, have no means of determining which detainees have filed complaints/grievances. | Diaz Decl. ¶¶ 43-45; Ex. "V" [Gillon Depo] at 24:6-11; Ex. "Z" [Reyes Depo.] at 47:4-10; Diaz Decl. ¶ 42. |
| 93. | Also, GEO personnel can only *recommend* to ICE that a detainee have his/her access to the phones/restricted, but ICE has to make the final decision. | Janecka Decl. ¶¶ 14-17; McCusker Decl. ¶ 14; Diaz Decl. ¶ 46; Campos Decl. ¶ 19; Ex. "J" [GEO's Communication policy]. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 37 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

| 94. | After the use of force incident, the incident was reviewed by supervisory staff and it was determined that the force was determined that the use of force was reasonable and appropriate. | Diaz Decl. ¶¶ 36, 47; Campos Decl. ¶ 17; Janecka Decl. ¶¶ 5-8; McCusker Decl. ¶¶ 10-11; Ex. "B" [Use of Force Report dated June 12, 2017]; Ex. "E" [After-Action Review Report Use of Force/Restraints related to the June 12, 2017, incident]; Ex. "F" [Video recording of incident reviewed at the after-action review]; Ex. "G" [SIR, Notification and Emails to GEO Corporate related to the June 12, 2017, incident]; Ex. "H" [GEO's Use of Force policy]; Ex. "Z" [Reyes Depo.] at 123:3-8. |

## CONCLUSIONS OF LAW

Based on the foregoing undisputed facts, which have been construed in the light most favorable to Plaintiffs, the Court makes the following conclusions of law:

1.     Plaintiffs cannot bring Section 1983 claims against Defendants Campos and Diaz and their only remedies against Defendants Campos and Diaz are state law claims. *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1019 (9th Cir. 1999); *Minneci v. Pollard*, 565 U.S. 118, 131 (2012).

2.     In Section 1983 cases, "'a plaintiff must [allege facts] that each

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 38 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

1   Government-official defendant, through the official's own individual actions, has

2   violated the Constitution.'" *Keates v. Koile*, 883 F.3d 1228, 1242 (9th Cir. 2018)

3   (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

4       3.    Additionally, Section 1983 does not impose vicarious or *respondeat*

5   *superior* liability; thus, a supervisor can only be "liable for constitutional violations

6   of his subordinates if the supervisor participated in or directed the violations, or

7   knew of the violations and failed to act to prevent them." *Schwarm v. Craighead*

8   552 F.Supp.2d 1056, 1082 (E.D. Cal. 2008).

9       4.    In the detention context, "a viable claim of First Amendment

10   retaliation entails five basic elements: (1) An assertion that a state actor took some

11   adverse action against an inmate; (2) because of; (3) that inmate's protected

12   conduct, and that such action; (4) chilled the inmate's exercise of his First

13   Amendment rights; and; (5) the action did not reasonably advance a legitimate

14   correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005)

15   (*citing Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000)).

16       5.    The Fourteenth Amendment is the applicable standard for Plaintiffs'

17   excessive force claim. *See Green v. Baca*, 306 F. Supp. 2d 903, 909 (C.D. Cal.

18   2004); *Bloomgarden v. Cty. of Los Angeles*, No. CV 11-9449 DDP (MRW), 2016

19   WL 11502799, at *2 (C.D. Cal. Nov. 10, 2016).

20       6.    More recently, in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472

21   (2015), the Supreme Court held that to prove an excessive force claim under the

22   Fourteenth Amendment, a pretrial detainee must show that the officers' use of force

23   was objectively unreasonable.

24       7.    To prove a violation of procedural due process under the Fourteenth

25   Amendment, a plaintiff must show: (1) a life, liberty, or property interest exists and

26   has been interfered with by the state; <u>and</u> (2) the procedures attendant upon the

27   deprivation of an existing interest were constitutionally insufficient. *Kentucky Dept.*

28   *Of Corrections v. Thompson,* 490 U.S. 454, 460 (1990).

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 39 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

8.      To prove a violation of substantive due process, a plaintiff must allege governmental action which deprives the plaintiff of life, liberty, or property interest, which may not be deprived regardless of the procedures employed. *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 846-850 (1992).

9.      "The essential elements of a cause of action for assault are: (1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm." *So v. Shin*, 212 Cal. App. 4th 652, 668–69 (2013), *as modified on denial of reh'g* (Jan. 28, 2013).

10.     "A battery is any intentional, unlawful and harmful contact by one person with the person of another." *Ashcraft v. King*, 228 Cal. App. 3d 604, 611 (Ct. App. 1991).

11.     "In an action for civil battery the element of intent is satisfied if the evidence shows defendant acted with a 'willful disregard' of the plaintiff's rights…" or the intent to harm or offend plaintiff. *Ashcraft*, 228 Cal. App. 3d at 611; *So*, 212 Cal. App. 4th at 669.

12.     The elements for a claim of IIED are (1) extreme and outrageous conduct by the defendant with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffering severe emotional distress; and (3) actual and proximate causation. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).

13.     To prevail on a Section 52.1 claim, a plaintiff must therefore prove (1) a violation of a constitutional or statutory right (2) by intimidation, threats or coercion. *Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230, 1242 (2007).

14.     A consensus has formed in the California Courts of Appeal that Bane

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4829-0455-8228 v1
05788-0035

- 40 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT

1   Act liability requires a threatening, intimidating, or coercive act separate and

2   distinct from the act that deprived the plaintiff of his or her federal or state rights.

3   *See Bender v. Cnty. of Los Angeles*, 217 Cal. App. 4th 968, 979 (2013).

4         15.    "The elements of a cause of action for negligence … are (a) a legal

5   duty to use due care; (b) a breach of such legal duty; and (c) the breach as the

6   proximate or legal cause of the resulting injury." *Ladd v. Cnty. of San Mateo*, 12

7   Cal. 4th 913, 917 (1996).

8         16.    A party can only be liable for aiding and abetting an intentional tort if

9   the party is aware that the other's conduct constitutes a breach of duty *and* provides

10  substantial assistance or encouragement to the other to so act. *Austin B. v.*

11  *Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 879 (2007).

12
13  Dated: November 12, 2019        BURKE, WILLIAMS & SORENSEN, LLP

14
15                             By: /s/ Carmen M. Aguado

16                               Susan E. Coleman
                                 Carmen M. Aguado

17                             Attorneys for Defendants

18                             THE GEO GROUP, INC., DIAZ,
                               CAMPOS and CITY OF ADELANTO

19
20
21
22
23
24
25
26
27
28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4829-0455-8228 v1
05788-0035

- 41 -

5:18-CV-01125-SP
DEFENDANTS CAMPOS AND DIAZ'S
SEPARATE STATEMENT