Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
Carmen M. Aguado (SBN 291941)
E-mail: caguado@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600    Fax: 213.236.2700

Attorneys for Defendants
THE GEO GROUP, INC., CITY OF ADELANTO, CAMPOS, and DIAZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR ARNOLDO RIVERA MARTINEZ; ISAAC ANTONIO LOPEZ CASTILLO; JOSUE VLADIMIR CORTEZ DIAZ; JOSUE MATEO LEMUS CAMPOS; MARVIN JOSUE GRANDE RODRIGUEZ; ALEXANDER ANTONIO BURGOS MEJIA; LUIS PEÑA GARCIA; JULIO CESAR BARAHONA CORNEJO, as individuals,<br><br>Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, Inc., a Florida corporation; the CITY OF ADELANTO, a municipal entity; GEO LIEUTENANT DIAZ, sued in her individual capacity; GEO SERGEANT CAMPOS, sued in his individual capacity; SARAH JONES, sued in her individual capacity; THE UNITED STATES OF AMERICA; CORRECT CARE SOLUTIONS, INC.; and DOES 1-10, individuals,<br><br>Defendants. | Case No. 5:18-cv-01125-SP<br><br>**DECLARATION OF GIOVANNI CAMPOS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>Magistrate Judge:        Honorable Sheri Pym |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4848-1256-7723 v1
10/31/19

- 1 -

5:18-CV-01125-SP
CAMPOS DECL. ISO MSJ

I, GIOVANNI CAMPOS, declare as follows:

1. I have personal knowledge of the matters set forth herein, except as to those matters stated on information and belief, and would competently testify thereto if called and sworn as a witness. This declaration is made in support of Defendants' motion for summary judgment or, in the alternative, summary adjudication.

2. From July 2012 to December 2017, I was employed by The GEO Group, Inc. ("GEO") and worked at the Adelanto Detention Facility ("Facility"). Once I was hired, I was required to complete pre-service training, which included training on GEO's use of force policy, hunger strike policy, and how to communicate with detainees. Also, I was required to complete an annual in-service training.

3. In or around May of 2017, I was promoted from officer to sergeant, and I was required to complete additional training that built upon my pre-service training; however, it was more specific to the use of chemical agents (e.g. OC spray). After I completed the training that was specific to the use of chemical agents, I was certified in the use of OC spray and, as a result, I did not have to gain authorization from a supervisor to deploy OC spray.

4. On June 12, 2017, I was assigned to the west facility (the entire Facility is comprised of two facilities – east and west). Sometime after 6:15 a.m., I heard a call on my radio that requested assistance to the east facility. Thereafter, I heard a second and third call on my radio that requested a supervisor to the east facility and, based on the tone of the individual that made the request, it appeared to be urgent. Based on information and belief, the radio calls that I heard were broadcast to the entire Facility.

5. At the time that I received the calls for assistance, I was assisting with a task that needed to be completed by a specific time. Once I completed the task, I rushed to respond to east facility, specifically a dorm that is referred to as "2-

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4848-1256-7723 v1
10/31/19

- 2 -

5:18-CV-01125-SP
CAMPOS DECL. ISO MSJ

1  Charlie." Based on a video recording of the incident, I arrived at around 6:46:18
2  a.m. In other words, when I arrived to the dorm, I was aware that the disturbance
3  had been ongoing for at a minimum 10 minutes before my arrival based on the
4  timing of the calls for assistance.

5        6.     Generally, at around 6:30 a.m. to 7:30 a.m., the Facility is silent and
6  the detainees that are in dorms are at their bunks because count is being conducted.
7  When I arrived to the dorm, I immediately recognized a major disturbance as there
8  were detainees standing up away from their bunks, yelling, and using profanities. I
9  heard officers giving various commands and directives in English and Spanish such
10 as "hands behind your back," "come with me," and "stand up" to detainees that
11 were near a table (later identified as plaintiffs in this lawsuit). The remaining
12 plaintiffs were not complying with the commands, and it appeared to be a rebellion
13 against the officers. The rebellion was especially concerning because it was taking
14 place during count, and I questioned whether the rebellion was a distraction for an
15 even larger disturbance given the timing.

16       7.     After I entered, I almost immediately assisted two officers that were
17 struggling to remove Plaintiff Mejia, who appeared to be combative. Plaintiff Mejia
18 had his arms behind his back and there was one officer on each arm of Plaintiff
19 Mejia. Nevertheless, Plaintiff Mejia resisted and tried to run from them. The two
20 officers had not gained his compliance despite their efforts. As such, I guided the
21 group to the wall because this would allow the officers to gain control of Plaintiff
22 Mejia, who was actively resisting. I believe that I only touched the officer's arm
23 when I directed the group to the wall.

