Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
Carmen M. Aguado (SBN 291941)
E-mail: caguado@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600      Fax: 213.236.2700

Attorneys for Defendants
THE GEO GROUP, INC., CITY OF ADELANTO, CAMPOS, and DIAZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR ARNOLDO RIVERA MARTINEZ; ISAAC ANTONIO LOPEZ CASTILLO; JOSUE VLADIMIR CORTEZ DIAZ; JOSUE MATEO LEMUS CAMPOS; MARVIN JOSUE GRANDE RODRIGUEZ; ALEXANDER ANTONIO BURGOS MEJIA; LUIS PEÑA GARCIA; JULIO CESAR BARAHONA CORNEJO, as individuals,<br><br>Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, Inc., a Florida corporation; the CITY OF ADELANTO, a municipal entity; GEO LIEUTENANT DIAZ, sued in her individual capacity;  GEO SERGEANT CAMPOS, sued in his individual capacity; SARAH JONES, sued in her individual capacity; THE UNITED STATES OF AMERICA; CORRECT CARE SOLUTIONS, INC.; and DOES 1-10, individuals,<br><br>Defendants. | Case No. 5:18-cv-01125-SP<br><br>**DECLARATION OF JAMES HART IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>Magistrate<br>Judge:           Honorable Sheri Pym |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4830-5843-1147 v2
10/31/19

- 1 -

5:18-CV-01125-SP
HART DECL. ISO MSJ

I, JAMES HART, declare as follows:

1. I have personal knowledge of the matters set forth herein, except as to those matters stated on information and belief, and would competently testify thereto if called and sworn as a witness. This declaration is made in support of Defendants' motion for summary judgment or, in the alternative, summary adjudication.

2. From January 2005 to 2015, I was the City Manager of the City of Adelanto ("City"). In my capacity as the City Manager, I served as the Chief Executive Officer for the City and coordinated the various functions of City government, as directed by the City Council. This included approving and signing various contracts.

3. In June 2010, The GEO, Group, Inc. ("GEO") purchased the Adelanto Community Correctional Facility (ACCF) with the intent of entering into a contract with either the Federal Government to house Federal inmates or the State of California to house female inmates. Per the agreement between the City and GEO that was created when GEO purchased ACCF, if GEO was able to directly negotiate an agreement with the Federal Government, Department of Homeland Security (as opposed to a Request for Proposal process) the City would act as the agent for the Intergovernmental Services Agreement ("IGSA").

4. Thereafter, GEO was able to secure an agreement with the Federal Government, Department of Homeland Security, to house 1300 Immigration and Custom Enforcement (ICE) inmates without going through a Request for Proposal process. Thus, per the agreement between GEO and the City, the City entered into the IGSA with ICE on or around May 2011 for the detention and care of immigrant detainees. This information was explained in detail in an Agenda Report dated May 17, 2011 that is attached to the Appendix of Exhibits as Exhibit "L."

///

///

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4830-5843-1147 v2
10/31/19

- 2 -

5:18-CV-01125-SP
HART DECL. ISO MSJ

5.      In May 2011, I signed off on a Service Contract that was made between the City and GEO. The City entered into a contract with GEO to manage and operate the Adelanto Detention Facility ("Facility"), care for the detainees within the Facility, and to otherwise perform the City's responsibilities and obligations set forth in the Intergovernmental Services Agreement ("IGSA"). Per the agreement, GEO was required to perform all duties and accept all responsibilities incumbent on the City pursuant to the IGSA. Attached to the Appendix of Exhibits as Exhibit "M" is a true and correct copy of the 2011 contract between the City and GEO.

6.      In effect, GEO entered into contract with ICE through an intergovernmental service agreement with the City. It was clearly delineated in the aforementioned agreements that GEO would operate and manage the day-to-day operations at the Facility. In other words, the City did not retain control of the operations at the Facility in light of its agreement with GEO.

7.      Before entering into the May 2011 contract with GEO, I thoroughly vetted GEO to ensure that it was capable of providing the services that were required of it. I was aware that GEO was already operating another facility in the City, and that GEO was one of the largest national companies that specialized in privatized corrections, detention, and mental health treatment. GEO had a long standing reputation and documented experience in operating private facilities.

8.      I met with George Zoley, the founder and CEO of GEO, and several GEO personnel before I recommended that the City contract with GEO. It was (and still is) a policy of the City to thoroughly vet and research any agency, business, corporation, etc. prior to committing to a contract with said agency, business, corporation, etc., which I did here.

///
///
///

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4830-5843-1147 v2
10/31/19

- 3 -

5:18-CV-01125-SP
HART DECL. ISO MSJ

9. During my tenure as City Manager, I visited the Facility to discuss operations and assess whether it was being managed properly. I had open communication with the Warden and if an issue came to my attention, I would speak to the Warden in order to resolve the issue. I was also invited to attend quarterly meetings at the Facility.

10. In addition to my visits to the Facility, I was aware that ICE was present at the Facility and, thus, overseeing the management and operations. Also, the Nakamoto Group, a contractor hired by Immigration and Customs Enforcement (ICE) to inspect its facilities, conducted inspections of the Facility that I was notified of.

11. To keep the City appraised of operations at the Facility, GEO would forward correspondence between GEO and ICE to the City and ICE would provide the City with the findings from any reviews or inspections at the Facility. Also, periodically, GEO personnel would attend City Council meetings.

12. As the City Manager, it was my understanding that if a serious issue existed at the Facility it would be brought to the City's attention by GEO, ICE, the Nakamoto Group, or any of the various agencies that inspected the Facility. However, I was never apprised of any issues, which was consisted with my understanding of GEO's long standing reputation for providing competent and quality services in running private correction and detention facilities.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

Executed on 11/4, 2019, at Victorville, California.

JAMES HART

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4830-5843-1147 v2
10/31/19

- 4 -

5:18-CV-01125-SP
HART DECL. ISO MSJ