| | |
|---|---|
| Rachel Steinback, SBN 310700 | Carol A. Sobel, SBN 84483 |
| Law Office of Rachel Steinback | Monique A. Alarcon, SBN 311650 |
| P.O. Box 291253 | Law Office of Carol Sobel |
| Los Angeles, CA 90029 | 725 Arizona Avenue, Suite 300 |
| (t) 213-537-5370 | Santa Monica, CA 90401 |
| (f) 213-232-4003 | (t) 310-393-3055 |
| (e) steinbacklaw@gmail.com | (e) carolsobel@aol.com |
| | (e) monique.alarcon8@gmail.com |

*Attorneys for Plaintiffs.*
*[Additional Counsel on Following Page]*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR ARNOLDO RIVERA MARTINEZ; ISAAC ANTONIO LOPEZ CASTILLO; JOSUE VLADIMIR CORTEZ DIAZ; JOSUE MATEO LEMUS CAMPOS; MARVIN JOSUE GRANDE RODRIGUEZ; ALEXANDER ANTONIO BURGOS MEJIA; LUIS PEÑA GARCIA; JULIO CESAR BARAHONA CORNEJO, as individuals, | Case No. 5:18-cv-01125-SP *Assigned to: Honorable Sheri Pym* **PLAINTIFFS' OPPOSITION TO DEFENDANTS DIAZ AND CAMPOS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| Plaintiffs, | |
| v. | ***Hearing:*** Date: December 17, 2019 Time: 10:00 a.m. Courtroom: 3 |
| The GEO Group, Inc., a Florida corporation; the City of Adelanto, a municipal entity; GEO Lieutenant Diaz, sued in her individual capacity; GEO Sergeant Campos, sued in his individual capacity; Sarah Jones, sued in her individual capacity; The United States of America; Correct Care Solutions, Inc.; and DOES 1-10, individuals; | |
| Defendants. | |

Catherine Sweetser, SBN 271142
Kristina Harootun, SBN 308718
Schonbrun Seplow Harris & Hoffman LLP
11543 W. Olympic Boulevard
Los Angeles, CA 90064
(t) 310-396-0731
(f) 310-399-7040
(e) csweetser@sshhlaw.com
(e) kharootun@sshhlaw.com

Colleen Flynn, SBN 234281
Law Office of Colleen Flynn
3435 Wilshire Boulevard, Suite 2910
Los Angeles, CA 90010
(t) 213-252-9444
(f) 213-252-0091
(e) cflynn@yahoo.com

Matthew Strugar, SBN 232951
Law Office of Matthew Strugar
3435 Wilshire Boulevard, Suite 2910
Los Angeles, CA 90010
(t) 323-696-2299
(e) matthew@matthewstrugar.com

*Attorneys for Plaintiffs.*

# <u>TABLE OF CONTENTS</u>

LEGAL STANDARD ...........................................................................................2

I. The Court Has Already Determined Section 1983 Applies to GEO Group and There Are Disputes of Material Fact That Prevent Summary Judgment on Plaintiffs' Constitutional Claims. .......................................................................2

    A.   Defendants Diaz and Campos Can Be Held Liable under Section 1983...3

    B.   Defendants Are Not Entitled to Summary Judgment on Plaintiffs' Excessive Force Claim.........................................................................4

       1.  Every aspect of the Fourteenth Amendment inquiry is in dispute. ..........5

          a)  The amount of force used...................................................6

          b)  The extent of Plaintiffs' injuries ........................................7

          c)  The need for the use of force / The severity of the security problem at issue.. ...........................................................8

          d)  Effort made by the officers to temper or to limit the amount of force.. ...............................................................10

       2.  Ninth Circuit law compels the denial of summary judgment.................11

       3.  Defendants proffer unpublished, inapposite cases that do not compel summary adjudication in their favor.........................................12

       4.  A genuine issue of material fact exists as to whether Defendants Diaz and Campos are liable in their supervisory roles............................14

    C.   Questions of Material Fact Exist with Regard to Defendant Diaz's Deprivation of Plaintiffs' Due Process. ...................................16

II. Disputes of Material Fact Prevent Summary Judgment on Plaintiffs' State Law Claims. ......................................................................................................18

    A.   Battery [Claim One] & Assault [Claim Two] Must Be Tried To A Jury 19

    B.   Plaintiffs' IIED Claim [Claim Four] Must Be Tried To A Jury...............20

    C.   Defendants Misstate the Law Applicable to Plaintiffs' Bane Act Claim [Claim 8] .........................................................................22

    D.   Disputed Facts Prevent Summary Judgment on Plaintiffs' Negligence Claim [Claim Ten] ...........................................................23

    E.   Defendants May Be Held Liable For The Torts Of Their Subordinates..25

CONCLUSION................................................................................................25

i

1

# <u>TABLE OF AUTHORITIES</u>

2

*Page(s)*

3

<u>*Federal Cases*</u>

4

*Abston v. City of Merced*,

5

2011 WL 2118517 (C.D. Cal. 2011)................................................................18, 23

6

*Anderson v. Liberty Lobby, Inc.*,

7

477 U.S. 242 (1986) ...........................................................................................2

8

*Barlow v. Ground*,

9

943 F.2d 1132 (9th Cir. 1991) ............................................................................16

10

*Barnett v. Centoni*,

11

31 F.3d 813 (9th Cir. 1994) ............................................................................16, 17

12

*Barrow v. San Francisco Sheriff's Dep't*,

13

2019 WL 3554367 (N.D. Cal., Aug. 5, 2019).....................................................12

14

*Caliz v. City of Los Angeles*,

15

2019 WL 3937801 (C.D. Cal. June 25, 2019) ....................................................11

16

*Candler v. Santa Rita Cty. Jail Watch Commander*,

17

2015 WL 333298 (N.D. Cal. Jan. 26, 2015) .......................................................16

18

*Celotex Corp. v. Catrett*,

19

477 U.S. 317 (1986) ...........................................................................................2

20

*Chaudhry v. City of Los Angeles*,

21

751 F.3d 1096 (9th Cir. 2014)............................................................................22

22

*Chew v. Gates*,

23

27 F.3d 1432 (9th Cir. 1994)..............................................................................16

24

*Clement v. Gomez*,

25

298 F.3d 898 (9th Cir. 2002)..............................................................................24

26

*Cunningham v. Gates*,

27

229 F.3d 1271 (9th Cir. 2000).............................................................................14

28

# TABLE OF AUTHORITIES – CONT'D

*Page(s)*

*Federal Cases - Continued*

*DaSilva v. Cascade Cty. Detention Ctr.*,
   2018 WL 5812659 (D. Mont., Sept. 27, 2018) .......................................................12

*Diaz v. Eagle Produce Ltd. P'ship*,
   521 F.3d 1201 (9th Cir. 2008)..................................................................................2

*Dillman v. Tuolumne County*,
   2013 WL 1907379 (E.D. Cal. May 7, 2013)...........................................................22

*Garlick v. Cty. of Kern*,
   167 F. Supp. 3d 1117 (E.D. Cal. 2016)...................................................................22

*Gomez v. City of Fremont*,
   730 F. Supp. 2d 1056 (N.D. Cal. 2010) ..................................................................12

*Graham v. Connor*,
   490 U.S. 386 (1989) ..................................................................................................5

*Grizzle v. Cty. of San Diego*,
   2018 WL 1603212 (S.D. Cal. Apr. 3, 2018) ...........................................................16

*Hansen v. Black*,
   885 F.2d 642 (9th Cir. 1989)...................................................................................15

