# EXHIBIT 42

EXHIBIT 43

**ADELANTO / ICE PROCESSING CENTER (DETAINEE REQUEST FORM - KITE)**

| | | TIME/DATE STAMP |
|---|---|---|

Omar Tiverso Martin~~~ El salvador          213481649

Detainee Name          Nationality          ICE A#

W4-101-10          7-3-2017

Dorm          Date          Officer Signature

| **MARK YOUR REQUEST** | **MARQUE SU PEDIMENTO** | Other Request: |
|---|---|---|
| ☐ LIBRARY | ☐ BIBLIOTECA | |
| ☐ PHONE CALL | ☐ LLAMADAS TELEFÓNICAS | |
| Telephone number/Numero de teléfono | | |

OK solicito que me
de+ 4oquren los nú
meros de telefono de mi Esposa y mi
Hija estan violando miderecho

RESPONSE:

Y de mi abgado. los demandare
TIS 239-580 8349 - Y 239-244-5700
Y 6192729065

Completed  YES ☐     NO ☐     BY:_____          DATE:_____

**ADELANTO / ICE PROCESSING CENTER (DETAINEE REQUEST FORM - KITE)**

JUL 6 '17 RCVD

Omar Rivera Martinez    El Salvador    2130 81649
Detainee Name                          Nationality        ICE A#

TIME/DATE STAMP

W4-101-1U    7-3-2017
Dorm         Date                                   Officer Signature

**MARK YOUR REQUEST**          **MARQUE SU PEDIMENTO**          Other Request:
☐ LIBRARY                      ☐ BIBLIOTECA
☐ PHONE CALL                   ☐ LLAMADAS TELEFÓNICAS    OK se estan sobre
Telephone number/Numero de teléfono    Pasando    Necesito tlablar con
mi ICE ( Jimeno) de immediato

RESPONSE:    Necesito que desbloqueen Mis
Numeros    OK. ( Por favor llene un
ICE Kite para su
Solicitud )

Completed YES ☑    NO ☐    BY:                    DATE: 7-6-17

**GEO 00146**

# EXHIBIT 44

# EXHIBIT 45

1132 Orage AV
oronge ave
Long BEACH CA
90813

Carta de Support Notariade
Copia de ID Siudadano ó residua
Copia de bill-Luz o Agua domicilio
Copia de talla de cheque

Febrero 4-2016.

SNap Map
voses del incierno
AVABa solo #1 col. chaloca
Zanate Pac santo domigo
OXaca

| | | | Isaa |
|---|---|---|---|
| Alex: X603491604X | Jaqulin menendez | Ramon | |
| Felip: X6154311623X | 714 600 1119 | 8162136825 X | |
| Mirca: 8183716503 X | MAMA' X | Ariel | |
| Robert X 8532018117 X | 7000-8416 X | 6179539573X | |
| Ester: X473857462X | Joselin X | Roberto | |
| | 7935-3735 X | 888376 7054 X | |
| Abogd X2132223723 X | MaMá guille X | Casa-Ester X | |
| Jose: 7448-3004 | 994 1014054 X | 34768574 62X | |
| Cony: 66799538238X | 323984 6097 | Comisaria. X | |
| Jorge Univicion X | Pedro Mancia | 866 345 1884 X | |
| 3052759206 BX | Feliciti Alex X | Chqi Zuzaya | |
| 3056080826X | 7603328631X | 65 28 46 25 99 | |
| Tere: 562606 4 360 X | 33383234028X | Juanita | |
| Jose yomper X | 2135729484 X | 994 101 6227 | |
| 9493225376 X | 2028419788 X | | |

P000011

# EXHIBIT 46

**CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER**

W/O 253050

# MONTHLY H$_2$O TEMP TESTS-MEDICAL EAST

| Unit 1: | Temperature | | ICE Holding | Temperature |
|---|---|---|---|---|
| 1A | 110° | | **Kitchen:** | |
| 1B | 112° | | Sink 1 by Dishwasher | 118° |
| 1C | 113° | | Sink 2 by Baking | 117° |
| 1C | 112° | | Sink 3 Table by Skillets | 114° |
| Janitorial Closet | 114° | | Sink 4 Table by Ovens | 119° |
| Bubble | 110° | | Sink 5 Table by Prep | 118° |
| Staff Bath | 108° | | Sink 6, 3 Sink area | 117° |
| Yard | 107° | | 3 Sink | n/a |
| | n/a | | Sink 7, 2 Sink | 118° |
| Processing Center | n/n | | 2 Sink | N/A |
| | | | Sink 8 by Office | 116° |
| **Medical:** | | | Staff Bathroom | 116° |
| Isolation Cell | 104° | | Detainee Bathroom | 116° |
| Telemedicine | 113° | | | |
| Bathroom | 110° | | **Laundry:** | |
| Mental Health | 113° | | Bathroom | 115° |
| Exam 1 | 113° | | Sink | 115° |
| Exam 2 | 113° | | | |
| Lab/Exam 3 | 113° | | **Lobby:** | |
| Pharmacy | 112° | | Mens | 107° |
| | | | Womens | 106° |
| **Dental:** | | | | |
| Exam | 109° | | **Unit 2:** | |
| Lab | 109° | | 2A | 111° |
| | | | 2B | 112° |
| **Staff Bathrooms:** | | | 2C | 113° |
| Mens | 104° | | Janitorial Closet | 116° |
| Womens | 105° | | Bubble | 113° |
| | | | Staff Bath | 110° |
| Medical Holding | 101° | | Yard | 105° |
| | | | | |
| Detainee Waiting | 103° | | **Admin:** | |
| | | | GEO Mens | 106° |
| **Intake:** | | | GEO Womens | 107° |
| Holding 1 | 105° | | GEO Breakroom | 110° |
| Holding 2 | 108° | | Maintenance | 114° |
| Exam | no Access | | Warehouse | no Access |
| Cell 1 | Storage | | ICE Mens | 112° |
| Cell 2 | Storage | | ICE Womens | 117° |
| Cell 3 | Storage | | ICE Breakroom | 114° |
| Cell 4 | Storage | | | |
| Cell 5 | Storage | | **Training:** | |
| Shower 1 | 102° | | Mens | no Hot water |
| Shower 2 | 101° | | Womens | no Hot water |

