Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
Carmen M. Aguado (SBN 291941)
E-mail: caguado@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600     Fax: 213.236.2700

Attorneys for Defendants
THE GEO GROUP, INC., DIAZ, CAMPOS and
CITY OF ADELANTO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

OMAR ARNOLDO RIVERA MARTINEZ; ISAAC ANTONIO LOPEZ CASTILLO; JOSUE VLADIMIR CORTEZ DIAZ; JOSUE MATEO LEMUS CAMPOS; MARVIN JOSUE GRANDE RODRIGUEZ; ALEXANDER ANTONIO BURGOS MEJIA; LUIS PEÑA GARCIA; JULIO CESAR BARAHONA CORNEJO, as individuals,

Plaintiffs,

v.

THE GEO GROUP, Inc., a Florida corporation; the CITY OF ADELANTO, a municipal entity; GEO LIEUTENANT DURAN, sued in her individual capacity; GEO LIEUTENANT DIAZ, sued in her individual capacity; GEO SERGEANT CAMPOS, sued in his individual capacity; SARAH JONES, sued in her individual capacity; THE UNITED STATES OF AMERICA; and DOES 1-10, individuals,

Defendants.

Case No. 5:18-cv-01125-SP

**DEFENDANTS THE GEO GROUP, INC. AND CITY OF ADELANTO'S REPLY TO PLAINTIFFS' OPPOSITION TO THEIR MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Hearing Date:   December 17, 2019
Time:           10:00 a.m.
Courtroom:      3

Magistrate Judge: Honorable Sheri Pym

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

5:18-CV-01125-SP
GEO'S AND CITY OF ADELANTO'S REPLY
TO PLAINTIFFS' OPPOS. TO MSJ

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION. ...............................................................................1

II. THERE IS NO LEGAL AUTHORITY THAT SUPPORTS
    PLAINTIFFS SECTION 1983 CLAIMS AGAINST GEO. ..........................1

    A. The Court Has *Never* Determined That GEO Is Liable For
    Section 1983 Claims. .................................................................1

    B. Plaintiffs' Legal Authority Does Not Support Their Arguments. .........3

    C. *Minneci* And *Bivens* Are Applicable Because GEO Was
    Performing Federal Functions. ....................................................5

III. *IF* PLAINTIFFS' SECTION 1983 CLAIMS ARE VIABLE,
     PLAINTIFFS NEVERTHELESS FAIL TO DEMONSTRATE A
     GENUINE DISPUTE AS TO THEIR *MONELL* CLAIMS. ........................7

    A. There Is No Legal Authority That Supports The Argument That
    The City Is Liable Under *Monell* For The Policies Of GEO. ..............8

        1. Plaintiffs Cannot Demonstrate The City Caused The
       Constitutional Violation. ................................................9

        2. Plaintiffs' Ratification Argument Related To The City Is
       Misguided. ...................................................................10

        3. *Martinez* And *Villarreal* Are Instructive. ..............................12

    B. GEO Did Not Ratify Any Unconstitutional Deprivations. ................14

    C. Plaintiffs' Claim For Failure To Train Is Unsupported By The
    Evidence. ...............................................................................16

    D. There Is No Evidence That GEO Maintained Policies That
    Caused A Deprivation Of Plaintiffs' Rights. .................................18

IV. PLAINTIFFS FAIL TO STATE AN EXCEPTION TO THE RULE
    THAT THE CITY CANNOT BE VICARIOUSLY LIABLE
    [CLAIMS ONE, TWO, THREE, FOUR, EIGHT, AND TEN]. ...................19

V. PLAINTIFFS CANNOT ESTABLISH THE CITY HAD A NON-
   DELEGABLE AND/OR SPECIAL DUTY TO THEM [CLAIMS
   THREE AND TEN]. ..........................................................................22

VI. PLAINTIFFS' VICARIOUS LIABILITY CLAIM AGAINST GEO
    FAILS. ..........................................................................................24

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4832-0932-4718 v2
05788-0035

- i -

5:18-CV-01125-SP
GEO'S AND CITY OF ADELANTO'S REPLY
TO PLAINTIFFS' OPPOS. TO MSJ

# TABLE OF CONTENTS
## (continued)

Page

VII.   PLAINTIFFS FAIL TO ESTABLISH THEIR FAILURE TO TRAIN
AND SUPERVISE CLAIM AGAINST GEO [THIRD CLAIM]................25

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- ii -

5:18-CV-01125-SP
GEO'S AND CITY OF ADELANTO'S REPLY
TO PLAINTIFFS' OPPOS. TO MSJ

# **TABLE OF AUTHORITIES**

**Page(s)**

### **Federal Cases**

*Bd. of Cnty. Com'rs of Bryan County, Okl. v. Brown,*
    520 U.S. 397 (1997) ............................................................................... 10

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
    403 U.S. 388 (1971) ...................................................................... *passim*

*Brodheim v. Cry,*
    584 F.3d 1262 (9th Cir. 2009) ................................................................ 19

*Christie v. Iopa,*
    176 F.3d 1231 (9th Cir. 1999) ........................................... 12, 14, 15, 16

*City of Canton, Ohio v. Harris,*
    489 U.S. 378 (1989) ............................................................... 9, 16, 17

*City of St. Louis v. Praprotnik,*
    485 U.S. 112 (1988) ............................................................................... 14

*Correctional Services Corp. v. Malesko,*
    534 U.S. 61 (2001) .................................................................................... 6

*Flores v. County of Los Angeles,*
    758 F.3d 1154 (9th Cir. 2014) ................................................................ 16

*Harrelson v. Dupnik,*
    970 F. Supp. 2d 953 (D. Ariz. 2013) ..................................... 22, 23, 24

*Hyland v. Wonder,*
    117 F.3d 405 (9th Cir. 1997) ........................................................ 15, 16

*Lytle v. Carl,*
    382 F.3d 978 (9th Cir. 2004) ................................................................. 12

*Martinez v. Monterey County Sheriffs Off.,*
    18-CV-00475-BLF, 2019 WL 176791 (N.D. Cal. Jan. 11, 2019) ............... 13, 14

*Minneci v. Pollard,*
    132 S. Ct. 617 (2012) ............................................................................... 4

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4832-0932-4718 v2
05788-0035

- iii -

5:18-CV-01125-SP
GEO'S AND CITY OF ADELANTO'S REPLY
TO PLAINTIFFS' OPPOS. TO MSJ

*Minneci v. Pollard,*
 565 U.S. 118 (2012)...................................................................................*passim*

*Monell v. Dept. of Social Services,*
 436 U.S. 658 (1978)...................................................................................*passim*

*Estate of Osuna v. Cty. of Stanislaus,*
 392 F. Supp. 3d 1162 (E.D. Cal. 2019) ...................................... 22, 23, 24, 25

*Oyenik v. Corizon Health Inc.,*
 696 Fed. Appx. 792 (9th Cir. 2017)(unpublished) .......................................3, 4, 5

*Pembaur v. City of Cincinnati,*
 475 U.S. 469 (1986)...................................................................................9, 10, 11

*Rhodes v. Robinson,*
 408 F.3d 559 (9th Cir. 2005) ......................................................................19

*Russell v. U.S. Dep't of the Army,*
 191 F.3d 1016 (9th Cir. 1999) ....................................................................1

*Ulrich v. City and County of San Francisco,*
 308 F.3d 968 (9th Cir. 2002) ......................................................................12

*Villarreal v. County of Monterey,*
 254 F. Supp. 3d 1168 (N.D. Cal. 2017)......................................................13, 14

*West v. Atkins,*
 487 U.S. 42 (1988).....................................................................................2, 5

*Winger v. City of Garden Grove,*
 2014 WL 12852387 (C.D. Cal. Jan. 27, 2014)...........................................4, 5

