Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
Carmen M. Aguado (SBN 291941)
E-mail: caguado@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600   Fax: 213.236.2700

Attorneys for Defendants
THE GEO GROUP, INC., DIAZ, CAMPOS and
CITY OF ADELANTO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

OMAR ARNOLDO RIVERA
MARTINEZ; ISAAC ANTONIO
LOPEZ CASTILLO; JOSUE
VLADIMIR CORTEZ DIAZ; JOSUE
MATEO LEMUS CAMPOS;
MARVIN JOSUE GRANDE
RODRIGUEZ; ALEXANDER
ANTONIO BURGOS MEJIA; LUIS
PEÑA GARCIA; JULIO CESAR
BARAHONA CORNEJO, as
individuals,

Plaintiffs,

v.

THE GEO GROUP, Inc., a Florida
corporation; the CITY OF
ADELANTO, a municipal entity; GEO
LIEUTENANT DURAN, sued in her
individual capacity; GEO
LIEUTENANT DIAZ, sued in her
individual capacity; GEO
SERGEANT CAMPOS, sued in his
individual capacity; SARAH JONES,
sued in her individual capacity; THE
UNITED STATES OF AMERICA;
and DOES 1-10, individuals,

Defendants.

Case No. 5:18-cv-01125-SP

**DEFENDANTS GEO AND CITY'S
OBJECTIONS AND RESPONSE TO
PLAINTIFFS' ADDITIONAL
MATERIAL FACTS IN RESPONSE
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

Hearing Date:   December 17, 2019
Time:           10:00 a.m.
Courtroom:      3

Magistrate Judge: Honorable Sheri Pym

///

///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1                - 1 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

Defendants, THE GEO GROUP, INC., and CITY OF ADELANTO ("Defendants"), hereby respond to Plaintiffs' Statement of Additional Material Facts (Doc. #122), submitted in response to Defendants' Motions for Summary Judgment (Doc. #108), as follows:

**REPLY TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| 1. | The City of Adelanto entered into a contract (the Intergovernmental Services Agreement, or IGSA) with Immigration and Customs Enforcement (ICE) to house detainees at a city-run detention facility. | Ex. M, [GEO and Adelanto MOU] at 2. | Undisputed that the City of Adelanto entered into a contract with ICE to house detainees at the Adelanto ICE Processing Detention Facility ("Facility").<br><br>Plaintiffs' contention that the Facility was "city-run" is unsupported by the evidence Plaintiffs cites, and mischaracterizes the evidence. FRE 403. Contrary to Plaintiffs' assertion, Defendants' Exhibit "M" demonstrates that the MOU between GEO and the City required "GEO to perform all duties and accept all responsibilities incumbent upon the City pursuant to and consistent with the terms of the IGSA," that GEO accepted "the authority, duties and responsibilities of ICE and the City under the IGSA," and GEO agreed to operate and manage the facility in accordance with "the terms and conditions set forth in the IGSA, the authority of the ICE Contracting Officer's Technical Representative (COTR), |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1

- 2 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | and the applicability of the most current editions of ICE National Detention Requirements."  In other words, the Facility was managed and operated by GEO, who assumed responsibilities from ICE. The City delegated operations to GEO, in reliance upon their experience operating detention facilities. |
| 2. | In May 2011, the City of Adelanto entered into a contract with the Geo Group, Inc., a private detention company, to run the Adelanto facility. | Ex. L, [Agenda Report dated May 17, 2011]; Ex. "M" [2011 Service Agreement]. | Undisputed. |
| 3. | In May 2011, it was against the federal governments' conflict of interest rules for GEO to contract with ICE directly. | Ex. 12, Flores Dep. 97:4-14. | Undisputed. |
| 4. | The Services Contract delegates the "obligations and responsibilities of the City [as though they] were fully rewritten here as applying to GEO." | Ex. M, [GEO and Adelanto MOU] | Undisputed that the service contract between the City and GEO required GEO to assume the City's obligations and responsibilities under the IGSA. |
| 5. | The Services Contract gives the Geo Group the right to make policies for the facility. | Ex. M, [GEO and Adelanto MOU] | Undisputed for purposes of this motion. |
| 6. | The City had basic obligations under California law that it had to follow in any City detention facility, namely California Building Code Title 24- Minimum | Cal. Code Regs. tit. 24, § 1231.3.4 available at http://www.bscc.ca.gov/wp-content/uploads/Adult-Title-24-Min- | Misstates evidence. FRE 403. Lack of foundation. FRE 602.<br><br>There is no evidence that the Facility was required to comply with Cal. Code Regs. tit. 24, § 1231.3.4, |

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | Standards for Local Detention Facilities. | Standards-for-Local-Detention-Facilities-2013.pdf | which governs facilities under the under the jurisdiction of a city and/or county. To the contrary, the evidence demonstrates that the Facility is operated under the jurisdiction of DHS/ ICE. *See* Doc. # ___ [GEO and City Appendix of Exhibits], Ex. "M." |
| 7. | On June 12, 2017, Plaintiffs were being held in the Adelanto Detention Facility. Plaintiffs had many complaints about the conditions there. Plaintiffs decided, as a group, they would begin a hunger strike until a GEO or ICE supervisor would address their complaints, and they wrote out a two-page letter in Spanish that explained this. | Ex. 23, Castillo Dep. 63:10-13, 74:21-75:20, 76:12-25; Ex. 25, Cornejo Dep. 52:25-54:16; | Undisputed that the Plaintiffs were housed at the Facility on June 12, 2017, that they had complaints about the Facility, that they decided to, at some point, engage in a hunger strike, and that the two page letter was written in Spanish.

There is no evidence, however, to support the contention that the letter explained that Plaintiffs' "would begin a hunger strike until a GEO or ICE supervisor would address their complaints." Lack of foundation. FRE 602. Misstates/mischaracterizes evidence. FRE 403. To the contrary, the evidence demonstrates that Plaintiffs presented a two-page letter in Spanish that explained their demands and a second piece of paper that was a list of their names. *See* Doc. 111-1 [Diaz and Campos Separate Statement], Nos. 9-11 (citing Ex. "P" [Castillo Depo.] at 72:2-10, 73:7-19, 77:5-15 (acknowledging Officer Gillon was unable |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1          - 4 -          5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | to read or understand the list of demands), 74:21-75:19; Ex. "Q" [Mejia Depo.] at 61:7-62:25; Ex. "R" [Rodriguez Depo.] at 79:16-80:14, Ex. 1 [Copy of list of demands], 81:4-82:25 [Translation of List of Demands]; Ex. "S" [Garcia Depo.] at 34:16-36:5 (explaining that Officer Gillon, who only spoke English, was informed that they wanted someone to respond to their list of demands); Ex. "T" [Diaz Depo] at 50:19-51:25, 62:19-63:3; 78:2-79:13 (stating second piece of paper was a list of names); Ex. "U" [Martinez Depo.] at 78:24-80:2 (stating the detainee was asked to translate the list of demands, which did not mention the hunger strike, to Officer Gillon); Ex. "V" [Gillon Depo] at 14:1-4 (confirming he cannot speak Spanish), 86:11-20 (acknowledging that he received the list of demands), 142:6-21. |
| 8. | Plaintiffs gave this letter to the dorm officer, Officer Gillon, and used other detainees to translate and explain to him that they were participating in a peaceful hunger strike. | Ex. 17, Gillon Dep. 86:11- 87:15, 87:25-88:2. | Undisputed that a plaintiff gave the letter to Officer Gillon.<br><br>There is no evidence to support the contention that a third party detainee explained to Officer Gillon that Plaintiffs were participating in a hunger strike. Misstates evidence. FRE 403. Contrary to Plaintiffs' assertion, the evidence cited by Plaintiffs demonstrates that Gillon |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1                    - 5 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | *thought* during his deposition that he learned of a hunger strike from the letter that he was handed; however, he admitted that he had no recollection of the contents of the letter and, given he cannot read Spanish, this is simply impossible:

Q What do you mean when you say that you're not sure what the letter said?

A I don't remember what it said on there.

Q So you don't recall as you sit here today what the letter said?

A No.

Q But you do recall that it was in English?

A Yeah.

Q As you sit here today, do you recall anything that was said in the letter?

A No.

