1  Susan E. Coleman (SBN 171832)
   E-mail:  scoleman@bwslaw.com
2  Carmen M. Aguado (SBN 291941)
   E-mail:  caguado@bwslaw.com
3  BURKE, WILLIAMS & SORENSEN, LLP
   444 South Flower Street, Suite 2400
4  Los Angeles, CA  90071-2953
   Tel: 213.236.0600      Fax:  213.236.2700
5
   Attorneys for Defendants
6  THE GEO GROUP, INC., CITY OF ADELANTO,
   CAMPOS, and DIAZ
7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  OMAR ARNOLDO RIVERA          Case No. 5:18-cv-01125-SP
    MARTINEZ; ISAAC ANTONIO
12  LOPEZ CASTILLO; JOSUE        **DEFENDANTS' SUPPLEMENTAL
    VLADIMIR CORTEZ DIAZ; JOSUE  BRIEF IN SUPPORT OF ITS
13  MATEO LEMUS CAMPOS;          MOTIONS FOR SUMMARY
    MARVIN JOSUE GRANDE          JUDGMENT [DOC. # 108, 111]**
14  RODRIGUEZ; ALEXANDER
    ANTONIO BURGOS MEJIA; LUIS
15  PEÑA GARCIA; JULIO CESAR     Magistrate
    BARAHONA CORNEJO, as         Judge:          Honorable Sheri Pym
16  individuals,

17              Plaintiffs,

18  v.

19  THE GEO GROUP, Inc., a Florida
    corporation; the CITY OF
20  ADELANTO, a municipal entity; GEO
    LIEUTENANT DIAZ, sued in her
21  individual capacity;   GEO
    SERGEANT CAMPOS, sued in his
22  individual capacity; SARAH JONES,
    sued in her individual capacity; THE
23  UNITED STATES OF AMERICA;
    CORRECT CARE SOLUTIONS,
24  INC.; and DOES 1-10, individuals,

25              Defendants.

26  ///

27  ///

28  ///

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

The evidence and relevant legal authority confirm that GEO and its employees, Defendants Diaz and Campos, were performing the functions of a <u>federal</u> and not a state actor at the time of the incident. Thus, as demonstrated in the moving papers and reply briefs, pursuant to *Minneci v. Pollard*, 565 U.S. 118 (2012), GEO, Diaz, and Campos cannot be liable under either Section 1983 (because they were not state actors at the time of the incident) or *Bivens* (because they are private entities) for any constitutional claims.[1]

## II. ARGUMENT.

At the hearing on Defendants' motions for summary judgment, Plaintiffs argued that GEO, Diaz, and Campos were performing the functions of the City at the time of the incident and, thus, they are subject to liability under Section 1983. To support their argument, Plaintiffs relied on unavailing evidence and arguments that were previously addressed in the moving papers, oppositions, and reply briefs: the agreement between GEO and the City, and the cases cited in their Oppositions.[2] They also, for the first time, argued that the following supported their argument: (1) the motion to dismiss that was filed by Defendant United States of America ("USA") (Doc. 52; *see also* Doc. 70 [Order] (analyzing Plaintiffs' Civil Code section 52.1 claim)); (2) a case that is currently before Judge Jesus G. Bernal, *Novoa v. GEO Group, Inc.*, which involves GEO and the same facility at issue here; and (3) a district court case from Rhode Island, *Lacedra v. Donald W. Wyatt Detention Facility*. However, Plaintiffs' arguments are *still* unavailing, and their new evidence and legal authority do not support their contention, as shown below.

---

[1] As stated at the hearing on Defendants' motions for summary judgment, Plaintiffs can nevertheless still pursue state law claims against GEO, Diaz, and Campos. Thus, summarily adjudicating Plaintiffs' section 1983 claims does not deprive Plaintiffs of a remedy for their alleged injuries.
[2] Defendants refer the Court to their reply papers, which demonstrate the cases cited by Plaintiffs in their oppositions do not support their argument. (Docs. 132, 133.)

### A. **GEO, Diaz, And Campos Were Performing The Functions Of A Federal Actor At The Time Of The Incident.**

The relevant agreements that govern GEO's operations at the Facility, and the motion to dismiss that was filed by the USA, demonstrate that GEO, Diaz, and Campos are not state actors or subject to liability under Section 1983.

