Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
Carmen M. Aguado (SBN 291941)
E-mail: caguado@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA  90071-2953
Tel: 213.236.0600     Fax: 213.236.2700

Attorneys for Defendants
THE GEO GROUP, INC., CAMPOS, and DIAZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR ARNOLDO RIVERA MARTINEZ; ISAAC ANTONIO LOPEZ CASTILLO; JOSUE VLADIMIR CORTEZ DIAZ; JOSUE MATEO LEMUS CAMPOS; MARVIN JOSUE GRANDE RODRIGUEZ; ALEXANDER ANTONIO BURGOS MEJIA; LUIS PEÑA GARCIA; JULIO CESAR BARAHONA CORNEJO, as individuals,<br><br>Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, Inc., a Florida corporation; GEO LIEUTENANT DIAZ, sued in her individual capacity; GEO SERGEANT CAMPOS, sued in his individual capacity,<br><br>Defendants. | Case No. 5:18-cv-01125-SP<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF ALLEGED OTHER BAD ACTS OF DEFENDANTS**<br><br>Pretrial Conference: January 21, 2020<br>Time: 10:00 a.m.<br>Courtroom: 3<br>Judge: Hon. Sheri Pym |

Defendants THE GEO GROUP, INC. ("GEO"), Diaz, and Campos (collectively, "Defendants") hereby reply to Plaintiffs' Opposition (Doc. #173) to Defendants' Motion in Limine No. 1 to exclude Plaintiffs from introducing evidence or arguments of any alleged other bad acts of Defendants (Doc. # 151).

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4845-0587-9473 v1
1/9/20

- 1 -

5:18-CV-01125-SP
MIL #1: BAD ACTS

# I. INTRODUCTION.

Plaintiffs argue that evidence of unrelated other bad acts is admissible because this evidence is relevant to Plaintiffs' third claim for negligent training and supervision as it establishes GEO was on notice of its negligent conduct. As demonstrated below, Plaintiffs' arguments are unavailing and should be denied.

# II. EVIDENCE OF PROTESTS ARE NOT RELEVANT TO THE JURY'S ANALYSIS OF PLAINTIFF'S THIRD CLAIM FOR FAILURE TO SUPERVISE/TRAIN.

Plaintiffs third claim for negligent training and supervision relies on Plaintiffs' allegations that GEO negligently trained and supervised its employees Diaz and Campos about (1) its use of force policy, especially in terms of when and how pepper spray can be used; and (2) the temperature of water that should be used during a pepper spray decontamination. (*See* Doc. # 160 [Order on Defs.' Mot. for Summ. J.] at 61.).

### A. The Applicable Standard For Plaintiffs' Third Claim.

"California case law recognizes the theory that an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee." *Doe v. Capital Cities*, 50 Cal.App.4th 1038, 1054 (1996). However, an employer is not liable merely because its employee is incompetent, vicious or careless. A duty of care arises only when the risk of harm by the employee was reasonably foreseeable, that is, only when the ***employer knows or should know of the risk that employee poses***. *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1208 (E.D. Cal. 2009) ("Liability for negligent hiring/retention occurs when the employer knew or should have known that hiring or retaining the employee created a particular risk or hazard and that particular harm materializes."); CACI No. 426. Here, evidence of protests "against mistreatment of detainees" does not prove any element of Plaintiffs' third claim and, thus, is irrelevant and has no probative value.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4845-0587-9473 v1
1/9/20

- 2 -

5:18-CV-01125-SP
MIL #1: BAD ACTS

There is no evidence that any protests were directed to Diaz and Campos in particular, or even a lack of training/supervision generally. More likely, the protests concerned ICE policies to separate children from their parents at the border, a policy that is unpopular but wholly unrelated to the instant case. Even if the protests concerned a relevant issue, there is no evidence they were based on correct information that would legally put the facility on notice of deficiencies.

### B. The Case Law Cited By Plaintiffs Does Not Support Their Argument.

To support their argument that evidence of protests related to the alleged mistreatment of detainees or the "serious issues the Facility that civil society found unacceptable" (absent any specification as to what the "serious issues" were that formed the basis of the protests) would have put GEO on notice of the particular risk at issue here – that GEO's failure to train Campos and Diaz would result in the use of force in violation of detainees' state law rights – Plaintiff's cite *Flores v. Gain Capital Group*, LLC, CV 17-7873-DMG (EX), 2018 WL 6133644, at *7 (C.D. Cal. June 20, 2018) and *Cuviello v. Feld Ent.*, Inc., 13-CV-03135-LHK, 2014 WL 1379849, at *5 (N.D. Cal. Apr. 7, 2014). However, these cases are inapposite.

