Susan E. Coleman (SBN 171832)
E-mail:  scoleman@bwslaw.com
Carmen M. Aguado (SBN 291941)
E-mail:  caguado@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA  90071-2953
Tel:  213.236.0600       Fax:  213.236.2700

Attorneys for Defendants
THE GEO GROUP, INC., CAMPOS, and DIAZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

OMAR ARNOLDO RIVERA MARTINEZ; ISAAC ANTONIO LOPEZ CASTILLO; JOSUE VLADIMIR CORTEZ DIAZ; JOSUE MATEO LEMUS CAMPOS; MARVIN JOSUE GRANDE RODRIGUEZ; ALEXANDER ANTONIO BURGOS MEJIA; LUIS PEÑA GARCIA; JULIO CESAR BARAHONA CORNEJO, as individuals,

        Plaintiffs,

v.

THE GEO GROUP, Inc., a Florida corporation; the CITY OF ADELANTO, a municipal entity; GEO LIEUTENANT DIAZ, sued in her individual capacity;   GEO SERGEANT CAMPOS, sued in his individual capacity; SARAH JONES, sued in her individual capacity; THE UNITED STATES OF AMERICA; CORRECT CARE SOLUTIONS, INC.; and DOES 1-10, individuals,

        Defendants.

Case No. 5:18-cv-01125-SP

**DEFENDANTS THE GEO GROUP, INC., CAMPOS, AND DIAZ MEMORANDA OF CONTENTIONS OF FACT AND LAW**

Pretrial Conference
Date:       January 21, 2020
Time:       10:00 a.m.

Trial date: February 3, 2020
Time:       9:00 a.m.

Magistrate
Judge:                  Honorable Sheri Pym

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4841-7856-4016 v1
1/13/20

- 1 -

5:18-CV-01125-SP
DEFTS. MEMO OF CONTENTIONS

1    TO THE HONORABLE COURT, PLAINTIFFS, AND THEIR

2    ATTORNEYS OF RECORD:

3    Pursuant to Local Rule 16-4 and this Court's scheduling order (Doc. # 99),

4    Defendants THE GEO GROUP, INC. ("GEO"), CAMPOS, and DIAZ

5    ("Defendants") hereby submit their Memoranda of Contentions of Fact and Law.

6    **I.    INTRODUCTION**

7    On June 12, 2017, Plaintiffs (eight (8) civil detainees who were detained at

8    the Facility) engaged in what they believe was the start of a hunger strike (however,

9    it is unclear whether any GEO personnel understood their intent) in the dayroom of

10   their dorm. Plaintiffs chose to participate in the strike during a critical period of

11   time at the Facility that required all detainees to be at their bunks (count). If count is

12   not completed within a specified time period, the entire Facility is placed in an

13   emergency state. Despite numerous commands to return to their bunks, and

14   warnings that OC spray may be used to compel their compliance, Plaintiffs refused

15   to listen and instead remained in the dayroom to bring attention to their gripes.

16   Their noncompliance not only caused a major disruption in the dorm, but it

17   threatened to disrupt the entire Facility as they were delaying count. As a result of

18   their noncompliance and the major disturbance that resulted from their conduct,

19   employees of GEO, Lt. Diaz and Sgt. Campos, deployed short bursts of OC spray

20   (3 in total).

21   **II.   CLAIMS AND DEFENSES.**

22   Plaintiffs' claims are as follows:

23   Claim 1: Defendants Campos and Diaz battered Plaintiffs during the incident,

24   and GEO is vicariously liable for the alleged battery.

25   Claim 2: Defendants Campos and Diaz assaulted Plaintiffs during the

26   incident, and GEO is vicariously liable for the alleged assault.

27   Claim 3: GEO negligently trained and supervised its employees regarding the

28   use of force policy and the temperature of the water that should be used during

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4841-7856-4016 v1
1/13/20

- 2 -

5:18-CV-01125-SP
DEFTS. MEMO OF CONTENTIONS

decontamination.

Claim 4: Defendants Campos and Diaz intentionally inflicted emotional distress on Plaintiffs by using force against Plaintiffs, and GEO is vicariously liable.

Claim 8: Defendants Campos and Diaz violated Govt. Code § 52.1 by acting in a reckless disregard of Plaintiffs' constitutional rights when using force, and GEO is vicariously liable.

Claim 10: Defendants Campos and Diaz were negligent in the use of force and in ensuring Plaintiffs were provided timely medical assistance, and GEO is vicariously liable.

