| | |
|---|---|
| Rachel Steinback, SBN 310700 | Carol A. Sobel, SBN 84483 |
| Law Office of Rachel Steinback | Monique A. Alarcon, SBN 311650 |
| 3435 Wilshire Blvd, Suite 2910 | LAW OFFICE OF CAROL SOBEL |
| Los Angeles, CA 90010 | 725 Arizona Avenue, Suite 300 |
| (t) 213-537-5370 | Santa Monica, CA 90401 |
| (f) 213-232-4003 | (t) 310-393-3055 |
| (e) steinbacklaw@gmail.com | (e) carolsobel@aol.com |
| | (e) monique.alarcon8@gmail.com |

*Attorneys for Plaintiffs.*

*[Additional Counsel on Following Page]*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR ARNOLDO RIVERA MARTINEZ; ISAAC ANTONIO LOPEZ CASTILLO; JOSUE VLADIMIR CORTEZ DIAZ; JOSUE MATEO LEMUS CAMPOS; MARVIN JOSUE GRANDE RODRIGUEZ; ALEXANDER ANTONIO BURGOS MEJIA; LUIS PEÑA GARCIA; JULIO CESAR BARAHONA CORNEJO, as individuals, <br><br> Plaintiffs, <br><br> v. <br><br> THE GEO GROUP, Inc., a Florida corporation; the CITY OF ADELANTO, a municipal entity; GEO LIEUTENANT DURAN, sued in her individual capacity; GEO LIEUTENANT DIAZ, sued in her individual capacity;   GEO SERGEANT CAMPOS, sued in his individual capacity; SARAH JONES, sued in her individual capacity; THE UNITED STATES OF AMERICA; and DOES 1-10, individuals, <br><br> Defendants. | Case No. 5:18-cv-01125-SP <br> *[Magistrate Judge: Hon. Sheri Pym]* <br><br> **PLAINTIFFS' APPLICATION FOR USE OF A JUROR QUESTIONNAIRE** <br><br> *[Filed concurrently herewith Exhibit A]* <br><br> Trial:     February 3, 2020 |

Catherine Sweetser, SBN 271142
Kristina A. Harootun, SBN 308718
SCHONBRUN SEPLOW HARRIS & HOFFMAN LLP
11543 W. Olympic Boulevard
Los Angeles, CA 90064
(t) 310-396-0731
(f) 310-399-7040
(e) csweetser@sshhlaw.com
(e) kharootun@sshhlaw.com

Colleen Flynn, SBN 234281
LAW OFFICE OF COLLEEN FLYNN
3435 Wilshire Boulevard, Suite 2910
Los Angeles, CA 90010
(t) 213-252-9444
(f) 213-252-0091
(e) cflynnlaw@yahoo.com

Matthew Strugar, SBN 232951
LAW OFFICE OF MATTHEW STRUGAR
3435 Wilshire Boulevard, Suite 2910
Los Angeles, CA 90010
(t) 323-696-2299
(e) matthew@matthewstrugar.com

**COME NOW** Plaintiffs, by and through their undersigned counsel, and respectfully request that the Court grant their Application for Use of a Jury Questionnaire. In support thereof, Plaintiffs state as follows:

## I. INTRODUCTION

This case, brought by noncitizen asylum-seeking Plaintiffs from Central America, involves sensitive issues that many people may be uncomfortable discussing openly in a full courtroom.  Some of the issues involved in this case include attitudes about whether:

- noncitizens/immigrants have constitutional rights;
- noncitizens/immigrants should be able to gain relief in U.S. courts;
- opinions about the issues in this case change when the Plaintiffs are non-English speaking Latino immigrants.

In order to ensure that an impartial jury, untainted by prejudice and bias, is empaneled, Plaintiffs respectfully request that the Court utilize a short jury questionnaire in this case, in addition to the oral voir dire it will conduct.

More, the future of the Adelanto facility specifically has recently garnered widespread media attention.  In light of these circumstances, Plaintiffs submit that a jury questionnaire in addition to standard voir dire procedures will assist the Court in ensuring that this case is tried before an impartial jury.

## II. A JURY QUESTIONNAIRE IS NECESSARY TO IDENTIFY BIAS AND PREJUDICE

Federal Rule of Civil Procedure 47 provides this Court with discretion on how to examine potential jurors. While a court has discretion in how voir dire is conducted, if "an inquiry requested by counsel is directed toward an important aspect of the litigation about which members of the public may be expected to have strong feelings or prejudices," the court should permit adequate inquiry into the matter on voir dire. *Darbin v. Nourse*, 664 F.2d 1109, 1113 (9th Cir. 1981). The Court may also take additional measures to inquire about sensitive matters, including the use of

a jury questionnaire.

### 1. *Prospective Jurors May Be Biased Against Plaintiffs On the Basis That They Are Latino Noncitizens Whose Claims Stem From An Incident At An Immigration Detention Center.*

Courts and commentators have long stressed the importance of voir dire questioning to obtain a fair and impartial jury. *See J.E.B. v. Alabama*, 511 U.S. 127, 114 (1994) (litigants are entitled to jury free of group stereotypes that are reflective of historical bias); *U.S. v. Shavers*, 615 F.2d 266, 268 (5th Cir. 1980). The Ninth Circuit has acknowledged that a more specific inquiry into juror opinions is appropriate where "[t]he nature of the controversy or . . . may involve matters on which a number of citizens may be expected to have biases or strong inclinations." *Darbin*, 664 F.2d at 1113. As the Court itself recognized at the parties' final pretrial conference, jurors' thoughts about immigration are undoubtedly deeply-felt and extensive – which makes it all the more crucial for the Parties to be afforded the opportunity to adequately inquire.