24       8.     I wanted the officers to guide Plaintiff Mejia to the wall (chest to the
25 wall) because it would allow the officers to properly secure his arms and get closer
26 to Plaintiff Mejia so he could be escorted out without injuring himself or others. I
27 was also concerned that if Plaintiff Mejia continued to resist, he would cause the
28 entire group to trip and fall.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4848-1256-7723 v1
10/31/19

- 3 -

5:18-CV-01125-SP
CAMPOS DECL. ISO MSJ

9. Once Plaintiff Mejia was moved toward the wall, my attention was diverted to one of the tables in the dayroom of the dorm. I saw officers trying to grab the arms of Plaintiffs Diaz, Campos, and Cornejo, who were being combative. Plaintiffs Diaz, Campos, and Cornejo grabbed on to each other to prevent the officers from gaining their compliance. In turn, the officers struggled to separate them.

10. It was clear that any further delay in bringing this situation under control would result in a major disturbance. In fact, it was clear upon my entrance into the dorm that there was already a major disturbance and serious disorder within the dorm. As such, I determined that it was reasonable under the circumstances to deploy OC spray. Per my training, prior to deploying OC spray, I instructed the officers to move away from the table and I yelled, "OC spray warning." I also commanded the plaintiffs at the table to stop resisting.

11. Based on the video recording, at around 6:46:46 a.m. to 6:46:47 a.m., I deployed OC spray in the direction of Plaintiffs Diaz, Campos, and Cornejo. Plaintiffs Diaz, Campos, and Cornejo were huddled together at the table and had their arms linked.

12. Then, I moved to the opposite end of the table and deployed a second extremely short burst of OC spray towards Plaintiffs Diaz and Campos.

13. Next, I turned my back to the involved plaintiffs (at around 6:47:02 a.m.) and addressed the other detainees in the dorm that were near their bunks. I wanted to ensure there were no other disturbances taking place.

14. I returned to the table at around 6:47:35 a.m. and despite having deployed OC spray, Plaintiffs Diaz and Cornejo were still actively resisting the officers. Plaintiff Cornejo wrapped his legs to the table, which required three officers to try to remove him. His refusal to stand up forced the officers to carry him out of the dorm. By 6:48:19 a.m., all Plaintiffs were out of the dorm and I had no further contact with them. Significantly, based on the video, I never made

contact with Plaintiffs Garcia, Rodriguez, and Martinez as they had already been escorted out of the dorm by the time that I arrived. Also, I had no contact with Plaintiff Castillo because he escorted out while I was walking towards the table.

15. After the incident, I assisted in evacuating the detainees from the dorm and escorting them to the recreation yard. The other detainees remained in the recreation yard until they were cleared by medical.

16. I was never assigned to east facility in 2017, and I had no knowledge of Plaintiffs prior to the incident. Moreover, I had no knowledge as to whether any of the plaintiffs had filed grievances or complaints either before or after the incident. After the last plaintiff was escorted out of the dorm, I never saw the plaintiffs again.

17. In my role as a sergeant, I had the responsibility to supervise subordinate officers. If a subordinate officer's conduct failed to comply with GEO's policies and procedures, I would immediately address and fix the issue. If I was unable to resolve the issue myself, I would report the conduct to a lieutenant. All conduct that fails to comply with GEO's policies and procedures is documented on an incident report. On the date of the incident, I did not witness any subordinate officers failing to comply with GEO's policies and procedures. Had I witnessed such conduct, I would have immediately stopped and corrected it.

18. Additionally, I have never supervised Officer Reyes and Gillon - two of the officers that were present during the use of force incident. I worked in east facility with Officer Martinez, another officer present during the use of force incident, in or around 2014 or 2015, but I did not work closely with him in the year prior to the incident nor have I ever supervised him.

///
///
///
///

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4848-1256-7723 v1
10/31/19

- 5 -

5:18-CV-01125-SP
CAMPOS DECL. ISO MSJ

19. While employed with GEO, I did not have the ability to determine whether detainees would have restrictions placed on their access to the phones. I have no knowledge of any incidents at the Facility where detainees were prevented from making calls to certain numbers. To the extent that Plaintiffs had restrictions placed on their access to the phones, I have no knowledge of said restriction(s) nor did I take any actions to cause said restriction.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

Executed on 11/8/19, 2019, at MARICOPA, Arizona.

GIOVANNI CAMPOS

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4848-1256-7723 v1
10/31/19

- 6 -

5:18-CV-01125-SP
CAMPOS DECL. ISO MSJ