*Harveston v. Cunningham*,
   216 Fed. Appx. 682 (9th Cir. 2007) ..................................................................13, 14

*Johnson v. Lewis*,
   217 F.3d 726 (9th Cir. 2000)...................................................................................24

*Jones v. Cty. of Contra Costa*,
   2016 WL 1569974 (N.D. Cal. Apr. 19, 2016) .........................................................22

*Kingsley v. Hendrickson*,
   135 S.Ct. 2466 (2015) ............................................................................................5, 6

1

## <u>TABLE OF AUTHORITIES – CONT'D</u>

2

*Page(s)*

3

*Federal Cases - Continued*

4

*Larez v. City of Los Angeles*,

5

946 F.2d 630 (9th Cir. 1991)..................................................................14

6

*Liston v. Cty. of Riverside*,

7

120 F.3d 965 (9th Cir. 1997)..................................................................16

8

*Mann v. Cty. of San Diego*,

9

147 F. Supp. 3d 1066 (S.D. Cal. 2015)....................................................22

10

*Marroquin Carpio v. Chief Counsel, DHS-ICE*,

11

2018 WL 5919474 (C.D. Cal. Aug. 8, 2018)..........................................16

12

*Medeiros v. Cty. Of Merced*,

13

2011 WL 3348050 (E.D. Cal. Aug. 2, 2011) .................................18, 23

14

*Moore v. Stepp*,

15

2014 WL 2451893 (N.D. Cal. June 2, 2014) ........................................15

16

*Oyenik v. Corizon Health Inc.*,

17

696 Fed.Appx. 792 (9th Cir. 2017) .........................................................4

18

*Randle v. Miranda*,

19

315 Fed.Appx. 645 (9th Cir. 2009) ......................................................13

20

*Reese v. City of Sacramento*,

21

888 F.3d 1030 (9th Cir. 2018)........................................................22, 23

22

*Robles v. Prince George's Cty., Md.*,

23

302 F.3d 262 (4th Cir. 2002)..................................................................18

24

*Sandoval v. Cty. of Sonoma*,

25

912 F.3d 509 (9th Cir. 2018)..................................................................22

26

*Santos v. Gates*,

27

287 F.3d 846 (9th Cir. 2002)..................................................................16

28

1

## <u>TABLE OF AUTHORITIES – CONT'D</u>

2

*Page(s)*

3   *Federal Cases - Continued*

4
*Schwarm v. Craighead*,
5     552 F.Supp.2d 1056 (E.D. Cal. 2008) ....................................................14

6   *Smith v. City of Hemet*,
7     394 F.3d 689 (9th Cir. 2005) ...................................................................4

8   *Stewart v. Stewart*,
9     60 Fed.Appx. 20 (9th Cir. 2003) ............................................................13

10  *West v. Atkins*,
11    487 U.S. 42 (1988) ...................................................................................3

12  *White by White v. Pierce County*,
13    797 F.2d 812 (9th Cir. 1986) ..................................................................16

14  *Whitley v. Albers*,
15    475 U.S. 312 (1986) ...............................................................................13

16  *Winger v. City of Garden Grove*,
17    2014 WL 12852387 (C.D. Cal. Jan. 27, 2014) .......................................4

18  *Womack v. GEO Grp., Inc.*,
19    2013 WL 491979 (D. Ariz. Feb. 8, 2013) ...............................................4

20  *State Cases*

21
22  *Ashcraft v. King*,
      228 Cal. App. 3d 604 (1991)..................................................................19
23

24  *Brown v. Ransweiler*,
      171 Cal. App. 4th 516 (2009).................................................................19
25

26  *Hughes v. Pair*,
      46 Cal.4th 1035 (2009)...........................................................................21
27

28

## <u>TABLE OF AUTHORITIES – CONT'D</u>

*Page(s)*

<u>*State Cases - Continued*</u>

*Jones v. Kmart Corp.*,
  17 Cal.4th 329 (1998)..................................................................................22

*Kesner v. Superior Court*,
  1 Cal.5th 1132 (2016)..................................................................................23

*Shoyoye v. County of Los Angeles*,
  203 Cal. App. 4th 947 (2012)......................................................................22

*Simmons v. Superior Court*,
  7 Cal. App. 5th 1113 (2017)........................................................................22

*So v. Shin*,
  212 Cal. App. 4th 652 (2013)......................................................................19

<u>*State Statutes*</u>

Cal. Civ. Code §§ 52(a), (b) .........................................................................22

<u>*Federal Rules*</u>

Federal Rule of Civil Procedure 56(c)...........................................................2

On June 12, 2017, nine asylum seekers began a peaceful hunger strike at Adelanto Detention Facility. It was an act of desperation, an attempt to gain an audience with a GEO supervisor with whom they could share their concerns about the conditions of their confinement. Their complaints were reasonable and they sought nothing more than the fulfillment of basic human needs: consistent access to clean drinking water; food that was not rotten, cold, unripe, or maggot-filled; clean underwear, not underwear that was unwashed and stained by its previous owner(s); timely access to medical care; and an end to their daily degradation and mistreatment by the GEO guards at the facility.

That morning, the men presented a letter with their demands to the dorm officer, announced they had begun a hunger strike, and sat quietly at the tables in the day room. Two supervisors responded, Defendant Diaz and Defendant Campos, with a show of tremendous force: they each pepper sprayed the men multiple times and ordered their subordinates (nearly a dozen GEO officers) to use physical force against them. The resulting injuries were numerous and significant. In addition to the excruciating pain of the pepper spray, which coated the men's faces and torsos and spread into their eyes, noses, mouths, arms, and groins, they individually suffered cuts and bruises, a fractured nose, broken teeth, injured knees and shoulders, and bleeding from various abrasions. The men were then placed in a small room, handcuffed and in their pepper spray-drenched clothing, for hours. When the men were finally taken to decontaminate, they were forced into hot showers that exacerbated the pain of the spray. Defendant Diaz then ordered that they be placed in a punitive administrative segregation, where they remained for ten (10) days.

Defendants ignore every detail of Plaintiffs' accounts and present their own, wildly unsupported version of what occurred. They then claim there are no factual disputes that would require a jury to resolve and ask the Court to enter summary adjudication in their favor. That request must be denied. As further described

1

below, a reasonable juror could find that the force used in this case was excessive, that Plaintiffs' due process rights were violated when they were thrown into administrative segregation, and that Defendants violated Plaintiffs' rights under California law. The evidence amassed in this case overwhelmingly disputes Defendants' factual assertions and demonstrates why Plaintiffs' claims must be tried to a jury.

## LEGAL STANDARD

Summary judgment is an extreme remedy that is only available if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Federal Rule of Civil Procedure 56(c)). The inquiry performed is a "threshold inquiry" to determine whether there are genuine factual issues that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). "If reasonable minds could differ as to the import of the evidence," the motion must be denied. *Id*. at 250–51. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp*., 477 U.S. at 323. It is never enough to conclusorily assert that the plaintiff has no evidence. *Id*. at 328 (Justice White, concurring). "[I]f reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor [,]" summary judgment is inappropriate. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

**I. The Court Has Already Determined Section 1983 Applies to GEO Group and There Are Disputes of Material Fact That Prevent Summary Judgment on Plaintiffs' Constitutional Claims.**

Plaintiffs assert Defendants Diaz and Campos violated Plaintiffs' Fourth and Fourteenth Amendment rights by using excessive force (Claim 6) and depriving

1    them of Due Process (Claim 7).[1] The Court in this action has already determined
2    that Plaintiffs can seek remedies for constitutional violations through Section 1983
3    against Defendant GEO Group and those who contract with it. Because Section
4    1983 applies to GEO Group and its contractors, it necessarily applies to Defendants
5    Diaz and Campos—GEO Group employees. Disputes of material fact exist which
6    prevent summary judgment on both claims.