Date: 7.3.17

Inspected By: 1Lewis

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

# MONTHLY H$_2$O TEMP TESTS EAST

| Unit 1: | Temperature | ICE Holding | Temperature |
|---|---|---|---|
| 1A | 114° | | |
| 1B | 115° | Kitchen: | |
| 1C | 114° | Sink 1 by Dishwasher | 120° |
| 1D | 114° | Sink 2 by Baking | 120° |
| Janitorial Closet | 116° | Sink 3 Table by Skillets | 119° |
| Bubble | 105° | Sink 4 Table by Ovens | 119° |
| Staff Bath | 104° | Sink 5 Table by Prep | 120° |
| Yard | 102° | Sink 6, 3 Sink area | 120° |
| Processing Center | n/a | Sink 7, 2 Sink | 119° |
| Medical: | | Sink 8 by Office | 119° |
| Isolation Cell | 106° | Staff Bathroom | 119° |
| Telemedicine | 115° | Detainee Bathroom | 114° |
| Bathroom | 107° | | |
| Mental Health | 115° | Laundry: | |
| Exam 1 | 114° | Bathroom | 114° |
| Exam 2 | 114° | Sink | 114° |
| Lab/Exam 3 | 114° | | |
| Pharmacy | 114° | Lobby: | |
| | | Mens | 104° |
| Dental: | | Womens | 104° |
| Exam | 106° | | |
| Lab | 106° | Unit 2: | |
| | | 2A | 115° |
| Staff Bathrooms: | | 2B | 115° |
| Mens | 107° | 2C | 115° |
| Womens | 107° | Janitorial Closet | 115° |
| | | Bubble | 114° |
| Medical Holding | 101° | Staff Bath | 109° |
| | | Yard | 102° |
| Detainee Waiting | 104° | | |
| | | Admin: | |
| Intake: | | GEO Mens | 111° |
| Holding 1 | 102° | GEO Womens | 110° |
| Holding 2 | 103° | GEO Breakroom | 112° |
| Shower 1 | 103° | Maintenance | 112° |
| Shower 2 | 103° | Warehouse | no access |
| | | ICE Mens | 111° |
| | | ICE Womens | 110° |
| | | ICE Breakroom | 111° |

Date: 6-25-17

Inspected By: _KERES_

**CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER**

W/O 222564

# MONTHLY H₂O TEMP TESTS-MEDICAL EAST

| | Temperature | | Temperature |
|---|---|---|---|
| **Unit 1:** | | ICE Holding | 104° |
| 1A | 111° | | |
| 1B | 112° | **Kitchen:** | |
| 1C | 111° | Sink 1 by Dishwasher | 118° |
| 1C | 110° | Sink 2 by Baking | 117° |
| Janitorial Closet | 114° | Sink 3 Table by Skillets | 119° |
| Bubble | 110° | Sink 4 Table by Ovens | 119° |
| Staff Bath | 116° | Sink 5 Table by Prep | 118° |
| Yard | 106° | Sink 6, 3 Sink area | |
| | N/A | 3 Sink | 118° |
| Processing Center | N/A | Sink 7, 2 Sink | |
| | | 2 Sink | 118° |
| **Medical:** | | Sink 8 by Office | 117° |
| Isolation Cell | 103° | Staff Bathroom | 118° |
| Telemedicine | 113° | Detainee Bathroom | 117° |
| Bathroom | 106° | | |
| Mental Health | 112° | **Laundry:** | |
| Exam 1 | 113° | Bathroom | 114° |
| Exam 2 | 114° | Sink | 115° |
| Lab/Exam 3 | 114° | | |
| Pharmacy | 114° | **Lobby:** | |
| | | Mens | 110° |
| **Dental:** | | Womens | 110° |
| Exam | no access | | |
| Lab | no access | **Unit 2:** | |
| | | 2A | 108° |
| **Staff Bathrooms:** | | 2B | 109° |
| Mens | N/A | 2C | 109° |
| Womens | 1 | Janitorial Closet | 112° |
| | | Bubble | 110° |
| Medical Holding | 104° | Staff Bath | 116° |
| | | Yard | 106° |
| Detainee Waiting | 101° | | |
| | | **Admin:** | |
| **Intake:** | | GEO Mens | 109° |
| Holding 1 | 106° | GEO Womens | 108° |
| Holding 2 | 106° | GEO Breakroom | 111° |
| Exam | no access | Maintenance | 114° |
| Cell 1 | Storage | Warehouse | no access |
| Cell 2 | Storage | ICE Mens | 109° |
| Cell 3 | Storage | ICE Womens | 109° |
| Cell 4 | Storage | ICE Breakroom | 111° |
| Cell 5 | Storage | | |
| Shower 1 | 104° | **Training:** | |
| Shower 2 | 105° | Mens | no Hot water |
| | | Womens | no Hot water |

Date: 5/26/17
Inspected By: _____

**CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER**

W/0 25 3171

# WEEKLY H$_2$O TEMP TESTS-MEDICAL EAST

| | Temperature Range 100°-120° | | Temperature Range 100°-120° |
|---|---|---|---|
| **MEDICAL:** | | **DENTAL:** | |
| Restroom | 110° | Exam | 104° |
| Mental Health | 113° | Lab | 109° |
| Exam 1 | 113° | | |
| Exam 2 | 113° | | |
| Lab/Exam 3 | 113° | | |
| Pharmacy | 112° | | |
| Telemedicine | 113° | | |
| Holding | 102° | | |
| Isolation Cell | 105° | | |

Comments/Findings:

_____

_____

_____

_____

Inspected By: _Keans_        Date: _7-3-17_

**CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER**

w/o 238365

# WEEKLY H$_2$O TEMP TESTS-MEDICAL EAST

| **MEDICAL:** | Temperature Range 100°-120° | **DENTAL:** | Temperature Range 100°-120° |
|---|---|---|---|
| Restroom | 106° | Exam | NO ACCESS |
| Mental Health | 112° | Lab | NO ACCESS |
| Exam 1 | 112° | | |
| Exam 2 | 111° | | |
| Lab/Exam 3 | 112° | | |
| Pharmacy | 111° | | |
| Telemedicine | 112° | | |
| Holding | 102° | | |
| Isolation Cell | 106° | | |

Comments/Findings:

_____

_____

_____

_____

Inspected By: _Leaos_          Date: _6-3-17_

GEO 05411

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

w/o 23862

# WEEKLY H$_2$O TEMP TESTS-MEDICAL EAST

| | Temperature Range 100°-120° | | Temperature Range 100°-120° |
|---|---|---|---|
| **MEDICAL:** | | **DENTAL:** | |
| Restroom | 106° | Exam | no access |
| Mental Health | 1120 | Lab | no access |
| Exam 1 | 113° | | |
| Exam 2 | 113° | | |
| Lab/Exam 3 | 114° | | |
| Pharmacy | 114° | | |
| Telemedicine | 1140° ~~112°~~ | | |
| Holding | 104° | | |
| Isolation Cell | 103° | | |

Comments/Findings:

_____

_____

_____

_____

Inspected By: _Kease_          Date: 8-21-17

GEO 05412

EXHIBIT 47

Subject ID: ▓▓▓▓▓▓

## ORDER TO DETAIN OR RELEASE ALIEN

TO: (NAME and TITLE of Person in Charge of Facility)
JAMES JANECKA, WARDEN

(Name of Facility) ADELANTO DETENTION FACILI
10400 RANCHO RD.
ADELANTO, CA 92301 US

| Please | X | Detain | ☐ | Release | | Date 05/19/2017 | Time 12:00 AM |

Name of Alien GRANDE RODRIGUEZ, MARVIN JOSUE

File Number

Event No. ▓▓▓▓▓▓▓▓

| Age | Date of Birth (Mo.Day.Yr.) | Sex | Nationality | Foreign Address |
|---|---|---|---|---|
| | | M | EL SALVADOR | ▓▓▓▓▓▓▓▓ |