*Womack v. GEO Group, Inc.,*
 CV-12-1524-PHX-SRB, 2013 WL 491979 (D. Ariz. Feb. 8, 2013)............4, 5, 9

**State Cases**

*Eli v. Murphy,*
 39 Cal. 2d 598 (1952) ................................................................................20

*Federico v. Sup.Ct. (Jenry G.),*
 59 CalApp4th 1207 (1997) .........................................................................25

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- iv -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

*Giraldo v. Dept. of Corrections & Rehab.*,
   85 Cal. Rptr. 3d 371 (Cal. App. 1st Dist. 2008) ..................................... 22, 23, 24

*McCarty v. State of California Dep't of Transp.*,
   164 Cal. App. 4th 955 (2008) ....................................................................20

*Perez v. City of Huntington Park*,
   7 Cal. App. 4th 817 (1992) .......................................................................25

*Secci v. United Independent Taxi Drivers, Inc.*,
   214 Cal. Rptr. 3d 379 (Cal. App. 2d Dist. 2017)..........................................21, 22

*Serna v. Pettey Leach Trucking, Inc.*,
   110 Cal. 4th 1475 (2003) ..........................................................................20

*Vargas v. FMI, Inc.*,
   233 Cal. 4th 638 (2015) ............................................................................20

**Federal Statutes**

42 U.S. Code § 1983 ...................................................................... *passim*

**State Statutes**

Cal. Code Regs. Tit. 24 § 1231.3.4.............................................................22

Gov. Code § 815.2 ................................................................................20

Gov. Code § 815.4 ................................................................................20

Gov. Code § 920 .................................................................................20

**Other Authorities**

Rest. 2d Torts § 428 ............................................................................20, 21

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- v -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1   Defendants THE GEO GROUP, INC. ("GEO") and CITY OF ADELANTO
2   ("City"; collectively, GEO and the City are hereinafter referred to as "Defendants")
3   hereby reply to Plaintiffs' Opposition (Doc. #117) to Defendants' Motion for
4   Summary Judgment, or in the alternative, Partial Summary Judgment (Doc. # 108.).

5   **I.      INTRODUCTION.**

6   Plaintiffs fail to create material disputes of fact that require a jury to decide,
7   so this Court should grant Defendants summary judgment based on the law.

8   **II.     THERE IS NO LEGAL AUTHORITY THAT SUPPORTS**
9   **PLAINTIFFS SECTION 1983 CLAIMS AGAINST GEO.**

10   Plaintiffs' claims under Section 1983 (claims 5-7) against GEO are barred as
11   a matter of law and Plaintiffs fail to cite any relevant legal authority that
12   demonstrates otherwise. *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1019
13   (9th Cir. 1999). Plaintiffs' arguments ignore the undisputed evidence that GEO was
14   performing the functions of ICE, a federal actor, at the time of the incident and, as a
15   result, under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403
16   U.S. 388 (1971), the only possible claims that can be brought against GEO are
17   *Bivens* claims – not Section 1983 claims. Moreover, pursuant to *Minneci v. Pollard*,
18   565 U.S. 118 (2012), GEO, a private actor, cannot be held liable for *Bivens* claims
19   because it was performing the functions of a federal actor at the time of the incident
20   and their only recourse against GEO is tort claims. As demonstrated in the moving
21   papers and below, Plaintiffs' Section 1983 claim must fail as a matter of law.

22   **A.     The Court Has *Never* Determined That GEO Is Liable For Section**
23   **1983 Claims.**

24   Plaintiffs' first argument -- that the Court has already determined that Section
25   1983 is applicable -- rests on an inaccurate summation of the record and flawed
26   reasoning. Simply stated, the court has *never* made such a determination and a
27   cursory review of the filings in this matter dispels Plaintiffs' claims otherwise.

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4832-0932-4718 v2
05788-0035

- 1 -

5:18-CV-01125-SP
GEO'S AND CITY OF ADELANTO'S REPLY
TO PLAINTIFFS' OPPOS. TO MSJ

1       Defendant Sarah Jones,[1] an employee of GEO's subcontractor Corrective

2    Care Solutions, argued on motion to dismiss that she was neither a state nor local

3    government official, and that she did not engage in a state action. (Doc. # 53 at 3:5-

4    14.) She argued that, instead, she was a private person. (*Id.* at 3:15-6:21.) However,

5    Defendant Jones never argued on motion to dismiss that she could not be liable for

6    Section 1983 claims as a matter of law because she was an employee of a private

7    company that was performing the functions of a federal actor as Defendants have

8    here. She never introduced evidence that demonstrates the Adelanto ICE Processing

9    Center ("Facility") is under the jurisdiction of the Department of Homeland

10   Security ("DHS")/the United States Immigration and Customs Enforcement

11   ("ICE") and *not* the state. She never even cited *Bivens* or *Minneci* in her motion.

12       Evaluating the arguments put forth in Defendant Jones' motion, the Court

13   likewise did not analyze whether Defendant Jones could be liable under Section

14   1983 in light of *Bivens* and *Minneci,* nor did the Court consider that the Facility is a

15   federal detention center. The court relied on *West v. Atkins*, 487 U.S. 42 (1988), and

16   found Defendant Jones could be held liable as a state actor based on the allegations

17   in the operative complaint. (Doc. # 69.) However, in its analysis, the Court

18   presumed the Facility was under the jurisdiction of the state and, thus, did *not*

19   analyze the issue of whether Jones was a private party performing the functions of a

20   federal actor. This is confirmed by the Court's reliance on *West,* a case which

21   involved a physician operating under a contract with a *state* to provide orthopedic

22   services at a *state*-prison hospital. *West*, 487 U.S. at 42. Unlike the facts found in

23   *West*, here, the undisputed evidence demonstrates that the City and, accordingly, its

24   delegate GEO (and its employees), was operating under a contract with ICE, a

25   *federal* actor, to provide services at Adelanto Detention Center ("Facility"), a

26   *federal* detention center for immigrant detainees. (*See* Doc. # 108-2 [GEO and

27

28           [1] Defendant Jones was represented by separate defense counsel.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 2 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

City's App.], Ex. "A" [Detainee Handbook] at 5 ("The Adelanto Detention Facility (ADF) is located in Adelanto, California, and is privately operated by [GEO] under contract with the [City], who has entered into an Intergovernmental Services Agreement (IGSA) with the United States Department of Homeland Security, Immigration and Customs Enforcement (ICB)"); Ex. "M" [Services Contract].)

Consequently, it is inaccurate to state that the Court has already determined that GEO is a state actor and, thus, Plaintiffs' Section 1983 claim are viable, because the argument that GEO was fulfilling the roles of a federal actor has *never* even been raised in this case.

### B.   Plaintiffs' Legal Authority Does Not Support Their Arguments.

The cases cited by Plaintiffs do not support their argument that GEO is state actor and, thus, liable for Section 1983 claims.

Plaintiffs rely on *Oyenik v. Corizon Health Inc.*, 696 Fed. Appx. 792 (9th Cir. 2017)(unpublished) to support the proposition that GEO/the City were acting under color of state law. However, *Oyenik* is not applicable. *Oyenik* involved a private corporation that contracted with a *state* to provide medical treatment at a *state* facility. *Id.* at 794. The court did not analyze whether Section 1983 was applicable (presumably, because it was clear that the plaintiff can bring section 1983 claims given it was a state run facility) and "assum[ed], without deciding, that *Monell* applie[d] in [that] context." *Id.* Here, however, the issue is whether a municipality (the City) and its private corporation contractor (GEO) can be liable for Section 1983 claims when the City contracts with a *federal actor* (DHS/ICE) to operate a *federal* detention center. (*See* Doc. # 108-2 [GEO and City's App.], Ex. "A" [Detainee Handbook] at 5; Ex. "M" [Services Contract].) Unlike *Oyenik,* here, there is no evidence that the state of California was in any way involved with the Facility or any of the agreements in this case. *Oyenik* is simply not relevant.