Additionally, Plaintiffs' contention is based on speculation as Plaintiffs admitted that they are guessing that Officer Gillon was informed and knew they were on a hunger strike. *See* Doc. #111-1 [Diaz and Campos Separate Statement], No. 13 (citing Ex. "Q" [Mejia Depo.] at 58:15-59:14, 60:11-14, 63:23-25, 67:8-11, 159:7-24 (admitting that the papers that were |

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1

- 6 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | given to Officer Gillon did not mention the hunger strike, but he assumes that someone verbally told Officer Gillon); Ex. "R" [Rodriguez Depo.] at 95:9-7; Ex. "S" [Garcia Depo.] at 38:20-24; Ex. "T" [Diaz Depo] at 50:4-10, 73:7-14, 77:23-78:3; Ex. "U" [Martinez Depo.] at 78:24-80:2; Ex. "V" [Gillon Depo] at 92:25-93:3 (demonstrating that he was never told verbally of the hunger strike)). |
| 9. | When he was relieved by Officer Jindi at 6:30 that morning, he took the letter to Lieutenant Diaz. | Ex. 17, Gillon Dep. 90:1921, 90:25-91:11; [Ex. F, [Video, Views C-2 and C3] at 06:33:22 a.m. to 6:33:29 a.m. | Undisputed that Officer Gillon was relieved by Officer Jindi at around 6:30. <br><br> However, the evidence cited by Plaintiffs does not support Plaintiffs' contention that Gillon took the letter to Lt. Diaz. Mischaracterizes evidence. FRE 403. Plaintiffs' evidence demonstrates that Gillon did not know if he gave Lt. Diaz the letter. Moreover, the evidence demonstrates Lt. Diaz only received the list of names. *See* Diaz Decl. ¶ 9. |
| 10. | In response, Lieutenant Diaz yelled at the detainees in English, stopped the only Spanish speaking officer from negotiating with the detainees after two minutes; ordered the use of force against the detainees; pepper sprayed the detainees; and in short escalated the situation and used force punitively. | Ex. 27, Martinez Dep. 70:10-25-71:21-25;74:1-6; 76:20-25. | Compound. Mischaracterizes the evidence. FRE 403. Plaintiffs' cited evidence does not support this contention. <br><br> Contrary to Plaintiffs' assertion that is unsupported by the cited evidence, Plaintiffs admit that they were given orders |

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 7 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | in English and Spanish and that they had no intention of complying with the commands unless force was used as this would help them garner more attention for their strike. *See* Doc. # 111-1 [Diaz and Campos Separate Statement], Nos. 17-34 (citing, in pertinent part, Ex. "T" [Diaz Depo] at 83:2-3 ("Because we were already there. We needed to fight for it, to struggle, to be heard.").) |
| | | | Moreover, Plaintiffs' assertion contradicts the video recording of the incident that is attached as Exhibit "F." *See Scott v. Harris*, 550 U.S. 372, 378–80 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."). |
| 11. | Lieutenant Diaz ordered the use of force against the detainees after five minutes of her arriving on the scene. | Ex. 27, Martinez Dep. 51:18-25, 76:20-25 | Compound. Mischaracterizes the evidence. FRE 403. Plaintiffs' cited evidence does not support this contention.<br><br>Plaintiffs' assertion contradicts the video recording of the incident that is attached as Exhibit "F." *See Scott v. Harris*, 550 U.S. 372, 378–80 (2007) ("Respondent's |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 8 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."). |
| 12. | Lieutenant Diaz also called another supervisor, Sergeant Campos, over from the other side of the facility. | Ex. 16, Lt. Diaz Dep. 214:9-11; Ex. 14, Sgt. Campos Dep. 74:9-25 | Irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403.<br><br>Undisputed that Lt. Diaz called for additional assistance.<br><br>However, the evidence cited by Plaintiffs does not support their contention that Lt. Diaz specifically called Sgt. Campos. Mischaracterizes the evidence. FRE 403. |
| 13. | Sergeant Campos, when he arrived, ordered the officers to push a detainee against the wall, then ordered officers to step away from the detainees where they were sitting at the table, and sprayed the remaining detainees at extremely close range as they sat peacefully at the table. | Ex. 14, Sgt. Campos Dep. 89:16-25-90:1-5; Ex. F, [Video, Views C-1, C3 and C-4] at 06:46:10 a.m. to 6:47:19 a.m. | Compound. Mischaracterizes the evidence. FRE 403. Plaintiffs' cited evidence does not support this contention. To the contrary, Plaintiffs' cited evidence demonstrates that when Sgt. Campos arrived, he saw "officers escorting a detainee out. And the detainee was being combative. He was resistive." *See* Pls.' Ex. 14 [Sgt. Campos Dep.] 89:22-90:2. As a result, Sgt. Campos "guided them towards the wall." *Id.* at 90:1-5. He told the officers "to gain control before they |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1                                          - 9 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | proceed with moving." *Id.*<br><br>Plaintiffs' assertions also contradict the video recording of the incident that is attached as Exhibit "F." *See Scott v. Harris*, 550 U.S. 372, 378–80 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."). |
| 14. | The detainees were hurt both by the use of force against them and by the pepper spray. They were then further hurt when the officers failed to decontaminate them properly. | Ex. 27, Martinez Dep. 94:15-95:5; Ex. 49, Decl. of Hussain Turk; Ex. 30, Rodriguez Dep. 145:24-25, 152:22-24; Ex. F, [Video, Views C-1 and C-3] at 6:38:04 to 6:38:28; Ex. 27, Martinez Dep. 90:24-91:11, 93:10-20; Ex, 28, Mejia Dep. 75:19-76:13. Ex. 23, Castillo Dep. 91:13-3; Ex. 29, Garcia Dep. 45:21-24; 47:2-3. | Compound. Mischaracterizes the evidence. FRE 403. Plaintiffs' cited evidence does not support the contention that "officers failed to decontaminate [plaintiffs] properly."<br><br>Irrelevant and immaterial to Defendants' Motion for Summary Judgment, as Plaintiffs provided their *opinion* as to whether they were decontaminated properly. FRE 402, 403.<br><br>The declaration of Hussain Turk relies on unreliable hearsay, improper opinion, and speculation. FRE 602.<br><br>Plaintiffs' assertions also contradict the video recording of the incident that is attached as Exhibit |

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | "F" (*see Scott v. Harris*, 550 U.S. 372, 378–80 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.")) and Plaintiffs' Exhibit "7" [Plaintiffs' Medical Report on Injuries]. |
| 15. | The officers waited at least 2 1/2 hours to decontaminate Plaintiffs. | Ex. 7, [All Plaintiffs' Med Report on Injuries]; Ex. 21, Jones Dep. (confidential) 176:11-15, 177:18-25, 205:25-206:3. | Mischaracterizes the evidence. FRE 403. Plaintiffs' cited evidence does not support the contention as there is no information as to the time that Plaintiffs were decontaminated within Plaintiffs' Exhibit 7 [medical reports] or Exhibit 21 [deposition of Nurse Jones]. They were evaluated medically after they were decontaminated. |
| 16. | The officers put them into hot showers fully clothed and still handcuffed, which exacerbated the effects of the pepper spray, creating an extremely painful burning sensation. | Ex. 23, Castillo Dep. 105:1-Ex. 26, Diaz Dep. 84:13-85:12; 87:11-88:10; 93:8-15. Ex. 24, Campos Dep. 99:16-100:12; 118:20-119:4 Ex. 28, Mejia Dep. 88:1319. Ex. 25, Cornejo Dep. 77:478:24; 80:5-21; 81:7-14 Ex. 30, Rodriguez Dep. 113:12-22; 162:13-163-2; 163:9-12. | Undisputed that the officers placed some of the plaintiffs into showers while the plaintiffs were clothed and handcuffed. Plaintiffs cited evidence relies on speculation that the temperate of the water was "hot." The evidence demonstrates that some plaintiffs were placed in showers with cold water (*see* Aguado Decl. of ISO of Defs.' Reply, Ex. "E" [Juarez Dep.] at 44:2-6, |

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1                    - 11 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | 45:7-11) and that water, irrespective of the temperature of the water, may reactivate the tingling sensation from the spray. *See* Diaz Decl. ¶ 41. |
| 17. | Under Title 24 - Minimum Standards for Local Detention Facilities, the City is required under California law to ensure hot, cold, and tempered showers. | Cal. Code Regs. tit. 24, § 1231.3.4 available at http://www.bscc.ca.gov/wp-content/uploads/Adult-Title-24-Min-Standards-for-Local-Detention-Facilities-2013 .pdf | Misstates evidence. FRE 403. Lack of foundation. FRE 602. There is no evidence that demonstrates the Facility was required to comply with Cal. Code Regs. tit. 24, § 1231.3.4, which governs facilities under the under the jurisdiction of a city and/or county. To the contrary, the evidence demonstrates that the Facility is operated under the jurisdiction of DHS/ ICE. *See* Doc. # __ [GEO and City Appendix of Exhibits], Ex. "M." |
| 18. | The showers were set to a single temperature and it was not possible to have only cold or cool water come out of the showers. | Ex. 27, Martinez Dep. 118:20-25; Decl. of Martinez 114, Decl. of Castillo ¶ 4. | Irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403. <br><br> The declarations of Martinez and Castillo rely solely on their subjective opinions as to the general temperature of the water at the Facility. |
| 19. | The facility had previously received complaints about the showers being too hot, and those complaints were reviewed by command-level staff at the facility, including Captain McCusker. | Ex. 10, McCusker Dep. 64:11-65:2. | Irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403. <br><br> Mischaracterizes the evidence. FRE 403. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1                    - 12 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | Plaintiffs' evidence demonstrates McCusker stated that he has heard complaints that the there was "no hot water and hot water too hot." |
| 20. | Pepper spray should be decontaminated using cool or cold water. | Ex. McCusker Decl. ¶ 9, Venters Decl. ¶ 3, Ex. 16, Reyes Dep. 140:3-8 | Undisputed for purposes of this motion as this contention is irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403.<br><br>Nevertheless, Plaintiffs' contention misstates the evidence. FRE 403. The declaration of McCusker does not state that "[p]epper spray should be decontaminated using cool or cold water." Also, the declaration of Venters and his attached report rely on unreliable expert opinion. Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharms.*, Inc. 43 F.3d 1311, 1315, 1321 n. 17 (9th Cir. 1995). |
| 21. | Using warm or hot water on pepper spray can increase the burning sensation and further hurt detainees. | Venters Decl. ¶ 3; Decl. of Homer Venters ¶ 4, Ex. A [Dr. Venters Expert Report] at pg. 5. | Undisputed for purposes of this motion as this contention is irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403.<br><br>Nevertheless, the declaration of Venters and his attached report rely on unreliable expert opinion. Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharms.*, Inc. 43 F.3d 1311, 1315, 1321 n. 17 (9th Cir. 1995). |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1