As detailed in the motion to dismiss filed by the USA, "Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations ("ICE/ERO") at the [Facility] in Adelanto, California [] is responsible for managing the immigration cases of detained individuals." (Doc. 52 at 2:14-17.) "In addition, ICE/ERO has a secondary responsibility to observe, identify, and notify contractors and sub-contractors at [the Facility] of any perceived deficiencies in adherence to their responsibility under Performance-Based National Detention Standards[3] 2011 (PBNDS 2011 or PBNDS)." (*Id.* at 17-22.) The PBNDS/detention standards are consistent with federal legal and regulatory requirements and dictate the standards GEO is required to follow at the Facility with respect to Facility Security and Control, among other things. *See* https://www.ice.gov/detention-standards/2011; *see also* Doc. 108-5 [McCusker Decl.] at ¶ 6. Detainees at the Facility ***are under the authority of ICE***. (Doc. 52 at 2:23-26 (emphasis added).)

ICE acquires detention services through Intergovernmental Service Agreements (IGSAs).[4] (Doc. 52 at 2:27-3:5.) Here, the Facility is operated under

---

[3] As explained on ICE's official website, the Performance-Based National Detention Standards ("PBNDS") are standards that are maintained/revised by ICE which are implemented at detention facilities that house immigrant detainees. *See* Official Website of the Department of Homeland Security, 2011 Operations Manual ICE Performance-Based National Detention Standards *available at* https://www.ice.gov/detention-standards/2011; *see also* Fed. R. Evid. 201 (demonstrating the Court can take judicial notice of facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned). ***In other words, the conditions of the Facility fall under the jurisdiction of ICE as they are governed by the PBNDS,*** and *not* Title 24 (the minimum standards for local detention facilities) or Title 15 (for state and local correctional facilities).

[4] "ICE's unique IGSA authority is codified at 8 U.S.C. § 1103(a)(11)(A), which provides that ICE may enter into agreements with a state or subdivision thereof to

1   an IGSA between ICE and an independent contractor, the City. (*See* Doc. 52-1
2   [Valdez Decl.] at ¶ 7, Ex. 1.) The IGSA's purpose is for the City to provide,
3   "detention and care of persons detained ***under the authority of the Immigration***
4   ***and Nationality Act***." (*See id*. at ¶ 7, Ex. 1, Article I.A (emphasis added).) The
5   IGSA is a performance-based contract, which is a results-oriented method of
6   contracting focused on outputs, quality, and outcomes. (*See id*. at ¶ 8.)
7   Performance-based contracts do not designate how a contractor is to perform the
8   work, but rather establish the expected outcomes and results. (*Id*.) It is then the
9   responsibility of the contractor *as to how to meet the government's expectations*.
10  (*Id*.) The City owns the Facility, and GEO entered into a service agreement with the
11  City wherein GEO assumed and agreed without limitation to perform the City's
12  obligations and responsibilities as set forth in the IGSA – *i.e*., the City's
13  responsibility to meet the federal government's expectations that are detailed in the
14  PBNDS. (*See id*. at ¶¶ 10, 12, 13, Exs. 1, Article II(D), 2, § 2.0.)

15        The evidence demonstrates that GEO, through its contract with the City, was
16  performing the functions of a federal actor (DHS/ICE) at the Facility, a federal
17  detention center under the jurisdiction of DHS/ICE, and its operations and
18  management of the Facility fall under the federal standards promulgated by ICE. In
19  other words, there is no evidence that this facility is operated as a State or City
20  facility. Further, there are ICE employees at the Facility, to monitor that operations
21  are conducted in compliance with federal regulations. (*See* Doc. 52.)

22      **B.**    <u>*Novoa* Does Not Support Plaintiffs' Contention.</u>

23        Plaintiffs' reference to *Novoa v. GEO Group, Inc*., a putative class action
24  case against GEO that involves the wages for immigrant detainees at the Facility
25  from 2012 to 2015, establishes that GEO, Diaz, and Campos can only be liable

---

procure, 'necessary clothing, medical care, necessary guard hire, and the housing, care, and security of persons detained by [ICE] pursuant to Federal law . . . .'." (Doc. 52 at 3:6-9.) The motion to dismiss filed by the USA includes a copy of the IGSA and its appendix. (Doc. 52-2.)