In *Flores*, the plaintiff opened several trading accounts with the defendant, Gain Capital Group, Inc., and kept his investments with the company for over four years. *Flores*, 2018 WL 6133644, at *2. "In 2009, the Business Conduct Committee of the National Futures Association ("NFA") allegedly charged and disciplined Gain in connection with Gain's failure to prevent the dissemination of materially misleading information, failure to establish and implement an adequate anti-money laundering program, and improper leverage and margin practices that harmed its customers." *Id*. "On November 4, 2016, a Gain employee told Flores that it is likely that any account funded with less than $500,000 dollars will lose money." *Id*. The plaintiff brought a cause of action against Gain for "failure to supervise" due to both (1) Gain's failure to diligently oversee plaintiff's accounts, and (2) the lack of

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4845-0587-9473 v1
1/9/20

- 3 -

5:18-CV-01125-SP
MIL #1: BAD ACTS

individuals who "bothered to perform their fiduciary dut[ies]" once plaintiff opened his live accounts. *Id.* at 7. Gain brought a motion to dismiss on the basis that the plaintiff failed to sufficiently plead his claim and the court *granted* the motion as to the claim for failure to supervise. *Id.* The court held that the plaintiff must "allege that Gain was on notice that its employees needed supervision" and the allegation that "the NFA sanctioned Gain for misconduct in 2009" was insufficient to make this showing because "such discipline likely would give the requisite notice if the wrongdoing that led to the NFA's discipline was undertaken by Gain employees" *Id.* "The allegations suggest, however, that the problem lay with Gain's upper management, not employees who need supervision." In other words, the evidence that is proffered to have put the defendant on notice that its employees needed supervision <u>must directly relate</u> to the claimed failure to supervise.

The court in *Cuviello* likewise dismissed the plaintiff's claim for negligent supervision on the basis that the plaintiff did not allege the defendant had reason to "believe that its employees were unfit or incompetent at the time they were hired." *Cuviello*, 2014 WL 1379849, at *5. Rather, the plaintiff alleged that the defendant was liable for negligent supervision because the defendant was aware that he had filed a prior lawsuit alleging violation of his rights. *Id.* However, the plaintiff failed to allege additional facts to show how his "prior lawsuit, by itself, sufficed to put [the defendant] on notice that [its] employees were 'incompetent,' 'unfit,' or 'could not be trusted to act properly without being supervised.'" *Id.* Similar to *Flores*, the *Cuviello* court required the plaintiff to put forth specific allegations that directly relate to the claimed failure to supervise.

Here, Plaintiffs have failed to provide any legal authority that demonstrates evidence of protests related to the alleged general mistreatment of detainees would have put GEO on notice that Diaz and Campos required supervision or training related to when they can deploy OC spray and the temperature of water that should be used during OC spray decontamination. Thus, this evidence is completely irrelevant.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4845-0587-9473 v1
1/9/20

- 4 -

5:18-CV-01125-SP
MIL #1: BAD ACTS

### C. Evidence Of Protests Relies On Hearsay And Lacks Any Probative Value.

Evidence that there were protests at the Facility is not only irrelevant but it is also inadmissible hearsay. Namely, even if Plaintiffs admit evidence that protesters made statements that Campos and Diaz required supervision or training related to when they can deploy OC spray and the temperature of water that should be used during OC spray decontamination (which is extremely unlikely and has not been proffered), these statements would nevertheless be inadmissible because they are offered to prove the truth of the matter asserted.

Moreover, even if the Court were to find evidence of protests is relevant to this case, it must still be excluded under Rule 403 of the Federal Rules of Evidence as unduly prejudicial. Rule 403 specifically provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Applying the principles of Rule 403 here, the Court should conclude evidence of protests at the Facility is more prejudicial than probative because the statements made at the protests are inaccurate, and based on hearsay and speculation. Moreover, evidence of protests will confuse the issues, mislead the jury, cause undue delay, and waste time because the protests need to be explained and protesters may need to testify about the basis for their complaints. Evidence that mistreatment of detainees was the subject of a protests alone is likely to suggest to the jury that Plaintiffs' claims have merit.