**Elements Required To Establish Plaintiffs' Claims 1 And Two For State Law Assault And Battery Involving A Peace Officer:**

1.     That defendant intentionally touched plaintiff;

2.     That defendant used unreasonable force to overcome their resistance and quell the major disturbance that Plaintiffs created;

3.     That plaintiff did not consent to the use of that force;

4.     That plaintiff was harmed; and

5.     That defendant's use of unreasonable force was a substantial factor in causing plaintiff's harm.

*See* California Civil Jury Instructions (CACI) 1305; *Brown v. Ransweiler,* 171 Cal. App. 4th 516, 526-27, 89 Cal. Rptr. 3d 801 (2009) ("A state law battery claim is a counterpart to a federal claim of excessive use of force. In both, a plaintiff must prove that the peace officer's use of force was unreasonable."); *Edson v. City of Anaheim,* 63 Cal. App. 4th 1269, 1272, 74 Cal. Rptr. 2d 614 (1988) (holding an assault claim brought against a police officer, a plaintiff must demonstrate that the officer's use of force was unreasonable); *see also Saraceni v. City of Roseville,* 2003 WL 21363458, at *8 (Cal. Ct. App. June 13, 2003) (holding that plaintiff's assault and battery claims against an officer failed as a matter of law because the officer used reasonable force).

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4841-7856-4016 v1
1/13/20

- 3 -

5:18-CV-01125-SP
DEFTS. MEMO OF CONTENTIONS

1  Defendants will introduce the following evidence in defense against these

2  claims:

3  In June 2017, Plaintiffs were housed at the Facility. While at the Facility,

4  Plaintiffs became aware that there were multiple times throughout the day when

5  they *had* to return to their bunks to be counted by GEO staff, and that it was a direct

6  order to return to their bunks for count. This procedure is referred to as "count" and

7  it is a critical time period at the Facility because it is the mechanism by which the

8  Facility is able to determine whether a detainee has escaped from the Facility.

9  Plaintiffs also understood that failing to comply with orders would result in

10  consequences.

11  On June 12, 2017, at around 6:22 a.m., Plaintiffs engaged in a strike and

12  refused to return to their bunks for count, which resulted in Lt. Diaz, GEO officers,

13  and RN Jones responding to their dorm. Lt. Diaz, Officer Reyes, and Officer

14  Martinez tried to negotiate and reason with Plaintiffs, but Plaintiffs refused to return

15  to their bunks. Plaintiffs understood that there would be consequences, including

16  the use of OC spray, for their decision to ignore the commands; however, they

17  admitted that they no intention of complying with the commands unless force was

18  used as this would help them garner more attention for their strike.

19  After giving numerous commands, four officers (including Officers Gillon,

20  Reyes, and Martinez) removed Plaintiffs Martinez and Rodriguez from Table A by

21  pulling them by their arms. No force (*e.g*., strikes, kicks, punches, etc.) was used to

22  remove Plaintiffs Martinez and Rodriguez from the dorm despite their active

23  resistance; instead, the officers physically pulled them away from the table and then

24  apart after they clung to each other, as demonstrated by the video recording.

25  While the officers were escorting out Plaintiffs Martinez and Rodriguez,

26  Plaintiffs Cornejo, Castillo, Mejia, Diaz, and Campos (seated at Table B)

27  interlocked their arms and tethered their feet around the legs of Table B to make it

28  more difficult for the officers to remove them from the table – *i.e*. Plaintiffs were

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4841-7856-4016 v1
1/13/20

- 4 -

5:18-CV-01125-SP
DEFTS. MEMO OF CONTENTIONS

1   actively resisting – and Plaintiff Garcia moved from Table A to Table B and sat

2   next to Plaintiff Campos. The dorm, during a period that is supposed to be very

3   quiet, was in an uproar and completely out of control.

4        After evaluating the situation, and in reliance on her training and experience,

5   Lt. Diaz determined it was appropriate to deploy OC spray after trying to de-

6   escalate the situation for more than 9 minutes, giving several warning that she

7   planned to use OC spray, which Plaintiffs understood, and GEO officers

8   unsuccessfully trying to pull plaintiffs away from the tables. Lt. Diaz deployed an

9   extremely short burst of OC spray down the middle of Table B. <u>This was the only</u>

10  <u>force used by Diaz.</u> Plaintiffs Diaz, Campos, Garcia, Cornejo, Castillo, and Mejia

11  were unfazed by the short burst of spray as they continued to remain seated at Table

12  B with their arms interlocked and their heads down on the table.

13       At 6:43:47, Officers Reyes and Martinez removed Plaintiff Garcia from the

14  table without using any force; they merely pulled Plaintiff Garcia by his arms from

15  the table, despite his active resistance, and untangled his arms from the plaintiffs

16  that he had interlocked his arms with.