In this case, it is imperative that Plaintiffs have an honest, open opportunity to explore potential juror bias against them because they are Latino noncitizens, who were detained after entering the United States, and are now bringing an excessive force claim in a U.S. court based on an incident that occurred while they were in immigration detention. Recent media coverage on the future of the Adelanto facility highlights the divisive nature of the issues in this case and the need for a juror questionnaire.[1] *See Skilling v. United States*, 561 U.S. 358, 388 (2010) (citing "comprehensive" juror questionnaire and individual juror questioning to support finding that voir dire was adequate to select impartial jury in case involving widespread pretrial publicity.). The Questionnaire proposed by Plaintiffs will be

---

[1] The Desert Sun, <u>ICE Detention Center expansion divides Adelanto citizens</u>, January 24, 2020, *available at* https://www.desertsun.com/videos/news/2020/01/24/ice-detention-center-expansion-divides-adelanto-citizens/4458997002/.

crucial to helping identify jurors who might undermine Plaintiffs' right to a jury free of anti-immigrant prejudice and bias.

### 2. *A Written Questionnaire Will Elicit More Honest Answers Than Oral Questions Asked in Public and Will Ultimately Save Time*

It is well established that an admission of racial bias may be silenced by a number of factors, including "social desirability", which leads a prospective juror to tell a court that he or she is a good, fair-minded citizen devoid of prejudice. *See* Heaney, Lisa, *The Case for Meaningful Voir Dire on Race and Sexual Orientation Bias*, Jurywork: Systematic Techniques (Clark Boardman Callaghan, 2d Ed., 1983). The same holds true for strong anti-immigrant bias and the bases therefore. Many people do not want to publicly disclose negative or strongly positive feelings or experiences on these issues due to potential embarrassment and the fear of divulging highly sensitive, private experiences in those prospective jurors' lives.

Questionnaires allow jurors to provide these sensitive answers in private, which most jurors prefer. Research has demonstrated that prospective jurors tend to answer written questionnaires more honestly than questions asked by a lawyer or judge in a public courtroom because they are sometimes embarrassed or ashamed to admit bias.

The advantages of written questionnaires include the following:

- Written questionnaires are more private, and encourage honesty, particularly about sensitive issues involving bias and prejudice that are critical in this case.
- Written questionnaires reduce the influence of "evaluation anxiety," which causes potential jurors to temper their answers because they know they are being evaluated by the court and the attorneys as they speak.
- Written responses are not influenced by answers given by other members of the venire.

///

- Written responses revealing prejudicial information seen or heard by one potential juror will not taint the entire jury pool as an oral response might.
- Written responses are not influenced by the characteristics or qualities of the interviewer.
- Written questionnaires provide more information about each potential juror than would be obtained in oral questioning, particularly when open-ended questions are used, and in less time.
- Written questionnaires streamline the jury selection process by allowing the court and counsel to focus more quickly on areas of concern during voir dire.

*See generally* Lilley, "Let Jurors Speak the Truth, in Writing," 41 JUL Trial 64 (2005); American Bar Association, Principles for Juries and Jury Trials, Principle 11(A)(1) (2005) (suggesting use, in appropriate cases, of a "specialized questionnaire addressing particular issues that may arise"); Vidmar, "Case Studies of Pre- and Midtrial Prejudice in Criminal and Civil Litigation," 26 *Law and Human Behavior*, No. 1 (Feb. 2002); Seltzer, Venuti & Lopes, "Juror Honesty During the Voir Dire," 19 *Journal of Criminal Justice*, 451-62 (1991).

    The Questionnaire permits the prospective juror to admit bias in a nonthreatening situation. Thus, a carefully crafted questionnaire will help root out bias that would otherwise go undetected. Once the prospective jurors are in the courtroom, individual questioning of jurors, outside the presence of other jurors, on sensitive topics encourages jurors to be candid about subjects that may be more difficult to talk about in front of a group.  In fact, a short questionnaire will serve to conserve time. *Lowery v. City of Albuquerque*, No. CIV 09-0457 JB/WDS, 2012 WL 1372273, at *5 (D.N.M. Apr. 11, 2012) ("The Plaintiffs have provided a sound basis for modifying the voir dire process, given the sensitive and complex nature of the issues in the case as well as the time constraints noted at the hearing. The case involves some sensitive issues regarding governmental authority, drug use, and the

health risks associated with the presence of drugs.").

### 3. *Prospective Jurors May Be Biased Against Awarding Damages*

Plaintiffs' proposed Questionnaire will also assist the Court and counsel in identifying jurors whose personal opinions and biases may prevent them from fairly evaluating Plaintiffs' damages. Biases regarding a juror's thoughts on whether noncitizens should be able to recover damages in U.S. courts are critical to identify. Questions regarding how a juror feels about damages are therefore necessary in order to identify attitudes that may prevent a juror from following the law.

## III. CONCLUSION

There can be no better use of judicial time than the careful, in-depth selection of a jury. A juror questionnaire is particularly important in a case involving noncitizen plaintiffs and an excessive force incident that took place in an immigration detention center. For the reasons set forth above, Plaintiffs respectfully ask the Court to grant their application to permit the use of the proposed written jury questionnaire.

Dated: January 28, 2020         Respectfully submitted,

LAW OFFICE OF RACHEL STEINBACK
LAW OFFICE OF CAROL A. SOBEL
SCHONBRUN SEPLOW HARRIS & HOFFMAN LLP
LAW OFFICE OF COLLEEN FLYNN
LAW OFFICE OF MATTHEW STRUGAR


By:  */s/ Rachel Steinback*
     Rachel Steinback
     *Attorney for Plaintiff.*