7    **A. Defendants Diaz and Campos Can Be Held Liable under Section 1983.**

8        Defendants Diaz and Campos were operating under color of state law for the
9    same reason their employer Defendant GEO Group was—GEO Group was acting
10   as an agent of Defendant City of Adelanto pursuant to signed contracts and agreed
11   specifically to fulfill the City of Adelanto's duties regarding the detention facility.
12   *See* Plaintiffs' Opposition to Defendants GEO Group and City of Adelanto's
13   Motion for Summary Judgment at Section I. *See also* Plaintiffs' Response to
14   Defendants Diaz and Campos's Statement of Undisputed Facts #1. [2]

15       The Court in this action already found that Nurse Jones was a state actor who
16   could be sued under Section 1983 because her employer contracted with GEO
17   Group, which in turn contracted with a municipality to provide services to the
18   detainees. *See* Order Granting in Part and Denying in Part Defendant Sarah Jones'
19   Motion to Dismiss, Dkt. 69, at 4 (April 30, 2019) (citing *West v. Atkins*, 487 U.S.
20   42, 55 (1988)). Because Nurse Jones—an employee of a GEO Group
21   subcontractor—was acting under color of state law and could be sued under Section
22   1983, it necessarily follows that GEO Group and its direct employees, Defendants
23   Diaz and Campos, were similarly acting under color of state law and are subject to
24   suit under Section 1983.

---

[1] Plaintiffs do not oppose Defendant Diaz and Campos's motion for summary judgment on Plaintiffs' First Amendment claim [Claim 5].
[2] In this brief, all references to Plaintiffs' Response to Defendants Diaz and Campos's Statement of Undisputed Facts will be cited as "MDF". All references to Plaintiffs' Statement of Undisputed Facts will be cited as "PSUF." Both documents are filed contemporaneously herewith.

As Plaintiffs demonstrate in their opposition to Defendant GEO Group's Motion for Summary Judgment, the cases Defendants Diaz and Campos rely on—which are the same cases GEO Group relies on—are inapposite. Plaintiffs incorporate those arguments by reference. *See* Plaintiffs' Opposition to Defendants GEO Group and City of Adelanto's Motion for Summary Judgment at Section I (distinguishing Defendants' cases as dealing with federal, as opposed to municipal, contractors and involving *Bivens* causes of action).

Private municipal contractors are subject to suit under Section 1983. *Oyenik v. Corizon Health Inc*., 696 Fed.Appx. 792, 794 (9th Cir. 2017). In addition to the Court in this action, the Central District has previously held that GEO Group and its employees can be sued under Section 1983, *Winger v. City of Garden Grove*, No. 13-CV-0267-AG-RNBx, 2014 WL 12852387, at *3 (C.D. Cal. Jan. 27, 2014), as have other districts in the Ninth Circuit, *see*, *e.g.*, *Womack v. GEO Grp., Inc.*, No. 12-CV-1524-PHX-SRB, 2013 WL 491979, at *1 (D. Ariz. Feb. 8, 2013). The Court should reject Defendants Diaz's and Campos's argument that they are immune from suit under Section 1983.

**B. Defendants Are Not Entitled to Summary Judgment on Plaintiffs' Excessive Force Claim.**

The Ninth Circuit has held that summary judgment in excessive force cases "should be granted sparingly" because they "nearly always require a jury to sift through disputed factual contentions, and to draw inferences therefrom[.]" *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc). This case does not present one of those rare exceptions. Despite Defendants' representations to the contrary, the facts in this case are hotly disputed: the parties disagree as to the type of force used, the amount of force used, who used force (and against whom), whether the force was justified, whether injuries resulted, and the extent of those injuries. Put another way, every fact relevant to the excessive force inquiry is in dispute.

1    Defendants try to get around this by claiming that the video in this case

2    conclusively resolves those disputes. Unfortunately, that is simply not true. Its

3    grainy quality and lack of audio leave many questions unresolved. Nowhere, in fact,

4    was this more evident than in the deposition of Defendant Diaz, who initially

5    claimed to have only sprayed one "short burst" of OC spray in Plaintiffs' direction,

6    then changed her testimony to agree that she may have sprayed Plaintiffs as many

7    as three times after watching the video, and then reverted to her original "one short

8    burst" testimony after taking a break and consulting with her attorney. PSUF #121.

9    The video that would have conclusively resolved all disputes – the video Defendant

10   Diaz was supposed to have ordered the camera operators on her shift to record –

11   unfortunately does not exist, because Defendant Diaz never gave the order. PSUF

12   ##101-107. Because there are genuine disputes of material fact, Defendants are not

13   entitled to summary judgment on the excessive force claim.

14       **1.    Every aspect of the Fourteenth Amendment inquiry is in dispute.**

15       Defendants correctly state that Plaintiffs' excessive force claim against

16   Defendants Diaz and Campos is governed by the Fourteenth Amendment. Dkt. 111

17   at 22:20-23:11. Under the Fourteenth Amendment, "a pretrial detainee must show

18   only that the force purposely or knowingly used against him was objectively

19   unreasonable," *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). "A court

20   (judge or jury) cannot apply this standard mechanically." *Id*. "Objective

21   reasonableness turns on the 'facts and circumstances of each particular case.'" *Id*.

22   (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

23       As guidance on how to measure 'reasonableness,' the *Kingsley* Court set

24   forth the following non-exhaustive list of considerations that bear on the

25   reasonableness (or unreasonableness) of the force used: "the relationship between

26   the need for the use of force and the amount of force used; the extent of the

27   plaintiff's injury; any effort made by the officer to temper or to limit the amount of

28   force; the severity of the security problem at issue; the threat reasonably perceived

1  by the officer; and whether the plaintiff was actively resisting." *Ibid*. A quick

2  glance at some of the pertinent facts of this case reveals disputes that prevent a

3  resolution of this claim at summary judgment.

4           a)     The amount of force used.

5        Before a determination can be made as to the reasonableness of the force

6  used there must be a finding of how much force was used. Plaintiffs and Defendants

7  vastly disagree, both as to the amount of OC spray deployed and the extent of the

8  physical force used. Because genuine disputes prevent the resolution of those basic

9  material facts, and the facts must be viewed in the light most favorable to Plaintiffs,

10  the claim cannot be resolved in Defendants' favor at this juncture.

11        Defendants claim that they collectively sprayed three "short bursts" of OC

12  spray – what they describe as a "*de minimis* use of force" – in the direction of

13  Plaintiffs. Dkt. 111 at 24-26. They ask the Court to deem that contention an

14  "uncontroverted fact" because, they allege, it is conclusively supported by the video

15  evidence. They then use that contention as the basis for declaring their use of force

16  "objectively reasonable." Dkt. 111 at 24-26. Not only is the video evidence

17  inconclusive on this score, as Defendant Diaz's own deposition testimony

18  highlights, *see* PSUF #121, but it is refuted by Plaintiffs' deposition testimony and

19  the other GEO officers' deposition testimony.