Nature of Proceedings
ER-CF (EL SALVADOR) HOLD FOR REMOVAL PROCEEDINGS

Signature of Officer Receiving Alien
*Castillo*

REMARKS:

SUBJECT ID: ▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓

*05/19/17 @ 1259*

Signature of Officer Authorizing Action

Title
SDDO

Form I-203 (Rev. 08/01/07)

## UNITED STATES DEPARTMENT OF HOMELAND SEC

GRANDE RODRIGUEZ,
MARVIN
05/19/2017

## ORDER TO DETAIN OR RELEASE ALIEN

TO: (NAME and TITLE of Person in Charge of Facility)
JAMES JANECKA, WARDEN

(Name of Facility)
ADELANTO DETENTION FACILITY

| Please | ☑ Detain | ☐ Release | | Date 5/30/2017 | Time |
|---|---|---|---|---|---|

Name of Alien
LEMUS-CAMPOS, JOSUE

File Number
A#▮▮▮▮▮

| Age | Date of Birth (Mo.Day.Yr.) | Sex M | Nationality EL SAL | Foreign Address |
|---|---|---|---|---|

| Nature of Proceedings | Signature of Officer Receiving Alien |
|---|---|

REMARKS:

5·30·17 @ 1400



LEMUS-CAMPOS, JOSUE
05/30/2017

| Signature of Officer Authorizing Action | Title Deportation Officer |
|---|---|

Form I-203 (Rev. 08/01/07)

UNITED STATES DEPARTMENT OF HOMELAND S

GEO 00509

Subject ID: ████████

## ORDER TO DETAIN OR RELEASE ALIEN

TO: (NAME and TITLE of Person in Charge of Facility)
James Janecka, Warden

(Name of Facility) ADELANTO DETENTION FACILI
10400 RANCHO RD.
ADELANTO, CA 92301 US

| Please | [X] Detain   [ ] Release | Date 05/19/2017 | Time 12:00 AM |
|---|---|---|---|

| Name of Alien BARAHONA-CORNEJO, JULIO CESAR | File Number ████ |
|---|---|
| | Event No ████████ |

| Age ████ | Date of Birth (Mo.Day.Yr.) ████████ | Sex M | Nationality EL SALVADOR | Foreign Address ████████████████████ |
|---|---|---|---|---|

| Nature of Proceedings | Signature of Officer Receiving Alien *T. Brown* |
|---|---|

REMARKS:

*05/19/17 @ 1259*

| Signature of Officer Authorizing Action | Title SDDO |
|---|---|

BARAHONA-CORNEJO, JULIO ████
05/19/2017

Form I-203 (Rev. 08/01/07)

UNITED STATES DEPARTMENT OF HOMELAND SE

GEO 01518

Subject ID: ▮▮▮▮▮

## ORDER TO DETAIN OR RELEASE ALIEN

TO: (NAME and TITLE of Person in Charge of Facility)
JAMES JANECKA, WARDEN

(Name of Facility) ADELANTO DETENTION FACILI
10400 RANCHO RD.
ADELANTO, CA 92301 US

| Please | [x] Detain | [ ] Release | Date 5·24·17 | Time |

Name of Alien BURGOS-MEJIA, ALEXANDER ANTONIO

File Number ▮▮▮▮▮

Event No ▮▮▮▮▮

| Age ▮ | Date of Birth (Mo.Day.Yr.) ▮ | Sex M | Nationality HONDURAS | Foreign Address ▮▮▮▮▮ |

Nature of Proceedings

Signature of Officer Receiving Alien  *TylSk*

REMARKS:

5·24·17 @ 1040

| Signature of Officer Authorizing Action | Title DO |



BURGOS-MEJIA,
ALEXANDER
05/24/2017

Form I-203  (Rev. 08/01/07)

UNITED STATES DEPARTMENT OF HOMELAND SE

GEO 00897

Subject ID: ▓▓▓▓

## ORDER TO DETAIN OR RELEASE ALIEN

TO: (NAME and TITLE of Person in Charge of Facility)
James Janecka, Warden

(Name of Facility) ADELANTO DETENTION FACILI
10400 RANCHO RD.
ADELANTO, CA 92301 US

| Please | [x] Detain | [ ] Release | | Date 05/19/2017 | Time 12:00 AM |
|--------|------------|-------------|--|-----------------|---------------|

| Name of Alien CORTEZ-DIAZ, JOSE | File Number ▓▓▓▓▓ |
|---|---|
| | Event No. ▓▓▓▓ |

| Age | Date of Birth (Mo.Day.Yr.) | Sex | Nationality | Foreign Address |
|-----|----------------------------|-----|-------------|-----------------|
| ▓▓ | ▓▓▓▓▓▓ | M | EL SALVADOR | ▓▓▓▓▓▓▓ |

| Nature of Proceedings | Signature of Officer Receiving Alien *T. Brown* |
|---|---|

REMARKS:

*05/19/17 @ 1259*

CORTEZ-DIAZ, JOSE
05/19/2017

| Signature of Officer Authorizing Action | Title SDDO |
|---|---|

Form I-203  (Rev. 08/01/07)

### UNITED STATES DEPARTMENT OF HOMELAND SE

GEO 01347

Subject ID: ███████

## ORDER TO DETAIN OR RELEASE ALIEN

TO: (NAME and TITLE of Person in Charge of Facility)
JAMES JANECKA, WARDEN

(Name of Facility) ADELANTO DETENTION FACILI
10400 RANCHO RD.
ADELANTO, CA 92301 US

| Please | [X] Detain | [ ] Release | | Date 05/19/2017 | Time 12:00 PM |
|---|---|---|---|---|---|

Name of Alien LOPEZ-CASTILLO, ISAAC ANTONIO

File Number
Event No: ███████

| Age | Date of Birth (Mo.Day.Yr.) | Sex M | Nationality EL SALVADOR | Foreign Address |
|---|---|---|---|---|

Nature of Proceedings ███████

Signature of Officer Receiving Alien      *Castillo*

**REMARKS:**

05/19/17 @ 1259



LOPEZ-CASTILLO, ISAAC

05/19/2017

| Signature of Officer Authorizing Action | Title SDDO |
|---|---|

Form I-203  (Rev. 08/01/07)