Plaintiffs then argue, in short, that *other* courts have found that GEO can be liable under Section 1983 and, thus, GEO must be a state actor. This argument is

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4832-0932-4718 v2
05788-0035

- 3 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1  flawed. The two cases that Plaintiffs rely on to support this argument, *Winger* and

2  *Womack*, involve fact patterns where GEO was operating *local* correctional

3  facilities (jails) and not federal detention centers housing immigrant detainees.[2]

4      For example, in *Winger v. City of Garden Grove*, 2014 WL 12852387, at *1

5  (C.D. Cal. Jan. 27, 2014), GEO contracted with the City of Garden Grove to

6  provide correctional services at the Garden Grove City jail. On motion to dismiss,

7  counsel for GEO argued private entities could not be liable for constitutional claims

8  when there were available state law remedies and relied on *Minneci v. Pollard*, 132

9  S. Ct. 617 (2012), which held federal prisoners seeking damages from a private

10  corporation and/or its personnel do not have a *Bivens* remedy. The court held GEO

11  could be liable under Section 1983 because it was acting under color of state law

12  (e.g. under a contract with the City of Garden Grove to run a jail covered by state

13  regulations). *Id* at 2. Moreover, the court found *Minneci* inapplicable because it

14  involved *federal* employees and the court was unwilling to extend the *Minneci*

15  holding to cases involving state actors:

16          "Defendant argues that courts treat *Bivens* and section
            1983 doctrines as parallel. True, *Bivens* and section 1983

17          share much in common…. But the doctrines are
            nonetheless distinct…. The Court is not convinced that,

18          by refusing to expand the reach of one of the doctrines,

19          the Supreme Court intended to implicitly overrule its
            precedent concerning the other."

20

21  *Id*. at 2. In other words, while GEO made a similar argument in *Winger*, the

22  argument was not availing because the jail was a local facility operated under state

23  regulations – which is not the case here as Adelanto is subject to ICE policies.

24  Thus, the court's holding in *Winger* is inapplicable.

25      Plaintiffs also cite to *Womack v. GEO Group, Inc*., CV-12-1524-PHX-SRB,

26  2013 WL 491979, at *1 (D. Ariz. Feb. 8, 2013), which involved an *inmate* confined

27  ----
    [2] GEO is a private company that operates both corrections (state) and detention

28  (federal) facilities.  Its clients include the California Department of Corrections and
    Rehabilitation (CDCR), various cities, the U.S. Marshal's Office, and ICE.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 4 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1  at a private correctional facility. The correctional facility was owned and operated

2  by GEO, which had *contracted with the State* to incarcerate prisoners. Significantly,

3  the court did not even analyze any substantive issues, including whether the

4  plaintiff could being Section 1983 claims against GEO. *Id.* at 7 (demonstrating the

5  court analyzed the plaintiff's motion to amend the complaint, plaintiff's request for

6  entry of default, and the defendant's motion for leave to amend the answer). Even if

7  it had, the holding would not be determinative here given the case involved a state-

8  run correctional facility.

9       Accordingly, all of the cases that Plaintiffs rely on to support their argument

10  that Section 1983 claims can be brought in this case (*West v. Atkins*, *Oyenik v.*

11  *Corizon*, *Winger v. City of Garden Grove,* and *Womack v. GEO Group, Inc.*) are

12  inapplicable. For purposes of this motion, GEO does not dispute that a private

13  entity operating a state facility can be held liable under Section 1983 as held in the

14  aforementioned cases. However, it is undisputed that this matter involves parties

15  performing the functions of federal actors at an ICE (federal) detention facility. For

16  this reason, Section 1983 is inapplicable as a matter of law.

17       **C.**    **_Minneci_ And _Bivens_ Are Applicable Because GEO Was**

18              **Performing Federal Functions.**

19       Plaintiffs argue that the cases relied on by Defendants to demonstrate that

20  GEO cannot be liable under Section 1983 are inapposite because the cases involve

21  "federal rather than municipal actors." Plaintiffs belabor that GEO directly

22  contracted with the City and not ICE in an effort to negate the undisputed evidence

23  that (1) the Facility is a federal detention center under the jurisdiction of DHS/ICE;

24  and (2) the contract between GEO and City required GEO to assume all of the

25  City's responsibilities and obligations under the intergovernmental service

26  agreement with ICE. Alternately stated, GEO entered into contract with ICE for the

27  detention and care of immigrant detainees at the Facility through a service

28  agreement with the City. (*See* Doc. # 108-2 [GEO and City's App.], Ex. "A"

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 5 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

[Detainee Handbook] at 5; Ex. "M" [Services Contract].) Thus, cases involving federal actors are the only cases that are applicable.

In *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001), a federal inmate at a federal correction facility that was operated by a private company brought a *Bivens* claim against the private company. The Supreme Court of the United States held the inmate could *not* bring a *Bivens* claim against the private corporation:

> "*Bivens'* limited holding may not be extended to confer a right of action for damages against private entities acting under color of federal law…
>
> *Bivens'* purpose is to deter individual federal officers, not the agency, from committing constitutional violations. *Meyer* made clear, *inter alia,* that the threat of suit against an individual's employer was not the kind of deterrence contemplated by *Bivens.* [Citation omitted]. This case is, in every meaningful sense, the same. For if a corporate defendant is available for suit, claimants will focus their collection efforts on it, and not the individual directly responsible for the alleged injury. On *Meyer's* logic, inferring a constitutional tort remedy against a private entity like CSC is therefore foreclosed."

*Correctional Services Corp. v. Malesko*, 534 U.S. 61, 62 (2001).

Thereafter, in *Minneci v. Pollard*, 565 U.S. 118, 120 (2012), the Supreme Court of the United States asked "whether [it] can imply the existence of an Eighth Amendment-based damages action (a *Bivens* action) against employees of a privately operated federal prison."[3] The Supreme Court found that it could not. *Id.* In *Minneci*, the plaintiff was a prisoner at a federal facility operated by a private company and brought an Eighth Amendment claim against the private company and

---

[3] Plaintiffs seem to conflate the issue of this case. Again, Defendants do not dispute for purposes of this motion that *Minneci* does not extend to section 1983 claims. Defendants are, however, disputing that GEO was a state actor thus exposing it to Section 1983 liability. Because they were not state actors, *Minneci*, which relates to federal actors, is applicable.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 6 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1    its employees. *Id.* at 121. The Supreme Court held as follows:

2           "For these reasons, where, as here, a federal prisoner
3           seeks damages from privately employed personnel
            working at a privately operated federal prison, where the
4           conduct allegedly amounts to a violation of the Eighth
            Amendment, and where that conduct is of a kind that
5           typically falls within the scope of traditional state tort law
            (such as the conduct involving improper medical care at
6           issue here), the prisoner must seek a remedy under state
            tort law. We cannot imply a *Bivens* remedy in such a
7           case."
8

9    *Id.* at 131.  Thus, as demonstrated in *Malesko* and *Minneci,* Plaintiffs' Section 1983

10   claims against GEO must fail as a matter of law because Plaintiffs can only pursue

11   state law tort claims against GEO.