- 13 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| 22. | Captain McCusker classifies the pain from OC spray to be an 8 out of 10 and that the first time being exposed is the most painful and traumatic | Ex. 10, McCusker Dep.33:20-34:16. | Irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403. |
| 23. | The detainees were subjected to excessive force when they were decontaminated in a manner that hurt them. | Decl. of Homer Venters ¶ 4, Ex. A [Dr. Venters Expert Report] at pgs. 5-6; Ex. 19, Juarez Dep. 43:15-17; 45:746:13; Ex. 25, Cornejo Dep. 77:2-78:24, 80:9-13, 80:2581:6; Ex. 30, Rodriguez Dep. 112:13-113:4; Ex. 23, Castillo Dep. 104:18-106:7; Castillo Decl. II' 4-5. | Irrelevant and immaterial to Defendants' Motion for Summary Judgment, as Venters was giving his *opinion*. FRE 402, 403.<br><br>Improper legal argument and conclusion. Argumentative. Misstates, mischaracterizes, and incomplete representation of the evidence.  FRE 403.<br><br>The declaration of Venters and his attached report rely on unreliable expert opinion based on speculation and lack of foundation. Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharms.*, Inc. 43 F.3d 1311, 1315, 1321 n. 17 (9th Cir. 1995). |
| 24. | The detainees complained to the officers at the time that the showers were burning them. | Ex. 16, Lt. Diaz Dep. 283: 1-5. | Plaintiffs' contention misstates the evidence. FRE 403. The cited evidence demonstrates that Lt. Diaz was not present when the detainees were showering, thus her statements are hearsay and rely on speculation/lack foundation. Moreover, the evidence demonstrates that water, irrespective of the temperature, may reactivate the tingling sensation from the spray. *See* Diaz Decl. ¶ 41; Pls.' Ex. 16 [Lt. Diaz |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 14 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | Dep.] 283: 1-5. |
| 25. | GEO employees do not receive training on the temperature the water should be when someone is being decontaminated. | Ex. 10, McCusker Dep. 37:14-21. | Plaintiffs' contention misstates the evidence. FRE 403. The cited evidence demonstrates that McCusker stated in the specific lesson plan that was referenced, officers do not receive training on the temperature of the water to use when someone is being decontaminated (Pls.' Ex. 10 [McCusker Dep.] 37:14-17); however, in the lesson that is specific to OC spray, the "the term 'cool water' could be used." *Id.* at 37:22-25. |
| 26. | GEO employees do not receive training on the effect of hot water on someone who has been OC sprayed. | Ex. 10, McCusker Dep. 38:4-7. | Undisputed for purposes of this motion as the contention is irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403. |
| 27. | None of the officers were subjected to hot water decontamination. | Decl. of Homer Venters ¶ 4, Ex. A [Dr. Venters Expert Report]; Ex. 16, Lt. Diaz Dep. 153:25-154:10, 154: 21-155:11, 155:24-156:3, 158:3-13 (explaining that GEO officers are trained that hot showers will exacerbate OC spray pain and clothing with OC spray should be removed). Ex. 16, Lt. Diaz Dep. 152: 18-24 (eyes were flushed with cold water and a fan was used to relieve | Undisputed for purposes of this motion as the contention is irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403. Nevertheless, the declaration of Venters and his attached report rely on unreliable expert opinion based on speculation and lack of foundation. Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharms.,* Inc. 43 F.3d 1311, 1315, 1321 n. 17 (9th Cir. 1995). |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 15 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | the stinging sensation during OC spray training). Ex. 19, Juarez Dep. 18:6 (use cold water), 79:22-80:19 (immediate eye flush), 41:14-24 (attended by medical staff); Ex. 16, Reyes Dep. 125:11-25 (attended by nurse in medical dept., eyes flushed, provided water and soap to wash with), 138:7-18, 139:10-20 (sent for off-site medical evaluation by a doctor) Ex. 16, Reyes Dep. 125:11-25, 138:7-18, 139:10-20; | |
| 28. | Warden Janecka was the final policymaker on the policies at the facility, including at the time of the incident. He has the power to implement policy and practices in Adelanto on GEO Group agents' use of force, and was responsible for managing the day to day operations. | Ex. 11, Janecka Dep. 102:12-21, (Waren Janecka is the "final decision-maker at Adelanto [Detention Center] for GEO." ). | Undisputed. |
| 29. | The Warden had the ultimate responsibility for conditions in the facility; he made the decision whether to address complaints or not. | Ex. 11,:8-11. Janecka Dep. 32:21-n:9 93 | Undisputed for purposes of this motion. |
| 30. | No one at the City has done a review of GEO's policies during the relevant time period. | Ex. 13, Langill Dep. 56:2124 (Q: During the time that you have been Compliance | Undisputed for purposes of this motion.<br><br>Nevertheless, vague and |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 16 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | Administrator has the City of Adelanto come into the facility to do any sort of review of the policies -A: No."); Ex. 12, Flores Dep.100:8-21 | ambiguous as to "the relevant time period." |
| 31. | The Facility Administrator referred to in the contracts and policies is the Warden. The Facility Administrator is supposed to pre-approve the use of pepper spray under the policies | Ex. 11, Janecka Dep. 60:1- 19; Decl. of Homer Venters T 4, Ex. A [Dr. Venters Expert Report] at 4. | Undisputed that the Facility Administrator referred to in the contracts and policies is the Warden.

The evidence cited by Plaintiffs' does not support the contention that "The Facility Administrator is supposed to pre-approve the use of pepper spray under the policies." Mischaracterizes the evidence. FRE 403.To the contrary, the cited evidence demonstrates that when asked if "there's an incident that is going to ultimately require use of force… are staff required to contact you even though you are not at the facility," Janecka stated "it depends." *See* Pls.' Ex. "11" [Janecka Dep.] 60:1-19.

Moreover, the declaration of Venters and his attached report rely on unreliable expert opinion based on speculation and lack of foundation. Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharms.*, Inc. 43 F.3d 1311, 1315, 1321 n. 17 (9th Cir. 1995). |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1

- 17 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| 32. | Gillon saw the Warden arrive at the facility after the incident around 7:21. It is undisputed that the Warden arrived at Adelanto Detention Facility shortly after the incident; that he went to 2-Charlie (the site of the incident); and that he discussed what had happened with the officers. | Ex. 17, Gillon Dep. 174:2-14, Ex. F, [Video] at 7:21:26 a.m. | Undisputed for purposes of this motion. Nevertheless, vague and ambiguous as to "shortly after the incident." |
| 33. | Officer Reyes also saw the Warden arrive and speak with Diaz and some other officers. At the time, the pepper spray in the unit was still strong, and it was prior to the evacuation of the detainees from the unit. After they evacuated the detainees, they had to air out the unit. | Ex. 16, Reyes Dep. 122:1-123:8; Ex. 18, Jindi Dep. 54:10-55:14. | Undisputed for purposes of this motion. Nevertheless, mischaracterizes the evidence. FRE 403. Plaintiffs' cited information does not state that "the pepper spray in the unit was still strong." Officer Jindi stated, instead, that that the other detainees were escorted out because "of the smell" and "[t]hey have to air out the unit." See Pls.' Ex. 18 [Jindi Dep.] 54:10-55:14. |
| 34. | Before they evacuated the unit, Officer Jindi had to step out to the yard to catch her breath, because she was coughing and she felt burning from the amount of pepper spray in the room. | Ex. 18, Jindi Dep. 55:18-24 | Irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403. Mischaracterizes evidence. FRE 403. Plaintiff's evidence demonstrates Jindi stated she felt "a little bit" of a burning sensation. See Pls.' Ex. 18 [Jindi Dep.] 55:18-24 |
| 35. | The Warden initials "every" serious incident | Ex. 11, Janecka Dep. | Undisputed for purposes of |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1