under state law (*e.g.* state law tort claims). Specifically, *Novoa* does not involve a single Section 1983 claim as it relates to wage claims. *See Novoa v. GEO Group, Inc.*, EDCV172514JGBSHKX, 2018 WL 3343494 (C.D. Cal. June 21, 2018). Nevertheless, Judge Bernal analyzed whether the plaintiffs could bring state law claims and held, in pertinent part, that the Facility was federally run. *Id.* at 10. Judge Bernal then held that *Malesko* and *Minecci* govern the plaintiffs' claims.[5] In other words, <u>Judge Bernal applied the same analysis as Defendants herein and determined that *Malesko* and *Minecci* are controlling authority</u> in analyzing claims against GEO brought by immigrant detainees at the Facility. Inherent in his determination is the conclusion that GEO and its employees are federal actors.

### C. *Lacedra* Similarly Does Not Support Plaintiffs' Argument.

To support their argument, Plaintiffs cite *Lacedra v. Donald W. Wyatt Detention Facility,* 334 F. Supp. 2d 114 (D.R.I. 2004), a district court case from Rhode Island that is factually inapposite. *Lacedra* involved a plaintiff that was a US resident held at a facility operated by a private corporation pending his criminal trial. *Id*. at 120. The court followed "*Malesko* and conclude[ed] [the plaintiff was] unable to maintain a *Bivens* cause of action against the private, corporate [defendants]." *Id*. at 138. The court also held the plaintiff had a claim under Section

---

[5] Judge Bernal provided the following detailed analysis: "[T]he Supreme Court has held that state law remedies are available to inmates in federal prisons run by private corporations. In [*Malesko*], the Supreme Court denied a prisoner's Eighth Amendment-based suit against a private corporation managing a federal prison. In doing so, the Supreme Court determined that a *Bivens* action was unnecessary given the prisoner's ability to bring state tort actions against the private defendants. [Citation omitted.] Later in [*Minecci*] the Supreme Court reiterated the alternate remedies available to prisoners in federally run facilities and privately run facilities, noting that ordinarily prisoners 'cannot bring state-law tort actions against employees of the Federal Government ... But prisoners ordinarily can bring state-law tort actions against employees of a private firm.'… **Although [the plaintiff] does not seek to bring a constitutional claim against [the defendant], these cases stand for the proposition that** *persons confined in privately run federal facilities can bring causes of action under state law against the private entity*. Hence, … the Court concludes causes of action under the CTVPA are available to *federal immigration detainees in privately-run facilities*." *See id.* at 10.

1983 because the private corporation acted under state law in performing traditional functions of a prison, given that the prison was under the jurisdiction of the state and the officials that "committed the alleged constitutional violations derived their authority over Plaintiff from state rather than federal law." *Id*. at 140-141.

Here, the Facility is *not* a state run prison operating under the authority of state law, such as the GEO-operated Desert View MCCF that is located adjacent to the Adelanto ICE Processing Facility but houses state prisoners subject to CDCR authority instead of federal detainees subject to ICE authority. Thus, factually, *Lacedra* is inapposite. However, it is significant that in reaching the determination that Section 1983 was applicable to a privately run facility holding state prisoners, the *Lacedra* court analyzed where the defendant officials derived their authority. *Id*. at 140-141. Applying the same analysis here demonstrates GEO and its employees derive their authority at Adelanto from federal law. Consequently, Section 1983 is inapplicable as they are federal actors.[6] Only state law remedies are available.

## IV. CONCLUSION.

The evidence, legal authority, and Judge Bernal's ruling in *Novoa*, all confirm that GEO, Campos, and Diaz were federal actors at the time of the incident and, as a result, Plaintiffs' Section 1983 claims must be summarily adjudicated.

Dated: December 20, 2019

BURKE, WILLIAMS & SORENSEN, LLP

By: */s/ Susan E. Coleman*
Susan E. Coleman
Carmen M. Aguado

Attorneys for Defendants
GEO, ADELANTO, CAMPOS, DIAZ

---

[6] *Bromfield v. McBurney*, C07-5226RBL-KLS, 2008 WL 2746289, at *1 (W.D. Wash. July 8, 2008), which declined to follow *Lacedra* for other reasons, held that GEO and its employees were federal actors when operating a federal immigration detention facility. *Id*. at *5 ("The undersigned, accordingly, must determine whether the actions of the GEO defendants can be viewed as those of federal officers, that is, as actions which are sufficiently attributable to federal actors [while at a federal immigration detention center]. The undersigned finds that they are.")