Therefore, evidence regarding protests that relate to alleged other bad acts of defendants should not be admitted – or discussed - at the time of trial.

///

///

///

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4845-0587-9473 v1
1/9/20

- 5 -

5:18-CV-01125-SP
MIL #1: BAD ACTS

### III. DOCUMENTS AND EVIDENCE RELATED TO GEO'S EMPLOYEES' PERSONNEL FILES SHOULD BE EXCLUDED.

Plaintiffs argue that evidence of other bad acts documented within the personnel files of GEO's employees, including Diaz and Reyes, is admissible under Federal Rules of Evidence, Rule 404(b) because Plaintiffs intend to rely on this evidence, not to demonstrate character, but for the non-character purpose of demonstrating GEO negligently trained and supervised its employees (Plaintiffs' third claim). (*See* Doc. # 173 at 3:26-4:1; 5:2-5.) Plaintiffs' arguments are unavailing.

Specifically, the case law cited by Plaintiffs does not support their argument as none of the cited cases relate to claims for negligent supervision or training. For example, in *Duran v. City of Maywood*, 221 F.3d 1127, 1132–33 (9th Cir. 2000), the court *excluded* evidence of another shooting by the defendant officer that was three days after the shooting at issue, despite the two shootings having "troubling" similarities because the evidence was "marginally probative"; thus, "substantially outweighed by the danger of unfair prejudice." Additionally, the court found that to admit the evidence of the other bad act would require a "full-blown trial within [the subject] trial" which would lead to confusion of the issues, or misleading the jury, or by consideration of undue delay, and waste of time. *Id.*

Additionally, *Burke v. City of Santa Monica*, CV0902259MMMPLAX, 2011 WL 13213593, at *15 (C.D. Cal. Jan. 10, 2011) (unreported) relates to other bad acts that occurred *before* the incident that was at issue. In *Burke*, the plaintiff offered evidence of the officers' prior taser deployments to prove the officers' intent to discriminate again him on the basis of race. *Id.* at 15. The court permitted the evidence because "evidence that the officers deployed their tasers against African–Americans at a rate that is disproportionate to their presence in the population has some tendency to make plaintiff's assertion that the officers intended to discriminate against him on the basis of race more likely." *Id.* at 17.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4845-0587-9473 v1
1/9/20

- 6 -

5:18-CV-01125-SP
MIL #1: BAD ACTS

Here, Plaintiffs failed to demonstrate that the other bad acts within the personnel files of GEO's employees, including the incidents that led to the terminations of Diaz and Reyes, are similar to the incident at issue. Even if they had, as demonstrated in *Duran,* a finding that the incidents are similar does not end the analysis. Instead, the court should properly exclude the evidence because it is marginally probative in relation to the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, and waste of time. Here, the other bad acts occurred AFTER the subject incident, so they cannot provide GEO with notice of a failure to supervise or train.

Additionally, Plaintiffs have narrowed their third claim to negligent training and supervision of Campos and Diaz. Thus, even if the Court found that other bad acts within Diaz's personnel file were relevant and probative, any other officers' personnel files are nevertheless irrelevant.

Also, evidence of other bad acts that occurred *after* the incident is not probative of the training and supervision at the time of the incident – which is the issue. Plaintiffs fail to provide any legal authority that demonstrates otherwise.

Finally, the "intent" of Diaz and Campos is not at issue in Plaintiffs' third claim. The issue is whether GEO adequately trained and supervised them.

## IV. FRE 608 DOES NOT PERMIT PLAINTIFFS' TO INTRODUCE EVIDENCE OF DIAZ'S PERSONNEL RECORDS.

Per FRE 608(b)(1), the credibility of a witness can be attacked on cross-examination by questioning concerning specific instances where the court finds that the specific instances is probative of the witness' character for untruthfulness. However, the court must still determine whether the particular instance is probative of character for untruthfulness and whether under Rule 403 the probative value of the question and answer upon the credibility of the witness is substantially outweighed by the danger of unfair prejudice. Particular instances of conduct

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4845-0587-9473 v1
1/9/20

- 7 -

5:18-CV-01125-SP
MIL #1: BAD ACTS

satisfying this standard will normally involve a dishonest act or false statement as employed in FRE 609(a)(2).