17       Meanwhile, Lt. Diaz realized the situation was completely out of control

18  (Plaintiffs were interlocking arms and refusing to comply, and the other detainees

19  were yelling and acting in a rowdy manner), so she called for additional assistance.

20       Next, at 6:45:58, officers attempted to pull Plaintiff Mejia from the table by

21  unlinking his arms from Plaintiff Castillo. Despite Plaintiff Mejia resisting, the

22  officers were able to remove Plaintiff Mejia from the table at 6:46:18 without using

23  any force.

24       As the officers were trying to walk Plaintiff Mejia out of the dorm, Sgt.

25  Campos responded to Lt. Diaz's call and entered the dorm. Sgt. Campos

26  immediately assisted two officers, including Officer Martinez, that were struggling

27  to remove Plaintiff Mejia, who was being combative. Sgt. Campos guided the

28  group to the wall so the officers could secure Plaintiff Mejia's arms and escort

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4841-7856-4016 v1
1/13/20

- 5 -

5:18-CV-01125-SP
DEFTS. MEMO OF CONTENTIONS

1   Plaintiff Mejia out without injury.

2         While Sgt. Campos assisted the officers with Plaintiff Mejia, three officers

3   were able to pull Castillo away from the table without using any force. (Sgt.

4   Campos then walked toward Table B, where officers were struggling to grab

5   Plaintiffs Diaz, Campos, and Cornejo's arms to separate them (the remaining

6   plaintiffs still had their arms interlocked). Plaintiffs Diaz, Campos, and Cornejo

7   grabbed on to each other to prevent the officers from gaining their compliance. In

8   turn, the officers struggled to separate them.

9         Sgt. Campos determined that any further delay in bringing this situation

10   under control would result in a major disturbance and further serious disorder

11   within the dorm; thus, it was reasonable under the circumstances to deploy OC

12   spray. He instructed the officers to move away from the table, yelled, "OC spray

13   warning," and commanded the plaintiffs at the table to stop resisting. Sgt. Campos

14   deployed a one second burst of OC spray in the direction of Plaintiffs Diaz,

15   Campos, and Cornejo, who had their arms interlocked and were huddled together

16   across the table. Then he moved to the opposite end of the table and deployed a

17   second extremely short burst of OC spray towards Plaintiffs Diaz and Campos. The

18   use of OC spray was the only force used by Sgt. Campos.

19         Sgt. Campos and Lt. Diaz had no further contact with Plaintiffs.

20         Thereafter, Plaintiffs were decontaminated and seen by medical staff.

21   **Elements Required to Establish Plaintiffs' Claim 3 for Negligent Training And**

22   **Supervision (Third Claim Against GEO Only)**

23       1.     That GEO hired Defendant Diaz/Campos.

24       2.     That Diaz/Campos became unfit or incompetent to perform the work

25   for which he or she was hired;

26       3.     That GEO knew or should have known that Defendant Diaz/ Campos

27   became unfit and/or incompetent and that this unfitness or incompetence created a

28   particular risk to others;

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4841-7856-4016 v1
1/13/20

- 6 -

5:18-CV-01125-SP
DEFTS. MEMO OF CONTENTIONS

1   4.  That Defendant Diaz/ Campos's unfitness or incompetence harmed

2 Plaintiffs; and

3   5.  That GEO's negligence in supervising Defendant Diaz/ Campos was a

4 substantial factor in causing Plaintiffs' harm.

5   Generally, Defendants will introduce the following evidence in defense

6 against this claim:

7   Defendants Campos and Diaz were competent to perform the functions of

8 their jobs and GEO did not have notice otherwise.

9   Additionally, the evidence demonstrates that Campos and Diaz were trained

10 by GEO to adequately perform the functions of their jobs. For example, when an

11 officer is initially hired, he/she must complete pre-service training, which consists

12 of 136-hours of training on various policies and procedures in a classroom setting.

13 Thereafter, officers are required to complete 40 hours of on-the-job training.

14 Annually, officers are required to complete 40-hours of in-service training.

15   Prior to being promoted to a supervisory position, which Campos and Diaz

16 were both in at the time of the incident, an officer is required to complete additional

17 training that builds on the pre-service training. The additional training includes

18 training specific to the use chemical agents (e.g. pepper spray or OC spray) and

19 covers topics such as the use of force requirements that permit the use of chemical

20 agents, the decontamination process, and the effects of chemical agents on the

21 person. Thereafter, supervisors are required to complete monthly training on

22 various topics (e.g. completing evaluations and use of force report writing).