20        At their depositions, Plaintiffs testified that Defendants Diaz and Campos

21  each deployed OC spray multiple times. PSUF ##54, 56, 75, 77, 80, 86, 88; MDF

22  #33-35. They testified that they were sprayed at close range and that Defendants

23  aimed directly at their heads and torsos, causing the OC spray to affect their eyes,

24  mouths, arms and groins. PSUF ##28, 29, 54, 56, 72, 74, 75, 77, 80, 81, 86, 88; *see*

25  *also* PSUF ##30-31, 57.  They described being "covered" and "soaked" with OC

26  spray. *Id*. The surveillance video evidence Defendant GEO Group produced to

27  Plaintiffs (a copy of which is attached hereto as an exhibit) is unfortunately grainy

28  and contains no audio, making it difficult to conclusively ascertain all that

1   transpired during the events in question.[3] Nevertheless, Plaintiffs submit that what

2   is visible on the video corroborates their claims that Defendant Diaz and Defendant

3   Campos each sprayed them multiple times with OC spray.

4        Moreover, the amount of OC spray deployed was so significant that GEO

5   Officer Reyes (who was not sprayed directly) reported having trouble breathing,

6   could not see, and had to be taken outside the facility for medical attention; Officer

7   Jindi testified that she had to go out to the yard so she could breathe and further

8   testified that "everyone was coughing"; and after Plaintiffs were taken out of the

9   day room, GEO staff found that there was so much OC spray in the dormitory areas

10   – comprising four large rooms adjacent to the day room, spanning two stories and

11   two wings – that they had to evacuate all staff and detainees so that it could be

12   decontaminated. PSUF ##111, 112, 114; MDF #77. This suggests far more than the

13   three "short bursts" that Defendants claim to have deployed in Plaintiffs' direction.

14   This genuine dispute of material fact prevents the resolution of Plaintiffs' excessive

15   force claim.

16        b)    The extent of Plaintiffs' injuries.

17        Defendants state that the force they used caused no injuries. That ignores the

18   extensive testimony provided by Plaintiffs in discovery and at their depositions that

19   describes the injuries they suffered – including excruciating pain, which forced at

20   least one Plaintiff to pass out; bruises, scratches, and bleeding; a broken tooth and

21   crown; a fractured nose; a knocked-out dental plate; knee and shoulder injuries; jaw

22   pain; and significant emotional distress. PSUF ##28, 29, 54-56, 58-61, 63, 64, 72-

23   78, 80, 81, 86-90, 135-155. It also ignores a declaration signed by attorney Hussain

24

---

25   [3] Defendants were required, per GEO policy, to weigh their OC canisters every shift
     (i) upon retrieving them from the safe where they are kept and (ii) before returning
26   them to the safe, and to record the weights on a log. PSUF ##122-125. At
     Defendant Diaz's deposition, she testified that she did not recall whether she had
27   done so on June 12, 2017, and further testified she did not always follow GEO's
     policy. PSUF ##126, 127. Despite strict retention requirements, GEO apparently
28   cannot find those logs – making it impossible to conclusively state how much OC
     spray Defendants Diaz and Campos each deployed. PSUF #128.

---

Turk documenting the injuries he personally observed on June 23, 2017, which was prepared at the request of Plaintiff Martinez's and Plaintiff Campos's immigration attorney in support of their complaint to the Department of Homeland Security's Office for Civil Rights and Civil Liberties. *See* PSUF #55 (Hussain Decl.). This factor cannot be resolved in Defendants' favor at this juncture.

c)    The need for the use of force / The severity of the security problem at issue.

Next to the question of how much force was used, the question of whether it was warranted is perhaps the most hotly contested dispute in the case against Defendants Diaz and Campos. Plaintiffs' excessive force claim cannot be summarily adjudicated because here, too, the material facts are in dispute.

Defendant Diaz states that she needed to deploy OC spray because, *inter alia*, Plaintiffs were "threaten[ing] to cause a major disturbance throughout the Facility by delaying count," because Plaintiffs "actively resist[ed]" the officers, and because Plaintiffs "caused the entire dorm to become riled up and disorderly – which they admit." Dkt. 111 at 24. Defendant Campos, a late arrival to the scene, echoes Defendant Diaz's proffered justifications. Dkt. 111 at 25.[4] Defendants' assertions are undermined by the video evidence, by their own deposition testimony, by the testimony of their subordinates, by the testimony of the nurse who Defendant Diaz took with her to the day room, by the testimony of GEO's Training Administrator, by Plaintiffs, and by Plaintiffs' use of force expert, Mr. Schwartz. MDF #30-32, 56-60.

As an initial matter, Plaintiffs have not admitted that they "caused the entire dorm to become riled up and disorderly," nor would they – because it is not true. As is evident in the surveillance video capturing the event, the dorm began reacting

---

[4] Defendant Campos also claims that Plaintiffs were "combative." Dkt. 111-7 at ¶7. Plaintiffs reject this contention as not credible and ask the Court to do the same. Had Plaintiffs in any way harmed an officer, as Campos alleges, they would have been disciplined, at the very least – and they were not. PSUF ##68-71.

animatedly to the events happening in the day room <u>only after Defendants began</u> <u>using force</u>. MDF ##30, 56. Prior to the GEO guards' application of physical force on Plaintiffs, there were perhaps a handful of detainees paying any kind of attention to what was happening with Plaintiffs, and they were doing so passively, simply observing. The video evidence shows that it was not until GEO guards began grabbing at Plaintiffs, inflicting pain, and deploying OC spray, that the other detainees began reacting. MDF #30. Even then, according to the testimony of Nurse Jones and Officer Jindi, both of whom were present at the scene, the detainees' response was quickly calmed with simple entreaties. MDF #72. Defendants' account cannot be credited.

Plaintiffs also deny the contention that they "threatened to cause a major disturbance throughout the Facility by delaying count." Testimony from Defendant Diaz, Officer Jindi, Nurse Jones, and Mr. Schwartz all reveal that there were numerous ways the count could have been – and routinely was – handled that did not require Plaintiffs to return to their bunks. MDF ##5, 6; PSUF ##46-50 (incorporating Schwartz Expert Report at 10-12); *see also* PSUF ##32-35; 134. The whole premise of count is to make sure that every detainee is accounted for – that there is no one missing. MDF #7. There was no question that Plaintiffs were present and could be accounted for. A reasonable juror could find that Defendants' decision to respond with violence rather than to count Plaintiffs using some other mechanism was unreasonable, unwarranted, and excessive.

Lastly, Defendants' contention that Plaintiffs caused any sort of disturbance, major or minor, is disputed by contemporaneous documentation of the incident and by GEO's Chief Training Administrator, Mr. Leo McCusker. PSUF ##47, 49. In documenting the incident on June 12, 2017, and again at his deposition in this action, Mr. McCusker testified unequivocally that what transpired was not a disturbance. *See* PSUF ##47, 49. ("Q: Sitting here today, do you still agree that it was not a major or minor disturbance? A: That is correct." McCusker Dep. 46:17-

19.) It is also refuted by Mr. Schwartz, an expert on the use of force in corrections facilities and the foremost expert on emergencies within correctional institutions. PSUF ##47, 49 (incorporating Schwartz Expert Report at 12-14).

        d)    <u>Effort made by the officers to temper or to limit the amount of force.</u>

Defendant Diaz claims that she gave Plaintiffs verbal orders and commands for nine minutes and that she only deployed OC spray after providing them with a warning that she was about to do so. The video cannot corroborate this, because it has no audio. Not only do Plaintiffs refute this, but so do Defendant Diaz's subordinates, whose testimony supports Plaintiffs' accounts.