UNITED STATES DEPARTMENT OF HOMELAND SE

GEO 01081

Subject ID: ▓▓▓▓▓

## ORDER TO DETAIN OR RELEASE ALIEN

TO: (NAME and TITLE of Person in Charge of Facility)
James Janecka, Warden

(Name of Facility) ADELANTO DETENTION FACILI
10400 RANCHO RD.
ADELANTO, CA 92301 US

| Please | ☒ Detain | ☐ Release | | Date 5-19-17 | Time |

Name of Alien RIVERA-MARTINEZ, OMAR ARNOLDO        File Number ▓▓▓▓▓
                                                   Event No. ▓▓▓▓▓

| Age ▓▓ | Date of Birth (Mo.Day.Yr.) ▓▓▓▓ | Sex M | Nationality EL SALVADOR | Foreign Address ▓▓▓▓▓ |

| Nature of Proceedings ▓▓▓ | Signature of Officer Receiving Alien  *Nowicki* |

REMARKS:

05/19/17 @ 1259



RIVERA-MARTINEZ, OMAR
05/19/2017

| Signature of Officer Authorizing Action | Title SDDO |

Form I-203  (Rev. 08/01/07)

### UNITED STATES DEPARTMENT OF HOMELAND S

Subject ID: ███████

## ORDER TO DETAIN OR RELEASE ALIEN

TO: (NAME and TITLE of Person in Charge of Facility)
James Janecka, *Warden*

(Name of Facility) *Adelanto Detention Facility*

| Please | [x] Detain | [ ] Release | | Date 05-19-17 | Time |

Name of Alien PENA-GARCIA, LUIS ERNESTO

File Number ████████

Event No: ████████

| Age ██ | Date of Birth (Mo.Day.Yr.) ████████ | Sex M | Nationality EL SALVADOR | Foreign Address ████████ |

| Nature of Proceedings ████ | Signature of Officer Receiving Alien *Torres* |

REMARKS:

*05/19/17 @ 1259*



PENA-GARCIA, LUIS
████████
05/19/2017

| Signature of Officer Authorizing Action | Title DEPORTATION OFFICER |

Form I-203  (Rev. 08/01/07)          UNITED STATES DEPARTMENT OF HOMELAND S

EXHIBIT 48



June 30, 2017

David A. Marin
Field Office Director
U.S. Immigration and Customs Enforcement
Department of Homeland Security
300 N. Los Angeles Street
Los Angeles, CA 90012
david.a.marin@ice.dhs.gov

Gabriel Valdez
Assistant Field Office Director
U.S. Immigration and Customs Enforcement
Adelanto Detention Center
10400 Rancho Road
Adelanto, CA 92301
Gabriel.A.Valdez@ice.dhs.gov

**RE:**    **Mistreatment of detainees participating in a hunger strike at Adelanto Detention Facility**

Dear Mr. Marin and Mr. Valdez,

We write regarding our serious concerns about the mistreatment of nine detainees at Adelanto Detention Facility who have been engaged in a peaceful hunger strike to protest the conditions of their confinement.

We are especially concerned with reports that GEO staff used excessive force against the detainees by physically assaulting and using pepper spray against detainees after they announced their hunger strike.  Such excessive force against detainees violates the ICE detention standards[1] and detainees' constitutional rights.[2]  ICE and GEO staff have also engaged in a troubling pattern of retaliation against the detainees for exercising their constitutional right to free speech under the First Amendment.[3]

We urge ICE and GEO to take immediate steps to put a stop to the ongoing mistreatment of the hunger strikers, and initiate disciplinary proceedings for staff responsible for the abuse.  ICE should also meet with the detainees to address their mistreatment and to discuss the grievances that led them to initiate the hunger strike.

---

[1] 2011 ICE Performance-Based National Detention Standards (as revised in 2016) ("2011 ICE PBNDS"), at § 2.15(V)(A)-(B).
[2] *Graham v. Connor*, 490 U.S. 386 (1989).
[3] *Pell v. Procunier*, 417 U.S. 817 (1974).

**P000004**

I.  **June 12th, 2017 Assault and Subsequent Retaliatory Actions Against Hunger Striking Detainees**

On Monday, June 12th, 2017, a group of nine detainees at Adelanto Detention Facility began a hunger strike.  During that morning's breakfast, the detainees attempted to deliver a letter of grievances regarding their conditions of confinement to ICE officials and requested a meeting with ICE.  The detainees also refused food.  In response, GEO staff ordered the detainees to return to their assigned beds for the morning count.  The detainees joined arms with each other and informed detention staff that they would not move from the breakfast table where they sat until ICE spoke to them about their concerns.

In response to the detainees' peaceful protest, a GEO officer screamed at the detainees and then began to pepper spray them.  The detainees report that the officer unloaded a canister of pepper spray on them, leaving them drenched in the pepper spray.  One detainee reports that he was sprayed on his genitals.  A group of guards then surrounded the detainees and used physical force to restrain them.  The detainees report that they were hit and slammed against the wall.  One detainee reports that GEO staff pushed him against the wall with such force that it knocked out a dental crown from his mouth and fractured his nose.  At no time did the detainees assault or retaliate against the guards.

The detainees were then handcuffed and forcibly removed from the dining hall.  They were taken to the shower, where they were doused with painfully hot water that further inflamed their irritated skin.  After showering, the detainees were placed in segregation cells.

The detainees continued to be held in segregation for the following 10 days.  Initially, the detainees were held in administrative segregation pending disciplinary proceedings; after the completion of the proceedings, the detainees were kept in disciplinary segregation as punishment.  Throughout their stay in segregation, they report receiving threats from GEO and ICE officials due to their participation in the hunger strike.  According to reports, a guard visited the detainees around June 12th and informed the detainees that they could be transferred to another detention facility if they continued the hunger strike.  Facility staff have also reportedly threatened the detainees that their participation in the hunger strike would be revealed to the Immigration Judge presiding over their bond determination and removal hearings if they did not stop the hunger strike.  The detainees also report being taunted by guards with platters of food.  Finally, facility staff have limited the detainees' ability to communicate with people outside the facility, including their counsel.

II.  **ICE and GEO's Mistreatment of The Hunger Strikers Violates Their Constitutional Rights and the Detention Standards**

ICE and GEO's use of excessive force and retaliatory actions against the detainees violate their constitutional rights and the ICE detention standards.

A.  Detention Guards Used Excessive Force Against Peacefully Protesting Detainees in Violation of their Fourth Amendment Rights and ICE Detention Standards

i.       *Fourth Amendment Rights Violation*

Immigration detainees are entitled to protection from excessive force.  The question of whether a detention officer has used excessive force is analyzed under the Fourth Amendment's objective "reasonableness" standard.[4]  The Fourth Amendment sets the applicable constitutional limitations for considering claims of excessive force during pretrial detention.  *Kingsley v. Hendrickson*, -- U.S. --, 135 S.Ct. 2466 (2015); *Gibson v. County of Washoe, Nev*., 290 F.3d 1175, 1197 (9th Cir. 2002).  Because they are held in civil custody, immigration detainees are entitled to treatment "at least as solicitous to the rights of the detainee as . . . an individual accused but not convicted of a crime."  *See Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004).