12   **III.   *IF* PLAINTIFFS' SECTION 1983 CLAIMS ARE VIABLE,**

13         **PLAINTIFFS NEVERTHELESS FAIL TO DEMONSTRATE A**

14         **GENUINE DISPUTE AS TO THEIR *MONELL* CLAIMS.**

15         As a preliminary matter, Plaintiffs for the first time articulate their *Monell*

16   claims (claims 5-7) against Defendants in their Opposition.[4] Their claims, which

17   were previously boilerplate allegations that GEO's and the City's policies, practices

18   and/or customs were a cause of Plaintiffs' alleged injuries and that GEO and the

19   City failed to train GEO's employees, are now limited to the following: (1) the City

20   and GEO *ratified* the decisions of Campos and Diaz to use force and the force used

21   during the incident;[5] (2) the City and GEO *failed to train* GEO officers Diaz and

---

[4] Significantly, in Opposition to Defendants' motion, Plaintiffs raise new
allegations that were not included in Plaintiffs' Second Amended Complaint. Thus,
on Reply, Defendants are for the first time addressing Plaintiffs' new allegations.
*Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("At
the summary judgment stage, the proper procedure for plaintiffs to assert a new
claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a). A plaintiff
may not amend her complaint through argument in a brief opposing summary
judgment.").
[5] Plaintiffs argue that GEO policymakers ratified the use of excessive force,
retaliation, and due process violations. However, the evidence demonstrates that the
only conduct that was reviewed after the incident was the alleged use of force
incident during the after-action review. (Doc. # 108-2 [GEO and City App.], Ex.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 7 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1   Campos on the meaning of a "rebellion" and "disturbance" under GEO's policies

2   and procedures; (3) the City and GEO *failed to train* Campos on the safe distance to

3   stand away from a subject when deploying OC spray; (4) the City and GEO *failed*

4   *to train* supervisory GEO staff because GEO failed to provide "refresher training

5   every two years to officials with OC spray"; (5) the City and GEO's policy of "not

6   having cold water inside the facility" caused a constitutional deprivation (i.e., the

7   alleged inability to properly decontaminate Plaintiffs after the use of OC spray

8   resulted in a Fourth/Fourteenth Amendment violation); and (6) the City and GEO's

9   policy of blocking the Plaintiffs' telephone calls (the alleged retaliatory conduct)

10  regarding their alleged hunger strike and excessive force (their alleged protected

11  speech) resulted in a constitutional deprivation (i.e., a violation of their First

12  Amendment rights).[6] (*See* Pls. Second Am. Compl. ("SAC") ¶¶ 71 110, 118, 126

13  (demonstrating Plaintiffs' boilerplate claims against GEO and the City).)

14      Assuming Plaintiffs can demonstrate a constitutional deprivation – a critical

15  first hurdle that they *cannot* overcome as demonstrated in the individual

16  defendants' motion for summary judgment and below  – Plaintiffs' claims are

17  nevertheless unsupported by the law and admissible evidence.

18      **A.    There Is No Legal Authority That Supports The Argument That**

19          **The City Is Liable Under *Monell* For The Policies Of GEO.**

20      "*Monell* is a case about responsibility." *Pembaur v. City of Cincinnati*, 475

21  U.S. 469, 478 (1986). Here, Plaintiffs seek to expand the holding of *Monell v. Dept.*

22  *of Social Services*, 436 U.S. 658 (1978) by arguing that two separate entities, the

23  City and GEO, can both be liable under *Monell* for one entity's (GEO's) policies

24

---

25  "E" [After-Action Review].) Thus, Plaintiffs conclusory statements that the alleged
    retaliatory conduct and due process violations were also ratified are without merit

26  and, for purposes of efficiency, will not be further addressed herein.
    [6] In Opposition to Diaz and Campos' motion for summary judgment, Plaintiffs' did

27  not oppose Diaz and Campos motion to summarily adjudicate their fifth claim for
    First Amendment retaliation. (*See* Doc. # 116 at 3 n. 1.) However, Plaintiffs

28  maintain their *Monell* claim relates to their fifth claim.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 8 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

and procedures, training, and ratification of specific conduct. In other words, Plaintiffs attempt to hold the City vicariously liable under *Monell* for GEO's policies and procedures and conduct, which is expressly prohibited under *Monell*. Plaintiffs fail to cite any relevant case law or legal authority to support their strenuous proposition and, instead, provide a misguided argument that the City delegated its authority to establish municipal policy *to GEO employees*, James Janecka and Leo McCusker, in order to establish liability of the City under *Monell*. Irrespective of how Plaintiffs attempt to disguise their vicarious liability claim, at the end of the day, Plaintiffs should not be permitted to re-write the law simply to satisfy their search for an additional deep pocket.

### 1. Plaintiffs Cannot Demonstrate The City Caused The Constitutional Violation.

In *Monell*, the court concluded that municipalities could be liable under Section 1983 and, in doing so, emphasized the importance of causation: that the government actor could only be liable where its official policy <u>caused</u> its employee to violate another's constitutional rights. *Id*. at 692 ("Indeed, the fact that Congress did specifically provide that A's tort became B's liability if B 'caused' A to subject another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent."); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("In *Monell v. New York City Dept. of Social Services* … we decided that a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue.").

While "Congress never questioned its power to impose civil liability on municipalities for their own illegal acts, [it] did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of others." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Because of these doubts, courts have found that Section 1983 is not be interpreted to incorporate doctrines of vicarious liability and, thus, a plaintiff must "demonstrate that, through

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 9 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1    its *deliberate* conduct, the municipality was the 'moving force' behind the injury

2    alleged."*Bd. of Cnty. Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404

3    (1997). "That is, a plaintiff must show that the municipal action was taken with the

4    requisite degree of culpability and must demonstrate a direct causal link between

5    the municipal action and the deprivation of federal rights." *Id.*

6         Here, there is no evidence that the City's policies or procedures, training, or

7    policymaker's ratification of conduct caused any constitutional deprivation (which

8    Plaintiffs admit, as discussed below). Plaintiffs cannot satisfy the causation

9    requirement of their *Monell* claim against the City and, as result, Plaintiffs' *Monell*

10   claims against the City must be summarily adjudicated.

11        **2.    Plaintiffs' Ratification Argument Related To The City Is**

12             **Misguided.**

13        Plaintiffs admit that the City's policies and procedures and training did not

14   cause a constitutional deprivation. Plaintiffs likewise admit that no City employees

15   ratified the conduct of the GEO employees. Instead, Plaintiffs put forth a misguided

16   argument that the City "delegated" the aforementioned duties and its policymaker

17   authority to GEO and, thus, the City is liable under a theory of ratification. Without

18   *any* citations to law or legal authority, Plaintiffs state in a conclusory fashion that

19   the City can be liable for the policies of its independent contractor under *Monell* to

20   whom it has delegated final policymaking authority. This is not the law.

21        First, Plaintiffs' argument that the City delegated its policymaker authority to

22   GEO and, thus, it is liable for GEO's policies and procedures, training, and

23   policymaker's decisions is severely misguided. For purposes of *Monell* claims, the

24   phrase "delegated" is a term of art that is relevant in the context of ratification,

25   which is one of the three means to establish *Monell* liability ((1) an unconstitutional

26   policy, practice, custom; (2) lack of training, or (3) ratification)). Plaintiffs fail to

27   cite and Defendants are not aware of any cases where a court held that a

28   municipality, through a contract with a vendor to provide services, is deemed to

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 10 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

have "delegated" and, thereafter, "ratified" the contractor's written policies and procedures, training procedures, and/or policymaker's decisions for purposes of *Monell* liability.

Second, ratification is a theory that holds a municipality liable for a "single decision" made by the municipality's official. Typically, this argument arises in scenarios where an employee of the municipality has approved and furthered the alleged unconstitutional conduct of a subordinate, such as in an officer-involved shooting. Plaintiffs fail to cite and Defendants are not aware of any cases where a court held written policies and procedures and training procedures are singular decisions subject to the same ratification analysis. Plaintiffs' attempt to conflate the three theories of liability under *Monell* is an incorrect application of the law.

Third, to impose municipal liability for a single decision by municipal policymakers (e.g., ratification), a plaintiff must demonstrate that the decision was made by the municipal's "properly constituted legislative body" or officials "whose acts or edicts may fairly be said to represent official policy." *Pembaur*, 475 U.S. at 479-480. To determine whether a municipal officer can subject a municipality to liability, the *Pembaur* court held as follows:

> "[W]e hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability. **Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. ... The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.** Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, **whether an official had final policymaking authority is a question of state law**."