- 18 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | report—including for the June 12, 2017 incident—and the Warden's "name appears on every one of [the serious incident reports] as being the Facility Administrator." | 82:23-24, 85:18-23. | this motion. |
| 36. | The Warden reviews the serious incident report and asks for clarification if necessary before approving and transmitting it to corporate. | Ex. 11, Janecka Dep. 80:11-81:8. | Undisputed for purposes of this motion. |
| 37. | After the event Warden Janecka and others watched the video from the surveillance camera on the use of force. | Ex. 16, Lt. Diaz Dep. 232:3-7 | Mischaracterizes evidence. FRE 403. The cited evidence demonstrates that Lt. Diaz was not present during the after-action review and, thus, Plaintiffs' contention relies on speculation. *See* Pls.' Ex. 15 [Lt. Diaz Dep.] 232:3-7, 233:1-18 (Q: Were you there with them when they watched the video? A: No, ma'am.").<br><br>Moreover, Defendants' Exhibit E [After-Action Review Report Use of Force/Restraints related to the June 12, 2017, incident], which includes a list of the participants of the after-action review, does not list Janecka's name. |
| 38. | On June 12, 2017 and June 13, 2017, the Warden reviewed and approved the use of pepper spray against peaceful, hunger-striking plaintiffs at close range on June 12, 2017, agreeing | Ex. 16, Lt. Diaz Dep. 231:23-234:1 | Undisputed that Lt. Diaz's use of OC spray to quell a major disturbance was in compliance with GEO's policies and procedures. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1                    - 19 -                    5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|-----|--------------------------|---------------------|-------------------|
|     | that Lt. Diaz acted according to protocol. |  | Mischaracterizes evidence. FRE 403. The cited evidence demonstrates that Lt. Diaz was not present during the after-action review and, thus, Plaintiffs' contention relies on speculation. *See* Pls.' Ex. 15 [Lt. Diaz Dep.] 232:3-7, 233:1-18 (Q: Were you there with them when they watched the video? A: No, ma'am.").<br><br>Moreover, Defendants' Exhibit E [After-Action Review Report Use of Force/Restraints related to the June 12, 2017, incident], which includes a list of the participants of the after-action review, does not list Janecka's name.<br><br>Vague and ambiguous as to "close range."<br><br>Additionally, Plaintiffs' contention is based on speculation as Plaintiffs admitted that they are guessing that Officer Gillon was informed and knew they were on a hunger strike. *See* Doc. # 111-1 [Diaz and Campos Separate Statement], No. 13 (citing Ex. "Q" [Mejia Depo.] at 58:15-59:14, 60:11-14, 63:23-25, 67:8-11, 159:7-24 (admitting that the papers that were given to Officer Gillon did not mention the hunger strike, but he assumes that someone verbally told |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 20 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | Officer Gillon); Ex. "R" [Rodriguez Depo.] at 95:9-7; Ex. "S" [Garcia Depo.] at 38:20-24; Ex. "T" [Diaz Depo] at 50:4-10, 73:7-14, 77:23-78:3; Ex. "U" [Martinez Depo.] at 78:24-80:2; Ex. "V" [Gillon Depo] at 92:25-93:3 (demonstrating that he was never told verbally of the hunger strike)). <br><br> Finally, the admissible evidence demonstrates Lt. Diaz believed that Plaintiffs *threatened to start* a hunger strike. *See* Diaz Decl. ¶ 9. |
| 39. | The Warden received notice of the use of force and was contractually required to report the use of force to ICE. The Warden also reviewed the Serious Incident Report. | Ex. 11, Janecka Dep. 69:1-20; 81:1-7. | Undisputed for purposes of this motion. |
| 40. | The officers were provided two to three weeks of classroom training when they started at Geo Group. | McCusker Decl. ¶ 3; Ex. 14, Sgt. Campos Dep. 19:6-12; Ex. 17, Gillon Dep. 14:14-23; Ex. 19, Juarez Dep. 14:16-23. | Undisputed for purposes of this motion. |
| 41. | The supervising officers were also supposed to be trained in additional topics such as use of OC spray and the use of force requirements that permit the use of chemical agents. | McCusker Decl. ¶ 5, Ex. 14, Sgt. Campos Dep. 145:6-23-146:2-7 | Undisputed for purposes of this motion. <br><br> Nevertheless, mischaracterizes evidence. FRE 403. Plaintiffs' cited evidence demonstrates that supervisory staff do in fact complete "additional training that builds on the |

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | pre-service training" including "training specific to the use chemical agents (e.g. pepper spray or OC spray)." *See* McCusker Decl. ¶ 5. |
| 42. | GEO has failed to train its officers to act according to the continuum of force. | Ex. 14, Sgt. Campos Dep. 145:2-7; Ex. 16, Lt. Diaz Dep. 13:4-7. Ex, 17, Gillon Dep. 110:13-19 (did not know what come along holds are). | Plaintiff's purported "fact" is improper argument. Lacks foundation. Mischaracterizes/misstates evidence. FRE 403.<br><br>Sgt. Campos stated that he could not recall the term "continuum," but Plaintiffs ignore that Sgt. Campos has not worked with GEO since 2017. *See* Campos Decl. ¶ 2. Moreover, Plaintiffs ignore that while he could not recall the term "continuum," he recalled the requirements of the "continuum of force." *See* Pls.' Ex. 14 [Sgt. Campos] 141:1-21 ("Q Force is only used as a last resort; is that right? A Yes.").<br><br>Likewise, Lt. Diaz described the "continuum of force" step-by-step in her deposition which Plaintiffs conveniently omit. *See* Aguado Decl. ISO Reply, Ex. "B" [Lt. Diaz Dep.] at 210:1-20 ("A Yes. Because it's presence. Then it's verbal commands. They were not complying with verbal commands to rack up. Q And right now it sounds like you're going into the use-of-force continuum; is that correct? ... Q What happens after verbal commands? A After |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1

- 22 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | verbal commands, after several verbal commands, then we go into -- how would you say? The soft approach…."). <br><br> The admissible evidence demonstrates, to the contrary, that GEO does adequately train its personnel on the use of force. *See* McCusker Decl. ¶¶ 7-9; Diaz Decl. ¶ 6; Doc. #111-2 [GEO and City Appendix of Exhibits], Ex. "H" [GEO's Use of Force policy]. |
| 43. | GEO's use of force policy states that the Facility Administrator may authorize the use of chemical agents or non-lethal weapons, only when the situation is such that the detainee: <br><br> (1) Is armed and/or barricaded; or <br><br> (2) Cannot be approached without danger to self or others; and <br><br> (3) It is determined that a delay in bringing the situation under control would constitute a serious hazard to the detainee or others, or would result in a major disturbance or serious property damage | Ex. "H" [GEO's Use of Force policy]. | Misstates/mischaracterizes the evidence. FRE 403. Plaintiffs' cited evidence provides an incomplete summation of GEO's use of force policy. <br><br> Plaintiffs ignore their Exhibit 1, which is GEO's training materials and state "Chemical agents may be useful to control the following situations: - In self-defense or in defense of other persons; …- To quell a disturbance that is likely to develop into a serious disorder or riot; … - To compel an inmate/detainee in a contained area to comply with direct orders…." |
| 44. | Nurse Jones testified, and the video shows, that on the day in question when the spray was deployed, Plaintiffs were sitting still and could be easily | Ex. 21, Jones Dep. 98:5-25; 99:1-9; 86:1-8; Ex. F, [Video, Views C-3 and C-4] at 06:19:23 a.m. to 6:32:43 a.m. | Misstates/mischaracterizes the evidence. FRE 403. Plaintiffs' cited evidence provides an incomplete summary of Jones' testimony. Lacks |

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | counted. | | foundation. |
| | | | Plaintiffs omit that Jones stated that while she asked Diaz to count Plaintiffs at the tables, she also stated she does not know "security's specific policies and how that carries out." *See* Aguado Decl. ISO Reply, Ex. "F" [Jones Dep.] at 99:1-100:4. |
| 45. | Under the policy, there must be a major disturbance in order for spray to be deployed. | Schwartz Decl. ¶ 4; Decl. of Jeffery A. Schwartz ¶ 7, Ex. A, [Schwartz Expert Report] at 9; Ex. H [GEO's Use of Force Policy] | Incomplete and misstates/mischaracterizes the evidence. FRE 403. |
| | | | Plaintiffs ignore their Exhibit 1, which is GEO's training materials and state "Chemical agents may be useful to control the following situations: - In self-defense or in defense of other persons; …- To quell a disturbance that is likely to develop into a serious disorder or riot; … - To compel an inmate/detainee in a contained area to comply with direct orders…." |
| | | | Plaintiffs likewise ignore their "fact" no. 43. |
| | | | The declaration of Schwartz and his report are improper expert opinion based on speculation and lack of foundation.  Lack of foundation/speculation. Fed. R. Evid. 602. Unreliable expert opinion. Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharms.*, Inc. 43 F.3d |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 24 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | 1311, 1315, 1321 n. 17 (9th Cir. 1995). |
| 46. | The video shows clearly that there was no major disturbance at the time force was deployed. | Ex. F, [Video] at 06:34:45 a.m. to 6:38:03a.m. | Incomplete and misstates/mischaracterizes the evidence. FRE 403. Misleading.<br><br>Plaintiffs' assertion contradicts the video recording of the incident that is attached as Exhibit "F." *See Scott v. Harris*, 550 U.S. 372, 378–80 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.").<br><br>The admissible evidence demonstrates that Plaintiffs were causing not only a major disturbance in their dorm but throughout the entire Facility. *See* Doc. # 111-1 [Diaz and Campos Separate Statement], Nos. 30-33, 42, 56 and 72. |
| 47. | GEO Group permits the use of major — and even deadly — force in response to "riots" and "rebellions." | Ex. H, [GEO Use of Force Policy]; Schwartz Decl 4 | Misstates the evidence. FRE 403.<br><br>Exhibit H [GEO Use of Force Policy] at page 3 of 17 states "staff members are not authorized to use deadly force." |
| 48. | Pepper spray is a major | Ex. H, [GEO Use of Force Policy] (No. | Undisputed for purposes of |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 25 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | use of force. | 10.2.15), at 3(Sec. A(1)(a)) | this motion. |
| 49. | The detainees did not pose a threat nor was there a major or serious disturbance at the point force was used. | Schwartz Dec. ¶¶ 4, 6. | Incomplete and misstates/mischaracterizes the evidence. FRE 403. Misleading.<br><br>Plaintiffs' assertion contradicts the video recording of the incident that is attached as Exhibit "F." *See Scott v. Harris*, 550 U.S. 372, 378–80 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.").<br><br>The admissible evidence demonstrates that Plaintiffs were causing not only a major disturbance in their dorm but throughout the entire Facility. *See* Doc. # 111-1 [Diaz and Campos Separate Statement], Nos. 30-33, 42, 56 and 72. |
| 50. | Captain McCusker felt that the term "disturbance" did not accurately describe the incident in this case. | Ex. 10, McCusker Dep. 44:9-19 ("The term 'disturbance' could have a connotation of a riot, for instance as a worst case, and it wasn't felt that the term 'disturbance' accurately described the incident.") | Incomplete and misstates/mischaracterizes the evidence. FRE 403. Misleading. Speculation.<br><br>Plaintiffs omit that when McCusker stated he did not feel that the term "disturbance" accurately described the incident, he was referring to which box |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 26 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | to select when completing the serious incident report. *See* Pls.' Ex. 10 [McCusker Dep.] 44:1-19 ("This incident is considered certainly considered a use of force and was ultimately reported as such."). Later, he explained, "[t]he incident in its totality can be just a use-of-force incident, such as this, with the detainees being pepper sprayed. If the term disturbance was going to be used, it very likely would be coined as a disturbance by the Facility Administrator before it was reported as a facility disturbance." *See* Pls.' Ex. 10 [McCusker Dep.] 45:3-9.<br><br>Moreover, Plaintiffs omit that McCusker did not witness the incident; thus, to the extent that he was describing the incident, which he was not, he would be speculating. *See* Pls.' Ex. 10 [McCusker Dep.] 76:1-9. |
| 51. | There is no document that defines the term "disturbance". | Ex. 10, McCusker Dep. 45:10-18 | Undisputed for purposes of this motion. |
| 52. | GEO employees are not trained on when a disturbance occurs. | Ex. 10, McCusker Dep. 46:6-8 (Q: Does GEO train its officers on where that threshold is crossed and what constitutes a disturbance?<br>A: No.) | Incomplete and misstates/mischaracterizes the evidence. FRE 403. Misleading.<br><br>Plaintiffs' cited evidence refers to McCusker describing which box to check on an incident report when categorizing the report. *See* Pls. Ex. 10 [McCusker Dep.] 44-46. |