Here, there is no evidence within Diaz's personnel file that involves a dishonest act or false statement. While Plaintiffs state that Diaz obstructed an investigation by not providing complete information - based on the opinion of the investigator - this does not demonstrate that Diaz provided a false statement. Even assuming that she had provided a false statement, which there is no evidence of, the court must nevertheless find that the probative value is outweighed by the danger of unfair prejudice. Given that the incident occurred two years after the subject incident in this case, and since Diaz did not use force in this case, it should be excluded.

V. **PLAINTIFFS' CASE LAW DOES NOT SUPPORT THE CONTENTION THAT PERSONNEL FILES CAN BE USED FOR IMPEACHMENT.**

Plaintiffs cite *M.R. v. City of Azusa*, CV131510DMGVBKX, 2014 WL 12839737, at *5–6 (C.D. Cal. Oct. 1, 2014) to support the proposition that they can use evidence from GEO's employees' personnel files for impeachment. However, Plaintiffs interpretation of *M.R.* is erroneous.

In *M.R.*, the plaintiffs did <u>not</u> oppose the defendants' request to exclude officer personnel file records and related information. *Id*. In dicta, the court stated that "[the plaintiffs] may use evidence from [the officer's] personnel records, however, for impeachment purposes on cross-examination ***provided they can overcome Defendants' hearsay objections and such evidence is not unfairly prejudicial***. See Fed. R. Evid. 608(b)." *Id.* Thus, the court never flatly held that personnel records are admissible for purposes of impeachment.

Here, the personnel records should be excluded as unduly prejudicial and not sufficiently probative, given that the incidents Plaintiffs seek to use are subsequent.

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4845-0587-9473 v1
1/9/20

- 8 -

5:18-CV-01125-SP
MIL #1: BAD ACTS

## VI. THE OIG REPORT IS INADMISSIBLE AND SHOULD BE EXCLUDED.

Plaintiffs argue that the OIG report is necessary to "rehab plaintiffs if defense counsel attempts to demonstrate the conditions that they faced which inspired their hunger strike." However, the "inspiration" for Plaintiffs' strike is not relevant to any of Plaintiffs' claims. It does not matter whether the water was potable, if the food was tasty, or if their bail amounts were high. Getting into the underlying reasons for Plaintiffs' strike would create a trial within a trial, and confuse the jury. It would also be an undue consumption of time. Fed. R. Evid. 403.

Moreover, the OIG report relies on speculation, hearsay, and would require testimony from the OIG investigators – or the persons that they interviewed - who encountered the alleged issues at the Facility, so that they could be cross-examined. Admission of the report, or any portions thereof, would be unduly prejudicial and only minimally probative. Fed. R. Evid. 403.

## VII. CONCLUSION.

For the foregoing reasons, Defendants respectfully requests that this Court grant Defendants' Motion in Limine No. 1 to exclude evidence or arguments of any alleged other bad acts of Defendants, including but not limited to:

(1) protests that stem from the belief that immigrant detainees are mistreated at the Facility;

(2) complaints and/or lawsuits made against Defendants related to other incidents, including adverse actions and complaints within GEO employees' personnel files; and

(3) investigations or matters regarding/related to other incidents of alleged mistreatment of immigrant detainees that purport to document rule violations or sanctions against Defendants, including but not limited to (a) the 2018 report prepared by OIG and (b) internal investigations/reports completed by GEO related to their former and current employees failing to comply with policies and

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4845-0587-9473 v1
1/9/20

- 9 -

5:18-CV-01125-SP
MIL #1: BAD ACTS

1 | procedures during unrelated incidents that are within GEO's employees' personnel
2 | files.

3 | Dated: January 14, 2020            BURKE, WILLIAMS & SORENSEN, LLP

5 | By: /s/ Carmen M. Aguado
6 |     Susan E. Coleman
    Carmen M. Aguado

7 | Attorneys for Defendants
THE GEO GROUP, INC.,
8 | CAMPOS, and DIAZ

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4845-0587-9473 v1
1/9/20

- 10 -

5:18-CV-01125-SP
MIL #1: BAD ACTS