23   GEO teaches its officers to only use force as a last alternative after all other

24 reasonable efforts to resolve the situation have failed. Officers are trained to on the

25 "Use-of-Force Continuum," which is a model used to illustrate the levels of force

26 staff may use to gain control of a detainee. The levels that are relevant to the

27 Facility are as follows: (a) staff presence without action; (b) verbal commands; (c)

28 soft techniques (techniques from which there is minimal chance of injury; e.g.,

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4841-7856-4016 v1
1/13/20

- 7 -

5:18-CV-01125-SP
DEFTS. MEMO OF CONTENTIONS

grasping, empty-hand, "come-along" holds, using impact weapons for holds, pressure to pressure points, chemical agents); and (d) hard techniques (techniques where there is a greater possibility of injury; e.g., "take-downs" or striking using impact weapons, such as deploying chemical agents, expandable batons, straight batons, authorized less-lethal devices, and specialty impact weapons).

The use of chemical agents is authorized to control or quell a disturbance that is likely to develop into a serious disorder.

Additionally, a detainee that has come into contact with a chemical agent will be decontaminated/cleaned as soon as reasonably possible by flushing the contaminated area with generous amounts of water for 5 to 10 minutes or until the irritation is gone. This can be done in a shower, for example. Thereafter, the detainee is examined by the medical unit that is staffed by a third party contractor.

**Elements Required to Establish Plaintiffs' Claim 4 for Intentional Infliction of Emotional Distress (IIED) And Defendants' Affirmative Defense**

The elements for a claim of IIED are (1) extreme and outrageous conduct by the defendant with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffering severe emotional distress; and (3) actual and proximate causation. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009).

"Outrageous conduct" is conduct so extreme that it goes beyond all possible bounds of decency. Conduct is outrageous if a reasonable person would regard the conduct as intolerable in a civilized community. Outrageous conduct does not include trivialities such as indignities, annoyances, hurt feelings, or bad manners that a reasonable person is expected to endure. CACI 1602.

Additionally, Defendants Campos and Diaz acted with reckless disregard in causing Plaintiffs' emotional distress if (1) Campos/Diaz knew that emotional distress would probably result from his/her conduct; or (2) Campos/Diaz gave little or no thought to the probable effects of his/her conduct. CACI 1603.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4841-7856-4016 v1
1/13/20

- 8 -

5:18-CV-01125-SP
DEFTS. MEMO OF CONTENTIONS

1   As to Defendants' affirmative defense, Defendants Campos and Diaz claim

2   that they are not responsible for any plaintiffs harm, if any, because their conduct

3   was permissible. To succeed, Defendants Campos and Diaz must prove all of the

4   following:

5   1.   That defendant was exercising his/her legal right to restrain plaintiff

6   for refusing to follow orders to return to his bunk for count;

7   2.   That defendant's conduct was lawful and consistent with community

8   standards; and

9   3.   That defendant had a good-faith belief that he/she had a legal right to

10   engage in the conduct.

11   Generally, Defendants will introduce the evidence discussed above under the

12   elements required to establish Plaintiffs' first and second claims of assault and

13   battery. Additionally, Defendants will introduce evidence of Plaintiffs' reports of

14   non-injuries after the incident and subsequent medical records.

15   **Elements Required to Establish Plaintiffs' Claim 8 for Violation of California**

16   **Civil Code Section 52.1**

17   Plaintiffs claim that Defendants Campos and Diaz intentionally interfered

18   with their civil rights by threats, intimidation, or coercion. Namely, Plaintiffs claim

19   that Defendants Campos and Diaz intentionally interfered with their rights when

20   Campos/Diaz used force against them in response to Plaintiffs'

21   strike/demonstration related to their grievances. To establish this claim, Plaintiffs

22   must prove all of the following:

23   1. That Campos/Diaz caused acted violently against plaintiff for having

24   exercised his right to grieve the conditions of their detention.

25   2. That Campos/Diaz intended to deprive plaintiff of his enjoyment of the

26   interests protected by the right;

27   3. That plaintiff was harmed; and

28   4. That defendant's conduct was a substantial factor in causing plaintiff's

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4841-7856-4016 v1
1/13/20

- 9 -

5:18-CV-01125-SP
DEFTS. MEMO OF CONTENTIONS

harm.

Generally, Defendants will introduce the evidence discussed above under the elements required to establish Plaintiffs' first and second claims of assault and battery.