It is undisputed that when Defendant Diaz walked into the day room, she was already waiving a can of OC spray in her hands. PSUF ##11, 38; MDF #16. Over the next several minutes, Defendant Diaz intermittently walked around the day room and returned to Plaintiffs' tables to yell at them in English (a language they neither speak nor understand) – a fact confirmed by Defendant Diaz, who at her deposition admitted that she does not speak any Spanish. PSUF ##39, 40, 67, 85; MDF #16. During that time, despite having been informed multiple times that Plaintiffs had announced they were beginning a hunger strike, Defendant Diaz never considered calling medical staff, in contravention of GEO policy and protocol. PSUF #36. When Nurse Jones (who was present) suggested that Defendant Diaz send Plaintiffs to the medical unit, Defendant Diaz rejected the idea and told Jones "no, they ha[ve] to comply." *See* MDF #5.

Undermining any claim from Defendants that de-escalation was attempted, Plaintiffs' testimony reveals that only one officer ever spoke to them in Spanish, and it was to warn them one time against staying at the day room tables – but that officer refused to engage with them when they tried to explain what they were doing, why, and what they wanted. PSUF ##41, 42; MDF #17. Other GEO officers' testimony corroborates this. PSUF ##45, 65. Finally, it is undisputed that Defendant Diaz did not consult with any supervisors – as was required by the GEO Policy

Manual, and which she had ample time to do, because (as Defendant Diaz admitted) it was not an emergency – before deciding to deploy OC spray against the men. PSUF #23; *see also* PSUF ##13-22, 28. Viewing these facts in the light most favorable to Plaintiffs, a reasonable juror could draw the inference that this was because she had no interest in tempering and/or limiting the amount of force she was employing.

The same is true for Defendant Campos. Defendant Campos arrived a few minutes after Diaz and her subordinates began using force on Plaintiffs. By his own admission, he did not know anything about the scene that greeted him. MDF #56. Nor did he, when he arrived, take the time to find that out. *Id*. Instead, he immediately joined two officers in throwing Plaintiff Mejia against a wall (though Campos describes the incident as "guid[ing] the group to the wall," Dkt. 111 at 15) and then, seconds later, deployed such large volumes of OC spray against the remaining Plaintiffs that even on the grainy video it looks like a water hose is spouting. PSUF ##24, 29-31; MDF ##46, 47, 49, 56. It is undisputed that Defendant Campos made no attempt – zero – to temper the force he used against Plaintiffs.

## 2. Ninth Circuit law compels the denial of summary judgment.

These dramatically conflicting accounts of what transpired present genuine issues of material fact that cannot be resolved at summary judgment. In accordance with the Ninth Circuit's cautions about the difficulty of resolving excessive force cases due to their fact-intensive nature, district courts regularly deny summary judgment under these circumstances – and often where the disputes are far less plentiful and pronounced. *See, e.g.*, *Caliz v. City of Los Angeles*, No. 15-CV-5161-JLS (KS), 2019 WL 3937801, at *10 (C.D. Cal. June 25, 2019), *report and recommendation adopted*, 2019 WL 3935098 (C.D. Cal. Aug. 19, 2019) (summary judgment denied even though plaintiff did not file an opposition brief, because the depositions submitted with the moving papers revealed that plaintiff's testimony

1  directly contradicted the defendant's declaration regarding the type of force applied

2  and the reason force was used); *Barrow v. San Francisco Sheriff's Dep't*, No. 17-

3  CV-04483-VKD, 2019 WL 3554367, at *6 (N.D. Cal., Aug. 5, 2019) (denying the

4  defendant deputies' summary judgment motion as to the excessive force claim

5  where "the evidence in the record before the Court reflects several disputed issues

6  of material fact, including whether the conduct complained of occurred at all");

7  *DaSilva v. Cascade Cty. Detention Ctr.*, No. 17-CV-00115-GF-JTJ, 2018 WL

8  5812659, at *4 (D. Mont., Sept. 27, 2018)  (denying defendants summary judgment

9  where "there are genuine issues of material fact regarding the need for Defendants'

10 use of force, the amount of force used, whether Mr. DaSilva was injured and if so

11 the extent of that injury, any effort made by Defendants to temper or to limit the

12 amount of force, the severity of the security problem at issue, the threat reasonably

13 perceived by the officers, and whether Mr. DaSilva was actively resisting.");

14 *Gomez v. City of Fremont*, 730 F. Supp. 2d 1056, 1064 (N.D. Cal. 2010) (denying

15 summary judgment on excessive force claim because the evidence—including the

16 police reports, the officers' declarations, and plaintiff's deposition—showed

17 genuine and disputed issues of material fact about what happened and the

18 reasonableness of the officers' conduct and use of force, raising questions that

19 could not be resolved without weighing the evidence and determining credibility,

20 which are jury functions). The Ninth Circuit's cautions apply equally here and

21 compel the denial of Defendants' motion as to this claim.

22

23 **3.    Defendants proffer unpublished, inapposite cases that do not compel summary adjudication in their favor.**

24 Defendants assert that the use of OC spray was objectively reasonable and in

25 support cite three unpublished, inapposite cases, two of them involving claims

26 arising under the 8th Amendment. Dkt. 111 at 23-24. None of the cases compel

27 such a finding.

28 ///

*Stewart v. Stewart*, 60 Fed.Appx. 20, 22 (9th Cir. 2003), affirmed the dismissal of a case where the prisoner-plaintiff alleged he was pepper sprayed in violation of the 8th Amendment. The district court based its dismissal on the prisoner-plaintiff's failure to allege that the prison administrators "possessed malicious and sadistic intent when authorizing the use of force," as is required to prevail on an 8th Amendment excessive force claim.[5] It also noted the deference prison officials are given to shape "prophylactic or preventive measures intended to reduce the incidence of ... breaches of prison discipline." *Id.* at 22 (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). Even if that general proposition did apply to cases brought under the 14th Amendment by civil detainees, and Defendants admit they cite no case law to support that contention (*see* Dkt. 111 at 23, n. 8, 9), it would still be of limited utility here, where disputes exist as to whether Plaintiffs' actions caused a disturbance and the extent of the force Defendants used.[6] *Randle v. Miranda*, 315 Fed.Appx. 645, 645 (9th Cir. 2009), the second case Defendants cite, falls away for similar reasons.

Defendants' last citation, *Harveston v. Cunningham*, 216 Fed. Appx. 682 (9th Cir. 2007), is also of no help to them. In that case, an admittedly resisting arrestee-plaintiff claimed that the officer-defendants used excessive force on him (i) when they pepper sprayed him in order to get him to comply with their orders, and (ii) when they hit his head while they were placing him in the patrol car. That court held that the defendant-officer's use of pepper spray could have been found objectively *unreasonable* and in violation of the plaintiff's constitutional rights –

---

[5] That requirement does not exist under the 14th Amendment and Plaintiffs need not address it.

[6] The *Stewart* memorandum disposition does not reveal any of the factual allegations in that case, and *Whitley* involved a use of force in response to a violent prison riot where a guard was taken hostage and it was undisputed that there was a major disturbance involving armed inmates, "mayhem" and "violence." *Whitley*, 475 U.S. at 322-23. Under those circumstances, the *Whitley* Court held that the force employed was reasonable. Id. at 320. That holding cannot be extrapolated to dictate a conclusion in this case.

even though plaintiff admitted he was resisting. *Id.* at 685. That conclusion helps Plaintiffs, not Defendants. That court also absolved the officer-defendants of liability on the head-bumping claim because the plaintiff conceded that the defendants were "guiding" his head. *Id.* Plaintiffs vigorously dispute the characterization of Defendants' conduct in this case; accordingly, there is nothing to draw from *Harveston*.