In evaluating excessive force claims under the Fourth Amendment, courts may consider the severity of the violation at issue, whether the individual poses an immediate threat to the safety of the officers or others, and whether the individual is actively resisting or fleeing. *Graham*, 490 U.S. at 396.

There is no question that GEO staff's pepper spraying of detainees engaged in a peaceful protest was excessive under the foregoing standards.  It is well-established that the use of pepper spray can constitute excessive force.[5]  "Pepper spray is designed to cause intense pain, and inflicts a burning sensation that causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis of the larynx, as well as disorientation, anxiety, and panic."  *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1162 (9th Cir. 2011) (internal quotations and citation omitted).[6]  Because of its severe effects, the Ninth Circuit has held that police officers' use of pepper spray on peaceful protestors—who had locked arms using restraints and refused officers' orders to leave the protest site—was plainly excessive, and no reasonable officer could conclude otherwise.  *Headwaters Forest Defense v. County of Humboldt,* 276 F.3d 1125, 1131 (9th Cir. 2002).[7]  Here too, the "the pepper spray was unnecessary to subdue, remove, or arrest the protestors" and "the officers could safely and quickly remove the protestors" using less severe methods.  *Id.*

GEO staff also used excessive force by physically striking the detainees and slamming them against the wall, resulting in serious injuries to at least one detainee.  Even if the detainees failed to obey a lawful order to disperse and attend morning count, that does not justify physically assaulting them.  The Ninth Circuit has held that an officer's use of pepper spray and baton blows in response to a person's failure to obey an order would be "plainly in excess of the force necessary under the circumstances," and thus excessive under the Fourth Amendment.  *Young*, 655 F.3d at 1167.

---

[4] *Graham*, 490 U.S. at 386.

[5] *See Lolli v. County of Orange,* 351 F.3d 410, 417 (9th Cir. 2003); *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005)*; Cabral v. County of Glenn,* 624 F.Supp.2d 1184 (EDCA 2009).

[6] *See also United States v. Neill*, 166 F.3d 943, 949–50 (9th Cir. 1999) (finding that pepper spray causes "extreme pain" and is "capable of causing 'protracted impairment of a function of a bodily organ'" as well as lifelong health problems such as asthma).

[7] *See also Hamilton v. City of Olympia*, 687 F.Supp.2d 1231, 1242-43 (W.D. Wash. 2009) (holding that police use of pepper spray against anti-war demonstrators was an unreasonable use of force).

**P000006**

ii.     *ICE Detention Standards Violations*

Under the 2011 PBNDS, the use of force in detention facilities should never be used as punishment, and should involve only the degree necessary and reasonable to gain control of a detainee or provide for self-defense or defense of a third person.[8]  GEO staff's use of force against the detainees was unnecessary and unreasonable, in clear violation of ICE's detention standards.

Although pepper spray is an authorized intermediate force weapon under the 2011 PBNDS, it is only permitted where a detainee: (a) is armed and/or barricaded; or (b) cannot be approached without danger to self or others; and (c) a delay in controlling the situation would seriously endanger the detainee or others, or would result in a major disturbance or serious property damage.[9]  Here, the use of pepper spray against the detainees was not necessary given that (a) the detainees were not armed or barricaded; (b) they were quietly sitting down with their arms interlocked, and could therefore be approached without danger to themselves or others; and (c) any delay in controlling the peaceful protest would not have seriously endangered the detainees or others or resulted in a major disturbance or serious property damage.

Because GEO staff could have safely and quickly removed the detainees using less severe methods, the physical assault the detainees endured was unnecessary, unreasonable, and in violation of the detention standards.

B.   Facility Staff Retaliated Against the Hunger Strikers for Exercising Their First Amendment Rights

We have received reports that GEO and ICE officials have engaged in several retaliatory practices against the detainees who participated in the hunger strike in violation of their First Amendment rights and ICE detention policies.

i.     *Threats of Transfer*

According to reports, the detainees were visited by a facility staff member around June 12th who informed the detainees that they could be transferred to another detention facility if they continued the hunger strike.  This statement appears to be a retaliatory threat in response to the detainees exercising their free speech rights under the First Amendment.

Detainees retain First Amendment rights to free speech, and to be free from retaliation for the exercise of their right to free expression.[10]  In a long line of cases, the Ninth Circuit has

---

[8] 2011 PBNDS, *supra* note 1, at § 2.15(V)(A)(1).

[9] *Id.* at § 2.15(V)(G)(3).

[10] *Schroeder v. McDonald,* 55 F.3d 454, 461 (9th Cir. 1995).  *See also Pell v. Procunier,* 417 U.S. 817 (1974); *Barnett v. Centoni,* 31 F.3d 813, 815–16 (9th Cir. 1994).

recognized that prison officials cannot transfer a prisoner to another prison in retaliation for the prisoner's exercise of his First Amendment rights.[11]

### ii.     Threats to Inform Immigration Judges

The detainees who participated in the hunger strike have reportedly been threatened with having their participation in the hunger strike be revealed to the Immigration Judge presiding over their bond and removal hearings.

To the extent that these threats are intended to coerce detainees into stopping their hunger strike, such retaliatory threats chill detainees' free speech, in clear violation of detainees' First Amendment rights.[12]  These reported retaliatory actions against the detainees also violate ICE's own detention policies.  The detention standards provide that Adelanto detainees have the right to pursue a grievance without fear of retaliation.[13]  According to the standards, detention facility staff shall not harass, discipline, punish or otherwise retaliate against a detainee who files a complaint or grievance.[14]  Further, the standards indicate that staff shall not permit a detainee to be subjected to retaliation for seeking judicial or administrative relief or investigation of their conditions of confinement while in detention.[15]

### iii.    Food-Based Taunts

We are also troubled by reports that facility staff have taunted detainees who participated in the hunger strike with platters of food.  To the extent the taunts attempt to punish detainees for engaging in a hunger strike, it raises significant First Amendment concerns.  As detailed above, detainees' right to protest their conditions of confinement by participating in a hunger strike without retaliation is protected under the First Amendment and ICE detention standards.  Moreover, only trained medical, mental health or hospital staff shall offer counseling regarding a detainee's participation in a hunger strike.[16]

---

[11] *Rizzo v. Dawson,* 778 F.2d 527, 531-32 (9th Cir. 1985); *see also Gomez v. Vernon,* 255 F.3d 1118, 1127 (9th Cir. 2001) (holding that "repeated threats of transfer because of [the plaintiff's] complaints about the [prison] library" were sufficient to ground a retaliation claim); *Silva v. Di Vittorio,* 658 F.3d 1090, 1105 (9th Cir. 2011) (holding that prisoner's transfer for filing grievances and seeking access to legal process satisfied the pleading requirements of a retaliation claim); *Rhodes v. Robinson,* 408 F.3d 559, 568 (9th Cir. 2005) (holding that prison officers' threats of transfer in response to prisoner filing grievances and pursuing civil rights litigation chilled prisoner's First Amendment rights).