Here, there is no evidence that GEO or any of its employees had the responsibility to establish final government policy on behalf of the City. There is no

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 11 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

evidence of a state or municipal law (e.g. a city's Charter) that grants GEO or any of its employees this authority. While Plaintiffs direct the court's attention to the contract between the City and GEO, this is unavailing as the contract does not grant GEO or its employees this authority. Plaintiffs seemingly acknowledge the admissible evidence does not support their theory and, thus, also argue that "in practice" the City has delegated its policymaker authority to GEO. (*See* Doc. # 117 at 10:18-19.).  However, there is no case law or legal authority that supports this argument, including the cases cited by Plaintiffs in their Opposition. *See Ulrich v. City and County of San Francisco*, 308 F.3d 968, 985 (9th Cir. 2002) (holding the plaintiff, an employee of a municipal-run hospital, failed to demonstrate a defendant, also an employee of the municipal -run hospital, had final policymaking authority because mere discretion to make decisions was insufficient to establish policymaking authority when the city's charter and hospital bylaws did not grant the defendant final policymaking authority); *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (holding plaintiff could not establish a county employee ratified conduct, thus subjecting the county to municipal liability, where the county employee was unaware of the alleged constitutional violation); *Lytle v. Carl*, 382 F.3d 978 (9th Cir. 2004) (determining whether a school district superintendent and assistant superintendent were final policymakers as required for school district liability).

Consequently, Plaintiffs' theory that the City somehow delegated and, thus, ratified GEO's policies and procedures, training procedures, and policymaker's decision is misguided, unavailing, and unsupported by any legal authority.

### 3. *Martinez* And *Villarreal* Are Instructive.

Plaintiffs' summation of *Martinez v. Monterey County Sheriffs Off.*, 18-CV-00475-BLF, 2019 WL 176791, at \*1 (N.D. Cal. Jan. 11, 2019), which Defendants rely on in their moving papers, omits critical facts that demonstrate *Martinez* is in

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 12 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1   fact instructive here. As described in Defendants' motion, in *Martinez*, the county

2   defendant, Monterey, owned a jail and contracted out medical services to a third

3   party vendor, California Forensic Medical Group Inc. ("CFMG"). *Id.* at 3. The

4   plaintiff alleged that policies of CFMG were attributable to Monterey through

5   CFMG's contract with Monterey. *Id.* The court opined that to sufficiently state a

6   *Monell* claim against Monterey, the plaintiff must allege "Monterey has some

7   independent policy that is the moving force behind CFMG's policy or [] instead

8   Monterey's policy is to ratify and adopt CFMG's allegedly unconstitutional policy."

9   Id. at 4. "If the latter, additional facts are required to show that Monterey had a

10  policy of adopting or otherwise authorizing CFMG's policy [and] Monterey's

11  contract with CFMG alone is *not* sufficient." *Id.* (emphasis added).

12      Similarly, Plaintiffs' cursory review of *Villarreal v. County of Monterey*, 254

13  F. Supp. 3d 1168, 1193 (N.D. Cal. 2017) ignores the relevant portion of the case:

14  the *Monell* analysis related to the defendant City. In *Villarreal*, the plaintiff sought

15  to hold the defendant city liable for three claims under Section 1983. While the

16  plaintiff did not explicitly state the claims were brought as *Monell* claims (similar

17  to Plaintiffs' claims here), the court interpreted the three claims as *Monell* claims

18  given that is the only means to hold a municipality liable under Section 1983. *Id.* at

19  1195. The court found the plaintiff's complaint failed to sufficiently plead a *Monell*

20  claim against the defendant city because, in pertinent part, allege that the defendant

21  city's policy, custom, or practice was the moving force behind the constitutional

22  violation. *Id.* The court emphasized that "the allegations in the complaint give

23  strong reason to doubt that the [individual defendant] CSU Officers were acting

24  pursuant to the City's policies, customs, and practices because the CSU Officers

25  were only temporary independent contractors rather than employees of the police

26  department." *Id.*

27      Here, similar to *Martinez* and *Villarreal*, the record demonstrates that it was

28  the City's policy and procedure to thoroughly vet GEO before contracting with

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 13 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1   GEO to provide the requisite services at the Facility. (SUF # 3-5.) Thereafter, the

2   day to day operations of the Facility were governed by the policies and procedures

3   established by GEO, and the officers employed by GEO were acting pursuant to

4   GEO's policies, customs, and practices and *not* the City's policies, customs, and

5   practices because, in part, the officers were subcontractors rather than employees or

6   agents of the City. (SUF # 1-2, 6.)

7       Based on the foregoing, the City cannot be held liable under any *Monell*

8   theory of liability. *Villarreal*, 254 F. Supp. 3d at 1195.

9       **B.      GEO Did Not Ratify Any Unconstitutional Deprivations.**

10      Plaintiffs argue that GEO's policymakers, Janecka and McCusker, ratified

11  the decisions to use force and the force used by GEO officers during the incident.

12  However, the admissible evidence demonstrates that GEO's policymakers were not

13  affirmatively or actively involved in conduct that ratified the actions of Campos and

14  Diaz so as to warrant liability under *Monell*.

15      To show ratification, a plaintiff must prove that the "authorized policymakers

16  approve a subordinate's decision *and the basis for it….*" *City of St. Louis v.*

17  *Praprotnik*, 485 U.S. 112, 127 (1988) (emphasis added). *Christie*, 176 F.3d at1240

18  (9th Cir. 1999) ("As with ratification, a plaintiff must establish a genuine issue of

19  material fact as to the question whether the final policymaker acted with deliberate

20  indifference to the subordinate's constitutional violations.") In the cases cited by

21  Plaintiffs where it was established that a policymaker ratified a subordinate's

22  conduct, the policymaker *affirmatively* and *actively* approved the conduct that was

23  alleged to have caused the constitutional deprivation. For example, in *Christie v.*

24  *Iopa* the plaintiff alleged that the deputy prosecutor, Iopa, and prosecutor, Kimura,

25  violated his constitutional rights by subjecting him to criminal prosecution because

26  he advocated for the legalization of marijuana. *Id.* at 1240. The court found that a

27  "rational trier of fact could conclude that Kimura affirmatively approved of Iopa's

28  alleged ongoing constitutional violations" (the prosecution of the plaintiff) because

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 14 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1   Kimura took part in the plea negotiations with plaintiff and Kimura called to report

2   the plaintiff's private investigator after the investigator purchased commercial

3   sterilized hemp seeds for purposes of plaintiff's defense. *Id.* at 1240. In other

4   words, Kimura seemingly ratified Iopa's conduct because he was actively involved

5   in conduct that was potentially intended to further the constitutional violations.

6       Likewise, in *Hyland v. Wonder*, the plaintiff, an assistant to Sweeney, the

7   chief probation officer at a juvenile hall, reported problems at a juvenile hall and

8   the juvenile hall's director's mistakes and failures. 117 F.3d 405, 408 (9th Cir.

9   1997), *opinion amended on denial of reh'g*, 127 F.3d 1135 (9th Cir. 1997). During

10  the relevant time, judge Wonder was the supervising judge of the juvenile court. *Id.*

11  After his report, the plaintiff alleged that he banned from the juvenile court, a

12  decision that was approved by Wonder, and that Wonder and Sweeney, among

13  others, decided to terminate him. *Id.* The retaliation continued after his employment

14  as Sweeney, who had written a letter in support of the plaintiff's application for a

15  pardon, was now actively working to ensure the application was denied. *Id.* The

16  plaintiff reported this to Wonder, who did not act. Additionally, Wonder prevented

17  the plaintiff from obtaining later employment that would require the plaintiff to

18  visit the juvenile hall. *Id.* The court found that a rational jury, in light of the

19  allegations, could find that Wonder ratified the conduct that deprived the plaintiff of

20  his constitutional rights. *Id.* at 416.