Burke, Williams & Sorensen, LLP<br>
Attorneys At Law<br>
Los Angeles

LA #4838-0356-4206 v1

- 27 -

5:18-CV-01125-SP<br>
GEO AND CITY'S ADDITIONAL<br>
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | Later, McCusker explained that a "disturbance or riot" "would have been discussed [in training]." *See* Aguado Decl. ISO Reply, Ex. "D" [McCusker Dep.] at 61-62. |
| 53. | GEO does not have further module trainings to help define: "Hunger strike" and "disturbance/riot". But has further module trainings to define terms like "escape" and "hostage situation". | Ex. 10, McCusker Dep. 62:23-63:20 | Incomplete and misstates/mischaracterizes the evidence. FRE 403. Misleading.<br><br>The evidence demonstrates that GEO trains on its policies and procedures, which include policies specific to hunger strikes. *See* McCusker Decl. ¶ 15; Doc. # 111-2 [GEO and City Appendix of Exhibits], Ex. "K" [GEO's Emergency Plans Manual].<br><br>Moreover, Plaintiffs omit additional evidence that they have in their possession, including training PowerPoint slides related to hunger strikes. *See* Aguado Decl. ISO Reply, Ex. "G" [Training specific to Hunger Strikes]. |
| 54. | GEO does not elaborate on terms like disturbance, riot, or rebellion in trainings. | Ex. 10, McCusker Dep. 81:12-18 ("I say disturbance, riot or rebellion, because it's written on there. I don't elaborate on it."). | Incomplete and misstates/mischaracterizes the evidence. FRE 403. Misleading.<br>McCusker explained that a "disturbance" or "riot" "would have been discussed [in training]." *See* Aguado Decl. ISO Reply, Ex. "D" [McCusker Dep.] at 61-62. |
| 55. | In most facilities, a | Decl. of Jeffery A. | Irrelevant and immaterial |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1                - 28 -                5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | refresher course in OC spray use is required each year. | Schwartz ¶ 7, Ex. A [Schwartz Expert Report] at at 19 | to Defendants' Motion for Summary Judgment. FRE 402, 403.<br><br>The declaration of Schwartz and his report are improper expert opinion based on speculation and lack of foundation. Lack of foundation/speculation. Fed. R. Evid. 602. Unreliable expert opinion. Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharms.*, Inc. 43 F.3d 1311, 1315, 1321 n. 17 (9th Cir. 1995). |
| 56. | Geo Group did not refresh the OC training but only trained its employees when they moved to a supervisor level. | Decl. of Jeffery A. Schwartz ¶ 7, Ex. A [Schwartz Expert Report] at at 19 | Irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403.<br><br>Nevertheless, incomplete and misstates/mischaracterizes the evidence. FRE 403. Misleading. The evidence cited does not support this contention.<br><br>The declaration of Schwartz and his report are improper expert opinion based on speculation and lack of foundation. Lack of foundation/speculation. Fed. R. Evid. 602. Unreliable expert opinion. Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharms.*, Inc. 43 F.3d 1311, 1315, 1321 n. 17 (9th Cir. 1995).<br><br>Moreover, McCusker |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 29 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | explained that there are annual refresher courses that cover the same topics discussed during pre-service training, which includes GEO's use of force policy. *See* Aguado Decl. ISO Reply, Ex. "D" [McCusker Dep.] at 14; McCusker Decl. ¶¶ 3-4, 7-9; Ex. "A" [Campos Dep.] at 15. |
| 57. | GEO has had to retrain staff on count procedures and logbook entries a significant number of times. Retraining on count procedures is even more common than logbook entry procedures. | Ex. 10, McCusker Dep. 73:7-21 | Irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403. Nevertheless, misstates/mischaracterizes the evidence. FRE 403. The cited evidence does not support Plaintiffs' contention as McCusker stated that "count procedures" are significant, not the number of persons he has coached or retrained on count procedures. *See* Pls.' Ex. 10 [McCusker Dep.] 73:7-21. McCusker stated that he has delivered less than 10 face to face coaching sessions in the last two years and *one* involved coaching an individual on logbook entries. *See* Aguado Decl. ISO Reply, Ex. "D" [McCusker Dep.] at 71-72. |
| 58. | GEO has not made any changes to their general trainings even after needing to retrain individual staff following | Ex. 10, McCusker Dep. 80:2-7 | Irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403. |

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1

- 30 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | detainee grievances. | | |
| 59. | Lt. Diaz stated that a rebellion was occurring that warranted a major use of force under Geo Group's policy. | Ex. 16, Lt. Diaz Dep. 348:6-18 | Undisputed that Lt. Diaz stated that the incident constituted a rebellion or a riot. |
| 60. | Sgt. Campos never received any training on what a "rebellion" was, although he was aware that it appeared in the use of force policy documents. | Ex. 14, Sgt. Campos Dep. 81:17-82:2. | Irrelevant and immaterial to Defendants' Motion for Summary Judgment, as Campos was giving his *opinion* on his training. FRE 402, 403. Misstates/mischaracterizes the evidence. FRE 403. Plaintiffs omit that Campos later provided an explanation of the term rebellion. *See* Pls. Ex. 14 [Sgt. Campos Dep.] at 141:22-142:4. Additionally, while he was not trained on a precise definition, he was trained to recognize one. *See* Pls. Ex. 14 [Sgt. Campos Dep.] at 81:11-13. |
| 61. | There is no definition of the term "rebellion" in the GEO Use of Force Policy. | Ex. 13, Langill Dep. 60:10-12. | Undisputed. Irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403. |
| 62. | Sgt. Campos believed that when even a small group gave "no compliance", that was a rebellion. | Ex. 14, Sgt. Campos Dep. 141:22-142:3, 142:10-18. | Irrelevant and immaterial to Defendants' Motion for Summary Judgment, as Campos was giving his *opinion*. FRE 402, 403. |
| 63. | This definition of rebellion was consistent with the one given by Officer Reyes, who also said that a | Ex. 16, Reyes Dep. 166: 21-25; 167:1-6. | Irrelevant and immaterial to Defendants' Motion for Summary Judgment, as Reyes was giving his |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 31 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | rebellion was when "the detainees were just not wanting to comply." Reyes testified that the officers were not trained on the term rebellion. | | *opinion* on his training. FRE 402, 403.<br><br>Nevertheless, Plaintiffs misstates/mischaracterizes the evidence. FRE 403.<br><br>Plaintiffs' cited evidence does not demonstrate that Reyes opined on the size of the group. |
| 64. | The Warden gave the correct definition, on which the officers were not trained: that a large group of individuals would try to overtake an area of the institution; and explained that this was not a rebellion and there had not been any rebellions in the facility. | Ex. 11, Janecka Dep. 68:12-20. | Misstates/mischaracterizes the evidence. FRE 403. Improper opinion as to "the correct definition."<br>Plaintiffs' cited evidence demonstrates Janecka stated: "If you are referring to the emergency plan, it would be a major -- a large group of individuals that were there would rebel or try to maybe overtake an area of the institution. So no, there has not been any." |
| 65. | The record is unclear as to whether GEO employees receive in-service training on confrontation avoidance. | Ex. 10, McCusker Dep. 51:22-25. | Misstates/mischaracterizes the evidence. FRE 403. McCusker stated that GEO officers receive training on confrontation during pre-service as lesson module. Additionally, Plaintiffs' ignore Defendants' Exhibit "H" [GEO's Use of Force policy], page 5 of 17 which details "confrontation avoidance procedures." |
| 66. | Campos also reports not remembering the factors required to deploy OC spray. | Ex. 14, Sgt. Campos Dep. 145:9-22; 146:2-6. | Misstates/mischaracterizes the evidence. FRE 403.<br><br>The evidence demonstrates Campos recalled he could |