**Elements Required to Establish Plaintiffs' Claim 10 for Negligence**

"The elements of any negligence cause of action are duty, breach of duty, proximate cause, and damages." *Peredia v. HR Mobile Servs., Inc.,* 25 Cal. App. 5th 680, 687, 236 Cal. Rptr. 3d 157 (2018); *see, e.g., Clement v. Gomez,* 298 F.3d 898, 906 (9th Cir. 2002) ("clearly established that the officers could not intentionally deny or delay access to medical care") (citation omitted).

As to Defendants' affirmative defense, Defendants Campos and Diaz claim that they are not responsible for the plaintiffs harm because they was acting in defense of another. To succeed, Defendants Campos and Diaz must prove both of the following:

1. That Campos/Diaz reasonably believed that the plaintiff was going to harm other officers; and

2. That Campos/Diaz used only the amount of force that was reasonably necessary to protect the other officers present.

Generally, Defendants will introduce the evidence discussed above under the elements required to establish Plaintiffs' first and second claims of assault and battery. Additionally, Defendants will introduce evidence that medical care at the Facility is provided by a third party contractor, which was Correct Care Solutions at the time of the incident.

## III.   EVIDENTIARY ISSUES

Defendants are concurrently filing four motions *in limine*:

1. To exclude evidence or arguments of any alleged other bad acts of Defendants;

2. To exclude evidence regarding Plaintiffs' alleged immigration

1   backgrounds, including the allegations within their operative complaint concerning
2   the alleged reason(s) Plaintiffs left their home countries, their harrowing journeys
3   from their home countries to the United States, their alleged status as asylum
4   seekers, and their current immigration status;

5          3.      To exclude  evidence from or testimony related to media articles (from
6   radio, television, newspapers and the internet) pertaining to (1) this federal civil
7   rights action, (2) the incident that gives rise to the action, and/or (3) other unrelated
8   incidents at Adelanto ICE Processing Detention Facility or that involve Defendants;
9   and

10         4.      To exclude the testimony of Plaintiffs' expert Dr. Homer Venters on
11  the grounds that his testimony fails to satisfy the requirements established by
12  Federal Rules of Evidence 702 and 703, which govern the admissibility of expert
13  testimony, and it is cumulative of Plaintiffs' expert Jeffrey Schwartz.

14  **IV.   <u>ISSUES OF LAW.</u>**

15         Apart from those issues identified elsewhere in this Memorandum (*i.e.* claims
16  and defenses, and motions in limine), no other evidentiary issues are anticipated.
17  The parties are generally in agreement on the law governing the claims and the
18  disputes in this case are primarily factual.

19  **V.    <u>BIFURCATION OF PUNITIVE DAMAGES.</u>**

20         Defendants request this trial be bifurcated as to punitive damages. The
21  determination of punitive damages, if necessary, should be tried in the second
22  phase, after liability has been determined, to avoid unnecessary testimony and
23  evidence regarding finances and net worth.

24  **VI.   <u>JURY TRIAL.</u>**

25         Defendants timely demanded a jury trial. This is estimated to be a 7 day trial.

26  **VII.  <u>ATTORNEYS' FEES.</u>**

27         Plaintiffs will seek attorney's fees under California Civil Code § 52.1 if they
28  prevail on any of this claim.

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4841-7856-4016 v1
1/13/20

- 11 -

5:18-CV-01125-SP
DEFTS. MEMO OF CONTENTIONS

**VIII.   <u>ABANDONMENT OF ISSUES.</u>**

Plaintiffs voluntarily dismissed as a defendant GEO employee Duran and their ninth claim for conspiracy under U.S. C. Section 1985 against Defendants.

Additionally, Plaintiffs voluntarily dismissed defendants Corrective Care Solutions and its employee, Sarah Jones, and the Court dismissed Plaintiffs' claims against the USA on May 1, 2019.

The Court summarily adjudicated Plaintiffs' fifth claim for retaliation under the First Amendment/Section 1983, sixth claim for excessive force, and seventh claim for violation of due process rights under Section 1983. The Court also summarily adjudicated all claims against the City of Adelanto.

No claims or other defendants have been dismissed.

**IX.   <u>DEFENDANTS' WITNESS LIST</u>**

Defendants will file a Witness List in a separate pleading.

**X.   <u>DEFENDANTS' EXHIBIT LIST</u>**

The parties will file a Joint Exhibit List in a separate pleading.

Dated:  January 14, 2020          BURKE, WILLIAMS & SORENSEN, LLP


By: /s/ Carmen M. Aguado
Susan E. Coleman
Carmen M. Aguado

Attorneys for Defendants
THE GEO GROUP, INC., CAMPOS, and
DIAZ

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4841-7856-4016 v1
1/13/20

- 12 -

5:18-CV-01125-SP
DEFTS. MEMO OF CONTENTIONS