Defendants seem to conflate findings that pepper spray can, *under certain circumstances*, be used within carceral settings for proper penological purposes with a rule that pepper spray is always permissible. Not so. A 14th Amendment objective reasonableness inquiry and the attendant *Kingsley* considerations apply, and as demonstrated above, there are a multitude of disputed facts that prevent the resolution of Plaintiffs' excessive force claim at this juncture.

### 4. A genuine issue of material fact exists as to whether Defendants Diaz and Campos are liable in their supervisory roles.

Defendants are not entitled to summary judgment on Plaintiffs' supervisory liability claim because a reasonable juror could find that Defendants Diaz and Campos directed and participated in the excessive force of their subordinates and are thus liable in their supervisory roles.

Under Section 1983, a supervisor "can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000), *as amended* (Oct. 31, 2000) (citing *Larez v. City of Los Angeles,* 946 F.2d 630, 646 (9th Cir. 1991)). Additionally, a supervisor can be "liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Schwarm v. Craighead,* 552 F.Supp.2d 1056, 1082 (E.D. Cal. 2008).

Slamming an individual against a wall or gate can be excessive force. *Moore v. Stepp*, No. C 11-05395 CW (PR), 2014 WL 2451893, at *5 (N.D. Cal. June 2, 2014) (denying summary judgment where there exists a genuine issue of material fact whether slamming a prisoner's head against a gate while waiting to continue an escort was reasonably necessary force). Furthermore, even the *de minimis* force involved in handcuffing can be excessive. *See Hansen v. Black,* 885 F.2d 642, 645 (9th Cir. 1989).

Plaintiffs have each testified that GEO officers, at the behest of and alongside Defendants Diaz and Campos, forcefully pulled them from their seats, slammed them against walls and tables, handcuffed them, and dragged and/or carried them out of the dayroom. PSUF ##54-60, 64-66, 72, 75, 75, 77-84, 86-91. Defendant Diaz provided the initial command for the officers to physically separate the Plaintiffs, to handcuff them, and to remove them from the dayroom – actions her subordinates would not have undertaken without her command. PSUF ##44, 45. When Defendant Campos arrived at the day room, he immediately directed the GEO officers who slammed Plaintiff Mejia against the wall. PSUF ##24, 29-31; MDF ##46, 47, 49. He then joined Defendant Diaz in "controlling" the situation by unleashing OC spray at the remaining Plaintiffs and directing that further force be used against them. MDF #56. Plaintiffs were then kept in handcuffs for several hours, without any penological purpose and in contravention of GEO's written policy. PSUF ##91-100. A reasonable juror could find that the Defendant Campos's, Diaz's, and the GEO officers' actions were excessive force and that Defendants Diaz and Campos directed and participated in the GEO officers' use of excessive force.

Further, and as described in greater detail *supra* at Section I(B)(1) & (B)(2), whether or not the use of force was objectively reasonable is not an appropriate issue to resolve at summary judgment because "questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force

is generally an issue for the jury." *Chew v. Gates*, 27 F.3d 1432, 1440-41 (9th Cir. 1994) (citing *Barlow v. Ground,* 943 F.2d 1132, 1135 (9th Cir. 1991), *cert. denied,* 120 L. Ed. 2d 872, 112 S. Ct. 2995 (1992); *White by White v. Pierce County,* 797 F.2d 812, 816 (9th Cir. 1986)); *see also Liston v. Cty. of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997); *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002). Defendants' motion should be denied as to this claim.

## C. Questions of Material Fact Exist with Regard to Defendant Diaz's Deprivation of Plaintiffs' Due Process.

Defendant Diaz deprived Plaintiffs of Due Process by using excessive force against them and placing them in administrative segregation in retaliation for Plaintiffs expressing grievances. Disputes of material fact exist which prevent summary judgment for Defendant Diaz on Plaintiffs' Due Process claim.[7]

An officer also violates Due Process protections by taking an action that does not advance a legitimate penological goal in retaliation against detainees who exercise their constitutional rights. *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994). As shown above, using excessive force against a civil detainee violates the Due Process protections of the Fourteenth Amendment. Using retaliatory excessive force is a separate violation of Due Process. *Id.*

Due Process also requires that, prior to placing a pretrial detainee in administrative segregation, officials must provide (1) an informal nonadversary hearing within a reasonable time after placement in segregation, (2) notification of the reasons for his segregation, and (3) an opportunity to present his views. *Marroquin Carpio v. Chief Counsel, DHS-ICE*, No. CV 17-2030-DDP (AGR), 2018 U.S. Dist. LEXIS 225255, at *12-13 (C.D. Cal. Aug. 8, 2018); *Grizzle v. Cty. of San Diego*, 2018 U.S. Dist. LEXIS 56977, 2018 WL 1603212, at *2 (S.D. Cal. Apr. 3, 2018); *Candler v. Santa Rita Cty. Jail Watch Commander*, 2015 U.S. Dist.

---

[7] Plaintiffs do not oppose Defendant Campos's motion for summary judgment on Plaintiffs' Seventh Cause of Action.

LEXIS 8766, 2015 WL 333298, at *6 (N.D. Cal. Jan. 26, 2015). Placing detainees in administrative segregation as retaliation for exercising their constitutional rights does not advance a legitimate penological goal and violates Due Process. *See Barnett*, 31 F.3d at 815-16.

Defendant Diaz asserts that she could not have retaliated against Plaintiffs when she assaulted them and subjected them to segregation because she did not have access to their grievances. Dkt. 111 at 19. But Diaz confuses the grievances Plaintiffs filed *after* they were placed in segregation with their *initial* grievance against their continued detention and the conditions of that detention, which preceded and precipitated Plaintiffs' demonstration and Diaz's assault. PSUF ##1-5, 9, 37; MDF #92. Defendant Diaz testified that before assaulting Plaintiffs or putting them in segregation, she was aware that they had announced a hunger strike and was made aware of at least some of their grievances that precipitated their demonstration. PSF #36, 37; MDF #15. Diaz's argument that she was ignorant of Plaintiffs' grievances is given lie to by her own testimony.

Further, it is uncontested that Defendant Diaz herself sent Plaintiffs to segregation. The evidence Defendant Diaz submitted in support of her own motion for summary judgment shows that she personally signed the orders placing Plaintiffs in administrative segregation. *See* Dkt. 111-2, Ex. "C" [Administrative Segregation Orders related to Plaintiffs]; *see also* PSUF #131. It is also uncontested that Diaz provided no notice or hearing prior to signing the segregation orders. *See* Dkt. No. 111-6, Diaz Decl. ¶ 38; *see also* PSUF #132.

Defendant Diaz argues that even if she did decide to place Plaintiffs in segregation (which she denies, despite her signature on the documents assigning Plaintiffs there), she had a legitimate basis to do so. Dkt. 111 at 20. But genuine issues of material fact exist as to whether Plaintiffs were retaliated against for exercising their constitutional rights and whether their assault and segregation advanced a legitimate penological goal. *Barnett*, 31 F.3d at 815-16. According to

GEO's own policies, pre-disciplinary-hearing administrative segregation should be ordered only as necessary to prevent further rule violations or to protect the security and orderly operation of the facility. *See* Dkt. No. 111-3, Ex. I (GEO Restrictive Housing Unit Policy) at 4-5. Defendant Diaz testified that following the use of force and after Plaintiffs were transported to medical, Plaintiffs were not acting belligerent and were calm. Other than observing their calm demeanor, Diaz had no further interactions with Plaintiffs. Still, she determined that they should be placed in administrative segregation. MDF #82. A reasonable jury could find that Defendant Diaz assigning Plaintiffs to segregation lacked a legitimate penological purpose.