[12] *See Brodheim v. Cry*, 584 F.3d 1262, 1274 (9th Cir. 2009) (holding that a prisoner may prevail on a First Amendment claim based on a general threat that is not carried out if that threat would chill the protected activity of an ordinary prisoner); *see also Watison v. Carter,* 668 F.3d 1108, 1115 (9th Cir. 2012) (holding that prison staff's retaliatory interference with inmate's parole hearing as a response to inmate filing grievances against officer was sufficient to state a First Amendment retaliation claim).

[13] 2011 PBNDS, *supra* note 1, at § 3.1(V)(B).

[14] *Id*. at § 3.1(V)(G).

[15] *Id*. at § 6.3(V)(O).

[16] *Id*. at § 4.2(II)(5).

      *iv.*       *Blocking Detainees' Access to Telephone Calls*

Finally, we have received reports that facility staff are preventing the detainees from making outside calls, including to attorneys, that some numbers are blocked to detainees, and that attorneys and their staff have been denied a private space to conduct confidential legal visits with detainees.  These actions are in clear violation of the detention standards.  According to the detention standards, ICE facilities should ensure that detainees maintain ties with their families and others in the community, including legal representatives, by providing them with reasonable and equitable telephone services.[17]  Moreover, detainees and their legal counsel shall be able to communicate effectively with each other, and telephone access procedures shall foster legal access and confidential communications with attorneys.[18]  Finally, ICE detention standards require that "[v]isits between legal representatives or legal assistants and individual detainees are confidential and shall not be subject to auditory supervision" and that facilities provide a means for detainees to exchange documents with legal representatives or legal assistants during such visits.[19]

There is nothing in the detention standards that authorizes facility staff to eliminate phone access for detainees engaged in a peaceful protest.  According to the standards, a facility may restrict the number and duration of general telephone calls only (1) when required by the volume of detainee telephone demand, (2) in order to ensure orderly facility operations, and (3) in case of emergency.[20]  There is nothing to indicate that preventing the detainees from accessing telephone calls is required for any of these reasons.  Further, blocking access to legal calls is prohibited by ICE detention standards, which state: "A facility may place reasonable restrictions on the hours, frequency and duration of [legal calls] but may not otherwise limit a detainee's attempt to obtain legal representation."[21]  Additionally, to the extent that the facility is blocking detainees' access to counsel, such an interference would violate detainees' right to communicate with counsel protected by the INA and the Constitution.

* * *

We urge ICE and GEO management to take steps to remedy the physical assault and retaliation against detainees engaged in a hunger strike.  Specifically, ICE and GEO should:

1.  Immediately end the ongoing retaliatory actions and threats against the detainees.
2.  Initiate disciplinary proceedings for facility staff responsible for the assault of detainees on June 12 and subsequent retaliatory acts and threats against the detainees.
3.  Schedule a meeting with GEO and ICE management and the detainees to discuss their mistreatment and the grievances that led them to initiate a hunger strike.  Such a meeting should include all the nine detainees, as well as their legal counsel.

---

[17] *Id*. at § 5.6(I).
[18] *Id*. at § 5.6(II)(4) & 5.6(II)(6).
[19] 2011 ICE PBNDS, *supra* note 1, § 5.7(J)(9) & 5.7(J)(10).
[20] *Id*. at 362.
[21] 2011 ICE PBNDS, *supra* note 1, § 5.6(F)(1).

We look forward to your prompt attention to these serious issues.  We request that ICE and GEO inform us as to what steps they intend to take to address the mistreatment of the hunger strikers by July 3, 2017.  Should you have any questions, please contact Michael Kaufman at mkaufman@aclusocal.org or (213) 977-5232.


Sincerely,


Michael Kaufman
Senior Staff Attorney
ACLU of Southern California

EXHIBIT 49

## DECLARATION OF HUSSAIN TURK

I, Hussain Turk, do hereby affirm the following of my knowledge:

1.  My name is Hussain Turk, I am an attorney at the Los Angeles HIV Law and Policy Project in Los Angeles, California. I graduated from the University of California, Los Angeles School of Law in May of 2016, and am barred by the State of California (SBN 314704).

2.  On June 17, 2017, I traveled to the Adelanto Detention Facility at the request of Attorney Nicole Ramos, counsel for Mr. Omar Rivera Martinez (A# 213 081 649) and Mr. Josue Mateo Lemus Campos (A# 213 078 965).

3.  I met with Mr. Rivera Martinez in a legal visiting room. I observed at least 30 separate scratches on his upper body ranging in length from one to several inches. I also observed Mr. Rivera Martinez's mouth, and noted that his upper right lateral cuspid tooth was missing, as well as a missing crown from his bottom left second bicuspid tooth.

4.  His nose is visibly fractured and off-set to the left side of his face by several millimeters. He had bruising on his right wrist where they had handcuffed him very tightly. He appeared frightened and in pain. I twice asked Officer Ruiz to remove Mr. Rivera Martinez's handcuffs during our meeting. I was informed that Lieutenant Bowdrie had ordered him to remain handcuffed because he was being disciplined.  When asked why Mr. Rivera Martinez was being disciplined, a bearded white male officer with a tattooed sleeve on his left forearm made an exaggerated air-quote gesture and stated "for inciting a group protest."  I perceived his tone and gesture to imply a skepticism regarding the underlying violation for which Rivera-Martinez was being disciplined. Despite my repeated requests, and despite Mr. Rivera Martinez clearly weakened physical and mental states, he remained handcuffed throughout the entire duration of our meeting, which was approximately 75 minutes.

5.  When the bearded white male officer with the tattooed sleeve on his left forearm made the exaggerated air-quotes gesture by raising both hands in the air and dually flexing his index and middle fingers while simultaneously stating "for inciting a group protest" it was my firm belief and understanding that the Officer was implying that Mr. Rivera Martinez was being inappositely and disproportionately punished for engaging in a silent and peaceful hunger strike. My understanding as such is based on the widely accepted social use of the Officer's gesture to commonly invoke sarcasm or skepticism with regards to the matter being air-quoted. As such, it seemed apparent to me that this Officer in particular knew or had some reason to believe that Mr. Rivera Martinez's rights were being violated.

6.  Mr. Rivera Martinez reported to making numerous verbal and written requests for medical care because he has experienced extreme difficulty breathing as a result of his

nose being fractured. He reported that he is now in so much pain that he cannot sleep, and that he is too afraid of further torture to keep asking for medical treatment.

7. Also, on this date, I met with Mr. Lemus Campos. Prior to meeting with Mr. Lemus Campos I was informed by Officer T. Johnson that I could not visit with Mr. Lemus Campus in a contact visitation room because Mr. Lemus Campos was being disciplined. Officer Johnson indicated that the facility had "made a mistake" in allowing me to visit with Mr. Rivera Martinez in a contact visitation room because he too was being punished. I asked to see this policy in their operations handbook. Officer T. Johnson spent approximately five ("5") minutes reviewing a Geo guidebook and was unable to locate this policy. Officer T. Johnson then sent me to the front lobby where she said I could meet with the Lieutenant to review this policy. I waited in the front lobby, but the Lieutenant never arrived and nobody was able to produce any written evidence of the existence of the policy in question.