21      Here, as a preliminary matter, there is no evidence that either Janecka or

22  McCusker were present during the after-action review as their names are not listed

23  under the names of the reviewers. (*See* Decl. of James Janecka, Ex. E [After-Action

24  Review Report Use of Force/Restraints related to the June 12, 2017, incident].)

25  Moreover, the review demonstrates that the participants reviewed the video

26  recording of the incident,  staff reports, medical reports, confrontation avoidance

27  measures, the supervisor's report, and then checked a box, which was one of two

28  boxes with preprinted language next to it, which indicated  it was determined the

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 15 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1    actions were "reasonable and appropriate." (*Id.*) Thereafter, "J. Johnson" signed

2    and dated the After-Action Review Report, which documented the review. (*Id.*)

3    This limited degree of review is not even remotely as affirmative or active as the

4    conduct detailed in *Christie v. Iopa* or *Hyland v. Wonder* that was deemed to raise a

5    genuine dispute as to whether the policymakers ratified the alleged constitutional

6    violations. If the Court adopts Plaintiffs' extremely low threshold for ratification,

7    any cursory review of a use of force incident by command staff would be deemed

8    ratification and subject a municipality to liability. This simply cannot be the

9    standard. Moreover, the underlying conduct must be unconstitutional to result in

10    liability for ratification.

11        C.    **Plaintiffs' Claim For Failure To Train Is Unsupported By The**

12            **Evidence.**

13        Plaintiffs allege GEO failed to train (1) Diaz and Campos on the meaning of

14    a "rebellion" and "disturbance," (2) Campos on the safe distance to stand away

15    from a subject when deploying OC spray, and (3) supervisory staff because GEO

16    failed to provide "refresher training every two years to officials with OC spray."

17        A municipality's failure to train its employees must amount to "deliberate

18    indifference to the rights of persons with whom the [untrained employees] come

19    into contact." *Canton v. Harris*, 489 U.S. 378, 388 (1989); *Flores v. County of Los*

20    *Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) ("Under this standard, [the plaintiff]

21    must allege facts to show that the County and [Sheriff] 'disregarded the known or

22    obvious consequence that a particular omission in their training program would

23    cause [municipal] employees to violate citizens' constitutional rights.'" (citation

24    omitted)). To show "deliberate indifference," a plaintiff must prove that "the need

25    for more or different training is so obvious, and the inadequacy so likely to result in

26    the violation of constitutional rights, that the policymakers of the city can

27    reasonably be said to have been deliberately indifferent to the need." *See City of*

28    *Canton*, 489 U.S. at 390. Only then "can such a shortcoming be properly thought of

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 16 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1    as a city 'policy or custom' that is actionable under § 1983." *Canton*, 489 U.S. at

2    389. Still yet, the plaintiff must demonstrate that the deficiency in the training

3    program must be closely related to the ultimate injury. *Id.* at 387, 379 ("[W] e

4    conclude, as have all the Courts of Appeals that have addressed this issue, that there

5    are limited circumstances in which an allegation of a 'failure to train' can be the

6    basis for liability under § 1983).

7         First, Plaintiffs conclude that because GEO did not provide staff with the

8    definition of the widely known and self-explanatory terms of riot or rebellion, GEO

9    failed to train staff on when it was appropriate to deploy OC spray as riots and

10   rebellions are listed in GEO's policies at events that warrant the use of OC spray.

11   However, there is no evidence that the need for "more or different training is so

12   obvious, and the inadequacy so likely to result in the violation of constitutional

13   rights, that [GEO] can reasonably be said to have been deliberately indifferent to

14   the need." *See City of Canton*, 489 U.S. at 390. To the contrary, the evidence

15   demonstrates that while the definition of the terms was not provided, GEO staff,

16   including Campos and Diaz, were able to recognize and identify a riot, rebellion,

17   and major disturbance; thus, GEO staff were aware of when it was appropriate to

18   deploy OC spray. (*See* Pls. Ex. 14 [Sgt. Campos Dep.] at 81:11-13, 141:22-142:4;

19   *see also* Doc. 108-6 [Diaz Decl.] ¶¶ 17-32; Doc. 108-7 [Campos Decl.] ¶¶ 5-14).

20   Moreover, Plaintiffs fail to demonstrate that GEO's failure to provide a written

21   definition of "riot" or "rebellion" caused a constitutional deprivation.

22        Second, to support their argument that GEO did not train on the safe distance

23   to stand when deploying OC spray, Plaintiffs ignore GEO's policies and procedures

24   that GEO staff are trained on and the training materials that they admitted into

25   evidence, which demonstrate GEO does in fact train its staff on the safe distance to

26   stand away from a subject when deploying OC spray. (*See* Pls. Ex. "1" [GEO's

27   Training Materials] at GEO 02117.) Instead of relying on the GEO policies and

28   training materials, Plaintiffs rely on Campos' deposition testimony where he stated

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 17 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1  he could not *recall* the distance that GEO trained personnel to stand when

2  deploying OC spray. (See e.g., Pls. Ex. 14 [Sgt. Campos Dep.] 16:4-15

3  (demonstrating Campos stated that *during his time in the military,* it was acceptable

4  to deploy OC spray when he was 3-5 feet away.) Yet, his lack of recollection is not

5  unsurprising given he has not worked for GEO since 2017. (*See* Doc. 108-7

6  [Campos Decl.] ¶ 2). This is hardly material evidence of a failure to train.

7      Finally, the admissible evidence demonstrates GEO supervisory staff are

8  adequately trained on use of force policies. This training not only includes pre-

9  service training, but 40 hours of annual in-service training that covers use of force

10  polices.  (*See* Doc. 108-6 [Diaz Decl.] ¶¶ 3, 7-8; Doc. 108-7 [Campos Decl.] ¶3;

11  Aguado Decl. in support of Reply (hereinafter "Aguado Decl. ISO Reply"), Ex.

12  "D" at 24:21-25:2).

13      **D.**    **There Is No Evidence That GEO Maintained Policies That Caused**

14         **A Deprivation Of Plaintiffs' Rights.**

15      In their Opposition, Plaintiffs argue GEO's "policy" of "not having cold

16  water inside the facility" caused a constitutional deprivation: inability to

17  decontaminate Plaintiffs after the use of OC spray, which Plaintiffs allege is a

18  Fourth Amendment violation. Additionally, Plaintiffs argue GEO's policy of

19  blocking the Plaintiffs' telephone calls regarding their alleged hunger strike and

20  excessive force resulted in a constitutional deprivation (i.e., a violation of their First

21  Amendment rights to exercise free speech).[7] Plaintiffs' arguments are unsupported

22  _____

23  [7] It is unclear whether Plaintiffs are alleging GEO had an unconstitutional policy regarding blocking Plaintiffs calls or whether Plaintiffs are alleging a GEO

24  policymaker ratified a constitutional deprivation (blocking calls for retaliatory purposes in violation of the First Amendment). To the extent Plaintiffs are alleging

25  *for the first time* that Barry Belt caused an unconstitutional deprivation by placing restrictions on Plaintiffs calls, this claim will fail. (Doc. # 117:16-23, 18:6-7.) As

26  demonstrated in the moving papers, in the detention context, a viable claim of First Amendment retaliation requires Plaintiffs to demonstrate GEO took some adverse

27  action against Plaintiffs because of their protected conduct, that such action chilled their exercise of their First Amendment rights, and the action did not reasonably

28  advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005). "To prevail on a retaliation claim, a plaintiff must show that his

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 18 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1    by the evidence and law.