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | deploy OC spray in self-defense, to protect others, gain control. *See* Pls. Ex. 14 [Sgt. Campos Dep.] 145:9-22; 146:2-6. Additionally, Plaintiffs ignore that Sgt. Campos has not worked with GEO since 2017. *See* Campos Decl. ¶ 2. |
| 67. | Diaz reports inciting a group demonstration and non-compliance with verbal commands was sufficient cause to use OC spray. | Ex. 16, Lt. Diaz Dep. 224:3-20. | Incomplete. Misstates/mischaracterizes the evidence. FRE 403.<br><br>Plaintiffs omit that Lt. Diaz explained she deployed OC spray because the detainees were causing a major disturbance. *See* Diaz Decl. ¶¶ 21-25. |
| 68. | The record is unclear as to what extent GEO teaches the "Use-of-Force Continuum" to its officer. Sgt. Campos reports that he "do[es]n't remember the continuum." | Ex. 14, Sgt. Campos Dep. 145:2-7. | Misstates/mischaracterizes the evidence. FRE 403.<br><br>Sgt. Campos stated that he could not recall the term "continuum," but Plaintiffs ignore that Sgt. Campos has not worked with GEO since 2017. *See* Campos Decl. ¶ 2. Moreover, Plaintiffs ignore that while he could not recall the term "continuum," he recalled the requirements of the "continuum of force." *See* Pls.' Ex. 14 [Sgt. Campos] 141:1-21 ("Q Force is only used as a last resort; is that right? A Yes.").<br><br>Likewise, Lt. Diaz described the "continuum of force" step-by-step in her deposition which Plaintiffs conveniently omit. *See* Aguado Decl. ISO Reply, Ex. "B" [Lt. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1

- 33 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
|  |  |  | Diaz Dep.] at 210:1-20 ("A Yes. Because it's presence. Then it's verbal commands. They were not complying with verbal commands to rack up. Q And right now it sounds like you're going into the use-of-force continuum; is that correct? ... Q What happens after verbal commands? A After verbal commands, after several verbal commands, then we go into -- how would you say? The soft approach....").<br><br>The admissible evidence demonstrates, to the contrary, that GEO does adequately train its personnel on the use of force. *See* McCusker Decl. ¶¶ 7-9; Diaz Decl. ¶ 6; Doc. # 111-2[GEO and City Appendix of Exhibits], Ex. "H" [GEO's Use of Force policy]. |
| 69. | Once OC Spray is deployed "Anyone that is exposed directly to OC should, as soon as practicably possible be removed to fresh air and kept in an upright position until normal breathing returns." | Ex. H, [GEO's Use of Force Policy] at 10. | Undisputed. |
| 70. | Plaintiffs were left in a holding cells without a shower and with their contaminated clothing on as they were called one-by-one to come up to the holding cells door to have their vitals checked. | Ex. 21, Jones Dep. 153:7-23. | Misstates/mischaracterizes the evidence. FRE 403.<br><br>Plaintiffs' cited evidence *only* supports the contention that Nurse Jones saw the Plaintiffs while they were in a holding cell. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1                    - 34 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | Moreover, the evidence demonstrates all Plaintiffs were decontaminated (placed in showers to rinse off the OC spray with water) and provided new uniforms. Diaz Decl. ¶¶ 34-35; McCusker Decl. ¶ 9; Ex. "H" [GEO's Use of Force policy]; Ex. "N" [Cornejo Depo.] at 76:9-78:6, 78:25-79:2, 82:14-17; Ex. "O" [Campos Depo.] at 119:6-19, 129:16-23, 130:13-17; Ex. "P" [Castillo Depo.] at 104:18-105:9; Ex. "Q" [Mejia Depo.] at 86:18-22, 87:22-88:19, 90:2-8, 91:16-92:4, 96:24-97:14; Ex. "R" [Rodriguez Depo.] at 163:9-164:8 [estimated that a half an hour after the incident he was decontaminated and in a new uniform]; Ex. "S" [Garcia Depo.] at 48:15-25; Ex. "T" [Diaz Depo] at 86:12-22; Ex. "U" [Martinez Depo.] at 55:6-11; 58:2-5, 58:14-19, 104:6-18, 108:11-25. |
| 71. | GEO officers did not know the policy on decontamination and, as a result, Plaintiffs were left in their contaminated clothes for a prolonged period of time, at least three hours. Rather all eight plaintiffs were left soaking with OC Spray in a small holding cell. | Ex. 19, Juarez Dep. 30:2-6; Ex. 23, Castillo Dep. 101:16-20;102:5-21. | Misstates/mischaracterizes the evidence. FRE 403. Lacks foundation. Plaintiffs' cited evidence does not support this "fact."<br><br>The evidence demonstrates all Plaintiffs were decontaminated (placed in showers to rinse off the OC spray with water) and provided new uniforms. Diaz Decl. ¶¶ 34-35; |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 35 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | McCusker Decl. ¶ 9; Ex. "H" [GEO's Use of Force policy]; Ex. "N" [Cornejo Depo.] at 76:9-78:6, 78:25-79:2, 82:14-17; Ex. "O" [Campos Depo.] at 119:6-19, 129:16-23, 130:13-17; Ex. "P" [Castillo Depo.] at 104:18-105:9; Ex. "Q" [Mejia Depo.] at 86:18-22, 87:22-88:19, 90:2-8, 91:16-92:4, 96:24-97:14; Ex. "R" [Rodriguez Depo.] at 163:9-164:8 [estimated that a half an hour after the incident he was decontaminated and in a new uniform]; Ex. "S" [Garcia Depo.] at 48:15-25; Ex. "T" [Diaz Depo] at 86:12-22; Ex. "U" [Martinez Depo.] at 55:6-11; 58:2-5, 58:14-19, 104:6-18, 108:11-25. |
| 72. | All staff authorized to use OC spray receive training not only in its use, but also in the decontamination of individuals exposed to it. This training must be documented in the staff training record. | Ex. H, [GEO's Use of Force Policy] at 10. | Undisputed. |
| 73. | It would be within the GEO policy to have GEO staff take the detainees directly to shower themselves. | Ex. 16, Lt. Diaz Dep. 156:11-15. | Undisputed for purposes of this motion. |
| 74. | The manner in which Plaintiffs were decontaminated, i.e. fully clothed and with hot water, is not the accepted practice of OC spray decontamination. | Decl. of Homer Venters ¶ 4, Ex. A [Dr. Venters Expert Report] at 5; Ex. 16, Lt. Diaz Dep. 153:25-154:10, 154:21-155:11, 155:24-156:3, 158:3-13 | Undisputed that the officers placed some of the plaintiffs into showers for purposes of decontamination while the plaintiffs were fully clothed. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 36 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | (explaining that GEO officers are trained that hot showers will exacerbate OC spray pain and clothing with OC spray should be removed). | Vague and ambiguous as to "accepted practice." Plaintiffs cited evidence relies on speculation that the temperate of the water was "hot." The evidence demonstrates that some plaintiffs were placed in showers with cold water (*see* Aguado Decl. of ISO of Defs.' Reply, Ex. "E" [Juarez Dep.] at 44:2-6, 45:7-11) and that water, irrespective of the temperature of the water, may reactivate the tingling sensation from the spray. *See* Diaz Decl. ¶ 41. The declaration of Venters and his attached report rely on unreliable expert opinion. Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharms.*, Inc. 43 F.3d 1311, 1315, 1321 n. 17 (9th Cir. 1995). |
| 75. | After Plaintiffs were placed in segregation, GEO staff blocked telephone numbers that Plaintiffs regularly contacted, including attorneys, family, friends, and advocates. | Ex. 41, [Nicole Ramos Letters]; Ex. 42, [Lt. Belt Voicemail]; Ex. 27, Martinez Dep. 157:4-8, 158:2-159:3; Ex. 43, [Omar kites re. Blocks]; Ex. 44, [Omar recording re. Blocks]; Ex. 26, Diaz Dep. 93:24-95:5, 99:19-22; Ex. 23, Castillo Dep. 22:123:10, 112:23-113:19; Ex., 45 [List of blocked numbers for Plaintiff Lopez | Misstates/mischaracterizes the evidence. FRE 403. Lacks foundation. Speculation. Plaintiffs omit evidence they recently obtained from Talton communications that demonstrates Plaintiffs' calls were blocked for engaging in three-way calls and conversations that demonstrated safety concerns. (*See* Aguado Decl. ISO Reply, Ex. "J" |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 37 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | Castillo]; Ex. 25, Cornejo Dep. 94:4-11, 94:16-95:11, 97:2-6, 97:21-98:6, 99:11-13, 100:11-13. | [Phone Logs] at 1-4.). Plaintiffs also omit that during the time period that Plaintiffs claim their calls were blocked (after the June 12, 2017, strike), the evidence demonstrates they made *numerous* calls. (*Id.* at 5-41 [logs of Plaintiffs calls].)<br><br>Plaintiff Campos admitted that he had no issues contacting his attorney while in segregation, and stated that he only had an issue reaching his attorney for *one* day; yet, he never informed GEO of the alleged issue. *See* Defs.' Ex. "O" [Campos Depo.] 141:9-12, 142:15-18, 145:9-24, 146:13-17, 202:21-203:12, 204:1-11.<br><br>Plaintiff Garcia claimed that he was not permitted to contact his attorney after the incident; yet, he was permitted to visit with his attorney. After the visit, Plaintiff Garcia's attorney gave him a new number to call and he was able to contact his attorney. *See* Defs.' Ex. "S" [Garcia Depo.] at 58:6-59:23, 64:6-65:4.<br><br>Plaintiff Diaz stated that he had an issue contact his attorney; however, once his attorney spoke to GEO staff about the issue (since Diaz never raised the issue with GEO), the issue was resolved. *See* Defs.' Ex. |