Moreover, Diaz's particular intent and motivation in both assaulting Plaintiffs and placing them in administrative segregation is a jury question. *Medeiros v. Cty. of Merced*, 2011 WL 3348050, at *6 (E.D. Cal. Aug. 2, 2011); *Abston v. City of Merced*, 2011 WL 2118517, at *18 (E.D. Cal. May 24, 2011).[8] Diaz's motion for summary judgment on Plaintiffs' Seventh Cause of Action should be denied.

## II.    Disputes of Material Fact Prevent Summary Judgment on Plaintiffs' State Law Claims.

Plaintiffs claim that Defendants Diaz and Campos battered and assaulted them through the use of OC spray and actual (hands-on) force; that they intentionally inflicted emotional distress upon them; that they violated the Bane Act; that they were negligent in their actions during and after the use of force, wherein Plaintiffs were left to sit in their pepper-spray drenched clothing for more than three hours

---

[8] The Court should also reject Defendant Diaz's argument—asserted in a footnote—that she should be granted summary judgment because the deprivation of Plaintiffs' liberty was "*de minimis*." Dkt. 111 at 20 n.15. The case Defendants use to support this argument—*Robles v. Prince George's Cty., Md.*, 302 F.3d 262 (4th Cir. 2002)—recognizes that even a 10-minute deprivation qualifies as more than *de minimis* deprivation when judged in relation to the defendants' intent. *Id.* at 269. Defendant Diaz placed Plaintiffs in segregation, where they stayed *for 10 days*.

before being thrown into hot showers; and that they are liable for their role as supervisors. Despite Defendants' contentions to the contrary, genuine issues of material fact exist that prevent the adjudication of Plaintiffs' state law claims at summary judgment.[9]

## A. Battery [Claim One] & Assault [Claim Two] Must Be Tried To A Jury

"A battery is any intentional, unlawful and harmful contact by one person with the person of another. A harmful contact, intentionally done is the essence of a battery. A contact is unlawful if it is unconsented to." *Ashcraft v. King*, 228 Cal. App. 3d 604, 611 (1991) (internal quotation marks and citations omitted). "The essential elements of a cause of action for battery are: (1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's position would have been offended by the touching." *So v. Shin*, 212 Cal. App. 4th 652, 669 (2013), *as modified on denial of reh'g* (Jan. 28, 2013). "A state law battery claim is a counterpart to a federal claim of excessive use of force. In both, a plaintiff must prove that the peace officer's use of force was unreasonable." *Brown v. Ransweiler* (2009) 171 Cal. App. 4th 516, 527, 89 Cal.Rptr.3d 801 (citation omitted).

As discussed throughout this brief, the factual underpinnings for each of the elements of the tort are disputed. Defendants contend they did not intend to harm Plaintiffs or disregard Plaintiffs' rights; Plaintiffs contend that Defendants' intentions were clear from the moment they each walked into the day room – Diaz, waiving her OC spray canister around, shouting things they did not understand and demonstrating no interest in engaging with Plaintiffs until she suddenly and without

---

[9] Plaintiffs agree that Plaintiffs Martinez and Rodriguez had already been taken out of the day room when Defendant Campos arrived. Accordingly, they agree that Plaintiffs Martinez's and Rodriguez's state law tort claims should be dismissed against Campos.

announcement began deploying OC spray and ordering her subordinates to lay hands on Plaintiffs; and Campos, immediately throwing Plaintiff Mejia against a wall and then deploying his own OC canister at Plaintiffs, without having any knowledge of what was going on or speaking with anyone. PSUF #11, 23-25, 28-31, 54-60, 64-66, 72, 74, 75, 77-84, 86-91. Defendants contend Plaintiffs consented to the use of force because they were on notice that it could happen and chose not to remove themselves; Plaintiffs vigorously deny that and maintain they remained seated at the tables in fear of the increasingly hostile situation unfolding around them, never imagining they would be subjected to the level of violence that transpired. PSUF ##43, 53. Defendants deny that Plaintiffs were harmed; Plaintiffs state they were significantly harmed, both physically and emotionally, and that the harm came at the hands of Defendants. PSUF ##54-56, 58-61, 63, 64, 73, 74, 76, 78, 86-90, 116-120, 135-155. In sum, genuine issues of material fact are in dispute. Defendants' motion for summary judgment on this claim should be denied.

For the same reasons, Defendants' motion for summary judgment as to Plaintiffs' assault claim should be denied. There is ample evidence that Defendants acted in a threatening manner, that Plaintiffs did not consent to the conduct Defendants were threatening, and that Plaintiffs experienced significant fear and distress as a result.

**B. Plaintiffs' IIED Claim [Claim Four] Must Be Tried To A Jury**

Defendants contend Plaintiffs' IIED claim should be summarily adjudicated because Defendants "reasonably believed that force was necessary" when they deployed it – and that, as a result, there is no evidence that they acted "with the intent of causing, or reckless disregard of the probability of causing, emotional distress," as is required to prove the claim. Dkt. 111 at 31:14-19. That is squarely a question for a jury. Defendants' self-serving statements regarding their intentions are disputed by evidence: (1) video evidence of Defendant Diaz walking into the day room, waiving around an OC canister in a threatening manner before she had

even approached Plaintiffs (PSUF ##11, 38); (2) testimonial evidence from
Plaintiffs, Nurse Jones, and GEO Officer Martinez that Defendant Diaz wholly
ignored their declared hunger strike and did not take any steps to engage with
Plaintiffs on why they were seated at the table, what was written on the papers she
had been given, or how the situation could resolve without violence (PSUF ##36,
41, 45, 65; MDF #5); (3) testimonial evidence that Defendant Diaz suddenly and
without warning sprayed Plaintiffs at close range, on their faces and torsos (*see,
e.g.*, PSUF #28); (4) video and testimonial evidence that Defendant Campos,
immediately upon arriving into the day room, used physical force against Plaintiff
Mejia, and then, seconds later, deployed large volumes of OC spray against the
remaining Plaintiffs, without having any knowledge of the situation in the day room
(PSUF ##24, 29-31; MDF ##46, 47, 49, 56); and (5) documentary and testimonial
evidence that Defendant Diaz then punitively placed Plaintiffs in segregation,
where they were forced to remain for ten (10) days (PSUF ##131, 132). A
reasonable juror could certainly determine that these facts support a finding that
Defendants each engaged in extreme and outrageous conduct with the intent of
causing, or reckless disregard of the probability of causing, emotional distress.
*Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009).

      Defendants further contend that Plaintiffs were themselves the cause of the
conduct, alleging that Plaintiffs have since "acknowledged that if they complied
with the commands, they would not have been sprayed." Dkt. 111 at 32:4-7. Even if
that was true – and Plaintiffs do not so concede (indeed, part of their fear of
"complying" was a worry that if they got up from the tables, they would be tackled
or assaulted by the guards who had surrounded them, PSUF #53) – that is not a
legal defense; it is nothing more than a truism. Every violative interaction with a
law enforcement officer could, in theory, be averted by the civilian if she simply
"complied with the commands." That does not negate an officer's liability for the
actions he takes in the face of non-compliance, though – nor does it make that

1    officer's violative conduct the legal fault of the victim. Tellingly, Defendants offer

2    no case law to support that legal proposition. Plaintiffs' IIED claim contains factual

3    disputes that must be resolved by a jury.

4

5    **C. Defendants Misstate the Law Applicable to Plaintiffs' Bane Act Claim
     [Claim 8]**

6         The Bane Act provides a civil cause of action against a defendant who

7    interferes with an individual's federal or state rights by means of "threats,

8    intimidation, or coercion." Cal. Civ. Code §§ 52(a), (b). The Bane Act "require[s]

9    an attempted or completed act of interference with a legal right, accompanied by a

10   form of coercion." *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334 (1998).