8. My meeting with Mr. Lemus Campos took place in a no-contact visiting area with a soundproof glass barrier using a telephone. This meeting was not private. There were guards present within earshot of my meeting with Mr. Lemus Campus. I informed the guards that Mr. Lemus Campos was entitled to a private space to preserve attorney-client confidentiality but they refused to comply with this request. Mr. Lemus Campos looked visibly uncomfortable with the fact that the guards refused to leave.

9. Both Mr. Lemus Campos and Mr. Rivera Martinez reported being pepper sprayed profusely in their faces, and specifically, in Mr. Lemus Campos's genitals. Mr. Lemus Campos and Mr. Rivera Martinez stated that the guards forced them to shower with hot water to make the experience more painful for them, and then laughed at them while they showered.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct to the very best of my knowledge. Executed on June 23, 2017 at Los Angeles, California.

_Hussain Turk_

Hussain Turk, Esq.

_June 23, 2017_

June 23, 2017

P000448

# EXHIBIT 50

# ICE
## SOLICITUD DEL DETENIDO

JUN 22 2017

### OFICIAL DE DEPORTACION _Banks_

**NOMBRE DEL DETENIDO** _Alexander Antonio Ruegas Mejia_

**NUMERO A-** _213081704_         **NACIONALIDAD** _Honduras_

**NUMERO DE REGISTRO** _W4_         **DORMITORIO/ CAMA** _B 307.1u_

LY-B

- [ ] Cuando es mi próxima cita a corte?

- [ ] Califico para una fianza?
- [ ] Quisiera solicitar una reducción a mi fianza de: _____

- [ ] Cuando seré deportado? Recibí la orden de deportación el: _____
- [ ] Cuando puedo ser deportado?   [ ] Quisiera ser deportado lo más pronto posible.

- [ ] Soy elegible para una Salida Voluntaria?

- [ ] Califico para Libertad Condicional?   [ ] Cual es el estado do mi solicitud del Libertad Condicional?
- [ ] Tengo documentos para mi solicitud de Libertad Condicional (explique al final de la pagina)

- [ ] Ya tengo una Orden de Deportación.  Cuando tendrá lugar me revisión de custodia?
      - [ ] Cual es el estado de la revisión?

- [ ] Cuando podre ver al representante del Consulado?

- [ ] Necesito una copia de mi: [ ] Aviso para comparecer [ ] _____
- [ ] Tengo algunos documentos que añadir en mi expediente (explique al final de la pagina)

- [ ] Asuntos de propiedades (explique al final de la pagina) [ ] Me falta _____ de _____

- [ ] Otros (explique al final de la página)

**Por favor, especifique detalladamente:** _un cordial saludo austed y el motibo que te estoy escribiendo es por que aqui en la detencion adelanto la que nos tan asiendo ami y amis compañeros es acsurdo no es justa que dispues de todo nos sigan umillantnos_

**Respuesta del Oficial:** _Make request to Judge_

**FIRMA DEL OFICIAL** _WLLLB_         **FECHA** _6/22/17_

- [ ] Interview [ ] Interpreter  Interviewed: _____

- [ ] Written Response Only  Received: _____

ADE-DETAINEE
08-2011

**GEO 00916**

# SOLICITUD DEL DETENIDO

QUEVEDO
6/23/17

## OFICIAL DE DEPORTACION

NOMBRE DEL DETENIDO Isaac Antonio Lopez Cosillo.

NUMERO A-213084605       NACIONALIDAD Salvadoreña       Ⓔ

NUMERO DE REDISTRO       DORMITORIO/CAMA W4 C 204 2U

W4-C

☐ Cuando es mi próxima cita a corte?

☐ Califico para una fianza?
☐ Quisiera solicitar una reducción a mi fianza de: _____

☐ Cuando seré deportado?  Recibí la orden de deportación el: _____
☐ Cuando puedo ser deportado?  ☐ Quisiera ser deportado lo más pronto posible.

☐ Soy elegible para una Salida Voluntaria?

☐ Califico para Libertad Condicional?  ☐ Cual es el estado do mi solicitud del Libertad Condicional?
☐ Tengo documentos para mi solicitud de Libertad Condicional (explique al final de la pagina)

☐ Ya tengo una Orden de Deportación.. Cuando tendrá lugar me revisión de custodia?
     ☐ Cual es el estado de la revisión?

☐ Cuando podre ver al representante del Consulado?

☐ Necesito una copia de mi; ☐ Aviso para comparecer ☐ _____
☐ Tengo algunos documentos que añadir en mi expediente (explique al final de la pagina)

☐ Asuntos de propiedades (explique al final de la pagina) ☐ Me falta _____ de _____

☐ Otros (explique al final de la página)

Por favor, especifique detalladamente: El grupo de adelanto 09 solicitamos
tener una platica con "Ice" en el cual estemos presente todos los
del grupo y un abogado, y les recordamos que este dia comeluimos
las 48 horas de nuestra huelga pasifica de hambre.

Respuesta del Oficial: Duplicarse

F P LA DEL OFICIAL  Quevedo  FECHA  06/26/17

☐ Interview ☐ Interpreter Interviewed:

☒ Written Response Only  Received: _____

ADE-DETAINEE
08-2011

GEO 01088

EXHIBIT 51



Rigo Martinez <asstnicoleramos@gmail.com>

---

## Fwd: Adelanto Facility - Block on Counsel's Telephone Number - Omar Arnold Rivera Martinez (A# 213 081 649) / Jose Mateo Lemus Campos (A#213 078 965)

1 message

---

**Nicole Ramos** <nicole@alotrolado.org>                                                   Wed, Jul 5, 2017 at 9:48 AM
To: Rigo Martinez <asstnicoleramos@gmail.com>

---------- Forwarded message ----------
From: **Nicole Ramos** <nicole@alotrolado.org>
Date: Wed, Jul 5, 2017 at 9:24 AM
Subject: Adelanto Facility - Block on Counsel's Telephone Number - Omar Arnold Rivera Martinez (A# 213 081 649) /
Jose Mateo Lemus Campos (A#213 078 965)
To: "Gabriel.A.Valdez@ice.dhs.gov" <Gabriel.A.Valdez@ice.dhs.gov>, CHRISTOPHER.BARTH@ice.dhs.gov,
david.w.jennings@ice.dhs.gov

Good morning,

On July 1st, I learned that my telephone number has been blocked such that my clients (referenced above), are not able to contact me.

On that date, I contacted Telmate, and learned that the block originated with the institution. Following, I contacted the facility, but I was advised to call back on Monday.