2        Here, there is no evidence that GEO had a "policy" of decontaminating

3    detainees using "hot" water; moreover, the evidence demonstrates that GEO staff

4    used cold water to decontaminate Plaintiffs. (*See* Aguado Decl. ISO Reply, Ex. "E"

5    [Juarez Dep.] at 61-62; see also Doc. 108-6 [Diaz Decl.] ¶ 41 (demonstrating that

6    irrespective of the temperature of the water, water may reactivate the tingling

7    sensation from the spray.) Additionally, GEO's policies and procedures make clear

8    that calls may only be restricted *unless* necessary for security purposes or to

9    maintain orderly and fair access to telephones. (*See* Doc. # 108-1 [GEO and City

10   Separate Statement], Nos. 29-33.)

11 **IV.**    **PLAINTIFFS FAIL TO STATE AN EXCEPTION TO THE RULE**

12       **THAT THE CITY CANNOT BE VICARIOUSLY LIABLE [CLAIMS**

13       **ONE, TWO, THREE, FOUR, EIGHT, AND TEN].[8]**

14        In their Opposition, <u>Plaintiffs abandon their argument that the City is liable</u>

---

16 protected conduct was 'the 'substantial' or 'motivating' factor behind the
defendant's conduct. [Citation omitted.]" *Brodheim v. Cry*, 584 F.3d 1262, 1271
(9th Cir. 2009). Plaintiffs fail to demonstrate Belt restricted their calls because they
engaged in a protected activity as there is no evidence to support this argument. To
the contrary, the evidence demonstrates Belt blocked a very limited number of calls
that were deemed security threats because Plaintiffs were discussing a
strike/demonstration at the Facility. (*See* Aguado Decl. ISO Reply, Ex. "J" [Phone
Logs] at 1-4.) Additionally, during the time period that Plaintiffs claim their calls
were blocked (after the June 12, 2017, strike), the evidence demonstrates they made
*numerous* calls. (*Id.* at 5-41 [logs of Plaintiffs calls].) Moreover, before Belt can
restrict a call, he must get approval from ICE (Belt can recommended a restriction
to the Facility Administrator, who can then make a recommendation to ICE; ICE
ultimately determines whether a call should be restricted). (*See* Doc. # 108-1 [GEO
and City Separate Statement], Nos. 29-33.) There is no evidence that the Facility
Administrator was aware of Plaintiffs' alleged protected conduct (their complaints)
or Belt's alleged retaliatory intent, which prevents Plaintiffs from establishing that
the alleged protected conduct was the motivating factor behind defendants' conduct
and/or that the Facility Administrator ratified Belt's constitutional deprivation. (*See*
Doc. 108-4 [Janecka Decl.] ¶¶14-19.) Even if Plaintiffs could establish Belt/the
Facility Administrator intended to restrict their calls for retaliatory purposes, the
casual chain is broken because ICE ultimately decides the restrictions to be placed
on phones/calls. (*See* Doc. # 108-1 [GEO and City Separate Statement], Nos. 29-
33.)
[8] There is no evidence that GEO is an agent of the City's. (*See e.g.*, Doc. # 108-4
[Janecka Decl.]; Doc. # 108-8 [Hart Decl.].) As such, Plaintiffs argument
concerning GEO being an agent is without merit. (Doc. # 117 at 21-22.)

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4832-0932-4718 v2
05788-0035

- 19 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1   for the conduct of GEO under Government Code §§ 815.2 and 920. Additionally,

2   Plaintiffs acknowledge that to hold the City liable under Government Code § 815.4,

3   Plaintiffs *must* identify an exception to the "general rule" in California that "the

4   employer of an independent contractor is not liable for physical harm caused to

5   another by an act or omission of the contractor or his servants." *McCarty v. State of*

6   *California Dep't of Transp.*, 164 Cal. App. 4th 955, 970 (2008). The *only* exception

7   that Plaintiffs identify is the "regulated hirer" exception; however, this exception

8   does *not* apply.[9] (*See* Doc. #118:15-21:10.)

9        The regulated hirer exception imputes liability to the hirer of an independent

10  contractor when the work delegated to the contractor involves an unreasonable risk

11  of harm to others and can lawfully be performed only under a license or franchise

12  granted by public authority. *See e.g.*, *Eli v. Murphy*, 39 Cal. 2d 598 (1952); *Vargas*

13  *v. FMI, Inc.*, 233 Cal. 4th 638, 652-654 (2015); *Serna v. Pettey Leach Trucking,*

14  *Inc.*, 110 Cal. 4th 1475, 1486 (2003); Rest. 2d Torts § 428. This exception has only

15  been applied in cases involving trucking and taxi companies, which is evidenced by

16  the cases cited by Plaintiffs. *Id.*

17        To support their argument, Plaintiffs cite *Secci v. United Independent Taxi*

18  *Drivers, Inc.*, 214 Cal. Rptr. 3d 379, 381 (Cal. App. 2d Dist. 2017), *review denied*

19  (May 17, 2017), which held, in short, that local regulations that require taxi

20  companies to impose controls on its drivers may be taken into account in

21  determining whether taxi companies may be vicariously liable for the negligence of

22  their independent contractor drivers under an agency theory. *Secci* involved a

23  plaintiff that was in an auto collision with taxi driven by Tonakanian. Tonakanian

24

---

25  [9] In Plaintiffs' discussion on the regulated hirer discussion, Plaintiffs also include
    an argument that the City has a non-delegable and/or a special duty to Plaintiffs.

26  Plaintiffs' "duty" argument is *only* applicable to their negligence claims (claims
    three and ten, arguably) and is not applicable to their claims for battery, assault,

27  IIED, and violation of the Bane Act (claims one, two, four, and eight). Plaintiffs'
    argument regarding the City's alleged duty to Plaintiffs will be discussed further

28  below.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 20 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1  owned his taxi and was, on paper, an independent contractor for United. *Id.* at 382.

2  However, the evidence demonstrated that United had *considerable* control over

3  Tonakanian's work as a driver. *Id.* at 382. United argued that it was not liable for

4  Tonakanian's conduct because "when a taxi company exercises control over its

5  drivers in order to comply with public regulations or third party requirements, such

6  activity cannot be considered in determining whether an agency or employment

7  relationship exists." *Id.* at 858. The court disagreed with United after analyzing

8  various state and federal cases that *exclusively* involved taxi companies and their

9  independent contractors/employees, and held that such information could be

10  considered when determining whether the taxi driver/independent contractor is in

11  fact an agent of the taxi company. *Id.* at 385-388. The court held Tonakanian was

12  United's agent because there was substantial evidence that United controlled

13  significant aspects of its Tonakanian's work, including United's ability to terminate

14  drivers, the ability to fine or discipline drivers, and the training manual provided to

15  all drivers. *Id.* at 391.

16       Here, the regulated hirer exception is not applicable. The City's contractor,

17  GEO, was not performing work under a license or franchise granted by public

18  authority, and there is no legal authority that extends the regulated hirer exception

19  to situations similar to the facts at issue.[10] Moreover, *Secci v. United Independent*

20  *Taxi Drivers, Inc.* is inapposite as there is no evidence that GEO's employees were

21  agents of the City (i.e., there is no evidence that the City controlled any aspect of

22  GEO's or its employees work). Consequently there is no legal basis to hold the City

23  vicariously liable for the conduct of GEO's employees and, thus, Plaintiffs' state

24  law claims for battery, assault, negligent training, IIED, violation of the Bane Act,

25

26  ───────────────

[10] Plaintiffs cite Section 1231.3.4 of Title 24 of the California Code of Regulations
27  within their discussion of the regulated hirer exception. (Doc. # 117 at 19:20-26.)
However, Title 24 does *not* govern the Facility and, thus, should not be considered
28  when evaluating Defendants' motion. The Facility is under the jurisdiction of the
U.S. Department of Homeland Security/Immigration and Customs Enforcement.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 21 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1   and negligence (claims one through four, eight, and ten) must be summarily

2   adjudicated against the City.