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1

- 38 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | "T" [Diaz Depo] at 94:19-21, 99:19-22, 100:1-3.<br><br>Plaintiff Martinez claimed that GEO staff restricted his ability to contact his attorney and as soon as he raised the issue to GEO staff, the issue was resolved. *See* Defs.' Ex. "U" [Martinez Depo.] at 156:16-158:7, 158:14-159:3<br><br>Plaintiffs Cornejo and Castillo admitted that they did not have issues contacting their attorneys. *See* Defs.' Ex. "N" [Cornejo Depo.] at 94:4-95:11, 97:2-17 (stating he only had issues contacting his friend after the incident), 98:2-6, 100:1-4, 100:11-21; Ex. "P" [Castillo Depo.] 22:1-8 [permitted to make calls while in segregation to persons on his "approved call list"], 112:15-113:5. |
| 76. | The person at GEO who is in charge of monitoring calls for security threats is the security threat groups investigator, Mr. Barry Belt. He listens to the detainees' calls, which are recorded. | Ex. 9, Belt. Dep. 10:25-11:3; 21:8-9; 29:12-22; 21:8-9 ("Do you know how they monitor that?" "Yeah, I listen to the phone call.") | Undisputed for purposes of this motion. |
| 77. | Mr. Belt has the power to place blocks on numbers from his computer at the facility. His computer runs a program from third party phone provider Talton that shows each number and | Ex. 9, Belt Dep. 13:6-16; 14:15-18; 15:16-19; 16:21-17:1; 19:4-10; 34:16-18. | Misstates/mischaracterizes the evidence. FRE 403. Belt explained that he has to get approval before he can place a block on a phone number. *See* Pls. Ex. Ex. 9 [Belt Dep.] at 43-46. |

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | the call history. | | |
| 78. | Mr. Belt has the power to block a number if he determines it comprises a security threat to the facility or staff or detainees. | Ex. 9, Belt Dep. 16:12-15. | Misstates/mischaracterizes the evidence. FRE 403. Belt explained that he has to get approval before he can place a block on a phone number. *See* Pls. Ex. Ex. 9 [Belt Dep.] at 43-46. |
| 79. | Even an attorney can be blocked if GEO determines that the attorney "is complicit in the safety and security issues at the facility". | Ex. 9, Belt Dep. 30:5-13. | Misstates/mischaracterizes the evidence. FRE 403. Belt explained that Talton is aware of phone numbers related to attorneys and that he would have no way of knowing whether the detainee is contacting an attorney. *See* Pls. Ex. Ex. 9 [Belt Dep.] at 30:1-23. |
| 80. | If the detainees were coordinating a hunger strike, that would be grounds for blocking the numbers. | Ex. 9, Belt Dep. 39:8-22. | Undisputed for purposes of this motion. |
| 81. | Belt works directly for the facility administrator, Warden Janecka, who directs him whether or not to block numbers. He always sends his request to the Warden and waits for approval before blocking the number. | Ex. 9, Belt Dep. 39:8-22; 41:11-12; 43:7-24; 46:13-18; 48:25-49:4. | Undisputed for purposes of this motion. |
| 82. | Belt writes up the details of the calls he listens to that he finds relevant, including "the reasoning or the necessity for identifying the issues posed by the continued phone call", and gives that to the Warden to make the ultimate decision. | Ex. 9, Belt Dep. 44:7-14; 46:13-18. | Undisputed for purposes of this motion. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 40 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| 83. | GEO requested phone numbers to be blocked after Plaintiffs discussed the hunger strike and how they were subjected to excessive force with outside parties such as Nicole Ramos, one of the Plaintiffs' immigration attorneys and from advocacy organizations like CLUE (Clergy and Laity United for Economic Justice) and Pueblos Sin Fronteras. | Ex. 23, Castillo Dec. 6; Ex.41, [Nicole Ramos Letters]; Ex. 42, [Lt. Belt Voicemail]; Ex. 27, Martinez Dep. 157:4-8, 158:2-159:3; Ex. 43, [Omar kites re. Blocks]; Ex. 44, P [Omar recording]; Ex. 26, Diaz Dep. 93:24-95:5, 99:19-22; Ex. 23, Castillo Dep. 22:1-23:10, 112:23-113:19; Ex., 45, [List of blocked numbers (Castillo)]; Ex. 25, Cornejo Dep. 94:4-11, 94:16-95:11, 97:2-6, 97:21-98:6, 99:1113, 100:11-13 | Improper legal argument and conclusion. Argumentative. Misstates, mischaracterizes, and incomplete representation of the evidence. FRE 403. Lacks foundation. Speculation.<br><br>Irrelevant and immaterial to Defendants' Motion for Summary Judgment, as Plaintiffs were giving their opinion on whether the force was "excessive." FRE 402, 403.<br><br>Plaintiffs omit evidence they recently obtained from Talton communications that demonstrates Plaintiffs' calls were blocked for engaging in three-way calls and conversations that demonstrated safety concerns. (*See* Aguado Decl. ISO Reply, Ex. "J" [Phone Logs] at 1-4.). Plaintiffs also omit that during the time period that Plaintiffs claim their calls were blocked (after the June 12, 2017, strike), the evidence demonstrates they made *numerous* calls. (*Id.* at 5-41 [logs of Plaintiffs calls].)<br><br>Plaintiff Campos admitted that he had no issues contacting his attorney while in segregation, and stated that he only had an issue reaching his attorney for *one* day; yet, he never informed GEO of the |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1

- 41 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | alleged issue. *See* Defs.' Ex. "O" [Campos Depo.] 141:9-12, 142:15-18, 145:9-24, 146:13-17, 202:21-203:12, 204:1-11.<br><br>Plaintiff Garcia claimed that he was not permitted to contact his attorney after the incident; yet, he was permitted to visit with his attorney. After the visit, Plaintiff Garcia's attorney gave him a new number to call and he was able to contact his attorney. *See* Defs.' Ex. "S" [Garcia Depo.] at 58:6-59:23, 64:6-65:4.<br><br>Plaintiff Diaz stated that he had an issue contacting his attorney; however, once his attorney spoke to GEO staff about the issue (since Diaz never raised the issue with GEO), the issue was resolved. *See* Defs.' Ex. "T" [Diaz Depo] at 94:19-21, 99:19-22, 100:1-3.<br><br>Plaintiff Martinez claimed that GEO staff restricted his ability to contact his attorney and as soon as he raised the issue to GEO staff, the issue was resolved. *See* Defs.' Ex. "U" [Martinez Depo.] at 156:16-158:7, 158:14-159:3<br><br>Plaintiffs Cornejo and Castillo admitted that they did not have issues contacting their attorneys. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 42 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|-----|--------------------------|---------------------|-------------------|
|  |  |  | *See* Defs.' Ex. "N" [Cornejo Depo.] at 94:4-95:11, 97:2-17 (stating he only had issues contacting his friend after the incident), 98:2-6, 100:1-4, 100:11-21; Ex. "P" [Castillo Depo.] 22:1-8 [permitted to make calls while in segregation to persons on his "approved call list"], 112:15-113:5. |
| 84. | Plaintiff Castillo testified that he had problems contacting his mother, brother, and sister, as well as other individuals that were part of his support group because their phone numbers were blocked. Although Plaintiff Castillo was able to contact individuals on his approved call list while in segregation, once he was removed from segregation and was able to contact individuals outside of his approved list, those individuals' phone numbers were also blocked after he reported details about the use of force. | Ex. 23, Castillo Dep. 22:1- 23:10; 112:23-113:19; | Irrelevant and immaterial to Defendants' Motion for Summary Judgment, as Castillo was giving his *opinion* as to why his calls were blocked. FRE 402, 403. Not best evidence.<br><br>Castillo admitted that he did not have issues contacting his attorneys. *See* Ex. "P" [Castillo Depo.] 22:1-8 [permitted to make calls while in segregation to persons on his "approved call list"], 112:15-113:5.<br><br>Plaintiffs omit evidence they recently obtained from Talton communications that demonstrates Plaintiffs' calls were blocked for engaging in three-way calls and conversations that demonstrated safety concerns. (*See* Aguado Decl. ISO Reply, Ex. "J" [Phone Logs] at 1-4.). Plaintiffs also omit that during the time period that Plaintiffs claim their calls were blocked (after the June 12, 2017, strike), the |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1