11        Defendants Diaz and Campos attack Plaintiffs' Bane Act claim on a legal

12   basis, asserting that "Bane Act liability requires a threatening, intimidating, or

13   coercive act separate and distinct from the act that deprived the plaintiff of his or

14   her federal or state rights." Dkt. 111 at 23. They are wrong.

15        The Ninth Circuit, California courts, and the federal district courts of

16   California have repeatedly rejected the argument that the Bane Act requires

17   "'transactionally independent' threats, intimidation, or coercion." *Sandoval v. Cty.*

18   *of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018); *Reese v. City of Sacramento*, 888

19   F.3d 1030, 1044-45 (9th Cir. 2018); *Chaudhry v. City of Los Angeles*, 751 F.3d

20   1096, 1105-06 (9th Cir. 2014); *see also Simmons v. Superior Court*, 7 Cal. App. 5th

21   1113, 1126 (2017); *Dillman v. Tuolumne County*, 13- CV-404-LJO, 2013 WL

22   1907379 (E.D. Cal. May 7, 2013); *Garlick v. Cty. of Kern,* 167 F. Supp. 3d 1117,

23   1179 (E.D. Cal. 2016); *Jones v. Cty. of Contra Costa*, 13- CV-05552-TEH, 2016

24   WL 1569974, at *6 (N.D. Cal. Apr. 19, 2016); *Mann v. Cty. of San Diego*, 147 F.

25   Supp. 3d 1066, 1092 (S.D. Cal. 2015).

26        Diaz and Campos construe *Shoyoye v. County of Los Angeles*, 203 Cal. App.

27   4th 947 (2012), to read an additional obligation into the Bane Act, requiring that the

28   alleged threats or intimidation be separate and apart from the constitutional

violation. But the same Ninth Circuit cases cited above—all which post-date *Shoyoye*—reject that reading. Defendants' motion is based on a plain misstatement of the law.

Instead, the Ninth Circuit has made clear that *Shoyoye* clarified that the Bane Act requires an intent greater than mere negligence. *Reese*, 888 F.3d at 1044 n.5. Questions related to a defendant's particular intent are questions of fact ill-suited for summary judgment that should be left to a jury. *Medeiros v. Cty. of Merced*, No. 1:09-CV-01177-OWW, 2011 WL 3348050, at *6 (E.D. Cal. Aug. 2, 2011) ("The intent each Defendant harbored during Plaintiff's arrest is a question of fact."); *Abston v. City of Merced*, No. 1:09-CV-00511 OWW, 2011 WL 2118517, at *18 (E.D. Cal. May 24, 2011), aff'd, 506 Fed.Appx. 650 (9th Cir. 2013).

Because there is no transactionally independent threats, coercion, or intimidation required under the Bane Act, Defendants Campos and Diaz's legal attack on Plaintiffs' Bane Act claims fails. Diaz and Campos also assert that Plaintiffs' Bane Act claim fail because their underlying statutory and constitutional claims fail. But as shown throughout this brief, disputes of material facts exist as to each statutory and constitutional claim. Defendants' motion for summary judgment on Plaintiffs' Bane Act claim should be denied.

## D. Disputed Facts Prevent Summary Judgment on Plaintiffs' Negligence Claim [Claim Ten]

Under California law, the required elements of a negligence claim are a legal duty to use due care; a breach of such legal duty; and injury proximately or legally caused by the breach. *Kesner v. Superior Court*, 1 Cal.5th 1132, 1142 (2016). Plaintiffs claim that Defendants acted negligently in (1) failing to properly assess the need to use force against Plaintiffs, and (2) failing to provide timely medical assistance to Plaintiffs.

Defendants do not dispute that Defendants Diaz and Campos had a legal duty to properly assess the need to use force against Plaintiffs. Instead, they contest

Case 5:18-cv-01125-SP   Document 116   Filed 11/26/19   Page 32 of 33   Page ID #:2612

causation and argue their force was reasonable. Dkt. 111 at 33. For all of the reasons described *supra* at Sec. I(B)(1) & (B)(2), the reasonableness of Defendants' actions cannot be resolved at this juncture. The claim must be determined by a jury.

Separately, Defendants summarily contend they had no duty to provide medical care to Plaintiffs, and further contend that the medical attention Plaintiffs were ultimately provided voids the claim. Dkt. 111 at 33. That is incorrect. Defendants had a legal duty to ensure Plaintiffs received timely medical attention following their deployment of OC spray against Plaintiffs. *See Clement v. Gomez*, 298 F.3d 898, 905–06 (9th Cir. 2002) (delays in providing showers to inmates suffering from the harmful effects of pepper spray may not just constitute negligence but could violate the Eighth Amendment). *See also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety) (quotation marks and citations omitted). That duty is codified in GEO's policy, practice, and training, which state that following the deployment of OC spray against detainees, GEO staff must assure that detainees receive prompt decontamination and timely medical attention. PSUF #115. Plaintiffs dispute that they were provided with either and overwhelming evidence supports their contention. PSUF #116-120. The evidence demonstrates that Plaintiffs were left handcuffed, in their pepper spray-drenched clothing, for more than two hours and in some cases up to three hours, before receiving a visit from a member of the medical staff. PSUF #116. It further demonstrates that when GEO officers finally took Plaintiffs to shower, they were forced, handcuffed and clothed, into hot showers, which intensified the pain of the OC spray – to the point where one Plaintiff fainted and others, hearing the shrieks of their fellow detainees, refused to enter. PSUF #118, 119.

Plaintiffs' facts in support of their negligence claim, which must be credited at this juncture, prevent summary adjudication in Defendants' favor.

24

1

### E. Defendants May Be Held Liable For The Torts Of Their Subordinates

2    Defendants agree that by law, they may be held independently liable as

3    supervisors for the torts of their subordinates. Dkt. 111 at 34. They contend,

4    however, that the evidence they present supports a finding that they did not "assist

5    or encourage any of their subordinates to batter/assault Plaintiffs [or engage in any

6    of the other torts Plaintiffs allege]." Dkt. 111 at 34.

7    All the evidence Defendants rely upon is in dispute. *See* MDF ##16-70.

8    Further, and in accordance with the discussion *supra* at Sec. I(B)(4), Plaintiffs

9    present evidence showing that Defendants both assisted and encouraged their

10   subordinates' misconduct – including explicit testimony from Defendant Diaz

11   stating that her subordinates acted at her direction. PSUF #44. Because there are

12   genuine issues of material fact that cannot be resolved at this juncture, the question

13   must be put to a jury.

14

### CONCLUSION

15   For all the foregoing reasons, this Court should deny Defendants' Motion for

16   Summary Judgment in its entirety, excepting those claims that Plaintiffs agree

17   should be dismissed.

18   Dated:  November 26, 2019          LAW OFFICE OF RACHEL STEINBACK

19                                      LAW OFFICES OF CAROL A SOBEL
                                        SCHONBRUN SEPLOW HARRIS
20                                      & HOFFMAN LLP

21                                      LAW OFFICE OF COLLEEN FLYNN
                                        LAW OFFICE OF MATTHEW STRUGAR
22

23                                      By:  /s/ Rachel Steinback

24                                           Rachel Steinback
                                             Monique Amanda Alarcon
25                                           Catherine E. Sweetser
                                             Kristina Harootun
26                                           Colleen Flynn
                                             Matthew Strugar
27                                           *Attorneys for Plaintiffs*

28