On July 3rd, I spoke with Lieutenant Belt of the Adelanto Detention Facility regarding the block. Lieutenant Belt advised that someone would respond to my request for information and resolution later that day.

In the afternoon, I received a voicemail message from Lieutenant Belt stating that he was not *authorized* to discuss this matter further, and that I had to seek resolution by contacting ICE, the Office of Chief Counsel, or the Warden's Office.

This morning, I contacted the Adelanto Detention Facility and requested to speak with the warden or the warden's assistant. I was transferred by the front desk to the warden's assistant, "Joanne," who declined to provide her full name. "Joanne" indicated that no one at the facility could respond to my inquiry. "Joanne" indicated that the only officials with the authority to place a block on my phone number are ICE.

Please advise when this will be resolved. I have not initiated any three-way calls using the Telmate system, nor engaged in conduct which violates program rules. Both clients are Salvadoran asylum seekers, and the blocking of their access to counsel violates their rights under the *Orantes* injunction.

Thank you,

Nicole Ramos

*(Admitted in NY - practice consists exclusively of federal immigration matters)*

Linkedin profile available at this link

Nicole Ramos, Project Director
Border Rights Project, Al Otro Lado
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
(664) 526-0145 (MX)
(619) 786-4866 (USA)

**P000161**

7/5/2017    Gmail - Fwd: Alejandro (134185 BSP on Drums) Telephonic 5-Fiber Appeal 4/11/26 MC Master (A#203 081 649) / Pre-Master Appeal Pos Campos (A#...

Case 3:18-cv-01125-BGP on Drums Telephonic 125-5 Filed 11/26/19 Page 40 of 44    Page ID #:3556

*"A lawyer is either a social engineer or a parasite on society."*
*Charles Hamilton Houston*

_____

This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended  recipient of this e-mail, or an authorized agent employee responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited.  If you received this e-mail in error, please notify us by reply e-mail. Thank you for your cooperation.

*"En la sociedad, un abogado es un ingeniero social o un parásito"*
*Charles Hamilton Houston*

_____

Este correo electrónico contiene información PRIVILEGIADA y CONFIDENCIAL destinada únicamente para el uso del destinatario(s) nombrado anteriormente. Si usted no es el destinatario original de este e-mail, o un empleado agente autorizado responsable de entregar este mensaje a su destinatario, se le notifica que cualquier diseminación o duplicación de este correo electrónico es estrictamente prohibido. Si ha recibido este correo electrónico por error, por favor notifique por correo electrónico de respuesta.Gracias por su cooperación.

--

*(Admitted in NY - practice consists exclusively of federal immigration matters)*

Linkedin profile available at this link

**Nicole Ramos, Project Director**
**Border Rights Project, Al Otro Lado**
511 E. San Ysidro Blvd., # 333
San Ysidro, CA 92173
(664) 526-0145 (MX)
(619) 786-4866 (USA)

*"A lawyer is either a social engineer or a parasite on society."*
*Charles Hamilton Houston*

_____

This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended  recipient of this e-mail, or an authorized agent employee responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited.  If you received this e-mail in error, please notify us by reply e-mail. Thank you for your cooperation.

*"En la sociedad, un abogado es un ingeniero social o un parásito"*
*Charles Hamilton Houston*

_____

Este correo electrónico contiene información PRIVILEGIADA y CONFIDENCIAL destinada únicamente para el uso del destinatario(s) nombrado anteriormente. Si usted no es el destinatario original de este e-mail, o un empleado agente autorizado responsable de entregar

P000162

este mensaje a su destinatario, se le notifica que cualquier diseminación o duplicación de este correo electrónico es estrictamente prohibido. Si ha recibido este correo electrónico por error, por favor notifique por correo electrónico de respuesta.Gracias por su cooperación.

P000163

EXHIBIT 52

# Standard Intergovernmental Service Agreement (IGSA)

## Table of Contents

| Article | Title | Page |
|---|---|---|
| I. | Purpose | 2 |
| II. | General | 3 |
| III. | Covered Services | 5 |
| IV. | Receiving and Discharging Detainees | 7 |
| V. | ICE Performance Based Detentions Standards | 8 |
| VI. | No Employment of Unauthorized Aliens | 38 |
| VII. | Period of Performance | 38 |
| VIII. | Inspections | 38 |
| IX. | Inspection Records | 39 |
| X. | Modifications and Disputes | 41 |
| XI. | Adjusting the Bed Day Rate | 42 |
| XII. | Enrollment, Invoicing, and Payment | 42 |
| XIII. | ICE Furnished Property | 44 |
| XIV. | Hold Harmless and Indemnification Provisions | 44 |
| XV. | Records | 45 |
| XVI. | Detainee Telephone Services | 45 |
| XVII. | Maintain Institutional Emergency Readiness | 46 |
| XVIII. | Security Requirements | 47 |
| XIX. | Quality Control | 51 |
| XX. | Contracting Officer's Technical Representative (COTR) | 52 |
| XXI. | Labor Standards and Wage Determination | 53 |

## EROIGSA-11-0003
## INTERGOVERNMENTAL SERVICE AGREEMENT
## BETWEEN THE
## UNITED STATES DEPARTMENT OF HOMELAND SECURITY
## U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
## OFFICE OF ENFORCEMENT AND REMOVAL OPERATIONS
## AND
## THE CITY OF ADELANTO

This Intergovernmental Service Agreement ("Agreement") is entered into between United States Department of Homeland Security Immigration and Customs Enforcement ("ICE"), and the City of Adelanto, **("Service Provider")** for the detention and care of aliens (**"detainees"**).  The term "Parties" is used in this Agreement to refer jointly to ICE and the Service Provider.

## FACILITY LOCATION:

The Service Provider shall provide detention services for detainees at the following institution(s):

**City of Adelanto**
**10400 Rancho Road**
**Adelanto, CA 92301-2237**

The following constitutes the complete agreement:
- Intergovernmental Service Agreement (IGSA)
- Appendix A - Statement of Work
- Appendix B - ICE Design Standards
- Appendix C - Structured Cable Plant Standard
- Appendix D - Performance Requirements Summary
- Appendix E - Quality Assurances Surveillance Plan (QASP)
- Appendix F - Title 29, Part 4 Labor Standards for Federal Service Contract Clause
- Appendix G - Wage Determination  Number: 2011-0013, Rev 1 Dated 02/18/2011

IN WITNESS WHEREOF, the undersigned, duly authorized officers, have subscribed their names on behalf of the City of Adelanto and Department of Homeland Security, U.S. Immigration and Customs Enforcement.

**ACCEPTED:**                                        **ACCEPTED:**

U.S. Immigration and Customs Enforcement          City of Adelanto
b6, b7c                                             D. James Hart, PH.D.
Contracting Officer                                City Manager/Executive Director

                b6, b7c

Signature:                                         Signature:
Date:  5-27-11                                     Date:  5/13/11

Page 1 of 53

ICE.2012FOIA3030Adelanto.000002