3   **V.    PLAINTIFFS CANNOT ESTABLISH THE CITY HAD A NON-**

4   **DELEGABLE AND/OR SPECIAL DUTY TO THEM [CLAIMS**

5   **THREE AND TEN].**

6       Plaintiffs argue the City can be liable for their negligence claims (claims

7   three and ten) because the City had a (1) non-delegable duty to; and (2) special

8   relationship with Plaintiffs. (Doc. # 117 at 20:11-15, 20: 24-21:2, 22:9-21.) In

9   support of this argument, Plaintiffs primarily rely on *Harrelson v. Dupnik*, *Giraldo*

10  *v. Dept. of Corrections & Rehab.*, and *Estate of Osuna v. Cty. of Stanislaus* to

11  support their argument. However, these cases demonstrate that the City did *not*

12  have a duty to Plaintiffs and, thus, cannot be liable for Plaintiffs' claims that sound

13  in negligence (claims three and ten).

14      For example, in *Harrelson v. Dupnik*, 970 F. Supp. 2d 953, 973 (D. Ariz.

15  2013), the court held that the county was vicariously liable for the alleged medical

16  malpractice of its contractor *at a county-run* juvenile housing unit because there

17  was a non-delegable duty between the county and the plaintiff, an inmate at its

18  facility. The court held that "[f]or vicarious liability to exist under the non-

19  delegable duty doctrine, a statute, regulation, contract, franchise, or charter must

20  impose the duty upon the principal or the duty must be non-delegable under the

21  common law." *Id*. at 973. The court relied on *Arizona* case law that cited specific

22  Arizona statutes to conclude "*Arizona* has recognized that public policy requires

23  that in situations involving involuntary detainment or commitment a county remain

24  'ultimately liable' for any breach of duty of care." *Id*. at 974. The court emphasized

25  the duty that the county undertakes for *its inmates*. *Id*. at 975.

26      In *Giraldo v. Dept. of Corrections & Rehab.*, 85 Cal. Rptr. 3d 371, 382 (Cal.

27  App. 1st Dist. 2008), the plaintiff was in-custody at a California prison and brought

28  suit against the California Department of Corrections and Rehabilitation (CDCR)

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 22 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1   and various CDCR personnel. The plaintiff's negligence claim was premised on the

2   existence of a special relationship between the prison employees and herself. *Id.* at

3   382. On demurrer, CDCR and its employees argued that there was no duty owed to

4   plaintiff and the court held as follows:

5   > "[T]here is a special relationship between jailer and
> prisoner which imposes a duty of care on the jailer to the
6   > prisoner. Who comes within the category of jailer is not
> before us, nor is the question of what law pertains to non-
7   > jailer defendants—questions that could not be decided on
> this record in any event."
8

9   *Id.* at 387–88. In other words, the court did not define which parties fell within the

10   ambit of the term "jailer" but nevertheless acknowledged the CDCR and its

11   employees had a special relationship with the plaintiff because plaintiff was a

12   prisoner at their facility and within their custody.

13   In *Estate of Osuna v. Cty. of Stanislaus*, 392 F. Supp. 3d 1162 (E.D. Cal.

14   2019), the plaintiffs argued an individual defendant, Christianson, breached a duty

15   owed to the decedent by hiring, retaining, and failing to adequately train and

16   supervise doe defendants. *Id.* at 1181. The plaintiffs argued the defendant county

17   was liable on a *respondeat superior* theory. *Id.* The court held California law does

18   not recognize a general duty of care on the part of supervisors with respect to

19   negligent hiring, retention, or training and, thus, a plaintiff must allege a special

20   relationship in order to bring a negligent hiring claim. *Id.* at 1182. The court

21   opined:

22   > The question is not whether the arresting officers had a
> special relationship with the decedent, but rather whether
23   > the supervisors responsible for hiring, training,
> disciplining, and so forth had such a special relationship.
24   > Here, plaintiffs offer no argument as to how defendant
> Christianson's duty of care towards the decedent
25   > amounted to anything more than the general duty to use
26   > reasonable care.
27

28   *Id.* at 1183. The court further held that other district courts have declined to find

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4832-0932-4718 v2
05788-0035

- 23 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

1  such a relationship under circumstances similar to those presented. *Id.* at 1183. The

2  court dismissed the plaintiffs' claim with leave to amend to see if he could

3  demonstrate a special relationship. *Id.*

4      Here, *Harrelson* is inapplicable as the court in *Harrelson* relied on Arizona

5  state authorities to reach its holding, and Plaintiffs have failed to put forth

6  comparable California authorities. More importantly, unlike the plaintiff in

7  *Harrelson* that was deemed to be the county's inmate because he was at a county-

8  run facility, Plaintiffs were not the City's detainees but were held under the

9  auspices of ICE. As demonstrated above, the evidence demonstrates that Plaintiffs

10  were *not* at a facility run by the City. (*See* Doc. # 108-2 [GEO and City's App.], Ex.

11  "A" [Detainee Handbook] at 5; Ex. "M" [Services Contract].) The Facility is

12  indisputably run by GEO/ICE and, accordingly, Plaintiffs were GEO's/ICE's

13  detainees. *Id.* Similarly, in *Giraldo* the CDCR and its employees managed and

14  operated the jail where the plaintiff was injured. In that scenario, the court

15  categorized the CDCR/its employees as the "jailer" and found a special

16  relationship. Again, the same cannot be said here. Plaintiffs were not at a facility

17  that was managed and operated by the City or State. (*See* Doc. # 108-2 [GEO and

18  City's App.], Ex. "A" [Detainee Handbook] at 5; Ex. "M" [Services Contract].)

19  Finally, there is no evidence that the City had a special relationship with Plaintiffs

20  (e.g., there is no evidence the City or its employees provided training or supervision

21  to GEO's employees) beyond the general duty to use reasonable care. *Estate of*

22  *Osuna v*, 392 F. Supp. 3d at 1183.

23  ## VI.  PLAINTIFFS' VICARIOUS LIABILITY CLAIM AGAINST GEO

24  ## FAILS.

25      An "employer's vicarious liability is based solely on the employee's

26  wrongful act; the employer cannot be liable when the verdict in favor of the

27  employee determines that the employee did no wrong." *Perez v. City of Huntington*

28  *Park*, 7 Cal. App. 4th 817, 820 (1992). Because Plaintiffs have failed to

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4832-0932-4718 v2
05788-0035

- 24 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ

demonstrate GEO employees did batter, assault, or negligently use unreasonable force against Plaintiffs, their vicarious liability claim against GEO must likely fail.

## VII.   PLAINTIFFS FAIL TO ESTABLISH THEIR FAILURE TO TRAIN AND SUPERVISE CLAIM AGAINST GEO [THIRD CLAIM].

An employer is not liable merely because its employee is incompetent, vicious or careless. A duty of care arises only when the risk of harm by the employee was reasonably foreseeable, that is, only when the employer knows or should know of the risk that employee poses. *See Federico v. Sup.Ct. (Jenry G.)*, 59 CalApp4th 1207, 1214 (1997). Plaintiffs argue that Diaz and Campos were not properly trained because they forgot definitions of terms in their depositions and provided personal opinions on training that were not consistent with GEO policies. (Doc. # 117 at 23:26-24:26.) This is not sufficient to establish a claim for negligent training and supervision as Plaintiffs have not demonstrated GEO knew or should have known of the risk they allegedly posed.  Moreover, any deficiency in training must also cause damage and Plaintiffs have not made this showing through admissible evidence. For this reason, Plaintiffs third claim should be summarily adjudicated.

Dated:  December 6, 2019          BURKE, WILLIAMS & SORENSEN, LLP


                                  By:  */s/ Carmen M. Aguado*
                                       Susan E. Coleman
                                       Carmen M. Aguado

                                  Attorneys for Defendants
                                  THE GEO GROUP, INC., DIAZ,
                                  CAMPOS and CITY OF ADELANTO

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4832-0932-4718 v2
05788-0035

- 25 -

5:18-CV-01125-SP
GEO'S AND CITY'S REPLY TO PLAINTIFFS'
OPPOS. TO MSJ