- 43 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | evidence demonstrates they made *numerous* calls. (*Id.* at 5-41 [logs of Plaintiffs calls].) |
| 85. | Plaintiff Martinez also became unable to speak with his immigration attorney after Plaintiff Martinez told her what had happened and she filed a grievance about it. Her number was blocked and he could not call her. | Ex. 41, [Nicole Ramos Letters] | Irrelevant and immaterial to Defendants' Motion for Summary Judgment, as Nicole Ramos was giving her *opinion* as to why Plaintiff Martinez's calls were blocked. FRE 402, 403. Not best evidence.<br><br>Additionally, Plaintiff Martinez claimed that GEO staff restricted his ability to contact his attorney and as soon as he raised the issue to GEO staff, the issue was resolved. *See* Defs.' Ex. "U" [Martinez Depo.] at 156:16-158:7, 158:14-159:3 |
| 86. | Plaintiff Martinez testified that phone numbers for his attorney, ex-wife, and daughters were blocked. He submitted a grievance concerning the phone blocks, "but a long time passed before they unblocked the numbers" and not all phone numbers associated with people he communicated with were unblocked. | Ex. 27, Martinez Dep. 157:4-8, 158:2-159:3; Ex. 43, [Omar kites re. Blocks]; Ex. 44, [Omar recording re. Blocks] | Irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403. Not best evidence.<br><br>Additionally, Plaintiff Martinez claimed that GEO staff restricted his ability to contact his attorney and as soon as he raised the issue to GEO staff, the issue was resolved. *See* Defs.' Ex. "U" [Martinez Depo.] at 156:16-158:7, 158:14-159:3.<br><br>Plaintiffs omit evidence |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 44 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | they recently obtained from Talton communications that demonstrates Plaintiffs' calls were blocked for engaging in three-way calls and conversations that demonstrated safety concerns. (*See* Aguado Decl. ISO Reply, Ex. "J" [Phone Logs] at 1-4.). Plaintiffs also omit that during the time period that Plaintiffs claim their calls were blocked (after the June 12, 2017, strike), the evidence demonstrates they made *numerous* calls. (*Id.* at 5-41 [logs of Plaintiffs calls].) |
| 87. | Captain McCusker was Captain at the time of the hunger strike. | Ex. 10, McCusker Dep. 5:5-11 | Undisputed for purposes of this motion. |
| 88. | The Captain was a policymaker at the facility and reviewed documents generated as a result of the use of force; like the Warden, he also found the use of force was in policy. | Ex. 10, McCusker Dep. 40:4-18;44:10-19; Ex. B General Incident Report [GE02272]; Ex. E, After Action Review Report [GEO 02238] | Undisputed for purposes of this motion. |
| 89. | Captain McCusker assisted Lieutenant Diaz in completing the use of force reports. | Ex. 16, Lt. Diaz Dep. 106:1-4 | Undisputed for purposes of this motion. |
| 90. | Captain McCusker crossed off the notations on the use of force report that said the hunger strike in this case was not a disturbance. | Ex. 10, McCusker Dep. 44:4-19. | Irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403.

Incomplete and misstates/mischaracterizes the evidence. FRE 403. |

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES
LA #4838-0356-4206 v1
- 45 -
5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | Misleading. Plaintiffs' cited evidence refers to McCusker describing which box to check on an incident report when categorizing the report in its totality. *See* Pls. Ex. 10 [McCusker Dep.] 44-46 ("The incident in its totality can be just a use-of-force incident, such as this, with the detainees being pepper sprayed. If the term disturbance was going to be used, it very likely would be coined as a disturbance by the Facility Administrator before it was reported as a facility disturbance."). |
| 91. | If the video review had been done carefully, it would have been determined that the officers used excessive force. "[R]eview of video from this incident reveals several clear elements that indicate force was not required when it was used." | Decl. of Homer Venters ¶ 4, Ex. A [Dr. Venters Expert Report] at 4. | Improper legal argument and conclusion. Argumentative. Misstates, mischaracterizes, and incomplete representation of the evidence. FRE 403. The declaration of Venters and his attached report rely on unreliable expert opinion. Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharms.*, Inc. 43 F.3d 1311, 1315, 1321 n. 17 (9th Cir. 1995). |
| 92. | Officers had a practice of not accurately filling out use of force reports. Lt Diaz reports that she did not always file a use-of-force report after using OC spray. Campos stated that he felt his own report insufficiently detailed the | Ex. 16, Lt. Diaz Dep. 20:4-7. Sgt. Ex. 14, Sgt. Campos Dep. 153:12-20. | Irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403. Misstates, mischaracterizes, and incomplete representation |

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 46 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | events. | | of the evidence. FRE 403. Lacks foundation. |
| | | | Plaintiffs' cited evidence demonstrates that in an instance where Diaz attempted to use force but, ultimately, did not use force, she did not complete a use of force report. Instead, she emailed her supervisor. *See* Pls. Ex. 15 [Lt. Diaz Dep.] 20:12 ("Where I *attempted* to use pepper spray.")(emphasis added). |
| 93. | The City Manager had open communication with the Warden and if an issue came to the City Manager's attention the City Manager would speak with the Warden about it. The City Manager also was able to attend quarterly meetings at the Facility. | Hart Decl. ¶ 9. | Undisputed for purposes of this motion. |
| 94. | The City is entitled to perform periodic inspections. | Ex. M, at GEO 00661 (GEO and Adelanto MOU) | Undisputed for purposes of this motion. |
| 95. | Moreover, the city at all times had the ability to receive regular reports from GEO as to the facility and attend key GEO meetings. | Hart Dec1. 119. | Undisputed for purposes of this motion. |
| 96. | There have been so many hunger strikes at the Adelanto Facility that GEO's Person Most Knowledgeable could not "put a number on it." | Ex. 10, McCusker Dep. 76:10-25 | Irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403.\n\nMisstates, |

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|---|---|---|---|
| | | | mischaracterizes, and incomplete representation of the evidence. FRE 403. Plaintiffs cited evidence demonstrates that McCusker stated, "I couldn't put a number [on the hunger strikes. Many." Additionally, he stated they are "not routine, but it's not uncommon that a detainee will, as a lever to whatever end, say 'I'm going on a hunger strike.'" He explained that "in 12 months, [that] could happen maybe six times." |
| 97. | The City was aware of the Office of Inspector General Report that detailed serious problems at the Adelanto Detention Facility, | Ex. 12, Flores Dep. 47:6-17. | Irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403. Specifically, the Office of Inspector General Report that Plaintiffs reference was dated *after* the incident. |
| 98. | After the Inspector General Report the City did not look at the grievance log, the City lists no affirmative actions it took, only that City representatives met with the attorney general's office twice, but even then the meeting were designed to bring the issues to the City's attention--there was no discussion. | Ex. 12, Flores Dep. 47:6-20. | Irrelevant and immaterial to Defendants' Motion for Summary Judgment. FRE 402, 403. Specifically, the Office of Inspector General Report that Plaintiffs reference was dated *after* the incident. Misstates/mischaracterizes the cited evidence. FRE 403. |
| 99. | GEO would forward correspondence between GEO and ICE to the city. GEO personnel would also attend city council meetings. | Hart Decl. ¶ 11. | Undisputed for purposes of this motion. |

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 48 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|-----|--------------------------|---------------------|-------------------|
| 100. | During his tenure as Warden, Janecka did not recall a single inspection of the facility by the City of Adelanto. | Ex. 11, Janecka Dep. 107:24-108:2 | Undisputed for purposes of this motion. |
| 101. | As part of her duties as Compliance Administrator for GEO, Person Most Knowledgeable Joanne Langill conducts walk-throughs and coordinates audits at Adelanto Detention Facility | Ex. 13, Langill Dep. 10:24-11:6 | Undisputed for purposes of this motion. |
| 102. | During her tenure as Compliance Administrator, the City of Adelanto has never conducted an audit of the facility or contacted Ms. Langill. | Ex. 13, Langill Dep. 56:16-20; Id. at 57:11-14. | Undisputed for purposes of this motion. |
| 103. | According to the person most knowledgeable and current City Manager at Adelanto, there is no person in the City responsible for inspecting GEO's facility. | Ex. 12, Flores Dep. 15:15-20 (June 28, 2019). | Undisputed for purposes of this motion. |
| 104. | Adelanto did not review GEO's policies. As the PMK explained, "we contracted with GEO to maintain all documentations, policies, procedure and oversee the facility on behalf of the City." He added, "We relied on GEO to perform all . . . responsibilities on our behalf" and "we relied on GEO for-- to oversee the detention center". | Ex. 12, Flores Dep. 41:2- 22; 51:25-53:1. | Undisputed for purposes of this motion. |
| 105. | Sgt. Campos deployed his OC spray at Plaintiffs from | Ex. F, [Video, View C-3] at 06:46:37 a.m. | Misstates/mischaracterizes the cited evidence.  FRE |

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-0356-4206 v1

- 49 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS

| No. | PLAINTIFF'S STATED FACTS | EVIDENTIARY SUPPORT | DEFENDANTS' REPLY |
|-----|--------------------------|---------------------|-------------------|
| | very close range, less than five feet away. | to 6:47:03 a.m. | 403. Speculation.<br><br>Plaintiffs' assertions also contradict the video recording of the incident that is attached as Exhibit "F." See Scott v. Harris, 550 U.S. 372, 378–80 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."). |
| 106. | Sgt. Campos was not aware that spraying at three feet was out of policy and was trained that he could spray at three to five feet. | Ex. 14, Sgt. Campos Dep. 16:10-12; 20-22. | Misstates/mischaracterizes the cited evidence. FRE 403.<br><br>Plaintiffs' cited evidence demonstrates that Campos stated that *during his time in the military*, it was acceptable to deploy OC spray when he was 3-5 feet away. However, he could not recall the distance that he was trained by GEO. *See* Pls. Ex. 14 [Sgt. Campos Dep.] 16:4-15. Additionally, Plaintiffs ignore that Sgt. Campos has not worked with GEO since 2017. *See* Campos Decl. ¶ 2. |

///

///

///

///

Dated:  December 6, 2019

BURKE, WILLIAMS & SORENSEN, LLP


By: /s/ Carmen M. Aguado
      Susan E. Coleman
      Carmen M. Aguado

Attorneys for Defendants
THE GEO GROUP, INC., DIAZ,
CAMPOS and CITY OF ADELANTO

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-0356-4206 v1

- 51 -

5:18-CV-01125-SP
GEO AND CITY'S ADDITIONAL
RESPONSES TO STATEMENT OF FACTS